Marc S. Dreier (MD-9713)
Joel A. Chernov (JC-8789)
Regina M. Alter (RA-7014)
DREIER LLP
499 Park Avenue
New York, New York 10022
(212) 328-6100

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- :

HWB VICTORIA STRATEGIES PORTFOLIO, *et al.*, :

                           Plaintiffs, :

            -against- :

THE REPUBLIC OF ARGENTINA, :

                        Defendant. :

---------------------------------------------------------------- :

07 CV 10657 (TPG)

**DECLARATION OF
REGINA M. ALTER**

     **REGINA ALTER** makes the following declaration, under penalty of perjury, pursuant to 28 U.S.C. § 1746:

     1.     I am Of Counsel with the firm of Dreier LLP, counsel of record for plaintiffs. I make this declaration in support of plaintiffs' motions for summary judgment against defendant the Republic of Argentina ("Argentina") and to strike defendant's discovery requests. I have personal knowledge of the facts and circumstances set forth below.

     2.     Annexed hereto as Exhibit 1 is a true and correct copy of the Complaint in this case, dated November 28, 2007.

     3.     Annexed hereto as Exhibit 2 is a true and correct copy of defendant's Answer to the Complaint, dated January 28, 2008.

{00366646.DOC;}

4.    Annexed hereto as Exhibit 3 is a true and correct copy of Defendant's First Request for the Production of Documents, dated January 28, 2008.

5.    Annexed hereto as Exhibit 4 is a true and correct copy of Plaintiffs' Responses and Objections to Defendant's First Request for the Production of Documents, dated February 4, 2008.

6.    Annexed hereto as Exhibit 5 is a true and correct copy of the opinion entitled *Lightwater Corp. Ltd. v. The Republic of Argentina*, No. 02 Civ. 3804, 02 Civ. 3808, 02 Civ. 5932 (TPG), 2003 WL 1878420 (S.D.N.Y. Apr. 14, 2003).

7.    Annexed hereto as Exhibit 6 is a true and correct copy of the opinion entitled *EM Ltd. v. The Republic of Argentina*, No. 03 Civ. 2507, 2003 WL 22120745 (S.D.N.Y. Sept. 12, 2003), as amended by 2003 WL 22454934 (S.D.N.Y. Oct. 27, 2003).

8.    Annexed hereto as Exhibit 7 is a true and correct copy of the opinion entitled *Mazzini v. The Republic of Argentina*, No. 03 Civ. 8120 (TPG), 2005 WL 743090 (S.D.N.Y. March 31, 2005).

9.    Annexed hereto as Exhibit 8 is a true and correct copy of the opinion entitled *Mazoral v. The Republic of Argentina*, No. 04 Civ. 3313 (TPG), Slip Op. (S.D.N.Y. May 4, 2006).

10.    Annexed hereto as Exhibit 9 is a true and correct copy of the opinion entitled *Moldes v. The Republic of Argentina*, No. 04 Civ. 6137 (TPG), Slip Op. (S.D.N.Y. May 4, 2006).

11.    Annexed hereto as Exhibit 10 is a true and correct copy of the opinion entitled *Prima v. The Republic of Argentina*, No. 04 Civ. 1077 (TPG), Slip Op. (S.D.N.Y. May 4, 2006).

12.    Annexed hereto as Exhibit 11 is a true and correct copy of the opinion entitled *Morata v. The Republic of Argentina*, 04 Civ. 3314 (TPG) Slip Op. (S.D.N.Y. May 9, 2006) (the "*Morata* Decision").

13.    Annexed hereto as Exhibit 12 is a true and correct copy of the opinion entitled *Sauco v. The Republic of Argentina*, 05 Civ. 3955 (TPG) Slip Op. (S.D.N.Y. May 15, 2006) (the "*Sauco* Decision").

14.    Annexed hereto as Exhibit 13 is a true and correct copy of the opinion entitled *Allan Applestein TTEE FBO D.C.A. Grantor Trust v. The Republic of Argentina*, No. 02 Civ. 4124, 2003 WL 22743762 (S.D.N.Y. Nov. 20, 2003) (the "DCA Decision").

15.    Annexed hereto as Exhibit 14 is a true and correct copy of the transcript from the hearing before the Court on March 28, 2006 in the action entitled *Cilli v. The Republic of Argentina*, 04 Civ. 6594 (TPG).

16.    Annexed hereto as Exhibit 15 is a true and correct copy of a transcript from the hearing before the Court on March 5, 2004.

17.    Annexed hereto as Exhibit 16 is a true and correct copy of the opinion entitled *Cilli v. The Republic of Argentina*, 04 Civ. 6594 (TPG), Slip Op. (S.D.N.Y. March 20, 2006).

WHEREFORE, it is respectfully requested that plaintiffs' motions be granted in their entirety.

Dated: New York, New York
       June 30, 2008

I declare under penalty of perjury that the foregoing is true and correct

_____
Regina Alter

RECO S.E.C.

·124 1994

016

# FISCAL AGENCY AGREEMENT

### between

### THE REPUBLIC OF ARGENTINA

### and

### BANKERS TRUST COMPANY, Fiscal Agent

### Dated as of October 19, 1994

TABLE OF CONTENTS

Page

1.  Securities Issuable in Series . . . . . . . . . . . . . . .  1

2.  Appointment of Fiscal Agent; Paying Agents . . . . . . . .  3

3.  Authentication . . . . . . . . . . . . . . . . . . . . . .  3

4.  Registration, Transfers and Exchanges . . . . . . . . . .  4

5.  Global Securities . . . . . . . . . . . . . . . . . . . .  6

6.  Payment . . . . . . . . . . . . . . . . . . . . . . . . .  9

7.  Additional Amounts . . . . . . . . . . . . . . . . . . . . 11

8.  Mutilated, Destroyed, Stolen or Lost Certificates . . . . 11

9.  Redemption and Purchases . . . . . . . . . . . . . . . . . 12

10. Cancellation and Destruction . . . . . . . . . . . . . . . 14

11. Negative Pledge and Covenants . . . . . . . . . . . . . . 14

12. Default; Acceleration of Maturity . . . . . . . . . . . . 17

13. Limit on Liability; Acceptance of Appointment . . . . . . 19

14. Expenses and Indemnity . . . . . . . . . . . . . . . . . . 20

15. Successor Fiscal Agent . . . . . . . . . . . . . . . . . . 20

16. Meetings of Holders of Securities; Modifications . . . . . 22

17. Further Issues . . . . . . . . . . . . . . . . . . . . . . 26

18. Reports . . . . . . . . . . . . . . . . . . . . . . . . . 26

19. Forwarding of Notice; Inquiries . . . . . . . . . . . . . 27

20. Listings . . . . . . . . . . . . . . . . . . . . . . . . . 27

21. Notices . . . . . . . . . . . . . . . . . . . . . . . . . 27

22. Consent to Service; Jurisdiction . . . . . . . . . . . . . 28

23. Governing Law and Counterparts . . . . . . . . . . . . . . 29

24.  Headings . . . . . . . . . . . . . . . . . . . . . . . .   29

Exhibit A - Form of Registered Security

FISCAL AGENCY AGREEMENT dated as of October 19, 1994, between The Republic of Argentina (the "Republic") and Bankers Trust Company, a New York banking corporation, as fiscal agent.

1.  Securities Issuable in Series.  (a)  The Republic may issue its notes, securities, debentures or other evidences of indebtedness (the "Securities") in separate series from time to time (each such series of Securities being hereinafter referred to as a "Series" or the "Securities of a Series").  The aggregate principal amount of the Securities of all Series which may be authenticated and delivered under this Agreement and which may be outstanding at any time is not limited by this Agreement.  The text of the Securities of a Series delivered to the Fiscal Agent (as hereinafter defined) for authentication on original issuance pursuant to Section 3 of this Agreement shall establish (i) the specific designation of the Securities of such Series (which shall distinguish the Securities of such Series from all other Series); (ii) any limit on the aggregate principal amount of the Securities of such Series which may be authenticated and delivered under this Agreement (except for Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Securities of such Series pursuant to the provisions of this Agreement or of the Securities of such Series); (iii) the price or prices (expressed as a percentage of the aggregate principal amount thereof) at which the Securities of such Series will be issued; (iv) the date or dates on which the principal and premium, if any, of the Securities of such Series is payable; (v) the rate or rates (which may be fixed or floating) per annum at which the Securities of such Series shall bear interest, if any, the date or dates from which such interest, if any, shall accrue, the interest payment dates on which such interest shall be payable and the record dates for the determination of holders of the Securities of such Series to whom interest is payable; (vi) the place or places where the principal of, and premium, if any, and interest on the Securities of such Series are payable; (vii) the price or prices at which, the period or periods within which and the terms and conditions upon which Securities of such Series may be redeemed, in whole or in part, at the option of the Republic or otherwise; (viii) the obligation, if any, of the Republic to redeem, purchase or repay Securities of such Series pursuant to any sinking fund or analogous provisions and the price or prices at which, the

upon which Securities of such Series shall be redeemed, purchased or repaid, in whole or in part, pursuant to such obligation; (ix) the minimum denomination and any multiples thereof of the Securities of such Series, which may be in U.S. dollars, another foreign currency, units of two or more currencies or amounts determined by reference to an index; (x) the currency or currencies in which the principal, premium, if any, or interest on such Securities may be payable; (xi) the manner in which the amount of payments of principal, premium, if any, or interest on such Securities is to be determined and if such determination is to be made with reference to any index; (xii) any covenants or agreements of the Republic and events which give rise to the right of a holder of a Security of such Series to accelerate the maturity of such Security other than such covenants, agreements or events specified herein; and (xiii) any other terms of the Securities of such Series. Securities may be issuable pursuant to warrants (if so provided in the text of such Securities) and the Fiscal Agent may act as warrant agent or in any similar capacity in connection therewith.

(b) The Securities of a Series are to be issued in fully registered form only, without interest coupons, and will be issuable in the denominations specified in the text of the Securities of such Series, substantially in the form of Exhibit A hereto ("registered Securities"). The Securities of a Series may also have such additional provisions, omissions, variations or substitutions as are not inconsistent with the provisions of this Agreement, and may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon as may be required to comply with any law or with any rules made pursuant thereto or with the rules of any securities exchange or governmental agency or as may, consistent herewith, be determined by the officials executing such Securities, as evidenced by their execution of such Securities. All Securities of a particular Series shall be otherwise substantially identical except as to denomination and as provided herein.

(c) The Securities will constitute (except as provided in Section 11 below) direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without any preference among themselves. The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness (as defined in this Agreement).

(a)  The Republic hereby appoints Bankers Trust Company, at present having its office at 4 Albany Street, New York, New York 10006 as fiscal agent, transfer agent, registrar and principal paying agent of the Republic for the Securities, upon the terms and conditions set forth herein.  Bankers Trust Company accepts such appointments, and along with its successors as such fiscal agent, is hereinafter referred to as the "Fiscal Agent".  The Republic reserves the right to appoint different fiscal agents for different series of securities.

(b)  The Republic may appoint one or more additional agents (hereinafter called a "Paying Agent" or the "Paying Agents") for the payment (subject to the applicable laws and regulations) of the applicable payment of principal, premium, if any, and interest or Additional Amounts (as defined in Section 7 hereof), if any, on the Securities at such place or places as the Republic may determine pursuant to an agreement (each, a "Paying Agency Agreement"); provided that the Republic will maintain at all times until no Security is outstanding a Paying Agent (who may be the Fiscal Agent) in the Borough of Manhattan, The City of New York.  The Republic will keep the Fiscal Agent informed as to the name, address, and telephone and facsimile numbers of each Paying Agent appointed by it and will notify the Fiscal Agent of the resignation of any Paying Agent.  The Fiscal Agent shall arrange with each Paying Agent for the payment, as provided herein, of the principal and interest or Additional Amounts, if any, on the Securities on terms previously approved in writing by the Republic (further references herein to principal and interest shall be deemed to also refer to any Additional Amounts).

3.    Authentication.  (a)  The Fiscal Agent shall, upon delivery of the Securities to it by the Republic, and a written order or orders to authenticate and deliver Securities in a stated aggregate principal amount, (i) authenticate and register not more than said aggregate principal amount of Securities and deliver them in accordance with the written order or orders of the Republic and (ii) thereafter authenticate and register Securities and deliver them in accordance with the provisions of Sections 4, 5 and 9 of this Agreement.  The total principal amount of the Securities to be issued and outstanding at any time shall not be limited hereby.

(b)  The Fiscal Agent may, with the prior written consent of the Republic, appoint by an instrument or instruments in writing one or more agents (which may include

3

itself) for the authentication of Securities of a Series
and, with such consent, vary or terminate any such
appointment upon written notice and approve any change in
the office through which any authenticating agent acts. The
Republic (by written notice to the Fiscal Agent and the
authenticating agent whose appointment is to be terminated)
may also terminate any such appointment at any time. The
Fiscal Agent hereby agrees to solicit written acceptances
from the entities concerned (in form and substance
satisfactory to the Republic) of such appointments. In its
acceptance of such appointment, each such authenticating
agent shall agree to act as an authenticating agent pursuant
to the terms and conditions of this Agreement.

(c)  Until definitive Securities of a Series are
prepared, the Republic may execute, and there shall be
authenticated and delivered in accordance with the
provisions hereof (in lieu of definitive Securities of such
Series), temporary Securities of such Series. Such
temporary Securities of a Series shall be subject to the
same limitations and conditions and entitled to the same
rights and benefits as definitive Securities of such Series,
except as provided herein or therein. Temporary Securities
of a Series shall be exchangeable for definitive Securities
of such Series when such definitive Securities are available
for delivery; and upon the surrender for exchange of such
temporary Securities of a Series, the Republic shall execute
and there shall be authenticated and delivered, in
accordance with the provisions of Sections 3 and 4 hereof,
in exchange for such temporary Securities of a Series, a
like aggregate principal amount of definitive Securities of
such Series and of like tenor. The Republic shall pay all
charges, including (without limitation) stamp and other
taxes and governmental charges, incident to any exchange of
temporary Securities for definitive Securities. All
temporary Securities shall be identified as such and shall
describe the right of the holder thereof to effect an
exchange for definitive Securities and the manner in which
such an exchange may be effected.

4.  <u>Registration, Transfers and Exchanges</u>. (a)
The Fiscal Agent, as agent of the Republic for such purpose,
will at all times keep at the office of the Fiscal Agent in
the Borough of Manhattan, The City of New York, a register
or registers for the registration and registration of
transfers and exchanges of Securities, in which shall be
entered the names and addresses of the registered holders of
Securities and the particulars of the Securities held by
such registered holders. Subject to Section 5 hereof, upon
surrender for transfer of any Security of any Series at said
office, the Fiscal Agent shall authenticate, register and

4

deliver in the name of the transferee or transferees a new Security or Securities of any Series for a like aggregate principal amount.   Subject to Section 5 hereof, upon surrender of any Security at said office for exchange, the Fiscal Agent shall authenticate, register and deliver in exchange for such Security a new Security or new Securities of the appropriate authorized denomination(s) and for a like aggregate principal amount in accordance with the provisions of the Securities.

(b)   All new Securities authenticated and delivered by the Fiscal Agent upon registration of transfer or in exchange for Securities of other denominations shall be so dated that neither gain nor loss of interest shall result from such registration of transfer or exchange.

(c)   All Securities presented or surrendered for registration of transfer, exchange or payment shall be accompanied by a written instrument or instruments of transfer in form satisfactory to the Fiscal Agent, duly executed by the registered holder or its attorney duly authorized in writing and with the signatures thereon duly guaranteed by a commercial bank or trust company having its principal office in The City of New York or by a member of the New York Stock Exchange.

(d)   The Fiscal Agent shall not impose any service charge on the registered holder on any such registration, transfer or exchange of Securities; however, the Republic may require of the party requesting such transfer or exchange, as a condition precedent to the exercise of any right of transfer or exchange contained in this Agreement or in the Securities, the payment of a sum sufficient to cover any stamp or other tax or other governmental charge payable in connection therewith.

(e)   The Republic, the Fiscal Agent and any Paying Agent may treat the person in whose name any Security is registered as the owner of such Security for the purpose of receiving payment of principal of and interest on such Security, and all other purposes whatsoever, whether or not such Security be overdue, and none of the Republic, the Fiscal Agent or any Paying Agent shall be affected by any notice to the contrary and any such payment shall be a good and sufficient discharge to the Republic, the Fiscal Agent and any Paying Agent for the amount so paid.

(f)   The Fiscal Agent shall not be required to register any transfer or exchange of Securities during the period from the Regular Record Date (as defined in such Securities) to the Interest Payment Date (as defined in such

5

Securities and for the purposes of any interest payment
made in accordance with Section 6 hereof, such payment shall
be made to those persons in whose names the Securities are
registered on such Regular Record Date.

5.    Global Securities.  The Securities of any
Series may be issued in whole or in part in the form of one
or more global securities ("Global Securities") that will be
deposited with, or on behalf of, a depositary (the
"Depositary") relating to such Series.  Global Securities
may be issued only in fully registered form and in either
temporary or definitive form.  Unless and until it is
exchanged in whole or in part for Securities in definitive
form, a Global Security may not be transferred except as a
whole by the Depositary for such Global Security to a
nominee of such Depositary or by a nominee of such
Depositary to such Depositary or another nominee of such
Depositary or by such Depositary or any nominee of such
Depositary to a successor Depositary or any nominee of such
successor.

Upon the issuance of a Global Security, the
Depositary for such Global Security will credit on its book-
entry registration and transfer system the respective
principal amounts of the Securities represented by such
Global Security to the accounts of Persons that have
accounts with such Depositary ("Participants").  The
accounts to be credited shall be designated by the agents or
underwriters with respect to such Securities or by the
Republic if such Securities are offered and sold directly by
the Republic.  Ownership of beneficial interests in a Global
Security will be limited to Participants or Persons that may
hold interests through Participants.  Ownership of
beneficial interests in a Global Security will be shown on,
and the transfer of that ownership will be effected only
through, records maintained by the applicable Depositary
(with respect to interests of Participants) and records of
Participants (with respect to interests of Persons who hold
through Participants).  Owners of beneficial interests in a
Global Security (other than Participants) will not receive
written confirmation from the applicable Depositary of their
purchase.  Each beneficial owner is expected to receive
written confirmation providing details of the transaction,
as well as periodic statements of its holdings, from the
Depositary (if such beneficial owner is a Participant) or
from the Participant through which such beneficial owner
entered into the transaction (if such beneficial owner is
not a Participant).  The laws of some states require that
certain purchasers of securities take physical delivery of
such securities in definitive form.  Such limits and such

laws may impair the ability to own, pledge or transfer
beneficial interests in a Global Security.

So long as the Depositary for a Global Security,
or its nominee, is the registered owner of such Global
Security, such Depositary or such nominee, as the case may
be, will be considered the sole owner or holder of the
Securities represented by such Global Security for all
purposes under this Agreement. Except as specified below or
with respect to the terms of Securities of a Series, owners
of beneficial interests in a Global Security will not be
entitled to have any of the individual Securities
represented by such Global Security registered in their
names, and will not receive or be entitled to receive
physical delivery of any such Securities in definitive form
and will not be considered the owners or holders thereof
under such Securities or this Agreement. Accordingly, each
Person owning a beneficial interest in a Global Security
must rely on the procedures of the Depositary for such
Global Security and, if such Person is not a Participant, on
the procedures of the Participant through which such Person
owns its interest, to exercise any rights of a holder under
the Securities or this Agreement. The Republic understands
that under existing industry practices, if the Republic
requests any action of holders, or an owner of a beneficial
interest in such Global Security desires to take any action
which a holder is entitled to take under the Fiscal Agency
Agreement, the Depositary for such Global Security would
authorize the Participants holding the relevant interests to
take such action, and such Participants would authorize
beneficial owners owning through such Participants to take
such action or would otherwise act upon the instructions of
beneficial owners holding through them.

Payments of principal of and any premium and any
interest on Securities registered in the name of a
Depositary or its nominee will be made to the Depositary or
its nominee, as the case may be, as the holder of the Global
Security representing such Securities. None of the
Republic, any Paying Agent or the Fiscal Agent, in its
capacity as registrar for such Debt Securities, will have
any responsibility or liability for any aspect of the
records relating to or payments made on account of
beneficial interests in a Global Security or for
maintaining, supervising or reviewing any records relating
to such beneficial interests.

The Republic expects that the Depositary for a
series of Securities or its nominee, upon receipt of any
payment of principal, premium or interest in respect of a
Global Security representing such Securities will credit

7

Participants' accounts with payments in amounts proportionate to their respective beneficial interests in the principal amount of such Global Security as shown on the records of such Depositary. The Republic also expects that payments by Participants to owners of beneficial interests in such Global Security held through such Participants will be governed by standing instructions and customary practices, as is now the case with securities held for the accounts of customers in bearer form or registered in "street name". Such payments will be the responsibility of such Participants.

If at any time the Depositary notifies the Republic that it is unwilling or unable to continue as Depositary for the Securities, or if the Republic notifies the Depositary that it will no longer continue as Depositary for the Securities, or if at any time the Depositary ceases to be a clearing agency registered under the United States Securities Exchange Act of 1934, as amended, or otherwise ceases to be eligible to be a Depositary, the Republic shall appoint a successor Depositary with respect to such Securities. If a successor Depositary for such Securities is not appointed by the Republic within 90 days after the Republic receives such notice or becomes aware of such ineligibility, or if the Depositary notifies the Fiscal Agent or the Republic of the acceleration of the indebtedness under the Securities in accordance with the terms of the Securities, the Republic will execute, and the Fiscal Agent upon receipt of such executed definitive Securities will authenticate and deliver, Securities in definitive registered form without coupons, in denominations of U.S.$1,000 and integral multiples thereof (unless some other denomination is specified in terms of the Securities of a Series), in an aggregate principal amount equal to the aggregate principal amount of the Global Securities.

The Republic may at any time and in its sole discretion determine not to have any of the Securities held in the form of Global Securities. In such event, the Republic will execute, and the Fiscal Agent, upon receipt of such executed definitive Securities will authenticate and deliver, Securities in definitive registered form without coupons, in denominations of U.S.$1,000 and integral multiples thereof (unless some other denomination is specified in terms of the Securities of a Series, in an aggregate principal amount equal to the aggregate principal amount of the Global Securities.

Upon the exchange of the Global Securities for Securities in definitive registered form the Global Securities shall be canceled by the Fiscal Agent.

securities in definitive registered form issued in exchange
for the Global Securities pursuant to this section shall be
registered in such names as the Depositary, pursuant to
instructions from its direct or indirect participants or
otherwise, shall instruct the Fiscal Agent or the Republic.
The Fiscal Agent shall deliver such Securities in definitive
registered form to or as directed by the persons in whose
names such definitive registered Securities are so
registered and will direct all payments to be made in
respect of such Securities in definitive registered form to
the registered holders thereof on or after such exchange
regardless of whether such exchange occurred after the
record date for such payment.

      All Securities in definitive registered form,
issued upon the exchange of the Global Securities, shall be
valid obligations of the Republic, evidencing the same debt,
and entitled to the same benefits under this Agreement, as
the Global Securities surrendered upon such exchange.

      6.   Payment.  (a)  The Republic will pay to the
Fiscal Agent, the amounts, at the times and for the purposes
set forth herein and in the text of the Securities of a
Series, not later than 1:00 p.m. New York City time to an
account to be specified by the Fiscal Agent, on the day on
which the same shall become due, all amounts to be paid on
the Securities of such Series as required by the terms of
the Securities, and the Republic hereby authorizes and
directs the Fiscal Agent, from the funds so paid to it, to
make payments in respect of the Securities in accordance
with their terms and the provisions set forth below.  If any
date for payment in respect of a Security is not a Business
Day, such payment shall be made on the next following
Business Day.  "Business Day" means a day on which banking
institutions in The City of New York and at the applicable
place of payment are not authorized or obligated by law or
executive order to be closed.  The Fiscal Agent shall
arrange directly with any Paying Agent who may have been
appointed pursuant to the provisions of Section 2 hereof for
the payment from funds so paid by the Republic of the
principal of (and premium, if any) and any interest on the
Securities of such Series as set forth herein and in the
text of said Securities.  Notwithstanding the foregoing,
where the terms of such Securities expressly so provide and
the Republic so notifies the Fiscal Agent the Republic may
provide directly a Paying Agent with funds for the payment
of the principal thereof and premium and interest, if any,
payable thereon under an agreement with respect to such
funds containing substantially the same terms and conditions
set forth in this Section; and the Fiscal Agent shall have

9

no responsibility with respect to any funds so provided by the Republic to any such Paying Agent.

(b)   All payments with respect to the Global Securities shall be made by the Fiscal Agent to the Depositary in accordance with the regular procedures established from time to time by the Depositary.

(c)   Payment of principal and premium, if any, in respect of Securities in definitive registered form issued pursuant hereto shall be made at the office of the Fiscal Agent in the Borough of Manhattan, The City of New York, or at the office of any Paying Agent appointed by the Republic for such purpose pursuant to this Agreement against surrender of such Securities.  Any interest on Securities of a Series shall be paid, unless otherwise provided in the text of the Securities of such Series, to the persons in whose names such Securities are registered on the register maintained for such purposes at the close of business on the record dates designated in the text of the Securities of such Series.  If so provided with respect to the Securities of a Series, payments of interest due prior to or on maturity may be made by forwarding by post or otherwise delivering a check to the registered addresses of registered holders of Securities, or, at the option of the Republic, otherwise transferring funds to the registered holders of the Securities.  Such check shall be made payable to the order of the registered holder or, in the case of joint registered holders, to the order of all such joint holders (failing instructions from them to the contrary) and shall be sent to the address of that one of such joint holders whose name stands first in the register as one of such joint holders.  The Fiscal Agent shall mail or otherwise deliver such checks to the names and addresses of registered holders of Securities sufficiently in advance of the relevant due date for payment that receipt of such checks by registered holders on or before the due date is reasonably assured.

(d)   All money paid to the Fiscal Agent under Section 6(a) of this Agreement shall be held by it in a separate account from the moment when such money is received until the time of actual payment, in trust for the registered holders of Securities to be applied by the Fiscal Agent to payments due on the Securities at the time and in the manner provided for in this Agreement and the Securities.  Any money deposited with the Fiscal Agent for the payment in respect of any Security remaining unclaimed for two years after such principal or interest shall have become due and payable shall be repaid to the Republic upon written request without interest, and the registered holder

10

of Security may thereafter look only to the Republic for any payment to which such holder may be entitled.

7. **Additional Amounts.** All payments of principal, premium, if any, and interest in respect of the Securities by the Republic will be made free and clear of, and without withholding or deduction for or on account of, any present or future taxes, duties, assessments or governmental charges of whatever nature imposed, levied, collected, withheld or assessed by or within the Republic or any authority therein or thereof having power to tax (together "Taxes"), unless such withholding or deduction is required by law. In such event, the Republic shall pay such additional amounts ("Additional Amounts") as will result in receipt by the holders of Securities of such amounts of principal, premium and interest as would have been received by them had no such withholding or deduction been required, except that no such Additional Amounts shall be payable with respect to any Security:

(a) to a holder (or to a third party on behalf of a holder) where such holder is liable for such Taxes in respect of any Security by reason of his having some connection with the Republic other than the mere holding of such Security or the receipt of principal, premium or interest in respect thereof; or

(b) presented for payment more than 30 days after the Relevant Date, as defined herein, except to the extent that the holder thereof would have been entitled to Additional Amounts on presenting the same for payment on the last day of such period of 30 days.

"Relevant Date" in respect of any Security means the date on which payment in respect thereof becomes due or (if the full amount of the money payable on such date has not been received by the Fiscal Agent on or prior to such due date) the date on which notice is duly given to the holders in the manner described in Section 21 below that such moneys have been so received and are available for payment. Any reference herein to "principal" and/or "interest" shall be deemed to include any Additional Amounts which may be payable under the Securities.

So long as any Security remains outstanding, the Republic covenants to maintain its membership in, and its eligibility to use the general resources of, the International Monetary Fund.

11

**8.   Mutilated, Destroyed, Stolen or Lost Certificates.**   (a)   In case any Security certificate is mutilated, defaced, destroyed, stolen or lost, application for replacement shall be made to the Fiscal Agent who shall promptly transmit such application to the Republic. Such application shall be accompanied by the mutilated or defaced certificate or receipt of proof, satisfactory to the Republic in its discretion, of the destruction, theft or loss of the certificate, and upon receipt by it of an indemnity satisfactory to the Republic and the Fiscal Agent, the Republic shall execute a new certificate of like tenor, and upon written instructions from the Republic the Fiscal Agent shall thereupon cancel the mutilated or defaced certificate if applicable and authenticate, register and deliver such new certificate in exchange for the mutilated or defaced certificate or in substitution for the destroyed, stolen or lost certificate. Such new certificate will be so dated that neither gain nor loss in interest will result from such exchange or substitution. All expenses associated with procuring such indemnity and with the preparation, authentication and delivery of a new certificate will be borne by the registered holder of the mutilated, defaced, destroyed, stolen or lost certificate.

(b)   Whenever any Security, alleged to have been lost, stolen or destroyed in replacement for which a new Security has been issued, is presented to the Fiscal Agent or any Paying Agent for payment at maturity or at redemption or for registration of transfer or exchange, the Fiscal Agent or the Paying Agent, as the case may be, shall immediately notify the Republic in respect thereof and shall deal with such Security in accordance with the Republic's instructions.

**9.   Redemption and Purchases.**   (a)   Unless otherwise permitted by the terms of the Securities of a Series, Securities will not be redeemable prior to maturity at the option of the Republic or the registered holders thereof.

(b)   The Republic hereby authorizes and directs the Fiscal Agent to administer the sinking fund with respect to the Securities of any Series having a mandatory sinking fund or similar provision in accordance with the provisions set forth in the terms of the Securities of such Series. If the provisions of the Securities of a Series permit the Republic to redeem Securities of such Series at its option, then the Republic shall, unless otherwise provided in the terms of the Securities of such Series, give written notice to the Fiscal Agent of the principal amount of Securities of such Series to be so redeemed not less than 60 days prior to

12

the optional redemption date. If the provisions of the Securities of a Series permit the Republic to redeem Securities of such Series only upon the occurrence or satisfaction of a condition or conditions precedent thereto, then prior to the giving of notice of redemption of the Securities of such Series, the Republic shall deliver to the Fiscal Agent a certificate stating that the Republic is entitled to effect such redemption and setting forth in reasonable detail a statement of facts showing that such condition or conditions precedent have occurred or been satisfied. If the provisions of the Securities of a Series obligate the Republic at the request of the holders to redeem Securities of such Series upon the occurrence of certain events (each hereinafter referred to as a "Redemption Event"), then the Republic shall promptly deliver written notice to the Fiscal Agent that a Redemption Event has occurred. Promptly after receiving written notice of a Redemption Event, the Fiscal Agent shall deliver written notice to each holder of the Securities of such Series stating that a Redemption Event has occurred and that such holder may tender its Securities by delivering written notice of its election to tender for redemption, together with the certificate or certificates for the Securities to be redeemed, to the Fiscal Agent within 60 days of the Fiscal Agent's notice (hereinafter referred to as the "Option Period"). Thereafter, the Republic shall (i) in the manner provided in the provisions of the Securities of such Series and as contemplated by Section 6 hereof, arrange with the Fiscal Agent (and each Paying Agent for the purpose, if applicable) for the provision of funds sufficient to make payments to such holders in respect of such redemptions, and (ii) redeem such Securities within 60 days of the expiration of the Option Period. The Fiscal Agent shall provide the Republic from time to time during and upon expiration of the Option Period with reasonable detailed information as to Securities tendered for redemption.

All notices of redemption of or Redemption Events relating to Securities of a Series to the holders thereof shall be made in the name and at the expense of the Republic and shall be given in accordance with the provisions applicable thereto set forth in the terms of the Securities of such Series.

Whenever less than all the Securities of a Series with the same interest rate and maturity at any time outstanding are to be redeemed at the option of the Republic, the particular Securities of such Series with such interest rate and maturity to be redeemed shall be selected not more than 60 days prior to the redemption date by the Fiscal Agent from the outstanding Securities of such Series

not previously called for redemption by such usual method as
the Fiscal Agent shall deem fair and appropriate, which
method may provide for the selection for redemption of
portions of the principal amount of registered Securities of
such Series the minimum denominations of which, if any, will
be specified in the terms of the Securities of such Series.
Upon any partial redemption of a registered Security of a
Series, the Fiscal Agent shall authenticate and deliver in
exchange therefor one or more registered Securities of such
Series, of any authorized denomination and like tenor as
requested by the holder thereof, in aggregate principal
amount equal to the unredeemed portion of the principal of
such Security.

(c)   The Republic may at any time purchase
Securities at any price in the open market or otherwise,
provided that in any such case such purchase or purchases
are in compliance with all relevant laws, regulations and
directives.   Securities so purchased by the Republic, may,
at the Republic's discretion, be held, resold or surrendered
to the Fiscal Agent for cancellation.   The Securities so
purchased, while held by or on behalf or for the benefit of
the Republic shall not entitle the registered holder thereof
to vote at any meetings of registered holders of Securities
and shall not be deemed to be outstanding for the purposes
of calculating quorums at meetings of the registered holders
of the Securities.   Notwithstanding the foregoing, the
Republic will not acquire any beneficial interest in any
Securities unless it gives prior written notice of each
acquisition to the Fiscal Agent.   The Fiscal Agent will be
entitled to rely without further investigation on any such
notification (or lack thereof).

(d)   If the Republic elects to cancel any
Securities when Securities have been issued in the form of a
Global Security, it may request the Fiscal Agent to instruct
the Depositary to reduce the outstanding aggregate principal
amount of the Global Securities in accordance with the
regular procedures of the Depositary in effect at such time.

10.   Cancellation and Destruction.   All Securities
which are paid at maturity or upon earlier repurchase, or
are mutilated, defaced or surrendered in exchange for other
certificates, shall be cancelled by the Fiscal Agent who
shall register such cancellation.   The Fiscal Agent shall,
as soon as practicable after the date of any such
cancellation, furnish the Republic with a certificate or
certificates stating the serial numbers and total number of
Securities that have been cancelled.   The Fiscal Agent shall
destroy all cancelled Securities in accordance with the
instructions of the Republic and shall furnish to the

14

Republic, on a timely basis, certificates of destruction stating the serial numbers, dollar value and total number of all securities destroyed hereunder.

11. **Negative Pledge and Covenants**.  So long as any Security remains outstanding, save for the exceptions set forth below, the Republic will not create or permit to subsist any lien, pledge, mortgage, security interest, deed of trust, charge or other encumbrance or preferential arrangement which has the practical effect of constituting a security interest ("Lien") upon the whole or any part of its assets or revenues to secure any Public External Indebtedness of the Republic unless, at the same time or prior thereto, the Republic's obligations under the Securities either (i) are secured equally and ratably therewith, or (ii) have the benefit of such other security, guarantee, indemnity or other arrangement as shall be approved by the holders of the Securities (as provided in Section 16).

Notwithstanding the foregoing, the Republic may permit to subsist:

(i)  any Lien upon property to secure Public External Indebtedness of the Republic incurred for the purpose of financing the acquisition of such property; any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(ii)  any Lien existing on such property at the time of its acquisition to secure Public External Indebtedness of the Republic and any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(iii)  any Lien created in connection with the transactions contemplated by the Republic of Argentina 1992 Financing Plan dated June 23, 1992 sent to the international banking community with the communication dated June 23, 1992 from the Minister of Economy and Public Works and Services of Argentina (the "1992 Financing Plan") and the implementing documentation therefor, including any Lien to secure obligations under the collateralized securities issued thereunder (the "Par and Discount Bonds") and any Lien securing indebtedness outstanding on the date hereof to the extent required to be equally and rateably secured with the Par and Discount Bonds;

15

(iv) any Lien in existence on the date of this Agreement;

(v) any Lien securing Public External Indebtedness of the Republic issued upon surrender or cancellation of any of the Par and Discount Bonds or the principal amount of any indebtedness outstanding as of June 23, 1992, in each case, to the extent such Lien is created to secure such Public Indebtedness on a basis comparable to the Par and Discount Bonds;

(vi) any Lien on any of the Par and Discount Bonds; and

(vii) any Lien securing Public External Indebtedness incurred for the purpose of financing all or part of the costs of the acquisition, construction or development of a project provided that (a) the holders of such Public External Indebtedness expressly agree to limit their recourse to the assets and revenues of such project as the principal source of repayment of such Public External Indebtedness and (b) the property over which such Lien is granted consists solely of such assets and revenues.

For purposes of this Agreement:

"External Indebtedness" means obligations (other than the Securities) for borrowed money or evidenced by securities, debentures, notes or other similar instruments denominated or payable, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic provided that no Domestic Foreign Currency Indebtedness, as defined below, shall constitute External Indebtedness.

"Public External Indebtedness" means, with respect to the Republic, any External Indebtedness of, or guaranteed by, the Republic which (i) is publicly offered or privately placed in securities markets, (ii) is in the form of, or represented by, securities, notes or other securities or any guarantees thereof and (iii) is, or was intended at the time of issue to be, quoted, listed or traded on any stock exchange, automated trading system or over-the-counter or other securities market (including, without prejudice to the generality of the foregoing, securities eligible for PORTAL or a similar market for the trading of securities eligible for sale pursuant to Rule 144A under the U.S. Securities Act of 1933 (or any successor law or regulation of similar effect)).

16

"Domestic Foreign Currency Indebtedness" means (i)
the following indebtedness:  (a) Bonos del Tesoro issued
under Decree No. 1527/91 and Decree No. 1730/91, (b) Bonos
de Consolidación issued under Law No. 23,982 and Decree No.
2140/91, (c) Bonos de Consolidación de Deudas Previsionales
issued under Law No. 23,982 and Decree No. 2140/91, (d)
Bonos de la Tesorería a 10 Años de Plazo issued under Decree
No. 211/92 and Decree No. 526/92, (e) Bonos de la Tesorería
a 5 Años Plazo issued under Decree No. 211/92 nd Decree No.
526/92, (f) Ferrobonos issued under Decree No. 52/92 and
Decree No. 526/92 and (g) Bonos de Consolidación de Regalías
Hidrocarburíferas a 16 Años de Plazo issued under Decree No
2284/92 and Decree No. 54/93; (ii) any indebtedness issued
in exchange, or as replacement, for the indebtedness
referred to in (i) above; and (iii) any other indebtedness
payable by its terms, or which at the option of the holder
thereof may be payable, in a currency other than the lawful
currency of the Republic of Argentina which is (a) offered
exclusively within the Republic of Argentina or (b) issued
in payment, exchange, substitution, discharge or replacement
of indebtedness payable in the lawful currency of the
Republic of Argentina; provided that in no event shall the
following indebtedness be deemed to constitute "Domestic
Foreign Currency Indebtedness":  (1) Bonos Externos de la
República Argentina issued under Law No. 19,686 enacted on
June 15, 1972 and (2) any indebtedness issued by the
Republic in exchange, or as replacement, for any
indebtedness referred to (1) above.

12.  Default; Acceleration of Maturity.  If any of
the following events ("Events of Default") with respect to
the Securities of any Series occurs and is continuing:

(a)  Non-Payment:  the Republic fails to pay any
principal of any of the Securities of such Series when due
and payable or fails to pay any interest on any of the
Securities of such Series when due and payable and such
failure continues for a period of 30 days; or

(b)  Breach of Other Obligations:  the Republic
does not perform or comply with any one or more of its other
obligations in the Securities of such Series or in this
Agreement, which default is incapable of remedy or is not
remedied within 90 days after written notice of such default
shall have been given to the Republic by the Fiscal Agent;
or

(c)  Cross Default:  any event or condition shall
occur which results in the acceleration of the maturity
(other than by optional or mandatory prepayment or
redemption) of the Securities of any other Series or of any

17

Public External Indebtedness of the Republic having an
aggregate principal amount of U.S. $30,000,000 or more, or
any default in the payment of principal of, or premium or
prepayment charge (if any) or interest on, the Securities of
any other Series or any such Public External Indebtedness
having an aggregate principal amount of U.S. $30,000,000 or
more, shall occur when and as the same shall become due and
payable, if such default shall continue for more than the
period of grace, if any, originally applicable thereto; or

(d)  Moratorium:  a moratorium on the payment of
principal of, or interest on, the Public External
Indebtedness of the Republic shall be declared by the
Republic or;

(e)  Validity:  the validity of the Securities of
such Series shall be contested by the Republic;

then the holders of not less than 25 percent in aggregate
principal amount of the Securities of such Series by notice
in writing to the Republic at the specified office of the
Fiscal Agent shall declare the principal amount of all the
Securities of such Series to be due and payable immediately,
and, in the case of (a) and (d) above, each holder of
Securities of such Series may by such notice in writing
declare the principal amount of Securities of such Series
held by it to be due and payable immediately, and upon any
such declaration the same shall become and shall be
immediately due and payable upon the date that such written
notice is received by the Republic unless prior to such date
all Events of Default in respect of all the Securities of
such Series shall have been cured; provided that in the case
of (b), (d) and (e) above, such event is materially
prejudicial to the interests of the holders of the
Securities of such Series, and provided further, that if, at
any time after the principal of the Securities of such
Series shall have been so declared due and payable, and
before any sale of property under any judgment or decree for
the payment of the monies due shall have been obtained or
entered as hereinafter provided, the Republic shall pay or
shall deposit with the Fiscal Agent a sum sufficient to pay
all matured amounts of interest and principal upon all the
Securities which shall have become due and otherwise than
solely by declaration (with interest on overdue amounts of
interest, to the extent permitted by law, and on such
principal of each of the Securities at the rate of interest
applicable thereto, to the date of such payment or deposit;
and the expenses of the Fiscal Agent, and reasonable
compensation to the Fiscal Agent, its agents, legal
advisers, and any and all defaults under the Securities of
such Series, other than the non-payment of principal on the

18

Securities of such Series which shall have become due solely
by declaration, shall have been remedied, then, and in every
such case, the holders of 75 percent in aggregate principal
amount of the Securities of such Series then outstanding,
after a meeting of holders of Securities held in accordance
with the procedures described in Section 16 below, by
written notice to the Republic at the specified office of
the Fiscal Agent, may on behalf of the holders of all of the
Securities of such Series waive all defaults and rescind and
annul such declaration and its consequences: but no such
waiver or rescission and annulment shall extend to or shall
affect any subsequent default, or shall impair any right
consequent thereon.

13. (a) Limit on Liability. In acting under
this Agreement the Fiscal Agent and any Paying Agent are
acting solely as agents of the Republic and do not assume
any obligation or relationship of agency or trust for or
with any of the holders of the Securities, except that all
funds held by the Fiscal Agent for payment of principal or
interest shall be held in trust, subject to the provisions
of Section 6.

(b) Acceptance of Appointment. The Fiscal Agent
and each Paying Agent accepts its obligations set forth in
or arising under this Agreement, the Paying Agency
Agreements and the Securities upon the terms and conditions
hereof and thereof, including the following, to all of which
the Republic agrees and to all of which the holders of the
Securities shall be subject:

(i) the Fiscal Agent may consult as to legal
matters with lawyers selected by it, who may be
employees of or regular independent counsel to the
Republic, and the Fiscal Agent shall be protected and
shall incur no liability for action taken, or suffered
to be taken, with respect to such matters in good faith
and in accordance with the opinion of such lawyers; and

(ii) the Fiscal Agent and each Paying Agent, and
their officers, directors and employees, may become the
holder of, or acquire any interest in, any Securities,
with the same rights that it or they would have if it
were not the Fiscal Agent or a Paying Agent hereunder,
or they were not such officers, directors, or
employers, and may engage or be interested in any
financial or other transaction with the Republic and
may act on, or as depository, trustee or agent for, any
committee or body of holders of Securities or other
obligations of the Republic as freely as if it were not

19

the Fiscal Agent or a Paying Agent hereunder or they
were not such officers, directors, or employees.

14. **Expenses and Indemnity**. (a) In connection
with the Fiscal Agent's appointment and duties as Fiscal
Agent, the Republic will pay the Fiscal Agent compensation
agreed upon by them. The Republic will indemnify the Fiscal
Agent and each Paying Agent against any loss or liability
and agrees to pay or reimburse the Fiscal Agent and each
Paying Agent for any reasonable expense, which loss,
liability or reasonable expense may be incurred by the
Fiscal Agent or any Paying Agent by reason of, or in
connection with, the Fiscal Agent's or any Paying Agent's
appointment and duties as such, except as such result from
the negligence, bad faith or wilful misconduct of the Fiscal
Agent or any Paying Agent or their respective directors,
officers, employees or agents. In addition, the Republic
shall pursuant to arrangements separately agreed upon by the
Republic and the Fiscal Agent, transfer to the Fiscal Agent,
upon presentation of substantiating documentation
satisfactory to the Republic, amounts sufficient to
reimburse the Fiscal Agent for certain out-of-pocket
expenses reasonably incurred by it and by any Paying Agent
in connection with their services. The obligation of the
Republic under this paragraph shall survive payment of the
Securities and resignation or removal of the Fiscal Agent.

(b) The Fiscal Agent and each Paying Agent agrees
to indemnify and hold harmless the Republic against all
direct claims, actions, demands, damages, costs, losses and
liabilities (excluding consequential and punitive damages)
arising out of or relating to the bad faith or wilful
misconduct of the Fiscal Agent or any Paying Agent or their
respective directors, officers, employees or agents.

15. **Successor Fiscal Agent**. (a) The Republic
agrees that there shall at all times be a Fiscal Agent
hereunder, and that the Fiscal Agent shall be a bank or
trust company organized and doing business under the laws of
the United States of America or of the State of New York, in
good standing and having a place of business in the Borough
of Manhattan, The City of New York, and authorized under
such laws to exercise corporate trust powers.

Any corporation or bank into which the Fiscal
Agent hereunder may be merged or converted, or any
corporation with which the Fiscal Agent may be consolidated,
or any corporation or bank resulting from any merger,
conversion or consolidation to which the Fiscal Agent shall
sell or otherwise transfer all or substantially all of the
corporate trust business of the Fiscal Agent, provided that

20

It shall be qualified as aforesaid, shall be the successor Fiscal Agent under this Agreement without the execution or filing of any paper or any further act on the part of any of the parties hereto, but subject to prior notice to and the prior approval of the Republic.

(b)   The Fiscal Agent may at any time resign by giving written notice to the Republic of its resignation, specifying the date on which its resignation shall become effective (which shall not be less than 120 days after the date on which such notice is given unless the Republic shall agree to a shorter period); provided that no such notice shall expire less than 30 days before or 30 days after the due date for any payment of principal or interest in respect of the Securities.  The Republic may remove the Fiscal Agent at any time by giving written notice to the Fiscal Agent specifying the date on which such removal shall become effective.  Such resignation or removal shall only take effect upon the appointment by the Republic of a successor Fiscal Agent and upon the acceptance of such appointment by such successor Fiscal Agent.  Any Paying Agent may resign or may be removed at any time upon like notice, and the Republic in any such case may appoint in substitution therefor a new Paying Agent or Paying Agents.

(c)   The appointment of the Fiscal Agent hereunder shall forthwith terminate, whether or not notice of such termination shall have been given, if at any time the Fiscal Agent becomes incapable of performing its duties hereunder, or is adjudged bankrupt or insolvent, or files a voluntary petition on bankruptcy or makes an assignment for the benefit of its creditors or consents to the appointment of a liquidator or receiver of all or any substantial part of its property or admits in writing its inability to pay or meet its debts as they mature or suspends payment thereof, or if a resolution is passed or an order made for the winding up or dissolution of the Fiscal Agent, or if a liquidator or receiver of the Fiscal Agent of all or any substantial part of its property is appointed, or if any order of any court is entered approving any petition filed by or against it under the provisions of any applicable bankruptcy or insolvency law or if any public officer takes charge or control of the Fiscal Agent or its property or affairs for the purposes of rehabilitation, conservation or liquidation.

(d)   Prior to the effective date of any such resignation or removal of the Fiscal Agent, or if the Fiscal Agent shall become unable to act as such or shall cease to be qualified as aforesaid, the Republic shall appoint a successor Fiscal Agent, qualified as aforesaid.  Upon the appointment of a successor Fiscal Agent and its acceptance

21

of such appointment, the retiring Fiscal Agent shall, at the
direction of the Republic and upon payment of its
compensation and expenses then unpaid, deliver and pay over
to its successor any and all securities, money and any other
properties then in its possession as Fiscal Agent and shall
thereupon cease to act hereunder.

Any successor Fiscal Agent appointed hereunder
shall execute, acknowledge and deliver to its predecessor
and to the Republic an instrument accepting such appointment
hereunder, and thereupon such successor without any further
act, deed or conveyance, shall become vested with all the
authority, rights, powers, trusts, immunities, duties and
obligations of such predecessor, with like effect as if
originally named Fiscal Agent hereunder.

(e) If the Fiscal Agent resigns or ceases to act
as the Republic's fiscal agent in respect of the Securities
pursuant to Section 15(c) of this Agreement, the Fiscal
Agent shall only be entitled to annual fees otherwise
payable to it under this Agreement on a pro rata basis for
that period since the most recent anniversary of this
Agreement during which the Fiscal Agent has acted as fiscal
agent hereunder. In the event that the Fiscal Agent ceases
to act as the Republic's fiscal agent in respect of the
Securities for any other reason, the Fiscal Agent shall be
entitled to receive the full amount of the annual fees
payable to it in respect of the Securities pursuant to
Section 14 of this Agreement.

16. Meetings of Holders of Securities;
Modifications. (a) A meeting of registered holders of
Securities of any Series may be called at any time and from
time to time to make, give or take any request, demand,
authorization, direction, notice, consent, waiver or other
action provided by this Agreement or the Securities of any
Series to be made, given or taken by registered holders of
Securities of any Series or to modify, amend or supplement
the terms of the Securities of any Series or this Agreement
as hereinafter provided. The Fiscal Agent may at any time
call a meeting of registered holders of Securities of any
Series for any such purpose to be held at such time and at
such place as the Fiscal Agent shall determine. Notice of
every meeting of registered holders of Securities of any
Series, setting forth the time and the place of such meeting
and in general terms the action proposed to be taken at such
meeting, shall be given as provided in the terms of the
Securities of any Series, not less than 30 nor more than 60
days prior to the date fixed for the meeting. In case at
any time the Republic or the registered holders of at least
10% in aggregate principal amount of the Outstanding

22

this Section) shall have requested the Fiscal Agent to call
a meeting of the registered holders of Securities of any
Series for any such purpose, by written request setting
forth in reasonable detail the action proposed to be taken
at the meeting, the Fiscal Agent shall call such meeting for
such purposes by giving notice thereof.

To be entitled to vote at any meeting of
registered holders of Securities of any Series, a person
shall be a registered holder of Outstanding Securities of
any Series or a person duly appointed by an instrument in
writing as proxy for such a holder.  Any person appointed by
an instrument in writing as proxy for a registered holder
need not be a registered holder of Outstanding Securities of
any Series.  At any meeting each registered holder shall be
entitled to one vote for each of those amounts held by such
holder which represent the lowest denomination in which
Securities of such Series as to which such holder is a
holder may be transferred.  The persons entitled to vote a
majority in principal amount of the Outstanding Securities
of any Series shall constitute a quorum.  At the reconvening
of any meeting adjourned for a lack of a quorum, the persons
entitled to vote 25% in principal amount of the Outstanding
Securities of any Series shall constitute a quorum for the
taking of any action set forth in the notice of the original
meeting.  The Fiscal Agent may make such reasonable and
customary regulations as it shall deem advisable for any
meeting of registered holders of Securities of any Series
with respect to the appointment of proxies in respect of
registered holders of Securities, the record date for
determining the registered holders of Securities who are
entitled to vote at such meeting (which date shall be set
forth in the notice calling such meeting hereinabove
referred to and which shall be not less than 30 nor more
than 90 days prior to such meeting, the adjournment and
chairmanship of such meeting) the appointment and duties of
inspectors of votes, the submission and examination of
proxies, certificates and other evidence of the right to
vote, and such other matters concerning the conduct of the
meeting as it shall deem appropriate.

(b)  (i)  At any meeting of registered holders of
Securities of a Series duly called and held as specified
above, upon the affirmative vote, in person or by proxy
thereunto duly authorized in writing, of the registered
holders of not less than 66 2/3% in aggregate principal
amount of the Securities of any Series then Outstanding (or
of such other percentage as may be set forth in the
Securities of any Series with respect to the action being
taken), or (ii) with the written consent of the owners of

23

not less than 66 2/3% in aggregate principal amount of the Securities of any Series then Outstanding (or of such other percentage as may be set forth in the text of the Securities of any Series with respect to the action being taken), the Republic and the Fiscal Agent may modify, amend or supplement the terms of the Securities of any Series or this Agreement, in any way, and the registered holders of Securities of any Series may make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Agreement or the Securities of any Series to be made, given, or taken by registered holders of Securities of any Series; provided, however, that no such action may, without the consent of the registered holder of each Security of such Series, (A) change the due date for the payment of the principal of (or premium, if any,) or any installment of interest on any Security of such Series, (B) reduce the principal amount of any Security of such Series, the portion of such principal amount which is payable upon acceleration of the maturity of such Security, the interest rate thereon or the premium payable upon redemption thereof, (C) change the coin or currency in which or the required places at which payment with respect to interest, premium or principal in respect of Securities of such Series is payable, (D) amend the definition of Redemption Event in the Securities of such Series or the procedures provided therefore, (E) shorten the period during which the Republic is not permitted to redeem the Securities of such Series if, prior to such action, the Republic is not permitted to do so, (F) reduce the proportion of the principal amount of Securities of such Series the vote or consent of the holders of which is necessary to modify, amend or supplement this Agreement or the terms and conditions of the Securities of such Series or to make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided hereby or thereby to be made, taken or given, or (G) change the obligation of the Republic to pay additional amounts.

The Fiscal Agent and the Republic may agree, without the consent of the registered holders of Securities of any Series, to (i) any modification of any provisions of the Fiscal Agency Agreement which is of a formal, minor or technical nature or is made to correct a manifest error and (ii) any other modification (except as mentioned in this Agreement), and any waiver or authorization of any breach or proposed breach, of any of the provisions of this Agreement which is in the opinion of the Fiscal Agent not materially prejudicial to the interests of the registered holders of Securities. Any such modification, authorization or waiver shall be binding on the registered holders of Securities of any Series and, if the Fiscal Agent so requires, such

24

Securities of any Series as soon as practicable.

It shall not be necessary for the vote or consent of the registered holders of the Securities of any Series to approve the particular form of any proposed modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action, but it shall be sufficient if such vote or consent shall approve the substance thereof.

(o) Any instrument given by or on behalf of any registered holder of a Security in connection with any consent to or vote for any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action will be irrevocable once given and will be conclusive and binding on all subsequent registered holders of such Security or any Security issued directly or indirectly in exchange or substitution therefor or in lieu thereof. Any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action with respect to the Securities of a Series will be conclusive and binding on all registered holders of Securities of such Series, whether or not they have given such consent or cast such vote, and whether or not notation of such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action is made upon the Securities of such Series. Notice of any modification or amendment or, supplement to, or request, demand, authorization, direction, notice, consent, waiver or other action with respect to the Securities of such Series or this Agreement (other than for purposes of curing any ambiguity or of curing, correcting or supplementing any defective provision hereof or thereof) shall be given to each registered holder of Securities of such Series, in all cases as provided in the Securities of such Series.

Securities of any Series authenticated and delivered after the effectiveness of any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action with respect to such Series may bear a notation in the form approved by the Fiscal Agent and the Republic as to any matter provided for in such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action. New Securities modified to conform, in the opinion of the Fiscal Agent and the Republic, to any such modification, amendment, supplement, request, demand, authorization, direction,

the Republic, authenticated by the Fiscal Agent (or any authenticating agent appointed pursuant to Section 3 hereof) and delivered in exchange for Outstanding Securities of any Series.

(d)  For purposes of the provisions of this Agreement and the Securities of any Series, any Security authenticated and delivered pursuant to this Agreement shall, as of any date of determination, be deemed to be "Outstanding", except:

(i)  Securities of any Series theretofore cancelled by the Fiscal Agent or delivered to the Fiscal Agent for cancellation or held by the Fiscal Agent for reissuance but not reissued by the Fiscal Agent; or

(ii)  Securities of any Series which have become due and payable at maturity or otherwise and with respect to which monies sufficient to pay the principal thereof, premium, if any, and any interest thereon shall have been made available to the Fiscal Agent;

provided, however, that in determining whether the registered holders of the requisite principal amount of Outstanding Securities of any Series are present at a meeting of registered holders of Securities for quorum purposes or have consented to or voted in favor of any request, demand, authorization, direction, notice, consent, waiver, amendment, modification or supplement hereunder, Securities of any Series owned directly or indirectly by the Republic shall be disregarded and deemed not to be Outstanding.

17.  **Further Issues**.  The Republic may from time to time, without notice to or the consent of the registered holders of the Securities of a Series, create and issue further securities ranking pari passu with the Securities of such Series in all respects (or in all respects except for the payment of interest accruing prior to the issue date of such further securities or except for the first payment of interest following the issue date of such further securities) and so that such further securities shall be consolidated and form a single series with the Securities of such Series and shall have the same terms as to status, redemption or otherwise as the Securities.

18.  **Reports**.  (a)  The Fiscal Agent shall furnish to the Republic such reports as may be required by the Republic relative to the Fiscal Agent's performance under

necessary, inspect books and records maintained by the
Fiscal Agent pursuant to this Agreement, if any.

(b) The Fiscal Agent shall (on behalf of the
Holders) submit such reports or information as may be
required from time to time in relation to the issue and
purchase of Securities by applicable law, regulations and
guidelines promulgated by the United States government.

(c) The Republic covenants to notify the Fiscal
Agent in writing immediately on becoming aware of any Event
of Default or any event or circumstance which could with the
giving of notice or lapse of time become an Event of Default
(a "Potential Event of Default").

(d) The Republic will send to the Fiscal Agent,
on or before December 31 in each year (beginning with
December 31, 1994), and within 14 days after any written
notice by the Fiscal Agent, a certificate of the Republic
signed by a duly authorized official of the Republic to the
effect that, having made all reasonable inquiries, to the
best knowledge of such duly authorized official, no Event of
Default or Potential Event of Default has occurred and is
continuing on the date of such certificate or, if an Event
of Default or a Potential Event of Default has occurred, the
circumstances surrounding it and the steps that the Republic
has taken or proposes to take to remedy it.

(e) The Republic will send to the Fiscal Agent as
soon as practicable after being so requested by the Fiscal
Agent a certificate of the Republic signed by a duly
authorized official of the Republic stating the aggregate
principal amount of the Securities held by or on behalf of
the Republic at the date of such certificate.

19. Forwarding of Notice; Inquiries. (a) If the
Fiscal Agent shall receive any notice or demand addressed to
the Republic pursuant to the provisions of the Securities,
the Fiscal Agent shall promptly forward such notice or
demand to the Republic.

(b) The Fiscal Agent shall respond promptly to
any inquiries received from any registered holder of
Securities regarding the matters covered by paragraphs (b),
(c) or (d) of Section 18 of this Agreement.

20. Listings. In the event that the terms of the
Securities of any Series provide for a listing on any stock
exchange, the Republic agrees to use all reasonable
endeavors to maintain the listing of the Securities on such

27

exchange, if, however, it is unable to do so, having used
such endeavors, or if the maintenance of such listing is
agreed by the Fiscal Agent to be unduly onerous and the
Fiscal Agent is satisfied that the interests of registered
holders of the Securities would not thereby be materially
prejudiced, it will instead use all reasonable endeavors to
obtain and maintain a listing of the Securities on such
other stock exchange or exchanges as it may decide.

21. **Notices.** (a) Any communications from the
Republic to the Fiscal Agent with respect to this Agreement
shall be addressed to Bankers Trust Company, 4 Albany
Street, New York, New York 10006, Fax No.: 212-250-6961 or
212-250-6392, Tel. No.: 212-250-6571 and any communications
from the Fiscal Agent to the Republic with respect to this
Agreement shall be addressed to the Subsecretaría de
Financiamiento, Hipolito Yrigoyen 250, Piso 10 - Oficina
1001, 1310 - Buenos Aires, Attention: Deuda Externa, Fax
No.: 011-54-1-349-6080, Tel. No.: 011-541-349-6242 (or such
other address as shall be specified in writing by the Fiscal
Agent or by the Republic, as the case may be) and shall be
delivered in person or sent by first class prepaid post or
by facsimile transmission subject, in the case of facsimile
transmission, to confirmation by telephone to the foregoing
addresses. Such notice shall take effect in the case of
delivery in person, at the time of delivery, in the case of
delivery by first class prepaid post seven (7) business days
after dispatch and in the case of delivery by facsimile
transmission, at the time of confirmation by telephone.

(b) All notices to the registered holders of
Securities of a Series will be published in such
publications at such locations as any of the Securities of
such Series are listed for the period of time of such
listing and as otherwise provided pursuant to the terms of
the Securities of such Series. If at any time publication
in any such publication is not practicable, notices will be
valid if published in an English language newspaper with
general circulation in the respective market regions as the
Republic with the approval of the Fiscal Agent, shall
determine. [In addition, notices will be published in
Spanish in a newspaper of general circulation in Argentina,
as the Republic shall determine.] Any such notice shall be
deemed to have been given on the date of such publication
or, if published more than once or on different dates, on
the first date on which publication is made. Written notice
will also be given to the Depositary, if at the time of such
notice any of the Securities is represented by a Global
Security.

28

**Consent to Service; Jurisdiction.** The Republic hereby appoints Banco de la Nación Argentina, at its office located at 299 Park Avenue, New York, New York 10171, and, if such person is not maintained by the Republic as its agent for such purpose, the Republic will appoint CT Corporation System to act as its agent for such purpose] as its authorized agent (the "Authorized Agent") upon whom process may be served in any action arising out of or based on the Securities or this Agreement by the holder of any Security which may be instituted in any state or federal court in The City of New York, and expressly accepts the jurisdiction of any such court in respect of such action. Such appointment shall be irrevocable until all amounts in respect of the principal of and any interest due and to become due on or in respect of all the Securities have been provided to the Fiscal Agent pursuant to the terms hereof, except that, if for any reason, such Authorized Agent ceases to be able to act as Authorized Agent or to have an address in the Borough of Manhattan, The City of New York, the Republic will appoint another person in the Borough of Manhattan, The City of New York, selected in its discretion, as such Authorized Agent. Prior to the date of issuance of any Securities hereunder, the Republic shall obtain the consent of Banco de la Nación Argentina to its appointment as such Authorized Agent, a copy of which acceptance it shall provide to the Fiscal Agent. The Republic shall take any and all action, including the filing of any and all documents and instruments, that may be necessary to continue such appointment or appointments in full force and effect as aforesaid. Upon receipt of such service of process, the Authorized Agent shall advise the Subministry of Finance promptly by telecopier at 011-54-1-349-6080. Service of process upon the Authorized Agent at the address indicated above, as such address may be changed within the Borough of Manhattan, The City of New York by notice given by the Authorized Agent to each party hereto, shall be deemed, in every respect, effective service of process upon the Republic. The Republic hereby irrevocably and unconditionally waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of venue of any aforesaid action arising out of or in connection with this Agreement brought in any such court has been brought in an inconvenient forum. Neither such appointment nor such acceptance of jurisdiction shall be interpreted to include actions brought under the United States federal securities laws. This appointment and acceptance of jurisdiction is intended to be effective upon execution of this agreement without any further act by the Republic before any such court and introduction of a true copy of this Agreement into evidence shall be conclusive and final evidence of such waiver.

29

holder of any security in any competent court in the
Republic of Argentina.

The Republic hereby irrevocably waives and agrees
not to plead any immunity from the jurisdiction of any such
court to which it might otherwise be entitled in any action
arising out of or based on the Securities or this Agreement
by the holder of any Security.

23. Governing Law and Counterparts. This
Agreement shall be governed by, and interpreted in
accordance with, the laws of the State of New York. This
Agreement may be executed in any number of counterparts,
each of which shall be deemed an original, but all of which
together shall constitute one and the same instrument.

24. Headings. The headings for the sections of
this Agreement are for convenience only and are not part of
this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Fiscal Agency Agreement as of the date first above written.

THE REPUBLIC OF ARGENTINA


By: /s/ Noemi LaGreca
    Name:  Noemi LaGreca
    Title: Financial
           Representative of
           Argentina in the
           United States

BANKERS TRUST COMPANY


By: /s/ Wanda Camacho
    Name:  Wanda Camacho
    Title: Assistant
           Secretary

31

EXHIBIT A

FORM OF REGISTERED SECURITY

[Form of Face
of Security]

[If the Security is a global Security, insert a legend
relating to limitations on the transferability of such
global Security in such form as may be required by the U.S.
Depositary.]

[INSERT ANY LEGEND(S) REQUIRED BY THE INTERNAL REVENUE CODE]

THE REPUBLIC OF ARGENTINA

[Title of Series of Securities]

No. R-_____                                   [Principal Amount]

Issue Price:

Original Issue Date:

Maturity Date:

Currency of Denomination:

Option to Receive Payments
in Specified Currency:              _____Yes  _____No

Authorized Denominations:

Form:                               ( ) Book-Entry
                                    ( ) Certificated

Initial Interest
Payment Date:

Interest Rate:

Interest Rate Reset:                ( ) The Interest Rate may not
                                        be changed prior to
                                        Maturity Date.

The Interest Rate may be
changed prior to Stated
Maturity (see attached).

Optional Reset Dates
(if applicable):

Interest Payment Dates:

Optional Extension of
Maturity Date:                      _____Yes  _____No

    Final Maturity:


Total Amount of OID:

Yield to Maturity:

Initial Accrual Period OID:

Optional Redemption:                _____Yes  _____No

    Optional Redemption Dates:

    If applicable as described above, the Redemption Price
    shall initially be        % of the principal amount of
    this Security to be redeemed and shall decline at each
    anniversary of the Initial Redemption Date by       % of
    the principal amount to be redeemed until the
    Redemption Price is 100% of such principal amount;
    provided, however, that if this Security is a Discount
    Note (as defined below), the Redemption Price shall be
    the Amortized Face Amount (as defined below) of this
    Note.

Optional Repayment:                 _____Yes  _____No

    Optional Repayment Dates:

    Optional Repayment Prices:

Conversion into or
Exchange for
Other Securities            ( )  This Security may not be
                                 converted into or
                                 exchanged for other
                                 securities.

                            ( )  This Security may be
                                 converted into or



2

[specify securities].

**Terms of Conversion
or Exchange
(if applicable):**

**Indexed Note:** _____ Yes (see attached) _____ No

**Exchange Rate Agent:**

**Other Terms:**                _____ Yes _____ No

A-3

THE REPUBLIC OF ARGENTINA (herein called the "Republic"), for value received, hereby promises to pay to

or registered assigns, the principal sum of _____ U.S. Dollars (U.S.$ _____ ) [other currency] on _____ (If the Security is to bear interest prior to maturity, insert--, and to pay interest thereon from _____ or from the most recent Interest Payment Date to which interest has been paid or duly provided for, [specify frequency] in arrears on [and _____ ] in each year, commencing _____ (each an "Interest Payment Date"), at the rate [of ___ % per annum] [to be determined in accordance with the provisions hereinafter set forth], until the principal hereof is paid or made available for payment. The interest so payable, and punctually paid or duly provided for, on any Interest Payment Date will, as provided in the Fiscal Agency Agreement hereinafter referred to, be paid to the person (the "registered Holder") in whose name this Security (or one or more predecessor Securities) is registered in the register of such Securities maintained pursuant to the Fiscal Agency Agreement at the close of business on the date (whether or not a business day) [, as the case may be] (each a "Regular Record Date") [,] [___ calendar days] next preceding such Interest Payment Date; provided, however, that the first payment of interest on any Security originally issued on a date between a Regular Record Date and an Interest Payment Date or on an Interest Payment Date will be made on the Interest Payment Date following the next succeeding Regular Record Date to the registered Holder on such next succeeding Regular Record Date. Any such interest not so punctually paid or duly provided for will forthwith cease to be payable to the registered Holder on such Regular Record Date and may either be paid to the person in whose name this Security (or one or more predecessor Securities) is registered at the close of business on a special record date for the payment of such interest to be fixed by the Republic, notice whereof shall be given to registered Holders of Securities of this Series not less than 10 days prior to such special record date, or be paid at any time in any other lawful manner [not inconsistent with the requirements of any securities exchange on which the Securities of this series may be listed, and upon such notice as may be required by such exchange.]

[Insert floating interest rate provisions, if applicable.]

[If the Security is not to bear interest prior to maturity, insert--(the "Stated Maturity"). The principal of

A-4

this security shall not bear interest except in the case of
a default in payment of principal upon acceleration, upon
redemption or at stated Maturity.]

Case 1:07-cv-01464-TPG Document 14 Filed 06/30/2008 Page 5 of 21

Principal of (and premium, if any, on) [and
interest payable at maturity or upon earlier redemption or
repayment in respect of] this Security shall be payable in
immediately available funds against surrender hereof at the
corporate trust office of the Fiscal Agent hereinafter
referred to and at the offices of such other Paying Agents
as the Republic shall have appointed pursuant to the Fiscal
Agency Agreement. Payments of principal of (and premium, if
any[, on]) [and interest on] this Security shall be made in
same-day funds in accordance with the foregoing and subject
to applicable laws and regulations, by [(if the Republic so
elects) transfer to an account denominated in U.S. dollars
which is maintained by the payee with [any] [a] bank
[located in _____]. If the Republic does not so
elect, payments of principal (and premium, if any) shall be
made against surrender of this Security [if applicable,
insert--, and payments of interest shall be made,] by]
forwarding by post or otherwise delivering a check [on or
before the due date for such payment] to the registered
address of the registered Holder of this Security. [If
applicable, insert payment provisions for Securities
denominated in a currency other than U.S. dollars]. This
Security is a direct obligation of the Republic and does not
have the benefit of any separate undertaking of other
government entities (including Banco Central). The Republic
covenants that until all amounts in respect of the principal
and interest due and to become due on or in respect of this
Security have been paid as provided herein or in the Fiscal
Agency Agreement, it will at all times maintain offices or
agencies in the Borough of Manhattan, The City of New York
for the payment of the principal of (and premium, if any[,
on]) [and interest on] the Securities as herein provided.

Reference is hereby made to the further provisions of
this Security set forth on the reverse hereof, which further
provisions shall for all purposes have the same effect as if
set forth at this place.

Unless the certificate of authentication hereon has
been executed by the Fiscal Agent by manual signature, this
Security shall not be valid or obligatory for any purpose.

IN WITNESS WHEREOF, the Republic has caused this instrument to be duly executed.

Dated:

THE REPUBLIC OF ARGENTINA

By_____
[Title]

Attest:

_____
[Title]

Date of Authentication:

This is one of the Securities of the series designated therein referred to in the within-mentioned Fiscal Agency Agreement.

BANKERS TRUST COMPANY,
as Fiscal Agent

By_____
Authorized Signatory

A-6

This Security is one of a duly authorized issue of securities of the Republic (herein called the "Securities") issued and to be issued in one or more series in accordance with a Fiscal Agency Agreement, dated as of _____ (herein called the "Fiscal Agency Agreement"), between the Republic and Bankers Trust Company, as Fiscal Agent (herein called the "Fiscal Agent"), which term includes any successor fiscal agent under the Fiscal Agency Agreement), copies of which Fiscal Agency Agreement are on file and available for inspection at the corporate trust office of the Fiscal Agent in the Borough of Manhattan, The City of New York.  This Security is one of the Securities of the Series designated on the face hereof[, limited in aggregate principal amount to U.S.$_____].  The Fiscal Agency Agreement may be amended from time to time in accordance with the terms thereof.

The Securities will constitute the direct, unconditional, unsecured and unsubordinated obligations of the Republic.  Each Series will rank *pari passu* with each other Series, without any preference one over the other by reason of priority of date of issue or currency of payment or otherwise, and at least equally with all other present and future unsecured and unsubordinated External Indebtedness (as defined in the Fiscal Agency Agreement) of the Republic.

The Securities of this Series are issuable only in fully registered form.  The Securities are issuable in [the] authorized denomination[s] of [currency/U.S.$_____  [and [any integral multiple thereof] [integral multiples of [currency/U.S.$_____  above that amount]].

Until all amounts in respect of the principal and interest due and to become due on or in respect of this Security have been paid, the Republic shall maintain in the Borough of Manhattan, The City of New York, an office or agency where Securities may be surrendered for registration of transfer or exchange.  The Republic has initially appointed the corporate trust office of the Fiscal Agent as its agent in the Borough of Manhattan, The City of New York, for such purpose and has agreed to cause to be kept at such office a register in which subject to such reasonable regulations as it may prescribe, the Republic will provide for the registration of Securities and of transfers of Securities.  The Republic reserves the right to vary or terminate the appointment of the Fiscal Agent as security

other registrars or transfer agents or to approve any change
in the office through which any security registrar or any
transfer agent acts, provided that there will at all times
be a security registrar in the Borough of Manhattan, The
City of New York.

Subject to the provisions on the face hereof
concerning transfer restrictions, the transfer of a Security
is registrable on the aforementioned register upon surrender
of such Security at the corporate trust office of the Fiscal
Agent duly endorsed by, or accompanied by a written
instrument of transfer in form attached hereto duly executed
by, the registered Holder thereof or his attorney duly
authorized in writing. Upon such surrender of this Security
for registration of transfer, the Republic shall execute,
and the Fiscal Agent shall authenticate and deliver, in the
name of the designated transferee or transferees, one or
more new Securities, dated the date of authentication
thereof, of any authorized denominations and of a like
aggregate principal amount.

Subject to the provisions on the face hereof
concerning transfer restrictions, at the option of the
registered Holder upon request confirmed in writing,
Securities may be exchanged for Securities of any authorized
denominations and of a like aggregate principal amount, upon
surrender of the Securities to be exchanged at the corporate
trust office of the Fiscal Agent. Any registration of
transfer or exchange will be effected upon the Fiscal Agent
being satisfied with the documents of title and identity of
the person making the request and subject to such reasonable
regulations as the Republic may from time to time agree with
the Fiscal Agent. Whenever any Securities are so
surrendered for exchange, the Republic shall execute, and
the Fiscal Agent shall authenticate and deliver, the
Securities which the registered Holder making the exchange
is entitled to receive. The new Security issued upon such
exchange shall be so dated that neither gain nor loss of
interest shall result from such exchange. [If the Security
is a permanent global Security, insert--Notwithstanding the
foregoing, the exchange of this Security is subject to
certain limitations set forth in the Fiscal Agency Agreement
and on the face hereof.]

[In the event of a redemption of the Securities of
this series in part, the Republic shall not be required (i)
to register the transfer of or exchange any Security during
a period beginning at the opening of business 15 days
before, and continuing until, the date notice is given
identifying the Securities to be redeemed, or (ii) to

~~register the transfer of or exchange any Security, or portion thereof, called for redemption.]~~

All Securities issued upon any registration of transfer or exchange of Securities shall be the valid obligation of the Republic evidencing the same indebtedness and entitled to the same benefits this Security has at the time of such registration of transfer or exchange.

No service charge shall be made for any registration of transfer or exchange, but the Republic may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith, other than an exchange in connection with a partial redemption of a Security not involving any registration of a transfer.

Prior to due presentment of this Security for registration of transfer, the Republic, the Fiscal Agent and any agent of the Republic or the Fiscal Agent may treat the person in whose name this Security is registered as the owner hereof for all purposes, whether or not this Security is overdue, and neither the Republic nor the Fiscal Agent nor any such agent shall be affected by notice to the contrary.

In any case where the due date or the payment of the principal of (and premium, if any[, on]) [or interest on] any Security[, or the date fixed for redemption of any Security,] shall be, at any place from which any check in respect thereof is to be mailed or where such Security is to be surrendered for payment [or, in the case of payments by transfer, where such transfer is to be made], a day on which banking institutions [If the Securities are denominated in U.S. dollars, insert--in The City of New York] [If the Securities are denominated in a currency other than U.S. Dollars, insert--in [name of financial center of the country in whose currency the securities are denominated] are authorized or obligated by law to close [If the Securities are denominated in a currency other than U.S. Dollars, insert--or a day on which banking institutions [name of non-U.S. financial center] are not carrying out transactions in [name of non-U.S. currency]], then such payment need not be made on such date at such place but may be made on the next succeeding day at such place which is not a day on which banking institutions are authorized or obligated by law to close, with the same force and effect as if made on the date for such payment payable in respect of any such delay.

A-9

its principal office in the Borough of Manhattan, The City of New York, prior to each date on which a payment on or in respect of the Securities of this series shall become due, monies in such amounts which (together with any amounts then held by the Fiscal Agent and available for the purpose) are sufficient to make such payment. Any monies provided by the Republic to the Fiscal Agent for the payment on or in respect of the Securities of this series and remaining unclaimed at the end of two years after such payment shall have become due shall then be returned to the Republic, and upon the return of such monies all liabilities of the Fiscal Agent with respect thereto shall cease, without, however, limiting in any way any obligation the Republic may have to pay the principal of (or premium, if any[, on)} [or interest on] this Security as the same shall become due.

So long as any Security remains outstanding, save for the exceptions set forth in the Fiscal Agency Agreement, the Republic will not create or permit to subsist, or permit Banco Central to create or permit to subsist, any lien, pledge, mortgage, security interest, deed of trust, charge or other encumbrance or preferential arrangement which has the practical effect of constituting a security interest ("Lien") upon the whole or any part of its assets or revenues to secure any Public External Indebtedness (as defined in the Fiscal Agency Agreement) of the Republic or Banco Central unless, at the same time or prior thereto, the Republic's obligations under the Securities either (i) are secured equally and ratably therewith, or (ii) have the benefit of such other security, guarantee, indemnity or other arrangement as shall be approved by not less than 66 2/3% of the registered holders of Securities of any Series then outstanding.

If an Event of Default (as defined in the Fiscal Agency Agreement) occurs and is continuing then the holders of not less than 25 percent in aggregate principal amount of the Securities of this Series, by notice in writing to the Republic at the specified office of the Fiscal Agent, shall declare the principal amount of all the Securities of this Series to be due and payable as set forth in the Fiscal Agency Agreement.

All payments of principal, premium, if any, and interest on this Security by the Republic will be made free and clear of, and without withholding or deduction for or on account of, any present or future taxes, duties, assessments or governmental charges of whatever nature imposed, levied collected, withheld or assessed by or within the Republic or any authority therein or thereof having power to tax

A-10

Case 1:05-xxxxxxxx-xxxxxxx    Document xxx    Filed 06/31/2006    Page 11 of 21

(together "Taxes"), unless such withholding or deduction is required by law. In such event, the Republic shall pay such Additional Amounts as will result in receipt by the holders of Securities of this Series of such amounts of principal, premium and interest which would have been received by them had no such withholding or deduction been required, save for the exceptions set forth in the Fiscal Agency Agreement.

So long as any Security remains outstanding, the Republic covenants to maintain its membership in, and its eligibility to use the general resources of, the International Monetary Fund.

[The Securities of this Series will not be subject to any sinking fund and will not be redeemable except as described below.]

[The Securities of this Series are subject to redemption upon not less than 30 days' notice given as hereinafter provided, (if applicable, insert--(1) on _____ in any year commencing with the year ____ and ending with the year ____ through operation of the sinking fund for this series at a redemption price equal to 100% of the principal amount, (2)] [at any time [on or after _____, 19__], as a whole or in part, at the election of the Republic, at the following redemption prices (expressed as percentages of the principal amount of the Securities to be redeemed): If redeemed [on or before _____, ___%, _____ of the years indicated,

| Year | Redemption Price | Year | Redemption Price |
|------|------------------|------|------------------|
|      |                  |      |                  |

and thereafter at a redemption price equal to ___% of the principal amount, and (3)] under the circumstances described in the next succeeding paragraph at a redemption price equal to 100% of the principal amount of the Securities to be redeemed, together in each case with accrued interest (except if the redemption date is an Interest Payment Date) to the redemption date, but interest installments on Securities that are due on or prior to such redemption date will be payable to the holders of such Securities of record at the close of business on the relevant Record Dates referred to above; provided, that if the redemption date occurs between a Record Date and an Interest Payment Date, the interest due and payable will be paid to the holders of

A-11

such Securities of record at the close of business on such
Case 1:07-cv-06857-TPG Document 1-10 Filed 06/30/2008 Page 1 of 21
Record Date. [Partial redemptions must be in amounts of not
less than U.S.$_____ principal amount of Securities.]

(As and for a sinking fund for the retirement of
the Securities of this Series, the Republic will, until all
Securities of this Series are paid or payment thereof
provided for, deposit with the Fiscal Agent, prior to
_____ in each year, commencing in ____ and ending in ____,
an amount in cash sufficient to redeem on such _____
[not less than U.S.$_____ and not more than]
U.S.$_____ principal amount of Securities of this Series
at the redemption price specified above for redemption
through operation of the sinking fund. [The minimum amount
of any sinking fund payment as specified in this Paragraph
is herein referred to as a "mandatory sinking fund payment",
and any payment in excess of such minimum amount is herein
referred to as an "optional sinking fund payment".] The
cash amount of any [mandatory] sinking fund payment is
subject to reduction as provided below. Each sinking fund
payment shall be applied to the redemption of Securities in
this Series on such _____ as herein provided. [The
right to redeem Securities of this Series through optional
sinking fund payments shall not be cumulative and to the
extent not availed of on any sinking fund redemption date
will terminate.]]

[Notwithstanding the foregoing, the Republic may
not, prior to _____, redeem any Securities of this Series
as [and optional sinking fund payment] contemplated by the
preceding paragraph as a part of, or in anticipation of, any
refunding operation by the application, directly or
indirectly, of monies borrowed having an interest cost to
the Republic (calculated in accordance with general accepted
financial practice) of less than __% per annum.]

[Securities of this Series acquired or redeemed by
the Republic otherwise than through [mandatory] sinking fund
payments may be credited against subsequent [mandatory]
sinking fund payments otherwise required to be made [in the
inverse order in which they become due].]

[The Republic (i) may deliver outstanding
Securities of this Series (other than any previously called
for redemption) and (ii) may apply as a credit Securities of
this series which have been redeemed otherwise than through
the application of [mandatory] sinking fund payments, in
each case in satisfaction of all or any part of any
[mandatory] sinking fund payment and the amount of such
[mandatory] sinking fund payment shall be reduced
accordingly.]

A-12

In the case of any partial redemption of Securities of this Series pursuant to the sinking fund or at the option of the Republic, the Securities to be redeemed shall be selected by the Fiscal Agent not more than 60 days prior to the redemption date from the outstanding Securities not previously called for redemption, by such method as the Fiscal Agent shall deem fair and appropriate and which may provide for the selection for redemption of portions (equal to U.S.$_____ or any integral multiple thereof) of the principal amount of Securities of a denomination larger than U.S.$_____.]

[This Security shall be redeemed, at the option of the registered Holder thereof, upon the occurrence, on or after _____, of a Redemption Event (as hereinafter defined), at the redemption price equal to 100% of the principal amount of this Security, together with interest accrued thereon to the date of redemption; provided, however, that the right of the registered Holder to present this Security [if the Security is a permanent global Security, insert--, or evidence of ownership of the Securities represented by this permanent global Security (as hereinafter provided),] for redemption shall, if the Republic gives a Notice of Redemption Event (as hereinafter defined), terminate upon expiration of the Option Period (as hereinafter defined) relating to such Redemption Event. In the event of the occurrence of more than one Redemption Event, each such Redemption Event shall be deemed to confer upon the registered Holder of this Security a separate right of redemption.]

[The Republic agrees that, if a Redemption Event occurs, it will promptly give written notice thereof to the Fiscal Agent (a "Notice of Redemption Event"). Promptly after receiving such Notice of Redemption Event, the Fiscal Agent shall give written notice to the registered Holder of this Security (a "Notice of Right to Tender") stating that a Redemption Event has occurred and including a form of notice (a "Redemption Notice") pursuant to which the registered Holder of this Security may elect to cause redemption. The Republic may, but shall not be obligated to, fix a record date for the purpose of determining the registered Holders of Securities of this series entitled to elect to cause redemption of any such Holder elects to cause redemption of this Security, deliver the Redemption Notice, together with the certificate or certificates representing the Securities to be redeemed [if the Security is a permanent global Security, insert--, or evidence of ownership of the Securities represented by this permanent global Security (as hereinafter provided),] to the Fiscal Agent within a period of 60 days (the "Option Period") of the date of the Notice

A-13

of Right to Tender, and (ii) the Republic shall select a date for redemption (the "Redemption Date"), which shall be within 60 days from the end of the Option Period, and, on the Redemption Date, shall redeem the Securities tendered for redemption within the Option Period. At least 10 days prior to the Redemption Date, the Republic shall [(i)] deliver notice of the Redemption Date in the manner provided for herein to each registered Holder who requested redemption[, or (ii) publish notice of the Redemption Date in the manner provided for herein, as the case may be].]

[If the Security is a permanent global Security, insert--It is understood that, notwithstanding the foregoing provisions relating to redemption at the option of a registered Holder and without otherwise limiting any right of any other registered Holder to act by agent or proxy, the Fiscal Agent may treat a person authorized, in a manner satisfactory to the Fiscal Agent, by the U.S. Depositary to take action in respect of a portion of this permanent global Security as the registered Holder of such portion of such Security and may make arrangements satisfactory to it, the Republic and the U.S. Depositary in connection with this partial redemption of this permanent global Security.]

[Insert description of those events, if any, which constitute Redemption Events.]

[If notice of redemption has been given in the manner set forth herein, the Securities so to be redeemed shall become due and payable on the redemption date specified in such notice and upon presentation and surrender of the Securities [if the Security is a permanent global Security, insert--, or evidence of ownership of the Securities represented by this permanent global Security satisfactory to the Fiscal Agent,] at the place or places specified in such notice, the Securities shall be paid and redeemed by the Republic at the places, in the manner and currency and at the redemption price herein specified together with accrued interest (unless the redemption date is an Interest Payment Date) to the redemption date. From and after the redemption date, if monies for the redemption of Securities called for redemption shall have been made available at the corporate trust office of the Fiscal Agent for redemption on the redemption date, the Securities called for redemption shall cease to bear interest, and the only right of the holder of such Securities shall be to receive payment of the redemption price together with accrued interest (unless the redemption date is an Interest Payment Date) to the redemption date as aforesaid. If monies for the redemption of the Securities are not made available for payment until after the redemption date, the Securities

A-14

called for redemption until the ..... such monies have been so made available.]

[Any Security which is to be redeemed only in part shall be surrendered with, if the Republic or the Fiscal Agent so requires, due endorsement by, or a written instrument of transfer in form satisfactory to the Republic and the Fiscal Agent duly executed by, the holder thereof or such holder's attorney duly authorized in writing, and the Republic shall execute, and the Fiscal Agent shall authenticate and deliver to the registered Holder of such Security without service charge, a new Security or Securities of this Series, of any authorized denomination as required by such Holder, in aggregate principal amount equal to and in exchange for the unredeemed portion of the principal of the Security so surrendered.]

A meeting of registered holders of Securities of this Series may be called at any time and from time to time to make, give or take any request, demand, authorization, direction, notice, consent, waiver or other action provided by the Fiscal Agency Agreement or the Securities of this Series to be made, given or taken by registered holders of Securities of this Series or to modify, amend or supplement the terms of the Securities of this Series or the Fiscal Agency Agreement as hereinafter provided. The Fiscal Agent may at any time call a meeting of registered holders of Securities of this Series for any such purpose to be held at such time and at such place as the Fiscal Agent shall determine. Notice of every meeting of registered holders of Securities of this Series, setting forth the time and the place of such meeting and in general terms the action proposed to be taken at such meeting, shall be given as provided in the terms of the Securities of this Series, not less than 30 nor more than 60 days prior to the date fixed for the meeting. In case at any time the Republic or the registered holders of at least 10% in aggregate principal amount of the Outstanding Securities of this Series (as defined in the Fiscal Agency Agreement) shall have requested the Fiscal Agent to call a meeting of the registered holders of Securities of this Series for any such purpose, by written request setting forth in reasonable detail the action proposed to be taken at the meeting, the Fiscal Agent shall call such meeting for such purposes by giving notice thereof.

At any meeting of registered holders of Securities duly called and held as specified above, upon the affirmative vote, in person or by proxy thereunto duly authorized in writing, of the registered holders of not less than 66-2/3% [or ___ %] in aggregate principal amount of the

A-15

Securities of this Series then Outstanding, or (ii) with the written consent of the registered holders of 66-2/3% [or ___ %] in aggregate principal amount of the Securities of this Series then Outstanding, the Republic [and the Fiscal Agent] may modify, amend or supplement the terms or provisions contained in the Securities of this Series, in any way, and the registered holders of Securities of this Series may make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided by the Fiscal Agency Agreement or the Securities of this Series to be made, given, or taken by registered holders of Securities of this Series; provided, however, that no such action may, without the consent of the registered holder of each Security, (A) change the due date for the payment of the principal of or any installment of interest on any Security, (B) reduce the principal amount of any Security, the portion of such principal amount which is payable upon acceleration of the maturity of such Security or the interest rate thereon, (C) change the coin or currency in which or the required places at which payment with respect to interest or principal in respect of the Securities of this Series is payable, (D) reduce the proportion of the principal amount of Securities of this Series the vote or consent of the holders of which is necessary to modify, amend or supplement this Agreement or the terms and conditions of the Securities of this Series or to make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided hereby or thereby to be made, taken or given, or (E) change the obligation of the Republic to pay additional amounts.

The Fiscal Agent and the Republic may agree, without the consent of the registered holders of Securities of this Series to (i) any modification of any provisions of the Fiscal agency Agreement which is of a formal, minor or technical nature or is made to correct a manifest error and (ii) any other modification (except as mentioned in the Fiscal Agency Agreement), and any waiver or authorization of any breach or proposed breach, of any of the provisions of the fiscal Agency Agreement which is in the opinion of the Fiscal Agent not materially prejudicial to the interests of the registered holders of Securities. Any such modification, authorization or waiver shall be binding on the registered holders of Securities of this Series and, if the Fiscal Agent so requires, such modification shall be notified to the registered holders of Securities of this Series as soon as practicable.

All notices to the registered holders of Securities will be published in such publications at such locations as any of the Securities are listed for the period

A-16

of time or such [illegible] and to the terms of the Securities of this Series if at any time publication in any such publication is not practicable, notices will be valid if published in an English language newspaper with general circulation in the respective market regions as the Republic with the approval of the Fiscal Agent, shall determine. In addition, notices will be published in Spanish in a newspaper of general circulation in Argentina, as the Republic shall determine. Any such notice shall be deemed to have been given on the date of such publication or, if published more than once or on different dates, on the first date on which publication is made.

No reference herein to the Fiscal Agency Agreement and no provision of this Security or of the Fiscal Agency Agreement shall alter or impair the obligation of the Republic to pay the principal of (and premium, if any[, on]) [and interest on] this Security at the times, place and rate, and in the coin or currency, herein prescribed.

Claims against the Republic for payment in respect of the Securities of this Series and interest payments thereon shall be prescribed and become void unless made within 10 years (in the case of principal) and 5 years (in the case of interest) from the appropriate Relevant Date in respect thereof.

This Security shall be governed by and construed in accordance with the laws of the State of New York, except with respect to authorization and execution by the Republic.

The Republic has in the Fiscal Agency Agreement irrevocably submitted to the jurisdiction of any New York state or federal court sitting in the Borough of Manhattan, The City of New York and the courts of the Republic of Argentina (the "Specified Courts") over any suit, action, or proceeding against it or its properties, assets or revenues with respect to the Securities of this Series or the Fiscal Agency Agreement (a "Related Proceeding"). The Republic has in the Fiscal Agency Agreement waived any objection to Related Proceedings in such courts whether on the grounds of venue, residence or domicile or on the ground that the Related Proceedings have been brought in an inconvenient forum. The Republic agrees that a final non-appealable judgment in any such Related Proceeding (the "Related Judgment") shall be conclusive and binding upon it and may be enforced in any Specified Court or in any other courts to the jurisdiction of which the Republic is or may be subject (the "Other Courts"), by a suit upon such judgment.

A-17

The Republic has, in the Fiscal Agency Agreement, agreed that (i) service of all writs, process and summonses in any Related Proceeding or any action or proceeding to enforce or execute any Related Judgment brought against it in the State of New York may be made upon Banco de la Nación Argentina, presently located at 299 Park Avenue, New York, New York 10171, and, if such person is not maintained by the Republic as its agent for such purpose, the Republic will appoint CT Corporation System to act as its agent for such purpose.

To the extent that the Republic or any of its revenues, assets or properties shall be entitled, in any jurisdiction in which any Specified Court is located, in which any Related Proceeding may at any time be brought against it or any of its revenues, assets or properties, or in any jurisdiction in which any Specified Court or Other Court is located in which any suit, action or proceeding may at any time be brought solely for the purpose of enforcing or executing any Related Judgment, to any immunity from suit, from the jurisdiction of any such court, from set-off, from attachment prior to judgment, form attachment in aid of execution of judgment, from execution of a judgment or from any other legal or judicial process or remedy, and to the extent that in any such jurisdiction there shall be attributed such an immunity, the Republic has irrevocably agreed not to claim and has irrevocably waived such immunity to the fullest extent permitted by the laws of such jurisdiction (and consents generally for the purposes of the Foreign Sovereign Immunities Act to the giving of any relief or the issue of any process in connection with any Related Proceeding or Related Judgment), provided that such waiver shall not be effective (i) with respect to the assets which constitute freely available reserves pursuant to Article 6 of the Convertibility Law (the "Convertibility Law"), the amount, composition and investment of which will be reflected on the balance sheet and accounting statement of Banco Central consistently prepared pursuant to Article 5 of the Convertibility Law and (ii) with respect to property of the public domain located in the territory of The Republic of Argentina or property owned by the Republic and located in its territory which is dedicated to the purpose of an essential public service, and provided further that such agreement and waiver, insofar as it relates to any jurisdiction other than a jurisdiction in which a Specified Court is located, is given solely for the purpose of enabling the Fiscal Agent or a holder of Securities of this Series to enforce or execute a Related Judgment. The waiver of immunities referred to herein constitutes only a limited and specific waiver for the purpose of the Securities of this Series and the Fiscal Agency Agreement and under no

circumstances shall it be interpreted as a guarantee or as unrelated to the Securities of this Series or the Fiscal Agency Agreement.

Unless the certificate of authentication hereon has been executed by the Fiscal Agent by manual signature, this Security shall not be entitled to any benefit under the Fiscal Agency Agreement or be valid or obligatory for any purpose.

A-19

PLEASE INSERT SOCIAL SECURITY OR OTHER
IDENTIFYING NUMBER OF ASSIGNEE

_____

Please print or typewrite name and address including postal

zip code of assignee

the within Security and all rights thereunder, hereby

irrevocably constituting and appointing to transfer such

Security on the books of the Trustee, with full power of

substitution in the premises.

Dated: _____        Signature: _____

                                 Notice:  the signature to
                                 this assignment must
                                 correspond with the name
                                 as written upon the face
                                 of the written instrument
                                 in every particular,
                                 without alteration or
                                 enlargement or any change
                                 whatever.

A-20

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing *Amended Complaint* to be served on May

30, 2003 by hand delivery on:

Jonathan I. Blackman, Esq.
Cleary, Gottlieb, Steen & Hamilton
One Liberty Plaza
New York, NY 10006-1470

Attorneys for Defendant Republic of Argentina

Joel A. Chernov

JAC1615.WPD;

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                              :
HWB VICTORIA STRATEGIES PORTFOLIO, et al.,      :
                                                              :        07 Civ. 10657 (TPG)
                              Plaintiffs,                     :
                                                              :
              -against-                                       :        **ANSWER**
                                                              :
THE REPUBLIC OF ARGENTINA,                        :
                                                              :
                              Defendant.                      :
                                                              :
------------------------------------------------------------------ X

Defendant the Republic of Argentina (the "Republic"), as and for its answer to the

Complaint, dated November 28, 2007 (the "Complaint"), respectfully states as follows:

1.      The Republic lacks knowledge or information sufficient to form a belief as

to the truth of the allegations of Paragraph 1 of the Complaint, except admits that it entered into a

Fiscal Agency Agreement dated October 19, 1994 (the "1994 FAA"), and refers to the 1994

FAA for its true and correct contents. The Republic admits that it issued bonds having ISINs

US040114GG96 and US040114GH79.

2.      The Republic lacks knowledge or information sufficient to form a belief as

to the truth of the allegations of Paragraph 2 of the Complaint, except admits that it entered into a

Fiscal Agency Agreement dated October 19, 1994 (the "1994 FAA"), and refers to the 1994

FAA for its true and correct contents. The Republic admits that it issued a bond having ISIN

US040114GH79.

3.      The Republic lacks knowledge or information sufficient to form a belief as

to the truth of the allegations of Paragraph 3 of the Complaint, except admits that it entered into

the 1994 FAA, and refers to the 1994 FAA for its true and correct contents. The Republic admits

that it issued bonds having ISINs US040114GG96 and US040114GH79.

4.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 4 of the Complaint, except admits that it entered into the 1994 FAA, and refers to the 1994 FAA for its true and correct contents. The Republic admits that it issued bonds having ISINs US040114GG96 and US040114GH79.

5.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5 of the Complaint, except admits that it entered into the 1994 FAA, and refers to the 1994 FAA for its true and correct contents.   The Republic admits that it issued bonds having ISINs US040114GG96 and US040114GH79.

6.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6 of the Complaint, except admits that it entered into the 1994 FAA, and refers to the 1994 FAA for its true and correct contents. The Republic admits that it issued bonds having ISINs US040114GG96 and US040114GH79.

7.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7 of the Complaint, except admits that it entered into the 1994 FAA, and refers to the 1994 FAA for its true and correct contents. The Republic admits that it issued bonds having ISINs US040114GG96 and US040114GH79.

8.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 8 of the Complaint, except admits that it entered into the 1994 FAA, and refers to the 1994 FAA for its true and correct contents. The Republic admits that it issued bonds having ISINs US040114GG96 and US040114GH79.

9.    Paragraph 9 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required.  The Republic otherwise admits that it is a foreign state as defined in 28 U.S.C. § 1603(a).

2

10.    Paragraph 10 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required.

11.    Paragraph 11 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required.

12.    In response to Paragraph 12 of the Complaint, the Republic repeats and realleges each and every response to Paragraphs 1-11 of the Complaint.

13.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 13 of the Complaint.

14.    Paragraph 14 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 14 of the Complaint for its true and correct contents.

15.    Paragraph 15 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 15 of the Complaint for its true and correct contents.

16.    Paragraph 16 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 16 of the Complaint for its true and correct contents. The Republic otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16 of the Complaint.

17.    The Republic denies the allegations contained in Paragraph 17 of the Complaint.

3

18.    Paragraph 18 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required. The Republic otherwise denies the allegations contained in Paragraph 18 of the Complaint.

19.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19 of the Complaint. Paragraph 19 of the Complaint otherwise purports to characterize the contents of written documents, which documents speak for themselves. The Republic denies such characterizations inconsistent with the contents of the referenced documents and refers to the documents cited in Paragraph 19 of the Complaint for their true and correct contents.

20.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 20 of the Complaint, except admits that since December 2001 it has not paid interest or principal on nonperforming debt.

21.    Paragraph 21 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required. The Republic otherwise denies the allegations contained in Paragraph 20 of the Complaint.

### First Affirmative Defense

22.    The Complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense[1]

23.    Plaintiffs' claims are barred by the act of state doctrine.

---

[1]    The Republic recognizes that the Court has addressed the Second and Fifth Affirmative Defenses listed herein. See Lightwater Corp. Ltd. v. Republic of Argentina, No. 02 Civ. 3804 (TPG), 2003 WL 1878420, at *5 (S.D.N.Y. Apr. 14, 2003). The Republic pleads these Affirmative Defenses here to preserve them for potential appellate review. In connection with the Sixth Affirmative Defense facts may exist in the present case that were not before the Court in the cases covered by the Lightwater and EM Ltd. v. Argentina, No. 03 Civ. 2508 (TPG), 2003 WL 22120745 (S.D.N.Y. Sept. 12, 2003) (amended Sept. 16, 2003) Orders.

4

### Third Affirmative Defense

24.    To the extent plaintiffs are not acting in good faith in commencing and

prosecuting this action, plaintiffs are barred from enforcing any rights they may otherwise have.

### Fourth Affirmative Defense

25.    Plaintiffs' claims are barred by the doctrine of unclean hands.

### Fifth Affirmative Defense

26.    Plaintiffs' claims are barred by the doctrine of abuse of rights.

### Sixth Affirmative Defense

27.    Plaintiffs' claims are barred by N.Y. Judiciary Law Section 489.

### Seventh Affirmative Defense

28.    Plaintiffs' interest claims, if any, arising before November 28, 2002 are

barred in part by the applicable statute of limitations/prescription period.

### Eighth Affirmative Defense

29.    Plaintiffs lack standing and/or capacity to sue, because they are not

holders of bonds within the meaning of the 1994 FAA.

WHEREFORE, the Republic respectfully requests that the Court enter an order:

(a)    dismissing plaintiffs' claims with prejudice;

(b)    awarding the Republic costs and disbursements, including reasonable

attorneys' fees; and

(c)     granting the Republic such other and further relief as the Court may deem

just and proper.

Dated: New York, NY
           January 28, 2008

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____
        Jonathan I. Blackman (jblackman@cgsh.com)
        Carmine D. Boccuzzi (cboccuzzi@cgsh.com)

One Liberty Plaza
New York, NY 10006
(212) 225-2000

Attorneys for the Republic of Argentina

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

HWB VICTORIA STRATEGIES PORTFOLIO, et.al.,

                  Plaintiffs,

             - against -

THE REPUBLIC OF ARGENTINA,

                  Defendant.

-------------------------------------------------------------------- X

        :
        :    07 Civ. 10657 (TPG)
        :
        :
        :    **DEFENDANT'S FIRST**
        :    **REQUEST FOR THE**
        :    **PRODUCTION OF**
        :    **DOCUMENTS**
        :

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, defendant

the Republic of Argentina ("Defendant") requests that the plaintiffs produce for inspection and

copying any and all copies of the documents requested herein on or before February 27, 2008 at

the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York

10006 (Attn.: Jonathan I. Blackman).

## DEFINITIONS

1.      Unless otherwise indicated, Defendant adopts and incorporates herein the

uniform definitions for discovery requests set forth in subparagraphs (c) and (d) of Rule 26.3 of

the Civil Rules of the United States District Court for the Southern District of New York and the

terms used herein are to be construed accordingly.

2.      "Document(s)" means and includes all writings in any form, notes,

memoranda, manuals, reports, records, correspondence, drawings, graphs, charts, photographs,

telephone records, data compilations of whatever nature (including those from which information

can be obtained or translated if necessary), tape recordings, electronic mail messages, and

electronic data (including any exchange of information between computers and all information stored in an electronic form or computer database).

3.    The "Complaint" means the Complaint in this action, dated November 28, 2007.

4.    "Plaintiff," "You" and "Your" mean each and every person and organization identified as a plaintiff in the Complaint, and includes any brokers, trustees, beneficiaries, advisors (including but not limited to investment or financial advisors), divisions, subsidiaries, parents, affiliates, present and former officers, directors, general and/or limited partners, agents, and employees of Plaintiff.

5.    The "Republic" means defendant the Republic of Argentina and the officials, employees, and agents representing the Republic, including but not limited to the Republic's public officials, investment bankers, agents (including fiscal agents and trustees), registrar, and legal counsel.

6.    The "Republic Bond" or "Republic Bonds" means any bond issued by the Republic, including any Republic Bond alleged in the Complaint to be held by Plaintiff.

## INSTRUCTIONS

1.    These Document Requests are continuing in nature.  In accordance with Rule 26(e) of the Federal Rules of Civil Procedure, You are required to file supplementary answers and produce additional Documents if You obtain further or different information and Defendant specifically reserve the right to seek supplementary answers and the additional supplementary production of Documents before trial.

2.    Unless otherwise indicated, the time period covered by these Document Requests is the earliest date on which Plaintiff purchased a Republic Bond to the present.  To the

2

extent any Document Request uses the phrase "at any time" or otherwise indicates that this time

period does not apply, the Request is not limited by this time period. In this instruction,

"present" means the date on which Documents are or should be produced, not the date of these

Requests.

      3.     Where a claim of privilege is asserted in objecting to any Document

Request, identify the nature of the privilege (including work product) that is being claimed and

the privilege rule being invoked, and for each Document withheld provide the following

information:

      (a)    the type of Document;

      (b)    the date of the Document;

      (c)    the author(s), addressee(s), and recipient(s) of the Document, and, where not apparent, the relationship of the author(s), addressee(s), and recipient(s) to one another;

      (d)    the number of pages;

      (e)    the identity of any enclosure(s) or attachment(s); and

      (f)    the subject matter of the Document.

      4.     The Documents responsive to these Requests are to be produced as they

were kept in the ordinary course of business and are to be labeled in such a way as to show

which files they came from.

## DOCUMENT REQUESTS

      1.     All confirmations and account statements concerning Your purchase or

acquisition of Republic Bonds. If You acquired Republic Bonds at any time prior to December

2001, all confirmations and account statements establishing proof of beneficial ownership as of

December 2001.

2.    All Documents, other than those produced in response to Document

Request No. 1, establishing Your continued ownership of Republic Bonds.

3.    All Documents concerning Your purpose in acquiring Your Republic

Bonds.

Dated: New York, NY
       January 28, 2008

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:    _____
       Jonathan I. Blackman (jblackman@cgsh.com)
       Carmine D. Boccuzzi (cboccuzzi@cgsh.com)

One Liberty Plaza
New York, NY 10006
(212) 225-2000

Attorneys for the Republic of Argentina


TO:    Joel A. Chernov, Esq.
       Dreier LLP
       499 Park Avenue
       New York, NY 10022

       Attorneys for Plaintiffs

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
                          :

HWB VICTORIA STRATEGIES PORTFOLIO, *et al.*,    :

                      Plaintiffs,    :

                              :   07 CV 10657 (TPG)

             -against-           :

                              :

THE REPUBLIC OF ARGENTINA,    :

                      Defendant.    :

                              :
-------------------------------------------------------------------- x

## PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS

        Pursuant to Rule 34 of the Federal Rules of Civil Procedure ("FRCP"), plaintiffs, by their attorneys, Dreier LLP, hereby submit the following responses and objections to Defendant's First Request for the Production of Documents (the "Requests").

### GENERAL OBJECTIONS

        1.    Plaintiffs object to the Requests on the ground that they were served in violation of Rules 26(d) and 34(b) of the FRCP.

        2.    Plaintiffs object to the Requests on the ground that they exceed and/or are inconsistent with the Court's ruling as to the types of documents plaintiffs are obligated to produce in order to demonstrate their ownership of the bonds upon which they bring their claims. *See* Transcript from hearing before the Court on September 28, 2005, at p. 31.

        3.    Plaintiffs object to the Requests on the ground that this Court already denied identical requests in related proceedings. *See, e.g., Mazzini v. The Republic of Argentina*, No. 03 Civ. 8120 (TPG), 2005 WL 743090, at **3-4 (S.D.N.Y. March 31, 2005) (the "*Mazzini* Decision"); *Lightwater Corp. Ltd. v. The Republic of Argentina*, No. 02 Civ. 3804, 02 Civ. 3808,

02 Civ. 5932 (TPG), 2003 WL 1878420, at *4 (S.D.N.Y. Apr. 14, 2003) (the "*Lightwater* Decision"); *Allan Applestein TTEE FBO D.C.A. Grantor Trust v. The Province of Buenos Aires*, No. 02 Civ. 1773 (TPG), 2003 WL 1990206, at *4 (S.D.N.Y. Apr. 29, 2003) (the "*Applestein* Decision"); *EM Ltd. v. The Republic of Argentina*, No. 03 Civ. 2507 (TPG), 2003 WL 22120745, at *2 (S.D.N.Y. Sept. 12, 2003) (the "*EM Ltd.* Decision"); *Etevob, et al. v. The Republic of Argentina, et al.*, 471 F. Supp.2d 431 (S.D.N.Y. 2007) (TPG) (the "*Etevob*" Decision) and *Franceschi, et al. v. The Republic of Argentina*, No. 03 Civ. 4693 (TPG), 2006 WL 2528460, at *1 (S.D.N.Y. Aug. 31, 2006) (the "*Franchesi* Decision"); Transcript from the hearing before the Court on March 5, 2004, at pp. 30-32.

4.       Plaintiffs object to the Requests to the extent that they seek information concerning defendant's affirmative defense of N.Y. Judiciary Law Section 489 (champerty), because this Court has already considered and denied this affirmative defense in previous related proceedings. *See Lightwater* Decision, at *4-5; *Mazzini* Decision, at *3-4.

5.       Plaintiffs object to the Requests on the grounds and to the extent that they exceed, are inconsistent with, or attempt to broaden the scope of discovery permitted by the FRCP and/or applicable case law.

6.       Plaintiffs object to the Requests, including each of the "Definitions" and "Instructions" and each individual request, on the grounds and to the extent that they seek to impose obligations different from or in addition to those imposed by, and/or exceed the scope of permissible discovery under, the FRCP.

7.       Plaintiffs object to each of the Requests on the grounds and to the extent that they call for the production of documents containing confidential or proprietary information, trade or business data or information, trade secrets, competitively sensitive information, other

non-public or proprietary information, or any other information the disclosure of which would be harmful to the business interests of Plaintiffs, or invasive of their privacy. To the extent Plaintiffs agree to produce documents in response to the Requests, Plaintiffs expressly reserve the right to seek protective relief from the Court, if necessary, to protect their legitimate interests.

8.    Plaintiffs object to the Requests to the extent that they seek information subject to any privilege, including without limitation, the attorney-client privilege, the work product doctrine and/or any other applicable privilege. In the event that Plaintiffs produce any document that is the subject of any privilege, claim of confidentiality, or other objection, such production is inadvertent and shall not constitute a waiver of any privilege, claim of confidentiality, or other objection, either generally or specifically, with respect to such material or the subject matter thereof.

9.    Plaintiffs object to the Requests to the extent that they seek information not within the possession, custody or control of Plaintiffs.

10.    These objections and responses are made without waiver of, or prejudice to, any further objections or rights of Plaintiffs. Plaintiffs reserve all objections to the relevance, materiality and admissibility of any information provided in these responses.

11.    Plaintiffs object to each of the Requests to the extent that they call for the production of data in electronic form or data contained in any form of electronic storage media, on the grounds of overbreath and undue burden.

12.    Plaintiffs object to the Requests to the extent that they are vague, overly broad, indefinite, confusing, burdensome, oppressive, compound, conjunctive, disjunctive, lack sufficient precision to formulate a response or are not reasonably calculated to lead to the discovery of admissible evidence.

13.    These General Objections apply to all of Plaintiffs' responses set forth herein.  To the extent that Specific Objections are made in a specific response, they are provided because they are believed to be particularly applicable to the specific request and should not be construed as a waiver of any General Objection.

14.    Plaintiffs reserve the right to amend or supplement these responses if and when they have the opportunity to obtain additional information.

## SPECIFIC OBJECTIONS AND RESPONSES

**Document Request No. 1:**

All confirmations and account statements concerning Your purchase or acquisition of Republic Bonds.  If You acquired Republic Bonds at any time prior to December 2001, all confirmations and account statements establishing proof of beneficial ownership as of December 2001.

**Response:**

Plaintiffs object to this Request on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**Document Request No. 2:**

All Documents, other than those produced in response to Document Request No. 1, establishing Your continued ownership of Republic Bonds.

**Response:**

Plaintiffs object to this Request on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**Document Request No. 3:**

All Documents concerning Your purpose in acquiring Your Republic Bonds.

4

**Response:**

Plaintiffs object to this Request on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Dated:  New York, New York
        February 4, 2008

                                    DREIER LLP

                                    By: _____
                                        Marc S. Dreier (MD-9713)
                                        Joel A. Chernov (JC-8789)
                                        Regina M. Alter (RA-7014)

                                    499 Park Avenue
                                    New York, New York 10022
                                    (212) 328-6100

                                    *Attorneys for Plaintiffs*



Not Reported in F.Supp.2d
**(Cite as: 2003 WL 1878420 (S.D.N.Y.))**

Page 1

**H**
Only the Westlaw citation is currently available.


United States District Court,
S.D. New York.

LIGHTWATER CORPORATION LIMITED,
Plaintiff,
v.
THE REPUBLIC OF ARGENTINA, Defendant.
OLD CASTLE HOLDINGS, LTD., Plaintiff,
v.
THE REPUBLIC OF ARGENTINA, Defendant.
MACROTECNIC INTERNATIONAL
CORPORATION, Plaintiff,
v.
THE REPUBLIC OF ARGENTINA, Defendant.

**No. 02 Civ. 3804(TPG), 02 Civ. 3808(TPG), 02
Civ. 5932(TPG).**

April 14, 2003.


**Background:** Owners of bonds issued by the
Republic of Argentina brought three separate
actions against the Republic, seeking to recover
amounts due as a result of the Republic's default on
bonds. Following removal of the one action
commenced in state court, owners moved for
summary judgment, and the Republic requested that
actions be stayed.

**Holdings:** The District Court, Griesa, J., held that:
(1) owners did not violate New York statute
prohibiting buying of bond with intent and purpose
of bringing action thereon;
(2) act of state doctrine did not apply to bar
recovery by bond owners;
(3) international law did not bar owners from suing
on bonds because the Republic was experiencing
severe economic crisis; and
(4) one-month stay of execution of judgments in
bond owners' behalf was warranted.
Motions granted; execution on judgments stayed.

**[1] Champerty and Maintenance** ☞4(.5)

74k4(.5) Most Cited Cases

Owners of bonds issued by Republic of Argentina
bought their bonds with the intention of collecting
on them, and thus did not violate New York statute
that prohibited buying of bond with primary intent
and purpose of bringing action thereon, even
though, when owners bought bonds, they clearly
had in mind that lawsuits could be necessary to
achieve collection. McKinney's Judiciary Law § 489

**[2] International Law** ☞10.14
221k10.14 Most Cited Cases

Failure of Republic of Argentina to make payments
on bonds that it issued which were held outside the
Republic was not act of the Republic dealing with
property located within its territory, for purposes of
act of state doctrine, which thus did not apply to bar
recovery by bond owners after the Republic
defaulted by halting payments on bonds.

**[3] International Law** ☞10.14
221k10.14 Most Cited Cases

Owners of bonds issued by Republic of Argentina
were not barred, under international law, from suing
on bonds because the Republic was experiencing
severe economic crisis.

**[4] Action** ☞68
13k68 Most Cited Cases

Republic of Argentina was not entitled to stay of
actions in which owners of bonds issued by the
Republic sought to recover amounts due on bonds
following the Republic's default, so as to permit the
Republic to arrive at restructuring of its overall
debt, given that debt restructuring situation was
uncertain as to possible success and timing.

**[5] Federal Civil Procedure** ☞2700
170Ak2700 Most Cited Cases

One-month stay of execution was warranted with

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2003 WL 1878420 (S.D.N.Y.))

respect to judgments granted in favor of bondholders on their claims for amounts owed following default on bonds by Republic of Argentina, given that two putative class actions brought on behalf of Argentine bondholders were before district court in which motions for class certification were pending, making it inappropriate to allow three individual bondholders to go forward with execution on their judgments until court was better informed as to what would occur as to other bondholders pursuing class claims.

*OPINION*

GRIESA, J.

*1 Plaintiffs in these three cases are owners of bonds issued by The Republic of Argentina. The Republic has defaulted on the bonds. Plaintiffs are suing to recover amounts due them by virtue of these defaults. They have moved for summary judgment, claiming that the Republic's obligations are unconditional and that there are no defenses.

The Republic opposes the motions, asserting various defenses. In addition, the Republic requests that these actions be stayed because the Republic is engaged in efforts to achieve a debt restructuring.

The motions of the three plaintiffs for summary judgment on their bond obligations are granted. The motion of the Republic for a stay of the proceedings is denied, except that the court stays execution of plaintiffs' judgments for a period of one month, until May 14, 2003.

*Facts*

Copies of the bonds themselves have not been submitted to the court. However, both sides rely on the prospectuses for the bonds as accurately stating their terms and conditions.

*The Lightwater and Old Castle Bonds*

*The Bond Issue*

The Lightwater and Old Castle bonds are part of $1,000,000,000 in 11.375% bonds, issued March 13, 2000 and due for principal payment on March 15, 2010, with interest to be paid on March 15 and September 15 of each year.

The Prospectus provides (p. 9) that failure to make any payment of principal or interest for 30 days after the applicable payment date constitutes an event of default. The Republic's declaration of a moratorium on the payment of principal or interest on its Public External Indebtedness is an event of default as well. Upon an event of default, a holder of the bonds may give notice declaring the principal amount immediately due and payable. The Prospectus further states (p. 11) that Argentina waives sovereign immunity and consents to jurisdiction in any state or federal court in the borough of Manhattan in the City of New York.

The Prospectus Supplement states (p. S-8) that the bonds are "direct, unconditional, unsecured and unsubordinated obligations of the Republic, backed by the full faith and credit of the Republic."

Lightwater bought $4,000,000 face value of the bonds on November 5, 2001 and $3,000,000 face value of the bonds on November 6, 2001. Old Castle bought $700,000 face value of the bonds on November 6, 2001.

Lightwater and Old Castle have not specified purchase prices or provided records of purchases. However, the Republic has provided trading prices--40.81 on November 5, 2001 and 41.88 on November 6, 2001.

*Macrotecnic*

Macrotecnic made purchases of two types of bonds, which will be referred to as the "2020 bonds" and the "2027 bonds."

*2020 Bonds*
$1,250,000,000 @ 12.00% interest.
Issue date: February 1, 2000
Due date: February 1, 2020
Interest payable February 1 and August 1

*2027 Bonds*
$2,250,000,000 @ 9.75% interest.
Issue date: September 12, 1997
Due date: September 19, 2027
*2 Interest payable March 19 and September 19

The Prospectus and Prospectus Supplement for the 2020 Bonds and the 2027 Bonds contain event of default, consent to suit, and jurisdictional waiver language identical to that which is applicable to the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2003 WL 1878420 (S.D.N.Y.))

Page 3

Lightwater and Old Castle bonds. They also contain the same language about the bonds being "direct, unconditional, unsecured and unsubordinated obligations."

*Purchases*

$252,000 of 2020 bonds on January 24, 2001 at a price of 96.00.
$23,000 of 2027 bonds on May 19, 1999 at a price of 84.50.
$120,000 of 2027 bonds on May 27, 1999 at a price of 82.00
$57,000 of 2027 bonds on October 20, 2000 at a price of 76.00.

*Defaults and Litigation*

The Republic failed to make the March 15, 2001 interest payments on the bonds held by Lightwater and Old Castle. On May 1, 2002 Lightwater and Old Castle gave notice of default and declared acceleration of principal. Both Lightwater and Old Castle filed lawsuits in federal court on May 17, 2002.

The Republic failed to make the February 1, 2002 interest payment on Macrotecnic's 2020 bonds, and failed to make the March 19, 2002 interest payment on the 2027 bonds. On May 3, 2002 Macrotecnic gave notice of default and declared acceleration of principal. Macrotecnic commenced suit against the Republic in Supreme Court, New York County, on June 18, 2002. The action was removed to federal court on July 26, 2002.

*The Argentine Economic Crisis*

The Republic of Argentina is experiencing the worst economic crisis in its history. The country's gross domestic product ("GDP") has contracted severely each year since 1999, and tax collections have dropped sharply.

During 2001 many businesses and individuals were making substantial withdrawals of capital from the banking system, with at least $20 billion being withdrawn. As a result, on December 1, 2001 the Republic imposed restrictions on depositors' access to bank accounts, freezing $60 billion in pesos and dollars and limiting withdrawals to $1,000 per month.

On December 24, 2001, the Republic declared a moratorium on payments of principal and interest on the external debt of the Republic. This moratorium is still in effect.

As of the end of the second quarter of 2003 the Republic's public debt (both internal and external) was $115 billion. The Republic has not repudiated the debt, but is unable to meet its obligations as they come due. National Decree 256/2002, issued February 9, 2002, declared that the debt of the Republic "must be rescheduled in order to guarantee the operation of the National State in accordance with available resources."

The Republic has been engaged in discussions with the International Monetary Fund ("IMF"), which is the Republic's single largest creditor, holding debt of approximately $14.3 billion. On part of the debt owed to it the IMF has agreed to a refinancing and certain extensions. The Republic has commenced to meet with representatives of bond holders from various countries in an effort to restructure its debt. But no restructuring has yet occurred, and as of now it is uncertain what the result of the effort will be.

*Discussion*

**\*3** As indicated above, Lightwater, Old Castle and Macrotecnic seek summary judgment on their claims under the bonds. The Republic opposes the motions, and moves for a stay of the proceedings. The Republic relies on considerations of international comity and urges that it should be given an opportunity to achieve an overall debt restructuring, which would be interfered with by piecemeal judgments in favor of individual bond holders.

The Second Circuit has dealt with similar circumstances and similar issues in *Pravin Banker Assoc. v. Banco Popular del Peru,* 109 F.3d 850 (2d Cir.1997). There the plaintiff had invested in the debt of a bank owned by the Republic of Peru. The Republic guaranteed the debt. During a national economic crisis, the bank stopped making interest payments. The plaintiff demanded payment of the principal and unpaid interest. Peru's central bank appointed a committee of liquidators for the bank. Negotiations were also undertaken to resolve the overall debt of Peru. The plaintiff refused to take part in the liquidation proceedings or the other debt negotiations, and brought suit in the Southern District of New York against the bank and the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2003 WL 1878420 (S.D.N.Y.))

Republic. The plaintiff moved for summary judgment.

The defendants opposed the motion and cross-moved to dismiss or stay the action, arguing that international comity should be extended to Peru so that it could resolve the debt problems of the bank and the Republic. The district court granted a six-month stay to allow the completion of the bank's liquidation proceedings. Apparently there was no resolution, and, after the six-month stay expired, the plaintiff renewed the motion for summary judgment. The district court granted an additional two-month stay to obtain more information about the course of events in Peru. At the conclusion of the second stay, the plaintiff again renewed the motion for summary judgment, which was granted by the district court. The defendants moved to stay the judgment, and this motion was denied. The defendants appealed.

The Court of Appeals, agreeing with the reasoning and the actions of the district court, stated that extending comity to Peru's debt negotiations was only appropriate if it was consistent with United States government policy. The Court recognized two United States policies as being implicated by the lawsuit. The first policy was that the United States encourages participation in foreign debt resolution procedures. Second, the United States has a strong interest in ensuring the enforceability of debts under contract law, and in particular, the continuing enforceability of foreign debts owed to United States lenders. The Court stated that the second interest limits the first, and went on to say that creditor participation in foreign debt negotiations "should be on a strictly voluntary basis." *Id.* at 855. The Court of Appeals expressed approval of the limited stays granted by the district court, but agreed with the district court that an indefinite stay to allow Peru to renegotiate its foreign debt "would prejudice United States interests." *Id.* at 855. The Court further reasoned that, if the plaintiff's rights were made conditional upon the debt restructuring process (which had no obvious termination date), this would have converted voluntary negotiations into "a judicially-enforced bankruptcy proceeding, for it would, in effect, have prohibited the exercise of legal rights outside of the negotiations." *Id.* at 855. The Court of Appeals thus ruled that the district court was correct in granting summary judgment to the plaintiff and denying a further stay.

*4 Having made these strong pronouncements, and having affirmed the actions of the district court, the Court of Appeals went on to say that an argument "might be made" that a stay of the proceedings or a stay of the execution of judgment would have been justified to "allow the completion of Peru's negotiations with its creditors without unduly threatening the ultimate enforceability of the debt." *Id.* at 855-56. How to reconcile this with the Court's earlier statements is not at all clear. In any event, the Court recognized that a decision on whether or not to grant a stay was to be reviewed for abuse of discretion, and ruled that the district court did not abuse it discretion in denying the stay. *Id.* at 856.

As will be shown by what is set forth below, the court in the present case has decided that it should move forward with the granting of summary judgment to the three plaintiffs on the bond obligations owing to them. The court believes that this is an appropriate means of giving effect to what *Pravin* declared to be the strong interest of the United States in having debt obligations enforced. The court declines to grant a stay of the proceedings in order to allow the completion of debt restructuring negotiations, since there is no assurance about the success or the timing of such negotiations. However, the court will grant a stay of execution of the judgments for a period of one month, for reasons which will be described.

*Summary Judgment*

The obligations of the Republic on the bonds involved in these lawsuits is unconditional. Sovereign immunity has been waived. The Republic defaulted on the bonds when it ceased to pay the interest. This would seem to mean that the Republic now owes the three plaintiffs principal and accrued interest. Aside from requesting a stay on the basis of comity, the Republic asserts three defenses to the summary judgment motion, which will now be discussed.

*N.Y. Judiciary Law § 489*

[1] The Republic contends that Lightwater and Old Castle violated Section 489 of the New York Judiciary Law, which prohibits buying a bond "with the intent and for the purpose of bringing an action or proceeding thereon." The Republic argues that there are factual issues in this regard which require discovery and possible trial, and cannot be dealt

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2003 WL 1878420 (S.D.N.Y.))

with by summary judgment.

The court disagrees. In *Elliott Assoc. v. Banco de la Nacion,* 194 F.3d 363 (2d Cir.1999), the Second Circuit provided an exhaustive discussion of how § 489 had been interpreted by the New York courts. The Circuit concluded that § 489 applies only where the primary purpose of the bond purchase is to enable the purchaser to commence a suit, to the exclusion of any other purpose. An example often used in New York cases is that of an attorney who purchases a bond with the intent of suing on it and obtaining costs. *Id.* at 373-75. But where a bond is purchased with the intent to collect on that bond, the statute is not violated even though there is also an intention to collect by a lawsuit if necessary. *Id.* at 379.

*5 The circumstances of the bond purchases by Lightwater and Old Castle demonstrate conclusively that these plaintiffs bought their bonds with the intention of collecting on them, even though they clearly had in mind that lawsuits might be necessary. There was no violation of § 489, as interpreted by the New York courts and *Elliott.* The court does not believe that discovery and trial could develop any set of facts which would contradict these conclusions.

*The Act of State Defense*

[2] The Republic asserts that all three plaintiffs are barred from recovery, because the Republic's actions in halting payments on the bonds constituted "acts of state" which this court must defer to. However, the Republic basically concedes that its argument runs contrary to the decision in *Allied Bank Int'l v. Banco Credito Agricola,* 757 F.2d 516 (2d Cir.1985). Recognizing that act of state doctrine applies only to actions of a nation within its territory, *Allied Bank* held that bond obligations have their situs where the bond holders are located. An act of a nation in failing to make payments on bonds held in other countries does not constitute an act of state dealing with property located within the nation. Thus, according to Second Circuit law, the act of state doctrine is not a defense to plaintiffs' claims in this case. The Republic concedes that it is only posing this defense with a view to possible review by the United States Supreme Court.

*Abuse of Rights*

[3] The Republic asserts that there is a principle of international law which would bar plaintiffs from suing on their bonds at a time when the issuer, The Republic of Argentina, is having a severe economic crisis. The court finds no merit in this argument as applied in the present case. No extended discussion is necessary.

*The Application For A Stay*

[4] In addition to presenting the above arguments in opposition to plaintiffs' summary judgment motion, the Republic urges that the lawsuits should be stayed in order to allow the Republic to arrive at a restructuring of its overall debt. At the oral argument, the Republic suggested a stay of six months. The court declines at present to grant a stay to the Republic for this purpose. The debt restructuring situation is uncertain as to possible success and timing.

[5] However, the court grants a stay of a more limited nature. Although the court is granting plaintiffs' motions for summary judgment, the court believes that execution of these judgments should be stayed. The court has before it two class actions brought on behalf of Argentine bond holders. Motions are now pending for class certification. These motions are returnable on April 25. The court believes that it is not appropriate to have the three individual plaintiffs go forward with execution on their judgments until the court is better informed as to what will occur regarding other bond holders who may be pursuing their claims in class actions.

The court directs that execution on plaintiffs' judgments in this action is stayed until May 14, 2003.

*Conclusion*

*6 Plaintiffs' motions for summary judgment are granted. Judgment will be entered for the principal amounts of their bonds plus accrued interest. The motion of the Republic for a stay of proceedings is denied, except that execution on plaintiffs' judgments is stayed until May 14, 2003. The court's ruling on the Republic's motion for a stay is without prejudice to a further application, if events provide a reasonable basis for such application.

SO ORDERED.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
**(Cite as: 2003 WL 1878420 (S.D.N.Y.))**

2003 WL 1878420 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



Not Reported in F.Supp.2d
(Cite as: 2003 WL 22120745 (S.D.N.Y.))

Page 1

▷
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

EM LTD., Plaintiff,
v.
THE REPUBLIC OF ARGENTINA, Defendant.

No. 03 Civ.2507 TPG.

Sept. 12, 2003.
As Corrected Sept. 16, 2003.

Owner of foreign bonds sued republic that defaulted on them after they were issued, seeking to recover amounts due by virtue of default. Upon owner's motion for summary judgment and republic's motion for stay of proceedings to permit it to proceed on efforts to achieve debt restructuring, the District Court, Griesa, J., held that: (1) bond owner sufficiently alleged its unconditional legal right to collect on bonds; (2) bond owner was entitled to payment in United States dollars pursuant to terms of bond certificates; (3) bond owner's purchase of bonds with intention of collecting on them did not violate New York Judiciary Law; and (4) though republic was not entitled to stay of summary judgment in favor of bond owner, execution of judgment would be delayed for one month.

Plaintiff's motion granted, subject to one month stay of execution; defendant's motion denied.

See also 2003 WL 1878420.

[1] International Law ⇐10.30

221k10.30 Most Cited Cases

Bond owner sufficiently alleged its unconditional legal right to collect on foreign bonds issued by

republic that defaulted by declaring moratorium and failing to make interest payments; owner, as holder of at least 25% interest in aggregate principal amount of securities in bond series, was entitled by notice to declare principal amount due immediately, owner notified republic's fiscal agent, and republic did not provide evidence sufficient to raise doubt as to validity of owner's claim.

[2] International Law ⇐10.30
221k10.30 Most Cited Cases

Acceleration provision in certificates governing bonds issued by republic to bond owner, which provided that upon republic's default the owner could declare principal amount of all securities in series to be due and payable as set forth in fiscal agency agreement, did not exclude owner's right to payment in United States dollars, even though face value of series was stated in Argentine peso; certificates explicitly provided payment could be in dollars at rate of one dollar for one peso, certificates's election clause allowed owner to elect to receive payment in United States dollars by giving written notice to republic's fiscal agent, and owner gave republic's fiscal agent notice of its dollar election.

[3] Champerty and Maintenance ⇐4(.5)
74k4(.5) Most Cited Cases

Bond owner's purchase of foreign bonds from republic with intention of collecting on them, even though owner clearly had in mind that lawsuit might be necessary to collect on bonds, did not violate state law prohibiting purchase of bond with intent and for purpose of bringing an action or proceeding on bonds. McKinney's Judiciary Law, § 489.

[4] Action ⇐68
13k68 Most Cited Cases

Foreign republic was not entitled to stay of summary judgment motion, entered in favor of owner of republic's bonds granting owner right to recover on bonds following republic's default, under doctrine of comity; republic was entitled, however, to stayed execution of judgment for one month to

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2003 WL 22120745 (S.D.N.Y.))

Page 2

permit republic to proceed on its efforts to achieve debt restructuring.

*OPINION*

GRIESA, J.

**\*1** Plaintiff EM Ltd. ("EML") is the owner of bonds issued by the Republic of Argentina. The Republic has defaulted on the bonds. EML is suing to recover amounts due to it by virtue of the default. It has moved for summary judgment, claiming that the Republic's obligation is unconditional and that there are no defenses.

The Republic opposes the motion, asserting various defenses. In addition, the Republic requests that this action be stayed because the Republic is engaged in efforts to achieve a debt restructuring.

The motion of EML for summary judgment on its bond obligations is granted. The motion of the Republic for a stay of the proceedings is denied, except that the court stays execution of EML's judgment temporarily, as will be described.

*Facts*

*The Bond Issue*

This case involves a series of Argentine pesos (AR$) bonds, issued by the Republic of Argentina, called the "10 % New AR$ Global Bond" due September 19, 2008. The Series is numbered ISIN # XS0130278467. The Series was issued on June 19, 2001 and is due for principal payment on September 19, 2008. Interest payments on the bonds are paid bi-annually on March 19 and September 19 of each year.

EML owns bonds with a value of AR$ 595,396,345.

The Series was issued by the Republic of Argentina through its fiscal agent, Deutsche Bank AG, London. EML's claim, and defendants do not deny, that the Series is governed by the terms of (i) an October 19, 1994 Fiscal Agency Agreement ("FAA") between the Republic of Argentina and Bankers Trust Company (to which Deutsche Bank AG is the successor), (ii) an amendment to the FAA dated April 21, 1998, and (iii) two certificates setting forth the terms and conditions of the Series.

The FAA provides that failure to make any payment of principal or interest for 30 days after the applicable payment date constitutes an event of default. A declaration of a moratorium on the payment of principal or interest on its public external indebtedness is an event of default as well. Upon an event of default, a holder of not less than 25 % of the aggregate principal in the Series is entitled to declare the entire Series in default. Such bondholder may give notice declaring the principal amount immediately due and payable.

Section 22 of the FAA states that the Republic of Argentina waives sovereign immunity and consents to jurisdiction in any state or federal court in the borough of Manhattan in the City of New York.

The certificates state that the bonds in the Series are "direct, unconditional, unsecured and unsubordinated obligations of the Republic."

The documents governing the Series contain terms regarding event of default, consent to suit, and jurisdictional waiver that are essentially identical to those pertaining to the bonds about which this court entered summary judgement in favor of the plaintiff's on May 14, 2003. *Lightwater Corporation Ltd. v. The Republic of Argentina,* Nos. 02 Civ. 3804(TPG), 02 Civ. 3808(TPG), 02 Civ. 5832(TPG), 2003 WL 1878420. They also contain essentially identical language about the bonds being "direct, unconditional, unsecured and unsubordinated obligations."

*Default and Litigation*

**\*2** As discussed more extensively in the court's *Lightwater* opinion, 2003 WL 1878420 at \*2, the Republic of Argentina is experiencing the worst economic crisis in its history. The country's gross domestic product has contracted severely each year since 1999, and tax collections have dropped sharply.

During 2001 many businesses and individuals were making substantial withdrawals of capital from the banking system, with at least $20 billion being withdrawn. As a result, on December 1, 2001 the Republic imposed restrictions on depositors' access to bank accounts, freezing $60 billion in pesos and dollars and limiting withdrawals to $1,000 per month.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2003 WL 22120745 (S.D.N.Y.))

Page 3

On December 24, 2001, the Republic declared a moratorium on payments of principal and interest on the external debt of the Republic. This moratorium is still in effect.

The Republic failed to make the March 19, 2002 interest payments on the bonds held by EML. On April 11, 2002, UBS Warburg, acting on behalf of EML, provided Deutsche Bank with notice of default and declared acceleration of principal.

EML filed this lawsuit on April 10, 2003. EML claims that it is owed about $ 700 million in principal and interest. Moreover, EML seeks payment in U.S. dollars, at the rate of one U.S. dollar to one Argentine peso, claiming that such election is provided for under the terms and conditions of the bonds.

### Discussion

In the *Lightwater, Old Castle,* and *Macrotecnic,* cases this court has already granted summary judgment to the plaintiff bondholders seeking to collect on Argentine bonds which went into default as a result of the December 24, 2001 moratorium. This court found that:

> The obligations of the Republic on the bonds involved in these lawsuits are unconditional. Sovereign immunity has been waived. The Republic defaulted on the bonds when it ceased to pay the interest. This would seem to mean that the Republic now owes the three plaintiffs principal and accrued interest.

2003 WL 1878420 at *4.

[1] The court finds nothing in the record to distinguish this case as to EML's unconditional legal right to collect on the bonds. EML provided affidavits and statements of account to show that it is the beneficial owner of the bonds. Argentina has defaulted on the bonds by declaring a moratorium and failing to make interest payments. As the holder of not less than 25 % in aggregate principal amount of the securities of the Series, EML was entitled, by notice, to declare the principal amount owed to it due and payable immediately under the terms and conditions of the certificates and the FAA. EML has so notified Argentina's fiscal agent. The Republic has not provided evidence sufficient to raise doubt as to the validity of EML's claim.

### U.S. Dollar Election

[2] The Republic claims that the acceleration provision in the certificate excludes the bondholder's election of payment of accelerated principal in U.S. dollars at the rate of one U.S. dollar for one Argentine peso. The Republic relies on the certificates, which provide:

> *3 If an Event of Default (as defined in the Fiscal Agency Agreement) occurs and is continuing then the holders of not less than 25 % in aggregate principal amount of the Securities of this Series, by notice in writing to the Republic at the specified office of the Fiscal Agent, shall declare the principal amount (that is, the par value) of all the Securities of this Series to be due and payable as set forth in the Fiscal Agency Agreement.

The Republic argues that, because the par or face value of the Series is stated in Argentine peso, that is AR$, the acceleration provision excludes payment in U.S. dollars.

The court finds the Republic's argument to be without merit. The certificates provide for an election as defined by the following language:

> with respect to any payment, the Holder of this Security elects to receive such payment in U.S. dollars by giving notice to the Fiscal Agent in writing not later than the close of business on the fifth business day prior to the applicable Interest Payment Date, the Maturity Date *or other date of payment, as the case may be ...* [emphasis added].

The date of payment of accelerated principal plus interest constitutes such "other date of payment," and notice of dollar election was given by EML in its notice of acceleration. Moreover, the certificates explicitly provide that such payment can be in U.S. dollars at the rate of one U.S. dollar for one Argentine peso:

> The holder may elect to receive payments of principal and interest in U.S. dollars, in which case payment be made in U.S. dollars at the ratio of one U.S. dollar to one Argentine peso regardless of changes in foreign exchange rates.

Language in the acceleration provision that refers to "par value" therefore does not, in the opinion of the court, limit the accelerated payment to its par value in Argentine pesos. EML is thus entitled to the par value of its bonds at an exchange rate of one U.S. dollar to one Argentine peso.

The above reasoning applies not only to the accelerated principal but to the defaulted interest payment due March 19, 2002.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2003 WL 22120745 (S.D.N.Y.))

Page 4

*N.Y. Judiciary Law § 489*

[3] The Republic contends that EML violated Section 489 of the New York Judiciary Law, which prohibits buying a bond "with the intent and for the purpose of bringing an action or proceeding thereon." The Republic argues that there are factual issues in this regard which require discovery and possible trial, and cannot be dealt with by summary judgment.

Relying on the Second Circuit's decision in *Elliott Assoc. v. Banco de la Nacion,* 194 F.3d 363 (2d Cir.1999), the court has already addressed this issue in *Lightwater,* 2003 WL 1878420 at *4-5, and concluded as follows. Where a bond is purchased with the intent to collect on that bond, the statute is not violated even though there is also an intention to collect by a lawsuit if necessary.

The circumstances of the bonds purchase by EML demonstrate conclusively that EML bought its bonds with the intention of collecting on them, even though they clearly had in mind that a lawsuit might be necessary. There was, therefore, no violation of § 489. The court does not believe that discovery and trial could develop any set of facts which would contradict these conclusions.

*The Application for a Stay*

*4 [4] The Republic asks the court to stay the proceedings under the doctrine of comity. The court, however, has addressed the basic issues regarding a stay in *Lightwater,* 2003 WL 1878420 at *5-6, and in that decision made an analysis of the controlling Second Circuit case, *Pravin Banker Assoc. v. Banco Popular del Peru,* 109 F.3d 850 (2d Cir.1997). As a result of that analysis the court declined, in *Lightwater* and the accompanying cases, to stay the motions for summary judgment, and granted the motions. The court, however, stayed execution of judgment for one month. In those cases two further limited stays were granted, the last of which expires midnight September 16, 2003.

Despite the argument of the Republic to the contrary, the court rules that the EML case should be dealt with no differently from the other cases, at least as to the granting of summary judgment.

Therefore application to stay the summary

judgment motion is denied.

*Conclusion*

EML's motion for summary judgment is granted. Judgment will be entered for the par value of the bonds payable in U.S. dollars, plus accrued interest, at the rate of one U.S. dollar for one Argentine peso. The motion of the Republic for a stay of proceedings is denied, except that execution on EML's judgment is stayed until midnight September 16, 2003. A hearing will be held on September 15, 2003, regarding whether additional stays should be granted in this and other cases.

SO ORDERED.

2003 WL 22120745 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

Date of Printing: MAY 17,2004

**KEYCITE**

▷EM Ltd. v. Argentina, 2003 WL 22120745 (S.D.N.Y., Sep 12, 2003) (NO. 03 CIV.2507 TPG)
**History**
**Direct History**

=>    1  EM Ltd. v. Argentina, 2003 WL 22120745 (S.D.N.Y. Sep 12, 2003) (NO. 03 CIV.2507 TPG)
*Order Amended by*
**H**    2  EM Ltd. v. Republic of Argentina, 2003 WL 22454934 (S.D.N.Y. Oct 27, 2003) (NO. 03 CIV. 2507 (TPG))

© Copyright 2004 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

**Westlaw.**

Not Reported in F.Supp.2d
**(Cite as: 2003 WL 22454934 (S.D.N.Y.))**

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

EM LTD., Plaintiff,
v.
THE REPUBLIC OF ARGENTINA, Defendant.

**No. 03 Civ. 2507(TPG).**

Oct. 27, 2003.

*AMENDED FINAL JUDGMENT*

GRIESA, J.

*1 Plaintiff EM Ltd., having moved for summary judgment, and the matter having come before the Honorable Thomas P. Griesa, United States District Court, and the Court having rendered its Opinion and Order dated September 12, 2003 granting plaintiff's motion for summary judgment and directing that judgment be entered for the par value of the 10.000% New AR$ Global Bond due September 19, 2008, ISIN # XS0130278467 held by plaintiff EM Ltd. (the "Bond"), plus accrued interest, payable in U.S. dollars at the rate of one U.S. dollar for one Argentine peso,

Now, it is

ORDERED, ADJUDGED and DECREED: That plaintiff EM Ltd. recover from defendant The Republic of Argentina the sum of (a) $595,396,345 (representing the unpaid par value of the principal on the Bond payable in U.S. dollars at the rate of one U.S. dollar for one Argentine peso), plus (b) prejudgment interest thereon at the rate of 10% per annum from September 19, 2001 until the date of this Amended Final Judgment totaling $125,114,793.73 (said prejudgment interest totaling $119,079,269 through September 19, 2003, and increasing by $163,122.29 for each of thirty seven

days thereafter until the date of this Judgment), plus (c) prejudgment interest at the rate of 9% per annum on the defaulted $29,769,917.25 interest payment that came due on March 19, 2002 totaling $4,290,523.83 (said prejudgment interest totaling $4,018,925.33 through September 19, 2003, and increasing by $7,340.50 for each of thirty seven days thereafter until the date of this Amended Final Judgment).

Plaintiff EM Ltd. shall recover from the defendant, The Republic of Argentina, the total sum of $724,801,662.56.

It is further ORDERED, until further notice from the Court, that plaintiff EM Ltd. must refrain from selling or otherwise transferring the bond involved in this action, without advising the Court in advance and obtaining permission of the Court.

Execution on the judgment is stayed until October 31, 2003.

2003 WL 22454934 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

Slip Copy

2005 WL 743090 (S.D.N.Y.)

(Cite as: 2005 WL 743090 (S.D.N.Y.))

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Jorge Marcelo **MAZZINI**, et al., Plaintiffs,
v.
THE REPUBLIC OF ARGENTINA, Defendant.
No. 03 Civ. 8120TPG.

March 31, 2005.

*OPINION*

GRIESA, J.

INTRODUCTION

**\*1** Plaintiffs in this case are owners of certain
bonds issued by defendant The Republic of
Argentina. The Republic defaulted on its bonds in
December of 2001 during a profound fiscal crisis.
Plaintiffs are suing to recover amounts due to them
by virtue of the default and have moved for
summary judgment. The Republic opposes the
motion asserting various defenses. Plaintiffs also
have moved to strike certain discovery requests
made by the Republic.

Plaintiffs' motion for summary judgment on the
bond obligations is granted in part and denied in
part. Plaintiffs' motion to strike certain discovery
requests is granted.

FACTS
*The Bonds and the Default*

Plaintiffs acquired certain bonds issued by the
Republic. The bonds are governed by agreements
that set forth the rights and obligations of the debtor
and the creditor, including provisions governing

terms of repayment, events of default, acceleration
of defaulted loans, waivers of immunity, and forum
selection. Some of the bonds at issue are governed
by a Fiscal Agency Agreement between the
Republic of Argentina and Bankers Trust Company,
dated October 19, 1994 (the "1994 FAA"). Others
of the bonds at issue are governed by a Fiscal
Agency Agreement between the Republic of
Argentina and Bankers Trust Company, dated
December 10, 1993 (the "1993 FAA"). Finally,
some of the bonds at issue are so-called
Brady-Bonds, which are governed by a document
entitled Floating Rate Bond Exchange Agreement,
Dated as of December 6, 1992, Implementing Part I
of the Republic of Argentina 1992 Financing Plan,
Citibank, N .A., as Closing Agent (the "FRB"
Agreement).

On December 24, 2001, the Republic declared a
moratorium on payments of principal and interest
on the external debt of the Republic. Plaintiffs
brought this lawsuit for recovery of unpaid interest
and claiming the right to accelerate payment of
principal.

*The 1994 Fiscal Agency Agreement*

The 1994 FAA is the same agreement that
governed the bonds on which this court granted
summary judgment to the plaintiffs in *Lightwater
Corporation Ltd. v. The Republic of Argentina,* 02
Civ. 3804(TPG), 2003 WL 1878420 (S.D.N.Y.
April 14, 2003). Section 22 of the 1994 FAA states
that the Republic waives sovereign immunity and
consents to jurisdiction in any state or federal court
in the Borough of Manhattan in the City of New
York. The 1994 FAA provides that failure to make
any payment of principal or interest for 30 days
after the applicable payment date constitutes an
event of default. A declaration by the Republic of a
moratorium on the payment of principal or interest
on its public external indebtedness is also an event
of default. Upon an event of default, a bondholder

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 743090 (S.D.N.Y.)

**(Cite as: 2005 WL 743090 (S.D.N.Y.))**

Page 2

is entitled to give notice declaring the principal amount of the bonds held by it immediately due and payable.

*The 1993 Fiscal Agency Agreement*

The 1993 FAA is a similar agreement to the 1994 FAA. Section 20 of the 1993 FAA states that the Republic waives sovereign immunity and consents to jurisdiction in any state or federal court in the City of New York. Section 4 provides that the bonds "will be substantially in the form attached hereto as Exhibit 1." Exhibit 1 to the 1993 FAA provides that failure to make any payment of principal or interest for 30 days after the applicable payment date constitutes an event of default. A declaration by the Republic of a moratorium on the payment of principal or interest on its public external indebtedness is also an event of default. Upon an event of default of the type described above, a bondholder is entitled to give notice declaring the principal amount of the bonds held by it immediately due and payable.

*The Floating Rate Bond Exchange Agreement*

**\*2** Section 6.07(a) of the FRB states that the Republic consents to jurisdiction in any state or federal court sitting in New York City. Section 6.07(d) of the FRB includes an irrevocable waiver by the Republic of its sovereign immunity. Section 9 of Exhibit 1A to the FRB, the Form of the Bearer Floating Rate Bond, and Section 9 of Exhibit 1B to the FRB, the Form of the Registered Floating Rate Bond, provide that failure to pay interest within 30 days after the applicable due date constitutes an event of default. A declaration by the Republic of a moratorium on the payment of principal or interest on its public external indebtedness also constitutes an event of default. Upon a continuing event of default, holders of 25% or more in aggregate outstanding principal amount of the bonds may declare the unpaid principal immediately due by written demand.

*The Specific Bonds at Issue*

The bonds that are the subject of this action are

listed below. Where adequate information has been provided by plaintiffs, the tables list each bond's beneficial owner(s), face value, CUSIP No. and/or ISIN No. and/or BB No., date of issuance, date of maturity, interest rate and interest payment schedule, date of purchase, notice of acceleration, contract documents and proof of ownership. The information contained in the following tables is drawn from Plaintiffs' Declarations and from the Supplemental Declarations of Plaintiffs in Further Support of Motion for Summary Judgment.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 743090 (S.D.N.Y.)

**(Cite as: 2005 WL 743090 (S.D.N.Y.))**

Page 3


                             Table 1.
--------------------------------------------------------------------------

--------------------------------------------------------------------------
Plaintiff Bond Holder or      Ezequiel Hernan Baclini and Patricia Ruth
Beneficial Owner:             Caronna
--------------------------------------------------------------------------
Face Value:                   U.S. $ 180,000
--------------------------------------------------------------------------
CUSIP No., ISIN No., BB       CUSIP No. 040114AH34; ISIN No.
No.:                          US040114AH34
--------------------------------------------------------------------------
Date Of Issuance:             Not given.

--------------------------------------------------------------------------
Date Of Maturity:             December 20, 2003.
--------------------------------------------------------------------------
Interest Rate/Payable:        8.375 %
--------------------------------------------------------------------------
Date Of Purchase:             On or about December 20, 1993.
--------------------------------------------------------------------------
Acceleration:                 Notice sent January 22, 2004.
--------------------------------------------------------------------------
Contract Documents:           1993 FAA.
(FAA; Indenture; Offering
Prospectus; Certificates,
etc.)
--------------------------------------------------------------------------
Evidence of Ownership         Account statement from HSBC listing bonds in
Proffered:                    the above amount with the above given CUSIP No.
(Account Statements;          as held in an account belonging to Ezequiel
Letters; Notarized            Hernan Baclini and Patricia Ruth Caronna
Statements, etc.)
--------------------------------------------------------------------------



                             Table 2.
--------------------------------------------------------------------------

--------------------------------------------------------------------------
Plaintiff Bond Holder or      Ana Valeria Baravalle and Pablo Alejandro
Beneficial Owner:             Baravalle
--------------------------------------------------------------------------
Face Value:                   U.S. $ 61,000
--------------------------------------------------------------------------

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 743090 (S.D.N.Y.)

**(Cite as: 2005 WL 743090 (S.D.N.Y.))**

| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AN0; ISIN No. US040114AN02 |
|---|---|
| Date Of Issuance: | Not given. |
| Date Of Maturity: | October 9, 2006. |
| Interest Rate/Payable: | 11% |
| Date Of Purchase: | On or about January 3 and January 4, 2001 |
| Acceleration: | Notice sent October 3, 2003. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | 1994 FAA. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | Certificate from Caja De Valores listing bonds in the above amount as held on account for Ana Valeria Baravalle and Pablo Alejandro Baravalle. |

Table 3.

| Plaintiff Bond Holder or Beneficial Owner: | Enrique Cohen, Estella Bety Rosas de Cohen, and Debora Reina Cohen |
|---|---|
| Face Value: | U.S. $ 75,000 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AZ3; ISIN No. US040114AZ32 |
| Date Of Issuance: | Not given. |
| Date Of Maturity: | December 4, 2005. |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | On or about August 12, 2001. |

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                              Page 5

2005 WL 743090 (S.D.N.Y.)

**(Cite as: 2005 WL 743090 (S.D.N.Y.))**

| | |
|---|---|
| Acceleration: | Notice sent October 3, 2003. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | 1994 FAA. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | Account statement from Citibank listing bonds in the above amount in a brokerage account belonging to Enrique Cohen, Estrella Bety Rosas De Cohen, and Debora Reina Cohen. |

Table 4.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Guillermo Jorge Domato |
| Face Value: | U.S. $ 165,000 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about June 21 and August 9, 2000. |
| Acceleration: | Notice sent October 8, 2003. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | 1994 FAA. |
| Evidence of Ownership Proffered: | Account statement from B.P. Alpha listing bonds in the above amount with the above date of |

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 743090 (S.D.N.Y.)

**(Cite as: 2005 WL 743090 (S.D.N.Y.))**

| (Account Statements; Letters; Notarized Statements, etc.) | issuance, date of maturity, and interest rate in a brokerage account belonging to Guillermo Jorge Donato. |
|---|---|

Table 5.

| Plaintiff Bond Holder or Beneficial Owner: | Maria Del Carmen Escudero |
|---|---|
| Face Value: | U.S. $ 34,000 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | Not given. |
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about August 2, 2001. |
| Acceleration: | Notice sent October 3, 2003. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | 1994 FAA. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | Certificate from Caja De Valores listing bonds in the above amount as held on account for Maria Del Carmen Escudero. |

Table 6.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                      Page 7

2005 WL 743090 (S.D.N.Y.)

**(Cite as: 2005 WL 743090 (S.D.N.Y.))**

```
-------------------------------------------------------------------------
Plaintiff Bond Holder or      Susana Frasca
Beneficial Owner:
-------------------------------------------------------------------------
Face Value:                   U.S. $ 110,000
-------------------------------------------------------------------------
CUSIP No., ISIN No., BB       CUSIP No. 040114AR1; ISIN No. US040114AR16
No.:
-------------------------------------------------------------------------
Date Of Issuance:             Not given.
-------------------------------------------------------------------------
Date Of Maturity:             January 30, 2017.
-------------------------------------------------------------------------
Interest Rate/Payable:        11.375 %
-------------------------------------------------------------------------
Date Of Purchase:             On or about August 4, 2000.
-------------------------------------------------------------------------
Acceleration:                 Notice sent October 3, 2003.
-------------------------------------------------------------------------
Contract Documents:           1994 FAA.
(FAA; Indenture; Offering
Prospectus; Certificates,
etc.)
-------------------------------------------------------------------------

Evidence of Ownership         Certificate from Caja De Valores listing bonds in
Proffered:                    the above amount as held on account for Susana
(Account Statements;          Frasca.
Letters; Notarized
Statements, etc.)
-------------------------------------------------------------------------



                              Table 7.
---------------------------------------------------------------------------

---------------------------------------------------------------------------
Plaintiff Bond Holder or      Imperial Bylidol S.A.
Beneficial Owner:
---------------------------------------------------------------------------
Face Value:                   U.S. $ 500,000
---------------------------------------------------------------------------
CUSIP No., ISIN No., BB       CUSIP No. 040114GG9; ISIN No. US040114GG96
No.:
---------------------------------------------------------------------------
Date Of Issuance:             Not given.
```

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 743090 (S.D.N.Y.)

**(Cite as: 2005 WL 743090 (S.D.N.Y.))**

Page 8

```
-----------------------------------------------------------------
Date Of Maturity:            June 19, 2018.
-----------------------------------------------------------------
Interest Rate/Payable:       12.25 %
-----------------------------------------------------------------
Date Of Purchase:            On or about April 2, April 4, May 12, and May 19,
                             2003.
-----------------------------------------------------------------
Acceleration:                Notice sent October 8, 2003.
-----------------------------------------------------------------
Contract Documents:          1994 FAA.
(FAA; Indenture; Offering
Prospectus; Certificates,
etc.)
-----------------------------------------------------------------
Evidence of Ownership        --Account statement from Merrill Lynch listing
Proffered:                   bonds in the above amount in an account
(Account Statements;         belonging to Imperial Bylidol S.A..
Letters; Notarized
Statements, etc.)
-----------------------------------------------------------------


                             Table 8.
-----------------------------------------------------------------

-----------------------------------------------------------------
Plaintiff Bond Holder or     Luigi Giacomazzi and Luciana Pedrolli
Beneficial Owner:
-----------------------------------------------------------------
Face Value:                  U.S. $ 1,600,000
-----------------------------------------------------------------
CUSIP No., ISIN No., BB      CUSIP No. 040114FC9; ISIN No. US040114FC91
No.:
-----------------------------------------------------------------
Date Of Issuance:            Not given.
-----------------------------------------------------------------
Date Of Maturity:            Not given.
-----------------------------------------------------------------
Interest Rate/Payable:       11.375 %
-----------------------------------------------------------------
Date Of Purchase:            On or about July 13 and July 17, 2001.

-----------------------------------------------------------------
Acceleration:                Notice sent October 8, 2003.
```

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 743090 (S.D.N.Y.)

(Cite as: 2005 WL 743090 (S.D.N.Y.))

Page 9

```
--------------------------------------------------------------
Contract Documents:        1994 FAA.
(FAA; Indenture; Offering
Prospectus; Certificates,
etc.)
--------------------------------------------------------------
Evidence of Ownership      --Account statement from Banca del Garda listing
Proffered:                 bonds in the above amount with the above given
(Account Statements;       ISIN No. as held on account for Luigi Giacomazzi
Letters; Notarized         and Luciana Pedrolli.
Statements, etc.)
--------------------------------------------------------------
```

                              Table 9.
```
--------------------------------------------------------------

--------------------------------------------------------------
Plaintiff Bond Holder or   Patrizia Giacomazzi and Michele Stagnitto

Beneficial Owner:
--------------------------------------------------------------
Face Value:                U.S. $ 128,000
--------------------------------------------------------------
CUSIP No., ISIN No., BB    CUSIP No. 040114FC9; ISIN No. US040114FC91
No.:
--------------------------------------------------------------
Date Of Issuance:          Not given.
--------------------------------------------------------------
Date Of Maturity:          Not given.
--------------------------------------------------------------
Interest Rate/Payable:     11.375 %
--------------------------------------------------------------
Date Of Purchase:          On or about July 24 and August 2, 2001.
--------------------------------------------------------------
Acceleration:              Notice sent October 8, 2003.
--------------------------------------------------------------
Contract Documents:        1994 FAA.
(FAA; Indenture; Offering
Prospectus; Certificates,
etc.)

--------------------------------------------------------------
Evidence of Ownership      --Account statement from Banca del Garda listing
Proffered:                 bonds in the above amount with the above given
(Account Statements;       ISIN No. as held on account for Patrizia
Letters; Notarized         Giacomazzi and Michele Stagnitto.
```

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 10

2005 WL 743090 (S.D.N.Y.)

**(Cite as: 2005 WL 743090 (S.D.N.Y.))**


Statements, etc.)
--------------------------------------------------------------------------------


                                    Table 10.
--------------------------------------------------------------------------------


--------------------------------------------------------------------------------
Plaintiff Bond Holder or     Norberto Pablo Giudice
Beneficial Owner:
--------------------------------------------------------------------------------
Face Value:                  U.S. $ 27,000
--------------------------------------------------------------------------------
CUSIP No., ISIN No., BB      CUSIP No. 040114AR1; ISIN No. US040114AR16
No.:
--------------------------------------------------------------------------------

Date Of Issuance:            Not given.
--------------------------------------------------------------------------------
Date Of Maturity:            January 20, 2017.
--------------------------------------------------------------------------------
Interest Rate/Payable:       11.375 %
--------------------------------------------------------------------------------
Date Of Purchase:            On or about June 29, August 6, and August 8,
                             2001.
--------------------------------------------------------------------------------
Acceleration:                Notice sent October 3, 2003.
--------------------------------------------------------------------------------
Contract Documents:          1994 FAA.
(FAA; Indenture; Offering
Prospectus; Certificates,
etc.)
--------------------------------------------------------------------------------
Evidence of Ownership        --Certificate from Caja De Valores listing bonds
                               in
Proffered:                   the above amount as held on account for
(Account Statements;         Norberto Pablo Giudice.
Letters; Notarized

Statements, etc.)
--------------------------------------------------------------------------------


                                    Table 11.
--------------------------------------------------------------------------------

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 11

2005 WL 743090 (S.D.N.Y.)

**(Cite as: 2005 WL 743090 (S.D.N.Y.))**

```
------------------------------------------------------------------------
Plaintiff Bond Holder or     Alberto Haber
Beneficial Owner:
------------------------------------------------------------------------
Face Value:                  U.S. $ 302,400
------------------------------------------------------------------------
CUSIP No., ISIN No., BB      CUSIP No. P04981CF4; ISIN No. XS0043120236
No.:
------------------------------------------------------------------------
Date Of Issuance:            March 31, 1993.
------------------------------------------------------------------------
Date Of Maturity:            March 29, 2005.
------------------------------------------------------------------------
Interest Rate/Payable:       Not given.

------------------------------------------------------------------------
Date Of Purchase:            In or around September 2002.
------------------------------------------------------------------------
Acceleration:                None.
------------------------------------------------------------------------
Contract Documents:          FRB dated December 6, 1992.
(FAA; Indenture; Offering
Prospectus; Certificates,
etc.)
------------------------------------------------------------------------
Evidence of Ownership        --Asset statement from UBS listing bonds in the
Proffered:                   above amount with the above given ISIN No. as
(Account Statements;         held in an account belonging to Alberto Haber.
Letters; Notarized
Statements, etc.)
------------------------------------------------------------------------


                            Table 12.
------------------------------------------------------------------------


------------------------------------------------------------------------
Plaintiff Bond Holder or     Jose Alberto Landi
Beneficial Owner:
------------------------------------------------------------------------
Face Value:                  U.S. $ 115,000
------------------------------------------------------------------------
CUSIP No., ISIN No., BB      CUSIP No. 040114AR1; ISIN No. US040114AR16
No.:
------------------------------------------------------------------------
Date Of Issuance:            Not given.
```

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 743090 (S.D.N.Y.)

**(Cite as: 2005 WL 743090 (S.D.N.Y.))**

| | |
|---|---|
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | In or around 2000. |
| Acceleration: | Notice sent October 3, 2003. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | 1994 FAA. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | --Account statement from Caja de Valores listing bonds in the above amount with the above given ISIN No. as held in an account for Jose Alberto Landi. |

Table 13.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Susana Lauria and Guillermo Dotto |
| Face Value: | U.S. $ 41,000 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | Not given. |
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about July 17 and August 2, 2001. |
| Acceleration: | Notice sent October 3, 2003. |
| Contract Documents: | 1994 FAA. |

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                Page 13

2005 WL 743090 (S.D.N.Y.)

**(Cite as: 2005 WL 743090 (S.D.N.Y.))**


```
(FAA; Indenture; Offering
Prospectus; Certificates,
etc.)
-------------------------------------------------------------------------------
Evidence of Ownership          Certificate from Caja De Valores listing bonds in
Proffered:                     the above amount as held on account for
(Account Statements;           Guillermo Dotto and Susana Lauria.
Letters; Notarized

Statements, etc.)
-------------------------------------------------------------------------------



                                Table 14.
-------------------------------------------------------------------------

-------------------------------------------------------------------------
Plaintiff Bond Holder or       Corbins Trade S.A.
Beneficial Owner:
-------------------------------------------------------------------------
Face Value:                    U.S. $ 1,130,000
-------------------------------------------------------------------------
CUSIP No., ISIN No., BB        CUSIP No. 040114AR1; ISIN No. US040114AR16
No.:
-------------------------------------------------------------------------
Date Of Issuance:              Not given.
-------------------------------------------------------------------------
Date Of Maturity:              January 30, 2017.
-------------------------------------------------------------------------
Interest Rate/Payable:         11.375 %

-------------------------------------------------------------------------
Date Of Purchase:              In or around August 2003.
-------------------------------------------------------------------------
Acceleration:                  Notice sent October 3, 2003.
-------------------------------------------------------------------------
Contract Documents:            1994 FAA.
(FAA; Indenture; Offering
Prospectus; Certificates,
etc.)
-------------------------------------------------------------------------
Evidence of Ownership          Account statement from Credit Lyonnais
Proffered:                     (Suisse) S.A..
(Account Statements;
Letters; Notarized
Statements, etc.)
-------------------------------------------------------------------------
```

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 743090 (S.D.N.Y.)

**(Cite as: 2005 WL 743090 (S.D.N.Y.))**

Table 15.

----------------------------------------------------------------------

----------------------------------------------------------------------

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Corbins Trade S.A. |
| Face Value: | U.S. $ 480,000 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AV2; ISIN No. US040114AV28 |
| Date Of Issuance: | Not given. |
| Date Of Maturity: | September 19, 2027. |
| Interest Rate/Payable: | 9.75 % |
| Date Of Purchase: | In or around August 2003. |
| Acceleration: | Notice sent October 3, 2003. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | 1994 FAA. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | Account statement from Credit Lyonnais (Suisse) S.A.. |

----------------------------------------------------------------------

Table 16.

----------------------------------------------------------------------

----------------------------------------------------------------------

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Hugo Masini and Viviana Noemi Touron |
| Face Value: | U.S. $ 105,000 |

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 743090 (S.D.N.Y.)

**(Cite as: 2005 WL 743090 (S.D.N.Y.))**

| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AZ3; ISIN No. US040114AZ32 |
|---|---|
| Date Of Issuance: | Not given. |
| Date Of Maturity: | December 4, 2005. |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | In or around March 2001. |
| Acceleration: | Notice sent October 8, 2003. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | 1994 FAA. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | Account statement from Citibank listing bonds in the above amount in an account belonging to Hugo Masini and Viviana N Touron. |

Table 17.

| Plaintiff Bond Holder or Beneficial Owner: | Paula Mastronardi |
|---|---|
| Face Value: | U.S. $ 100,000 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AN0; ISIN No. US040114AN02 |
| Date Of Issuance: | Not given. |
| Date Of Maturity: | October 9, 2006. |
| Interest Rate/Payable: | 11 % |

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 743090 (S.D.N.Y.)

(Cite as: 2005 WL 743090 (S.D.N.Y.))

Page 16

| Date Of Purchase: | Not given. |
|---|---|
| Acceleration: | Notice sent October 14, 2003. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | 1994 FAA. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | Account statement from B.P. Alpha listing bonds in the above amount with the above given CUSIP No. in a portfolio belonging to Paula Mastronardi. |

Table 18.

| Plaintiff Bond Holder or Beneficial Owner: | Paula Mastronardi |
|---|---|
| Face Value: | U.S. $ 454,000 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | Not given. |
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | Not given. |
| Acceleration: | Notice sent October 14, 2003. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | 1994 FAA. |

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 743090 (S.D.N.Y.)

**(Cite as: 2005 WL 743090 (S.D.N.Y.))**

```
Evidence of Ownership       Account statement from B.P. Alpha listing
Proffered:                  bonds in the above amount with the above given
(Account Statements;        CUSIP No. in a portfolio belonging to Paula
Letters; Notarized          Mastronardi.
Statements, etc.)
---------------------------------------------------------------------------



                            Table 19.
---------------------------------------------------------------------------


---------------------------------------------------------------------------
Plaintiff Bond Holder or    Claudio Miguel Matheou
Beneficial Owner:
---------------------------------------------------------------------------
Face Value:                 U.S. $ 80,000
---------------------------------------------------------------------------
CUSIP No., ISIN No., BB     CUSIP No. 040114GF1; ISIN No. US040114GF14

No.:
---------------------------------------------------------------------------
Date Of Issuance:           Not given.
---------------------------------------------------------------------------
Date Of Maturity:           December 19, 2008.
---------------------------------------------------------------------------
Interest Rate/Payable:      Not given.
---------------------------------------------------------------------------
Date Of Purchase:           In or around July 2001.
---------------------------------------------------------------------------
Acceleration:               Notice sent October 8, 2003.
---------------------------------------------------------------------------
Contract Documents:         1994 FAA.
(FAA; Indenture; Offering
Prospectus; Certificates,
etc.)
---------------------------------------------------------------------------
Evidence of Ownership       Account statement from Merrill Lynch listing
Proffered:                  bonds in the above amount in an account
(Account Statements;        belonging to Claudio Miguel Matheou.
Letters; Notarized

Statements, etc.)
---------------------------------------------------------------------------


                            Table 20.
```

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 743090 (S.D.N.Y.)

(Cite as: 2005 WL 743090 (S.D.N.Y.))

```
-----------------------------------------------------------------------
```
```
-----------------------------------------------------------------------
```
| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Jorge Marcelo **Mazzini** and Graciela Alejandra Chersicla |
| Face Value: | U.S. $ 239,000 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | Not given. |
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about August 10 and August 31, 2000. |
| Acceleration: | Notice sent October 3, 2003. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | 1994 FAA. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | Certificate from Caja De Valores listing bonds in the above amount as held on account for Jorge Marcelo **Mazzini** and Graciela Alejandra Chersicla. |

Table 21.

```
-----------------------------------------------------------------------
```

```
-----------------------------------------------------------------------
```
| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Dario Alberto Pardal |
| Face Value: | U.S. $ 150,000 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 19

2005 WL 743090 (S.D.N.Y.)

**(Cite as: 2005 WL 743090 (S.D.N.Y.))**

```
------------------------------------------------------------------
Date Of Issuance:          Not given.
------------------------------------------------------------------
Date Of Maturity:          December 20, 2003.
------------------------------------------------------------------
Interest Rate/Payable:     8.375 %
------------------------------------------------------------------
Date Of Purchase:          On or about August 3, 2000.
------------------------------------------------------------------
Acceleration:              Notice sent January 22, 2004.
------------------------------------------------------------------
Contract Documents:        1993 FAA.
(FAA; Indenture; Offering

Prospectus; Certificates,
etc.)
------------------------------------------------------------------
Evidence of Ownership      Account statement from Merrill Lynch listing
Proffered:                 bonds in the above amount in an account
(Account Statements;       belonging to Dario Alberto Pardal.
Letters; Notarized
Statements, etc.)
------------------------------------------------------------------



                           Table 22.
------------------------------------------------------------------


------------------------------------------------------------------
Plaintiff Bond Holder or   Dario Alberto Pardal
Beneficial Owner:
------------------------------------------------------------------
Face Value:                U.S. $ 250,000
------------------------------------------------------------------
CUSIP No., ISIN No., BB    CUSIP No. 040114AZ3; ISIN No. US040114AZ32

No.:
------------------------------------------------------------------
Date Of Issuance:          Not given.
------------------------------------------------------------------
Date Of Maturity:          December 4, 2005.
------------------------------------------------------------------
Interest Rate/Payable:     11 %
------------------------------------------------------------------
Date Of Purchase:          On or about August 3, 2000.
------------------------------------------------------------------
Acceleration:              Notice sent October 14, 2003.
```

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 743090 (S.D.N.Y.)

**(Cite as: 2005 WL 743090 (S.D.N.Y.))**

```
------------------------------------------------------------------------
Contract Documents:        1994 FAA.
(FAA; Indenture; Offering
Prospectus; Certificates,
etc.)
------------------------------------------------------------------------
Evidence of Ownership      Account statement from Merrill Lynch listing
Proffered:                 bonds in the above amount in an account
(Account Statements;       belonging to Dario Alberto Pardal.
Letters; Notarized

Statements, etc.)
------------------------------------------------------------------------



                          Table 23.
------------------------------------------------------------------------


------------------------------------------------------------------------
Plaintiff Bond Holder or   Dario Alberto Pardal
Beneficial Owner:
------------------------------------------------------------------------
Face Value:                U.S. $ 100,000
------------------------------------------------------------------------
CUSIP No., ISIN No., BB    CUSIP No. 040114AN0; ISIN No. US040114AN02
No.:
------------------------------------------------------------------------
Date Of Issuance:          Not given.
------------------------------------------------------------------------
Date Of Maturity:          October 9, 2006.
------------------------------------------------------------------------
Interest Rate/Payable:     11 %

------------------------------------------------------------------------
Date Of Purchase:          On or about April 12, 1999.
------------------------------------------------------------------------
Acceleration:              Notice sent October 14, 2003.
------------------------------------------------------------------------
Contract Documents:        1994 FAA.
(FAA; Indenture; Offering
Prospectus; Certificates,
etc.)
------------------------------------------------------------------------
Evidence of Ownership      Account statement from Merrill Lynch listing
Proffered:                 bonds in the above amount in an account
(Account Statements;       belonging to Dario Alberto Pardal.
Letters; Notarized
```

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 743090 (S.D.N.Y.)

**(Cite as: 2005 WL 743090 (S.D.N.Y.))**

Page 21

Statements, etc.)
------------------------------------------------------------------------


Table 24.
------------------------------------------------------------------------------


------------------------------------------------------------------------------

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Kinburg Trust S.A. |
| Face Value: | U.S. $ 789,000 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | Not given. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 %. |
| Date Of Purchase: | Not given. |
| Acceleration: | Notice sent January 22, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | 1993 FAA. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | Account statement from Bank Boston listing bonds in the above amount as held in an account belonging to Kinburg Trust S.A.. |

------------------------------------------------------------------------------


Table 25.
------------------------------------------------------------------------------


------------------------------------------------------------------------------

| | |
|---|---|
| Plaintiff Bond Holder or | Valerio Piacenza |

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 743090 (S.D.N.Y.)

(Cite as: 2005 WL 743090 (S.D.N.Y.))

Page 22

```
Beneficial Owner:
--------------------------------------------------------------------------
Face Value:                 U.S. $ 65,000
--------------------------------------------------------------------------
CUSIP No., ISIN No., BB     CUSIP No. 040114AZ3; ISIN No. US040114AZ32

No.:
--------------------------------------------------------------------------
Date Of Issuance:           Not given.
--------------------------------------------------------------------------
Date Of Maturity:           Not given.
--------------------------------------------------------------------------
Interest Rate/Payable:      11%
--------------------------------------------------------------------------
Date Of Purchase:           On or about June 13, 2001.
--------------------------------------------------------------------------
Acceleration:               Notice sent October 3, 2003.
--------------------------------------------------------------------------
Contract Documents:         1994 FAA.
(FAA; Indenture; Offering
Prospectus; Certificates,
etc.)
--------------------------------------------------------------------------
Evidence of Ownership       Account statement from San Paolo IMI S.p.A.
Proffered:                  listing bonds in the above amount with the above
(Account Statements;        given ISIN No. as held in an account belonging to
Letters; Notarized          Valerio Piacenza.

Statements, etc.)
--------------------------------------------------------------------------



                            Table 26.
------------------------------------------------------------------------------


------------------------------------------------------------------------------
Plaintiff Bond Holder or    Compania Calitecno S.A.
Beneficial Owner:
------------------------------------------------------------------------------
Face Value:                 U.S. $ 105,000
------------------------------------------------------------------------------
CUSIP No., ISIN No., BB     CUSIP No. 040114AZ3; ISIN No. US040114AZ32
No.:
------------------------------------------------------------------------------
Date Of Issuance:           December 4, 1998.
------------------------------------------------------------------------------
Date Of Maturity:           December 4, 2005.
```

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 743090 (S.D.N.Y.)

**(Cite as: 2005 WL 743090 (S.D.N.Y.))**

```
--------------------------------------------------------------------------
Interest Rate/Payable:      11%

--------------------------------------------------------------------------
Date Of Purchase:           On or about July 28, 2003.
--------------------------------------------------------------------------
Acceleration:               Notice sent October 3, 2003.
--------------------------------------------------------------------------
Contract Documents:         1994 FAA.
(FAA; Indenture; Offering
Prospectus; Certificates,
etc.)
--------------------------------------------------------------------------
Evidence of Ownership       Position statement from Clariden Bank listing
Proffered:                  bonds in the above amount with the above dates
(Account Statements;        of issuance and maturity and interest rate as held
Letters; Notarized          in an account belonging to Compania Calitecno
Statements, etc.)           S.A..
--------------------------------------------------------------------------



                            Table 27.
--------------------------------------------------------------------------



--------------------------------------------------------------------------
Plaintiff Bond Holder or    Juan Jose Rizzo, Claudia Aurora Sabatini Bartra,
Beneficial Owner:           and Lidia Julia Mancini
--------------------------------------------------------------------------
Face Value:                 U.S. $ 45,000
--------------------------------------------------------------------------
CUSIP No., ISIN No., BB     CUSIP No. 040114AH3; ISIN No. US040114AH34
No.:
--------------------------------------------------------------------------
Date Of Issuance:           Not given.
--------------------------------------------------------------------------
Date Of Maturity:           December 20, 2003.
--------------------------------------------------------------------------
Interest Rate/Payable:      8.375%
--------------------------------------------------------------------------
Date Of Purchase:           On or about August 16, 2001.
--------------------------------------------------------------------------
Acceleration:               Notice sent January 22, 2004.
--------------------------------------------------------------------------
Contract Documents:         1993 FAA.
(FAA; Indenture; Offering
```

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 743090 (S.D.N.Y.)

**(Cite as: 2005 WL 743090 (S.D.N.Y.))**

```
Prospectus; Certificates,
etc.)
----------------------------------------------------------------------------
Evidence of Ownership          Account statement from Citibank listing bonds
Proffered:                     in the above amount in an account belonging to
(Account Statements;           Juan Jose Rizzo, Claudia Sabatini Bartra, and
Letters; Notarized             Lidia Julia Mancini
Statements, etc.)
----------------------------------------------------------------------------



                              Table 28.
----------------------------------------------------------------------------

----------------------------------------------------------------------------
Plaintiff Bond Holder or       Salvador Saddemi, Maria Teresa Lepone, and
Beneficial Owner:              Sergio Saddemi
----------------------------------------------------------------------------
Face Value:                    U.S. $ 90,000
----------------------------------------------------------------------------
CUSIP No., ISIN No., BB        CUSIP No. 040114AH3; ISIN No. US040114AH34

No.:
----------------------------------------------------------------------------
Date Of Issuance:              Not given.
----------------------------------------------------------------------------
Date Of Maturity:              December 20, 2003
----------------------------------------------------------------------------
Interest Rate/Payable:         8.375%
----------------------------------------------------------------------------
Date Of Purchase:              On or about June 28, 1996.
----------------------------------------------------------------------------
Acceleration:                  Notice sent January 22, 2004.
----------------------------------------------------------------------------
Contract Documents:            1993 FAA.
(FAA; Indenture; Offering
Prospectus; Certificates,
etc.)
----------------------------------------------------------------------------
Evidence of Ownership          Account statement from Citibank listing bonds
Proffered:                     in the above amount in an account belonging to
(Account Statements;           Salvador Saddemi, Maria T. Lepone, and Sergio
Letters; Notarized             Saddemi.

Statements, etc.)
----------------------------------------------------------------------------
```

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 743090 (S.D.N.Y.)

**(Cite as: 2005 WL 743090 (S.D.N.Y.))**

Page 25

Table 29.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Hernan Taboada |
| Face Value: | U.S. $ 58,000 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | Not given. |
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375% |
| Date Of Purchase: | On or about August 8, 2001. |
| Acceleration: | Notice sent October 3, 2003. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | 1994 FAA. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | Certificate from Caja De Valores listing bonds in the above amount as held on account for Hernan Taboada. |

Table 30.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Jorge Manuel Taboada |
| Face Value: | U.S. $ 33,000 |

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 26

2005 WL 743090 (S.D.N.Y.)

**(Cite as: 2005 WL 743090 (S.D.N.Y.))**

| | |
|---|---|
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | Not given. |
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375% |
| Date Of Purchase: | On or about August 8, 2001. |
| Acceleration: | Notice sent October 3, 2003. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | 1994 FAA. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | Certificate from Caja De Valores listing bonds in the above amount as held on account for Jorge Manuel Taboada. |

Table 31.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Horacio Alberto Vazquez and Liliana Cebrowski |
| Face Value: | U.S. $ 40,000 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | Not given. |
| Date Of Maturity: | Not given. |
| Interest Rate/Payable: | Not given. |

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 743090 (S.D.N.Y.)

(Cite as: 2005 WL 743090 (S.D.N.Y.))

Page 27

```
Date Of Purchase:            On or about October 27, 2000.
-------------------------------------------------------------------------
Acceleration:                Notice sent October 14, 2003.
-------------------------------------------------------------------------
Contract Documents:          1994 FAA.
(FAA; Indenture; Offering
Prospectus; Certificates,
etc.)
-------------------------------------------------------------------------
Evidence of Ownership        Account statement from MBA Banco de
Proffered:                   Inversiones S.A. listing bonds in the above
(Account Statements;         amount as held in an account belonging to
Letters; Notarized           Horacio Vazquez and Liliana Cebrowski.

Statements, etc.)
-------------------------------------------------------------------------


                         Table 32.
-------------------------------------------------------------------------

-------------------------------------------------------------------------
Plaintiff Bond Holder or     Horacio Alberto Vazquez and Liliana Cebrowski
Beneficial Owner:
-------------------------------------------------------------------------
Face Value:                  U.S. $ 33,000
-------------------------------------------------------------------------
CUSIP No., ISIN No., BB      CUSIP No. 040114GA2; ISIN No. US040114GA27
No.:
-------------------------------------------------------------------------
Date Of Issuance:            Not given.
-------------------------------------------------------------------------
Date Of Maturity:            Not given.
-------------------------------------------------------------------------
Interest Rate/Payable:       Not given.

-------------------------------------------------------------------------
Date Of Purchase:            On or about October 31, 2000 and February 26,
                             2001.
-------------------------------------------------------------------------
Acceleration:                Notice sent October 14, 2003.
-------------------------------------------------------------------------
Contract Documents:          1994 FAA.
(FAA; Indenture; Offering
Prospectus; Certificates,
etc.)
-------------------------------------------------------------------------
```

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 743090 (S.D.N.Y.)

**(Cite as: 2005 WL 743090 (S.D.N.Y.))**

```
Evidence of Ownership        Account statement from MBA Banco de
Proffered:                   Inversiones S.A. listing bonds in the above
(Account Statements;         amount as held in an account belonging to
Letters; Notarized           Horacio Vazquez and Liliana Cebrowski.
Statements, etc.)
-----------------------------------------------------------------------
```

```
                              Table 33.
-----------------------------------------------------------------------


-----------------------------------------------------------------------
Plaintiff Bond Holder or     Heinrich Peter Zum Felde
Beneficial Owner:
-----------------------------------------------------------------------
Face Value:                  U.S. $ 500,000
-----------------------------------------------------------------------
CUSIP No., ISIN No., BB      BB No. FRN 00000366; ISIN No. XS004312082-2
No.:
-----------------------------------------------------------------------
Date Of Issuance:            Not given.
-----------------------------------------------------------------------
Date Of Maturity:            Not given.
-----------------------------------------------------------------------
Interest Rate/Payable:       Not given.
-----------------------------------------------------------------------
Date Of Purchase:            Between April 2001 and May 2001.
-----------------------------------------------------------------------
Acceleration:                Not sent.
-----------------------------------------------------------------------
Contract Documents:          FRB dated December 6, 1992.

(FAA; Indenture; Offering
Prospectus; Certificates,
etc.)
-----------------------------------------------------------------------
Evidence of Ownership        Photocopy of the above described bond
Proffered:                   registered in the name of Heinrich Peter Zum
(Account Statements;         Feld.
Letters; Notarized
Statements, etc.)
-----------------------------------------------------------------------
```

DISCUSSION

*Standing*

**\*3** Defendant's argument that plaintiffs lack standing based on the language in the agreements

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 743090 (S.D.N.Y.)

**(Cite as: 2005 WL 743090 (S.D.N.Y.))**

governing the bonds is essentially the same as what was rejected in *Latinburg, S.A. v. The Republic of Argentina,* 03 Civ. 8528(TPG), 2004 WL 1152243 (S.D.N.Y. May 24, 2004).

*Acceleration of Principal*

The Court has already granted summary judgment to the plaintiff bondholders seeking to collect on the Republic's bonds issued under the 1994 FAA in the *Lightwater, supra,* case. The Court wrote in *Lightwater;*

> The obligations of the Republic on the bonds involved in these lawsuits are unconditional. Sovereign immunity has been waived. The Republic defaulted on the bonds when it ceased to pay the interest. This would seem to mean that the Republic now owes the three plaintiffs principal and accrued interest.

2003 WL 1878420, at *4.

The Court finds nothing in the record to distinguish the instant case as to this Court's jurisdiction and plaintiffs' unconditional legal right to collect the unpaid interest and to accelerate payment of principal on the bonds issued under the 1994 FAA.

The Court has not yet ruled on the 1993 FAA. However, as described above, the terms of the 1993 FAA are very similar to the terms of the 1994 FAA. The Court therefore will apply its reasoning in *Lightwater.* The Court now holds that it has jurisdiction over claims regarding bonds issued under the 1993 FAA, and that plaintiffs who have given proper notice have the unconditional legal right to collect the unpaid interest and to accelerate payment of principal on the bonds issued under that agreement.

The FRB has not yet been adjudicated. While the Republic's declared moratorium is clearly an event of default under Section 9 of Exhibit 1A to the FRB, plaintiffs have not shown a right to accelerate payment of principal. Plaintiffs do not contend that they are holders of at least 25% of the aggregate outstanding principal amount of the bonds, nor do they contend that repayment of the principal amount of bonds issued under the FRB has been otherwise

accelerated. Therefore, the plaintiffs holding bonds issued under the FRB may claim only unpaid interest on their present motion.

*Proof of Ownership*

Plaintiffs provide a number of declarations and exhibits to prove their ownership of the bonds. However, the persuasiveness of these materials varies.

Each individual plaintiff, or a representative, provides a declaration asserting ownership of a specific bond or bonds. Declarations which meet the requirements of 28 U.S.C. § 1746 may be substituted for an affidavit on a motion for summary judgment. Local Civil Rule 1.10. 28 U.S.C. § 1746 requires that "substantially the following form" be used when making a declaration outside the United States under penalty of perjury:

> "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)".

*4 28 U.S.C. § 1746 (2002). Many of the declarations made by the individual plaintiffs state that "to the best of my knowledge the foregoing is true and correct." This language is not substantially different from the statutory example. The Court considers these declarations to be sufficient.

Each individual plaintiff, or a representative, also provides documents that show the plaintiff's ownership of a bond or bonds. These documents typically take the form of account statements or letters from the plaintiff's bank or broker, usually accompanied by a translated copy. This Court has already decided, in a March 2004 conference covering acceptable proof of ownership in the *Applestein* case, 02 Civ. 4124(TPG), that account statements would generally be accepted as reasonable evidence of plaintiffs' account holdings. This Court will therefore generally rely on account statements provided by each plaintiff in deciding this motion.

This Court will grant summary judgment to plaintiffs who provide (1) evidence of ownership of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 30

2005 WL 743090 (S.D.N.Y.)

(Cite as: 2005 WL 743090 (S.D.N.Y.))

a particular bond, and (2) evidence specifically identifying that bond. In most cases, a properly executed declaration and an account statement will be sufficient to prove that the bonds plaintiffs claim to own are in fact the bonds held in their accounts. Needless to say, the Court will also accept other evidence, so long as it specifically confirms that the bonds held in plaintiffs' accounts are the bonds they claim to own.

Applying the above standards, the Court finds that no issues of material fact remain.

*The Republic's Discovery Requests and the Defense of Champerty*

The Republic has requested discovery with respect to plaintiffs' proof of ownership. As discussed above, plaintiffs generally have produced sufficient evidence establishing their ownership of the bonds at issue. Further discovery on this issue is not necessary. The Republic also seeks discovery of information relating to the defense of champerty. Section 489 of the New York Judiciary Law prohibits the purchase of bonds for the sole purpose of bringing suit. *See Elliott Assoc. v. Banco de la Nacion,* 194 F.3d 363 (2d Cir.1999). This Court has already considered the issue of discovery in regard to that defense. *See, e.g., Lightwater,* 2003 WL 1878420, at *4; *Applestein,* 2003 WL 1990206, at *4. The Court believes, as it did in those cases, that discovery would not establish any set of facts which would establish a successful champerty defense. The evidence is clear that plaintiffs bought their bonds with the intention of collecting on them, even though they clearly were aware that a lawsuit might be necessary. There was therefore no champerty in violation of Section 489 of the New York Judiciary Law.

CONCLUSION

Plaintiffs' motion for summary judgment is granted in part and denied in part. Plaintiffs' motion for summary judgment is granted as to plaintiffs Ezequiel Hernan Baclini and Patricia Ruth Caronna; Ana Valeria Baravalle and Pablo Alejandro Baravalle; Enrique Cohen, Estella Bety Rosas de Cohen, and Debora Reina Cohen; Guillermo Jorge

Domato; Maria Del Carmen Escudero; Susana Frasca; Imperial Bylidol S .A.; Luigi Giacomazzi and Luciana Pedrolli; Patrizia Giacomazzi and Michele Stagnitto; Norberto Pablo Giudice; Jose Alberto Landi; Susana Lauria and Guillermo Dotto; Corbins Trade, S.A.; Hugo Masini and Viviana Noemi Touron; Paula Mastronardi; Claude Miguel Matheou; Jorge Marcelo **Mazzini** and Graciela Alejandra Chersicla; Dario Alberto Pardal; Kinburg Trust S.A.; Valerio Piacenza; Compania Calitecno, S.A.; Juan Jose Rizzo, Claudia Aurora Sabatini Bartra, and Lidia Julia Mancini; Salvador Saddemi, Maria Teresa Lepone, and Sergio Saddemi; Hernan Taboada; Jorge Manuel Taboada;and, Horacio Alberto Vazquez and Liliana Cebrowski.

*5 Plaintiffs' motion for summary judgment is granted only for payment of past due interest as to plaintiffs Alberto Haber and Heinrich Peter Zum Felde. Plaintiffs' motion for summary judgment as to accelerated principal on the bonds owed by Haber and Zum Felde is denied.

Plaintiffs motion to strike defendant's discovery requests is granted.

Plaintiffs shall submit an appropriate judgment.

SO ORDERED.

2005 WL 743090 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:03CV08120  (Docket)
                                        (Oct. 15, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED

------------------------------------------x
                                           :
MAZORAL, S.A.,                             :
                                           :
                    Plaintiff,             :
                                           :       04 Civ. 3313 (TPG)
            - against -                    :
                                           :          **OPINION**
THE REPUBLIC OF ARGENTINA,                 :
                                           :
                    Defendant.             :
                                           :
------------------------------------------x


     Plaintiff is the beneficial owner of certain bond indebtedness issued by

defendant The Republic of Argentina.  The Republic defaulted on such

indebtedness in December 2001 during a profound fiscal crisis.  Plaintiff is

suing to recover amounts due to them as a result of the default and have

moved for summary judgment.  Plaintiff also moves to strike the Republic's

discovery requests.

     The motions are granted.


## FACTS

     The bond indebtedness at issue is governed by one of three agreements:

(1) a Fiscal Agency Agreement dated October 19, 1994 (the "1994 FAA"), (2) a

Fiscal Agency Agreement dated December 10, 1993 (the "1993 FAA"), and (3) a

Floating Rate and Bond Exchange Agreement dated December 6, 1992 (the

"FRB Agreement").  The 1994 FAA is the same agreement that governed the

bond indebtedness on which this court granted summary judgment to the plaintiffs in Lightwater Corporation Ltd. v. Republic of Argentina, No. 02 Civ. 3804, 2003 WL 1878420 (S.D.N.Y. Apr. 14, 2003). Section 22 of the 1994 FAA, Section 20 of the 1993 FAA, and Section 6.07 of the FRB Agreement state that the Republic waives sovereign immunity and consents to jurisdiction in any state or federal court in the borough of Manhattan in the City of New York. All three agreements provide that the Republic's obligations on the bonds are unconditional and that failure to make any payment of principal or interest for 30 days after the applicable payment date constitutes an event of default. A declaration by the Republic of a moratorium on the payment of principal or interest on its public external indebtedness is an event of default as well. Paragraph 12 of the 1994 FAA provides for acceleration of principal if there is a failure to pay interest or a moratorium. If either of these events occurs,

> each holder of Securities and such Series may by such notice in writing declare the principal amount of Securities of such Series held by it to be due and payable immediately . . . .

The 1993 FAA contains similar language.

The FRB Agreement permits acceleration of principal only by holders of at least 25% in aggregate of the outstanding principal amount of the bonds under each agreement.

On December 24, 2001 the Republic declared a moratorium on payments of principal and interest on the external debt of the Republic. The court refers

-2-

to its previous opinions for a description of the circumstances of these defaults. Lightwater, 2003 WL 1878420, at *2; Applestein v. Republic of Argentina, No. 02 Civ. 1773, 2003 WL 1990206, at *1 (S.D.N.Y. Apr. 29, 2003). On February 3 and February 4, 2004, plaintiff sent notices to Bankers Trust Company, the Fiscal Agent of The Republic of Argentina, declaring the principal amounts of the debt securities governed by the 1994 FAA and 1993 FAA held by plaintiff to be immediately due and payable.[1]

The bonds that are the subject of this action are listed hereafter. Also listed are the amounts of the beneficial interests owned by plaintiff.[2]

The following tables contain the necessary identifying information regarding plaintiff's beneficial interests in bonds.

---

[1] The court so finds notwithstanding the typographical error in one of the letters.

[2] The court notes the distinction between bonds and beneficial interests. In some previous opinions, the court has simply referred to the plaintiffs as owners of "bonds," when in fact plaintiffs are technically owners of "beneficial interests in bonds." The Republic actually issues "a bond" to a depository. The depository, in some form, issues "participations" to brokers, who sell "beneficial interests" to purchasers. These beneficial interests are identified by reference to the underlying bond (CUSIP or ISIN number or both; date of issuance and maturity; rate of interest) and the principal amount of the beneficial interest. This distinction is discussed more fully in Million Air Corp. v. Republic of Argentina, No. 04 Civ. 1048, 2005 U.S. Dist. LEXIS 23904 (S.D.N.Y. Oct. 17, 2005).

Table 1.

| Plaintiff Beneficial Owner: | Mazoral, S.A. |
|---|---|
| Face Value: | U.S. $ 1,310,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AN0; ISIN No. US04114AN02 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | October 9, 2006. |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | Not provided. |
| Acceleration: | February 4, 2004. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statements: Safra National Bank of New York dated November 30, 2004 and UBS dated November 2004. |

Table 2.

| Plaintiff Beneficial Owner: | Mazoral, S.A. |
|---|---|
| Face Value: | U.S. $ 50,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US04114AR16 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | Not provided. |
| Acceleration: | February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statements:  Safra National Bank of New York dated November 30, 2004 and UBS dated November 2004. |

Table 3.

| Plaintiff Beneficial Owner: | Mazoral, S.A. |
|---|---|
| Face Value: | U.S. $ 100,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114BE9; ISIN No. US04114BE93 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | April 7, 2009. |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | Not provided. |
| Acceleration: | February 4, 2004. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statements:  Safra National Bank of New York dated November 30, 2004 and UBS dated November 2004. |

Table 4.

| Plaintiff Beneficial Owner: | Mazoral, S.A. |
|---|---|
| Face Value: | U.S. $ 550,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GF1; ISIN No. US04114GF14 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | December 19, 2008. |
| Interest Rate/Payable: | 15.5 % |
| Date Of Purchase: | Not provided. |
| Acceleration: | February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statements: Safra National Bank of New York dated November 30, 2004 and UBS dated November 2004. |

Table 5.

| Plaintiff Beneficial Owner: | Mazoral, S.A. |
|---|---|
| Face Value: | U.S. $ 200,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GG9; ISIN No. US04114GG96 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | June 19, 2018. |
| Interest Rate/Payable: | 12.25 % |
| Date Of Purchase: | Not provided. |
| Acceleration: | February 4, 2004. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statements: Safra National Bank of New York dated November 30, 2004 and UBS dated November 2004. |

Table 6.

| Plaintiff Beneficial Owner: | Mazoral, S.A. |
|---|---|
| Face Value: | U.S. $ 968,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AZ3; ISIN No. US04114AZ32 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | December 4, 2005. |
| Interest Rate/Payable: | 11% |
| Date Of Purchase: | Not provided. |
| Acceleration: | February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statements:  Safra National Bank of New York dated November 30, 2004 and UBS dated November 2004. |

Table 7.

| | |
|---|---|
| Plaintiff Beneficial Owner: | Mazoral, S.A. |
| Face Value: | U.S. $ 1,492,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AV2; ISIN No. US04114AV28 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | September 19, 2027. |
| Interest Rate/Payable: | 9.75 % |
| Date Of Purchase: | Not provided. |
| Acceleration: | February 4, 2004. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statements: Safra National Bank of New York dated November 30, 2004 and UBS dated November 2004. |

Table 8.

| Plaintiff Beneficial Owner: | Mazoral, S.A. |
|---|---|
| Face Value: | U.S. $ 1,700,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GH7; ISIN No. US04114GH79 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | June 19, 2031. |
| Interest Rate/Payable: | 12 % |
| Date Of Purchase: | Not provided. |
| Acceleration: | February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statements:  Safra National Bank of New York dated November 30, 2004 and UBS dated November 2004. |

-11-

Table 9.

| | |
|---|---|
| Plaintiff Beneficial Owner: | Mazoral, S.A. |
| Face Value: | U.S. $ 170,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US04114GD65 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | February 21, 2012. |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | Not provided. |
| Acceleration: | February 4, 2004. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statements: Safra National Bank of New York dated November 30, 2004 and UBS dated November 2004. |

Table 10.

| | |
|---|---|
| Plaintiff Beneficial Owner: | Mazoral, S.A. |
| Face Value: | U.S. $ 13,423,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US04114AH34 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | Not provided. |
| Acceleration: | February 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statements:  Safra National Bank of New York dated November 30, 2004 and UBS dated November 2004. |

-13-

Table 11.

| | |
|---|---|
| Plaintiff Beneficial Owner: | Mazoral, S.A. |
| Face Value: | U.S. $ 250,000.00 |
| CUSIP No., ISIN No., BB No.: | ISIN No. XS0043120582 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | March 31, 2005. |
| Interest Rate/Payable: | Floating Interest Rate. |
| Date Of Purchase: | Not provided. |
| Acceleration: | N/A. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FRB Agreement dated December 6, 1992. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statements:  Safra National Bank of New York dated November 30, 2004 and UBS dated November 2004. |

DISCUSSION

This Court has already granted summary judgment in other cases to plaintiffs seeking to collect on the Republic's defaulted bonds issued under the 1994 FAA, the 1993 FAA and the FRB Agreement. This has occurred in Lightwater, supra, Mazzini v. Republic of Argentina, No. 03 Civ. 8120, 2005 U.S. Dist. LEXIS 5692 (S.D.N.Y. Mar. 31, 2005), and other cases. Only certain specific issues need to be discussed in connection with the present motion.


Standing and Proof of Ownership

In the two opinions in Fontana v. Republic of Argentina, 415 F.3d 238 (2d Cir. 2005), and Applestein v. Province of Buenos Aires, 415 F.3d 242 (2d Cir. 2005), the Second Circuit has held that an owner of a beneficial interest, such as plaintiff here, must receive authorization from the registered holder of the bond before it may sue, but that such authorization may be granted subsequent to the filing of a lawsuit. Alternatively, the Republic may waive the authorization requirement.

The Republic has agreed to waive objections based on lack of authorization where the court makes a finding of current ownership. See Transcript, March 28, 2006, Cilli v. Republic of Argentina (04 Civ. 6594).

Here, plaintiff has adequately demonstrated through its account statements that it owned the beneficial interests as of November 2004. There is no evidence of any change of ownership thereafter.

-15-

CONCLUSION

The motion to strike defendant's discovery requests is granted.

Plaintiff's motion for summary judgment is granted. Judgment will be entered for the principal amount of the bonds issued under the 1993 FAA and 1994 FAA plus accrued interest. With respect to the bonds issued under the FRB Agreement, judgment will be entered for any payments on those bonds that are due and unpaid as of the time of judgment.

The parties shall consult with one another concerning the form of the judgment and the amounts of interest that should be awarded in the judgment. If the parties are unable to reach agreement on those subjects, they shall jointly submit an agreed proposed judgment to the court. If the parties are unable to reach agreement on those subjects, plaintiff shall submit a proposed judgment to the court, and the Republic shall submit any objections to plaintiff's proposed judgment within five business days thereafter. The court will then resolve any remaining disagreements.

SO ORDERED.

Dated:    New York, New York
          May 4, 2006

THOMAS P. GRIESA
U.S.D.J.

-16-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED

```
------------------------------------------x
HECTOR MANUEL MOLDES et al.,         :
                                     :
                Plaintiffs,          :
                                     :        04 Civ. 6137 (TPG)
        - against -                  :
                                     :        **OPINION**
THE REPUBLIC OF ARGENTINA,           :
                                     :
                Defendant.           :
                                     :
------------------------------------------x
```

Plaintiffs are the beneficial owners of certain bond indebtedness issued

by defendant The Republic of Argentina.  The Republic defaulted on such

indebtedness in December 2001 during a profound fiscal crisis.  Plaintiffs are

suing to recover amounts due to them as a result of the default and have

moved for summary judgment.  Plaintiffs also move to strike the Republic's

discovery requests.

The motions are granted.

## FACTS

The bond indebtedness at issue is governed by one of two agreements:

(1) a Fiscal Agency Agreement dated October 19, 1994 (the "1994 FAA") and (2)

an Indenture dated July 8, 1998 (the "1998 Indenture").  The 1994 FAA is the

same agreement that governed the bond indebtedness on which this court

granted summary judgment to the plaintiffs in Lightwater Corporation Ltd. v.

Republic of Argentina, No. 02 Civ. 3804, 2003 WL 1878420 (S.D.N.Y. Apr. 14,

2003). Section 22 of the 1994 FAA and Section 113(c) of the 1998 Indenture state that the Republic waives sovereign immunity and consents to jurisdiction in any state or federal court in the borough of Manhattan in the City of New York. Both agreements provide that the Republic's obligations on the bonds are unconditional and that failure to make any payment of principal or interest for 30 days after the applicable payment date constitutes an event of default. A declaration by the Republic of a moratorium on the payment of principal or interest on its public external indebtedness is an event of default as well.

Paragraph 12 of the 1994 FAA provides for acceleration of principal if there is a failure to pay interest or a moratorium. If either of these events occurs,

> each holder of Securities and such Series may by such notice in writing declare the principal amount of Securities of such Series held by it to be due and payable immediately . . . .

The 1998 Indenture permits acceleration of principal only by holders of at least 25% in aggregate of the outstanding principal amount of the bonds under each agreement.

On December 24, 2001 the Republic declared a moratorium on payments of principal and interest on the external debt of the Republic. The court refers to its previous opinions for a description of the circumstances of these defaults. Lightwater, 2003 WL 1878420, at *2; Applestein v. Republic of Argentina, No. 02 Civ. 1773, 2003 WL 1990206, at *1 (S.D.N.Y. Apr. 29, 2003). On August 3,

2004, plaintiffs sent notices to Bankers Trust Company, the Fiscal Agent of The Republic of Argentina, declaring the principal amounts of the debt securities governed by the 1994 FAA and held by each plaintiff to be immediately due and payable.

The bonds that are the subject of this action are listed hereafter. Also listed are the amounts of the beneficial interests owned by each plaintiff.[1]

The following tables contain the necessary identifying information regarding each plaintiff's beneficial interests in bonds.

---

[1] The court notes the distinction between bonds and beneficial interests. In some previous opinions, the court has simply referred to the plaintiffs as owners of "bonds," when in fact plaintiffs are technically owners of "beneficial interests in bonds." The Republic actually issues "a bond" to a depository. The depository, in some form, issues "participations" to brokers, who sell "beneficial interests" to purchasers. These beneficial interests are identified by reference to the underlying bond (CUSIP or ISIN number or both; date of issuance and maturity; rate of interest) and the principal amount of the beneficial interest. This distinction is discussed more fully in Million Air Corp. v. Republic of Argentina, No. 04 Civ. 1048, 2005 U.S. Dist. LEXIS 23904 (S.D.N.Y. Oct. 17, 2005).

Table 1.

| Plaintiff Bond Holder or Beneficial Owner: | Graziella Bonadiman |
|---|---|
| Face Value: | U.S. $ 30,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about February 27, 2004. |
| Acceleration: | Notice sent August 3, 2004. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Cassa do Ros[ar,op do Padova e Rovigo dated April 30, 2005. |

-4-

Table 2.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Carlos Alberto Bruzzone |
| Face Value: | U.S. $ 48,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about May 1999. |
| Acceleration: | Notice sent August 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account summary from Caja de Valores dated March 31, 2005. |

Table 3.

| Plaintiff Bond Holder or Beneficial Owner: | Carlos Alberto Bruzzone |
|---|---|
| Face Value: | U.S. $ 68,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GF1; ISIN No. US040114GF14 |
| Date Of Issuance: | December 19, 2001. |
| Date Of Maturity: | December 19, 2008. |
| Interest Rate/Payable: | 7 % |
| Date Of Purchase: | On or about December 5, 2001. |
| Acceleration: | Notice sent August 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account summary from Caja de Valores dated March 31, 2005. |

Table 4.

| Plaintiff Bond Holder or Beneficial Owner: | Italia Camato |
|---|---|
| Face Value: | U.S. $ 50,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about April 15, 2004. |
| Acceleration: | Notice sent August 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Sao Paulo IMI dated April 30, 2005. |

Table 5.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Oscar Raul Clavijo & Ana Maria Aurora Otero |
| Face Value: | U.S. $ 280,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about January 30, 1997. |
| Acceleration: | Notice sent August 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Lehman Brothers dated March 31, 2005 |

Table 6.

| Plaintiff Bond Holder or Beneficial Owner: | Oscar Raul Clavijo & Ana Maria Aurora Otero |
|---|---|
| Face Value: | U.S. $ 140,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GA2; ISIN No. US040114GA27 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | June 15, 2015 |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | On or about June 15, 2000. |
| Acceleration: | Notice sent August 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Lehman Brothers dated March 31, 2005 |

Table 7.

| Plaintiff Bond Holder or Beneficial Owner: | Oscar Raul Clavijo & Ana Maria Aurora Otero |
|---|---|
| Face Value: | U.S. $ 63,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GF1; ISIN No. US040114GF14 |
| Date Of Issuance: | December 19, 2001. |
| Date Of Maturity: | December 19, 2008. |
| Interest Rate/Payable: | 7 % |
| Date Of Purchase: | On or about June 19, 2001. |
| Acceleration: | Notice sent August 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Lehman Brothers dated March 31, 2005 |

-10-

Table 8.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Livia Diaz |
| Face Value: | U.S. $ 6,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AV2; ISIN No. US040114AV28 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | September 19, 2027 |
| Interest Rate/Payable: | 9.75 % |
| Date Of Purchase: | Between June 29, 1998 and December 21, 1998. |
| Acceleration: | Notice sent August 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | -  Certification from Caja de Valores dated May 19, 2005. |

Table 9.

| Plaintiff Bond Holder or Beneficial Owner: | Livia Diaz |
|---|---|
| Face Value: | U.S. $ 27,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | Between July 7, 2000 and September 12, 2000. |
| Acceleration: | Notice sent August 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Caja de Valores dated May 19, 2005. |

Table 10.

| Plaintiff Bond Holder or Beneficial Owner: | Livia Diaz |
|---|---|
| Face Value: | U.S. $ 42,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GA2; ISIN No. US040114GA27 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | June 15, 2015 |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | Between August 4, 2000  and October 11, 2000. |
| Acceleration: | Notice sent August 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Caja de Valores dated May 19, 2005. |

-13-

Table 11.

| Plaintiff Bond Holder or Beneficial Owner: | Pedro Kalbermann, Evan Sondermann & Pablo Kalbermann |
|---|---|
| Face Value: | U.S. $ 1,000,000.00² |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about April 15, 2004. |
| Acceleration: | Notice sent August 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Wachovia Securities dated May 31, 2005. |

---

² The Republic has noted that the Kalbermanns have sought judgment on the beneficial interests in the same series of bonds in *Applestein v. Republic of Argentina*, 02 Civ. 4124, and *Morata v. Republic of Argentina*, 04 Civ. 3314. Nonetheless, the Kalbermanns have provided an account statement indicating that the beneficial interests in this series of bonds were purchased on several occasions, in amounts matching the claims in this matter and the *Applestein* and *Morata* matters. As such, the court is satisfied that the Kalbermanns have not sought relief on the same beneficial interests in multiple cases.

-14-

Table 12.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Nelson Dante Luciano, Dante Luciano, David Adrian Luciano & Mercedes Feliu |
| Face Value: | U.S. $ 53,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AN0; ISIN No. US040114AN02 |
| Date Of Issuance: | September 10, 1996. |
| Date Of Maturity: | September 10, 2006. |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | On or about October 18, 2000 and April 18, 2001. |
| Acceleration: | Notice sent August 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Caja de Valores dated April 29, 2005. |

-15-

Table 13.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Nelson Dante Luciano, Dante Luciano, David Adrian Luciano & Mercedes Feliu |
| Face Value: | U.S. $ 31,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about March 15, 2000. |
| Acceleration: | Notice sent August 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Caja de Valores dated April 29, 2005. |

Table 14.

| Plaintiff Bond Holder or Beneficial Owner: | Salvatore Melchionda |
|---|---|
| Face Value: | U.S. $ 100,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about April 7, 2004. |
| Acceleration: | Notice sent on August 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Antonveneta dated March 31, 2005. |

Table 15.

| Plaintiff Bond Holder or Beneficial Owner: | Franco Pezze |
|---|---|
| Face Value: | EURO 70,000.00 |
| CUSIP No., ISIN No., BB No.: | ISIN No. XS0113550213 |
| Date Of Issuance: | Not provided |
| Date Of Maturity: | July 5, 2004. |
| Interest Rate/Payable: | 10 % |
| Date Of Purchase: | On or about June 2000. |
| Acceleration: | Not provided. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | Indenture dated July 8, 1998. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Credito Artigiano S.p.A. dated March 16, 2005. |

Table 16.

| Plaintiff Bond Holder or Beneficial Owner: | Tiziano Sasselli & Giovanna Ferro |
|---|---|
| Face Value: | U.S. $ 345,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114BE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009. |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | On or about April 15, 2004. |
| Acceleration: | Notice sent August 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account Statement from UniCredit Banca dated January 3, 2005. |

Table 17.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Tiziano Sasselli & Giovanna Ferro |
| Face Value: | U.S. $ 255,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114AN0; ISIN No. US040114AN02 |
| Date Of Issuance: | September 10, 1996. |
| Date Of Maturity: | September 10, 2006. |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | On or about April 15, 2004. |
| Acceleration: | Notice sent August 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account Statement from UniCredit Banca dated January 3, 2005. |

DISCUSSION

This Court has already granted summary judgment in other cases to plaintiffs seeking to collect on the Republic's defaulted bonds issued under the 1994 FAA and the 1998 Indenture. This has occurred in <u>Lightwater</u>, <u>supra</u>, <u>Applestein,</u> <u>supra</u>, and other cases. Only certain specific issues need to be discussed in connection with the present motion.

Standing and Proof of Ownership

In the two opinions in <u>Fontana v. Republic of Argentina</u>, 415 F.3d 238 (2d Cir. 2005), and <u>Applestein v. Province of Buenos Aires</u>, 415 F.3d 242 (2d Cir. 2005), the Second Circuit has held that an owner of a beneficial interest, such as plaintiffs here, must receive authorization from the registered holder of the bond before it may sue, but that such authorization may be granted subsequent to the filing of a lawsuit. Alternatively, the Republic may waive the authorization requirement.

The Republic has agreed to waive objections based on lack of authorization where the court makes a finding of current ownership. <u>See</u> Transcript, March 28, 2006, <u>Cilli v. Republic of Argentina</u> (04 Civ. 6594).

Here, plaintiffs have adequately demonstrated through their account statements that owned the beneficial interests as of various dates in 2005. There is no evidence of any change of ownership thereafter.

-21-

CONCLUSION

The motion to strike defendant's discovery requests is granted.

The motions for summary judgment are granted.   Judgment will be entered for the principal amount of the bonds issued under the 1994 FAA plus accrued interest.   With respect to the bonds issued under the 1998 Indenture, judgment will be entered for any payments on those bonds that are due and unpaid as of the time of judgment.

The parties shall consult with one another concerning the form of the judgment and the amounts of interest that should be awarded in the judgment. If the parties are unable to reach agreement on those subjects, they shall jointly submit an agreed proposed judgment to the court.   If the Republic and any plaintiff are unable to reach agreement on those subjects, that plaintiff shall submit a proposed judgment to the court, and the Republic shall submit any objections to that plaintiff's proposed judgment within five business days thereafter.   The court will then resolve any remaining disagreements.

SO ORDERED.

Dated:   New York, New York
         May 4, 2006

_____
THOMAS P. GRIESA
U.S.D.J.

-22-



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------x
MARCELO EDUARDO PRIMA et al.,          :
                                       :
                    Plaintiffs,        :
                                       :      04 Civ. 1077 (TPG)
            - against -                :
                                       :      **OPINION**
THE REPUBLIC OF ARGENTINA,             :
                                       :
                    Defendant.         :
                                       :
------------------------------------------x
```

        Plaintiffs are the beneficial owners of certain bond indebtedness issued

by defendant The Republic of Argentina.  The Republic defaulted on such

indebtedness in December 2001 during a profound fiscal crisis.  Plaintiffs are

suing to recover amounts due to them as a result of the default and have

moved for summary judgment.  Plaintiffs also move to strike the Republic's

discovery requests.

        The motions are granted.

                                    FACTS

        The bond indebtedness at issue is governed by one of four agreements:

(1) a Fiscal Agency Agreement dated October 19, 1994 (the "1994 FAA"), (2) a

Fiscal Agency Agreement dated December 10, 1993 (the "1993 FAA"), (3) a

Floating Rate and Bond Exchange Agreement dated December 6, 1992 (the

"FRB Agreement"), and (4) an Indenture dated July 8, 1998 (the "1998

Indenture").  The 1994 FAA is the same agreement that governed the bond

indebtedness on which this court granted summary judgment to the plaintiffs in Lightwater Corporation Ltd. v. Republic of Argentina, No. 02 Civ. 3804, 2003 WL 1878420 (S.D.N.Y. Apr. 14, 2003). Section 22 of the 1994 FAA, Section 20 of the 1993 FAA, Section 6.07 of the FRB Agreement and Section 113(c) of the Indenture state that the Republic waives sovereign immunity and consents to jurisdiction in any state or federal court in the borough of Manhattan in the City of New York. All four agreements provide that the Republic's obligations on the bonds are unconditional and that failure to make any payment of principal or interest for 30 days after the applicable payment date constitutes an event of default. A declaration by the Republic of a moratorium on the payment of principal or interest on its public external indebtedness is an event of default as well. Paragraph 12 of the 1994 FAA provides for acceleration of principal if there is a failure to pay interest or a moratorium. If either of these events occurs,

> each holder of Securities and such Series may by such notice in writing declare the principal amount of Securities of such Series held by it to be due and payable immediately . . . .

The 1993 FAA contains similar language.

The FRB Agreement and the 1998 Indenture both permit acceleration of principal only by holders of at least 25% in aggregate of the outstanding principal amount of the bonds under each agreement.

-2-

On December 24, 2001 the Republic declared a moratorium on payments of principal and interest on the external debt of the Republic. The court refers to its previous opinions for a description of the circumstances of these defaults. Lightwater, 2003 WL 1878420, at *2; Applestein v. Republic of Argentina, No. 02 Civ. 1773, 2003 WL 1990206, at *1 (S.D.N.Y. Apr. 29, 2003). On February 3 and February 4, 2004, plaintiffs sent notices to Bankers Trust Company, the Fiscal Agent of The Republic of Argentina, declaring the principal amounts of the debt securities governed by the 1994 FAA and 1993 FAA held by each plaintiff to be immediately due and payable.

The bonds that are the subject of this action are listed hereafter. Also listed are the amounts of the beneficial interests owned by plaintiff.[1]

The following tables contain the necessary identifying information regarding plaintiff's beneficial interests in bonds.

---

[1] The court notes the distinction between bonds and beneficial interests. In some previous opinions, the court has simply referred to the plaintiffs as owners of "bonds," when in fact plaintiffs are technically owners of "beneficial interests in bonds." The Republic actually issues "a bond" to a depository. The depository, in some form, issues "participations" to brokers, who sell "beneficial interests" to purchasers. These beneficial interests are identified by reference to the underlying bond (CUSIP or ISIN number or both; date of issuance and maturity; rate of interest) and the principal amount of the beneficial interest. This distinction is discussed more fully in Million Air Corp. v. Republic of Argentina, No. 04 Civ. 1048, 2005 U.S. Dist. LEXIS 23904 (S.D.N.Y. Oct. 17, 2005).

Table 1.

| Plaintiff Bond Holder or Beneficial Owner: | Guillermo Almanza and Felicitas C. Von Gromann |
|---|---|
| Face Value: | U.S. $ 190,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GF1; ISIN No. US04114GF14 |
| Date Of Issuance: | December 19, 2001. |
| Date Of Maturity: | December 19, 2008. |
| Interest Rate/Payable: | 7 % |
| Date Of Purchase: | Between December 10 and December 14, 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Citibank dated April 13, 2004. |

Table 2.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Compagnie Francaise D'Investissements S.A. |
| Face Value: | U.S. $ 1,403,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114BE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009. |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | Between January 9 and June 30, 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account summary from Banc of America Securities LLC dated April 30, 2004. |

Table 3.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Compagnie Francaise D'Investissements S.A. |
| Face Value: | U.S. $ 50,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | Between January 9 and June 30, 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account summary from Banc of America Securities LLC dated April 30, 2004. |

Table 4.

| Plaintiff Bond Holder or Beneficial Owner: | Ricardo Sanchez Caballero, Elisa Sanchez Caballero, and Susana Molina Gowland |
|---|---|
| Face Value: | U.S. $ 216,233.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GF1; ISIN No. US040114GF14 |
| Date Of Issuance: | December 19, 2001. |
| Date Of Maturity: | December 19, 2008. |
| Interest Rate/Payable: | 7 % |
| Date Of Purchase: | Between October 31, 2000 and June 22, 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statements from Smith Barney - Citigroup dated March 28 and April 30, 2004. |

Table 5.

| Plaintiff Bond Holder or Beneficial Owner: | Ricardo Sanchez Caballero, Elisa Sanchez Caballero, and Susana Molina Gowland |
|---|---|
| Face Value: | U.S. $ 1,836,853.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GG9; ISIN No. US040114GG96 |
| Date Of Issuance: | June 19, 2001. |
| Date Of Maturity: | June 19, 2018. |
| Interest Rate/Payable: | 12.25 % |
| Date Of Purchase: | Between October 31, 2000 and June 22, 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statements from Smith Barney - Citigroup dated March 28 and April 30, 2004. |

Table 6.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Horacio Alberto M. Sanchez Caballero, Ricardo Sanchez Caballero, and Elisa Sanchez Caballero |
| Face Value: | U.S. $ 130,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about September 30, 2003. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certificate from Caja de Valores dated May 21, 2004. |

Table 7.

| Plaintiff Bond Holder or Beneficial Owner: | Horacio Alberto M. Sanchez Caballero, Ricardo Sanchez Caballero, and Elisa Sanchez Caballero |
|---|---|
| Face Value: | U.S. $ 13,962,491.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GG9; ISIN No. US040114GG96 |
| Date Of Issuance: | June 19, 2001. |
| Date Of Maturity: | June 19, 2018. |
| Interest Rate/Payable: | 12.25 % |
| Date Of Purchase: | On or about June 22, December 11, and December 13, 2001 and January 8, May 22, May 24, and June 12, 2002. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Goldman Sachs & Co. dated April 30, 2004. |

Table 8.

| Plaintiff Bond Holder or Beneficial Owner: | Horacio Alberto M. Sanchez Caballero, Ricardo Sanchez Caballero, and Elisa Sanchez Caballero |
|---|---|
| Face Value: | U.S. $ 8,625,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GG9; ISIN No. US040114GG96 |
| Date Of Issuance: | June 19, 2001. |
| Date Of Maturity: | June 19, 2018. |
| Interest Rate/Payable: | 12.25 % |
| Date Of Purchase: | On or about December 18, 2001 and June 26, June 28, October 8, and October 21, 2002 and April 16, 2003. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Lehman Brothers dated April 30, 2004. |

Table 9.

| Plaintiff Bond Holder or Beneficial Owner: | Horacio Alberto M. Sanchez Caballero, Ricardo Sanchez Caballero, and Elisa Sanchez Caballero |
|---|---|
| Face Value: | U.S. $ 2,547,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GG9; ISIN No. US040114GG96 |
| Date Of Issuance: | June 19, 2001. |
| Date Of Maturity: | June 19, 2018. |
| Interest Rate/Payable: | 12.25 % |
| Date Of Purchase: | On or about December 1, 2003. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from UBS dated April 30, 2004. |

-12-

Table 10.

| Plaintiff Bond Holder or Beneficial Owner: | Horacio Alberto M. Sanchez Caballero, Ricardo Sanchez Caballero, and Elisa Sanchez Caballero |
|---|---|
| Face Value: | U.S. $ 3,290,850.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GG9; ISIN No. US040114GG96 |
| Date Of Issuance: | June 19, 2001. |
| Date Of Maturity: | June 19, 2018. |
| Interest Rate/Payable: | 12.25 % |
| Date Of Purchase: | On or about August 1, September 24, October 1, October 2, October 3, October 6, October 7, October 8, October 9, October 10, and October 15, 2003. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certificate from Caja de Valores dated April 30, 2004. |

-13-

Table 11.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Omar Adrian Cayre and Maria Beatriz Neveu |
| Face Value: | U.S. $ 130,000.00 |
| CUSIP No., ISIN No., BB No.: | ISIN No. US11942XAA37 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | March 15, 2002. |
| Interest Rate/Payable: | 12.5 % |
| Date Of Purchase: | On or about August 9, 2000. |
| Acceleration: | None given. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | Indenture dated July 8, 1998. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Merrill Lynch dated March 2004. |

Table 12.

| Plaintiff Bond Holder or Beneficial Owner: | Orfelio Cayre, Maria E. De Leon, and Omar Adrian Cayre. |
|---|---|
| Face Value: | U.S. $ 94,000.00 |
| CUSIP No., ISIN No., BB No.: | ISIN No. US11942XAA37 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | March 15, 2002. |
| Interest Rate/Payable: | 12.5 % |
| Date Of Purchase: | On or about August 9, 2000. |
| Acceleration: | None given. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | Indenture dated July 8, 1998. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Merrill Lynch dated March 2004. |

Table 13.

| Plaintiff Bond Holder or Beneficial Owner: | Guillermo Carlos F. Centeno |
|---|---|
| Face Value: | U.S. $ 25,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about August 27, 1998. |
| Acceleration: | Notice sent on February 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Letter from Deutsche Bank dated May 21, 2004. |

Table 14.

| Plaintiff Bond Holder or Beneficial Owner: | Dolly Esther Cubasso |
|---|---|
| Face Value: | U.S. $ 39,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | Between June 20, 2000 and November 9, 2001. |
| Acceleration: | Notice sent on February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Caja de Valores dated March 31, 2004. |

-17-

Table 15.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Guido Debiasi |
| Face Value: | U.S. $ 123,534.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GF1; ISIN No. US040114GF14 |
| Date Of Issuance: | December 19, 2001. |
| Date Of Maturity: | December 19, 2008. |
| Interest Rate/Payable: | 7 % |
| Date Of Purchase: | On or about June 19, 2001. |
| Acceleration: | Notice sent on February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Caja de Valores dated March 31, 2004. |

Table 16.

| Plaintiff Bond Holder or Beneficial Owner: | Francisco Eduardo De La Merced and Isabel Evangelina Bavassi |
|---|---|
| Face Value: | U.S. $ 37,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114BE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009. |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | Between June 2002 and September 2002. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certificate from Caja de Valores dated May 20, 2004. |

Table 17.

| Plaintiff Bond Holder or Beneficial Owner: | Francisco Eduardo De La Merced and Isabel Evangelina Bavassi |
|---|---|
| Face Value: | U.S. $ 25,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | Between June 2002 and September 2002. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certificate from Caja de Valores dated May 20, 2004. |

Table 18.

| Plaintiff Bond Holder or Beneficial Owner: | Attilio De Rosa |
|---|---|
| Face Value: | U.S. $ 135,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114BE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009. |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | Between May 3, 2001 and December 1, 2003. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Letter from Bank fur Arbeit und Wirtschaft AG dated July 13, 2004. |

Table 19.

| Plaintiff Bond Holder or Beneficial Owner: | Attilio De Rosa |
|---|---|
| Face Value: | U.S. $ 115,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114FC9; ISIN No. US040114 FC91 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | March 15, 2010. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | Between May 3, 2001 and December 1, 2003. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Letter from Bank fur Arbeit und Wirtschaft AG dated July 13, 2004. |

Table 20.

| Plaintiff Bond Holder or Beneficial Owner: | Attilio De Rosa |
|---|---|
| Face Value: | EURO 23,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 008633347; ISIN No. XS0086333472 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | April 21, 2008. |
| Interest Rate/Payable: | 8.125 % |
| Date Of Purchase: | Between May 3, 2001 and December 1, 2003. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Letter from Bank fur Arbeit und Wirtschaft AG dated July 13, 2004. |

Table 21.

| Plaintiff Bond Holder or Beneficial Owner: | Bernardo G. Ferman |
|---|---|
| Face Value: | U.S. $ 119,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about August 6, 2001. |
| Acceleration: | Notice sent February 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Letter from Deutsche Bank dated May 13, 2004. |

Table 22.

| Plaintiff Bond Holder or Beneficial Owner: | Alejandro Enrique Fernandez |
|---|---|
| Face Value: | U.S. $ 202,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | Between July 7, 1998 and February 8, 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Caja de Valores dated March 31, 2004. |

Table 23.

| Plaintiff Bond Holder or Beneficial Owner: | Graciela Adriana Gamito and Adrian Caleffa |
|---|---|
| Face Value: | U.S. $ 10,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GG9; ISIN No. US040114GG96 |
| Date Of Issuance: | June 19, 2001. |
| Date Of Maturity: | June 19, 2018. |
| Interest Rate/Payable: | 12.25 % |
| Date Of Purchase: | On or about July 24, 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certificate from Caja de Valores dated May 17, 2004. |

Table 24.

| Plaintiff Bond Holder or Beneficial Owner: | Graciela Adriana Gamito and Adrian Caleffa |
|---|---|
| Face Value: | U.S. $ 65,900.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GG9; ISIN No. US040114GG96 |
| Date Of Issuance: | June 19, 2001. |
| Date Of Maturity: | June 19, 2018. |
| Interest Rate/Payable: | 12.25 % |
| Date Of Purchase: | On or about July 24, 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certificate from Caja de Valores dated May 17, 2004. |

Table 25.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Vittorio Giannattasio and Monica Giannattasio |
| Face Value: | U.S. $ 160,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114BE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009. |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | On or about August 13, 1999. |
| Acceleration: | Notice sent on February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Letter from UniCredit dated May 21, 2004. |

Table 26.

| Plaintiff Bond Holder or Beneficial Owner: | Rodolfo Alberto Gil and Vivian Oriana Vicencio Saavedra |
|---|---|
| Face Value: | U.S. $ 238,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about October 21, 2003. |
| Acceleration: | Notice sent February 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco Ria de la Plata S.A. dated April 6, 2004. |

Table 27.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Juan Omar Giovachini and Lilia Angelica Parisi |
| Face Value: | U.S. $ 245,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AN0; ISIN No. US040114AN02 |
| Date Of Issuance: | September 10, 1996. |
| Date Of Maturity: | September 10, 2006. |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | Between December 15 and December 18, 1997. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco Bilbao Vizcaya Argentaria dated April 30, 2004. |

-30-

Table 28.

| Plaintiff Bond Holder or Beneficial Owner: | Juan Omar Giovachini and Lilia Angelica Parisi |
|---|---|
| Face Value: | U.S. $ 100,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | Between December 15 and December 18, 1997. |
| Acceleration: | Notice sent February 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco Bilbao Vizcaya Argentaria dated April 30, 2004. |

-31-

Table 29.

| Plaintiff Bond Holder or Beneficial Owner: | Maurizio Giove and Patrizia Valeri |
|---|---|
| Face Value: | U.S. $ 50,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114GG9; ISIN No. US040114GG96 |
| Date Of Issuance: | June 19, 2001. |
| Date Of Maturity: | June 19, 2018. |
| Interest Rate/Payable: | 12.25 % |
| Date Of Purchase: | Between February 19, 2003 and October 13, 2003 |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Letter from UniCredit Banca dated July 12, 2004. |

Table 30.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Maurizio Giove and Patrizia Valeri |
| Face Value: | U.S. $ 30,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GH7; ISIN No. US040114GH79 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | June 19, 2031. |
| Interest Rate/Payable: | 12 % |
| Date Of Purchase: | Between January 8, 2002 and December 6, 2002 |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from UniCredit Banca dated July 1, 2004. |

Table 31.

| Plaintiff Bond Holder or Beneficial Owner: | Maurizio Giove and Patrizia Valeri |
|---|---|
| Face Value: | U.S. $ 55,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | Between November 23, 1998 and January 8, 2002. |
| Acceleration: | Notice sent February 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from UniCredit Banca dated July 1, 2004. |

Table 32.

| Plaintiff Bond Holder or Beneficial Owner: | Thea Pina Gorgone, Alessandra Padoan, Gloria Padoan, and Pierluigi Padoan |
|---|---|
| Face Value: | U.S. $ 768,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114BE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009. |
| Interest Rate/Payable: | 11.75 %. |
| Date Of Purchase: | On or about October 2, 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Crediveneto – Credito Cooperativo Scarl dated June 16, 2004; Account statement from Crediveneto dated December 31, 2003. |

-35-

Table 33.

| Plaintiff Bond Holder or Beneficial Owner: | Thea Pina Gorgone and Alessandra Padoan |
|---|---|
| Face Value: | U.S. $ 287,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114BE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009. |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | On or about August 27, 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Crediveneto – Credito Cooperativo Scarl dated June 16, 2004; Account statement from Crediveneto dated December 31, 2003. |

-36-

Table 34.

| Plaintiff Bond Holder or Beneficial Owner: | Thea Pina Gorgone and Luigi Padoan |
|---|---|
| Face Value: | U.S. $ 580,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AN0; ISIN No. US040114AN02 |
| Date Of Issuance: | September 10, 1996. |
| Date Of Maturity: | September 10, 2006. |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | On or about July 6, 1998. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Crediveneto – Credito Cooperativo Scarl dated June 16, 2004; Account statement from Crediveneto dated December 31, 2003. |

-37-

Table 35.

| Plaintiff Bond Holder or Beneficial Owner: | Thea Pina Gorgone and Luigi Padoan |
|---|---|
| Face Value: | U.S. $ 735,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about March 29, 1999. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Crediveneto – Credito Cooperativo Scarl dated June 16, 2004; Account statement from Crediveneto dated December 31, 2003. |

Table 36.

| Plaintiff Bond Holder or Beneficial Owner: | Thea Pina Gorgone and Luigi Padoan |
|---|---|
| Face Value: | U.S. $ 1,912,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114BE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009. |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | On or about June 22, 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Crediveneto – Credito Cooperativo Scarl dated June 16, 2004; Account statement from Crediveneto dated December 31, 2003. |

Table 37.

| Plaintiff Bond Holder or Beneficial Owner: | Thea Pina Gorgone and Luigi Padoan |
|---|---|
| Face Value: | U.S. $ 245,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about September 29, 2001. |
| Acceleration: | Notice sent February 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Crediveneto – Credito Cooperativo Scarl dated June 16, 2004; Account statement from Crediveneto dated December 31, 2003. |

Table 38.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Monica Haydee Graciotti and Lisandro Roberto Arturo Mora |
| Face Value: | U.S. $ 598,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | In or around September 1999. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19,1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certificate from Caja de Valores dated May 18, 2004. |

Table 39.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Manuel G. Guillen and Beatriz M. Castano |
| Face Value: | U.S. $ 95,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AN0; ISIN No. US040114AN02 |
| Date Of Issuance: | September 10, 1996. |
| Date Of Maturity: | September 10, 2006. |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | On or about February 7, 2000. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Citibank dated March 31, 2004. |

-42-

Table 40.

| Plaintiff Bond Holder or Beneficial Owner: | Julio Hector Krasuk |
|---|---|
| Face Value: | U.S. $ 55,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No.040114AN0; ISIN No. US040114AN02 |
| Date Of Issuance: | September 10, 1996. |
| Date Of Maturity: | September 10, 2006. |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | On or about June 19, 1997. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from UBS dated May 11, 2004. |

Table 41.

| Plaintiff Bond Holder or Beneficial Owner: | Julio Hector Krasuk |
|---|---|
| Face Value: | U.S. $ 42,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No.040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about April 5, 2000. |
| Acceleration: | Notice sent February 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from UBS dated May 11, 2004. |

Table 42.

| Plaintiff Bond Holder or Beneficial Owner: | Julio Hector Krasuk |
|---|---|
| Face Value: | U.S. $ 100,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No.040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about November 12, 1997 and October 12, 2000. |
| Acceleration: | Notice sent February 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Credit Suisse Private Banking dated May 18, 2004. |

Table 43.

| Plaintiff Bond Holder or Beneficial Owner: | Carlos Alberto Lagos and Maria de las Mercedes Lagos |
|---|---|
| Face Value: | U.S. $ 75,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114BE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009 |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | On or about September 1, 1998. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from HSBC dated May 10, 2004. |

Table 44.

| Plaintiff Bond Holder or Beneficial Owner: | Carlos Alberto Lagos and Maria de las Mercedes Lagos |
|---|---|
| Face Value: | U.S. $ 130,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about June 4, 1999. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from HSBC dated May 10, 2004. |

Table 45.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Carlos Alberto Lagos and Maria de las Mercedes Lagos |
| Face Value: | U.S. $ 55,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114BE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009 |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | On or about November 8, 1999. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from HSBC dated May 10, 2004. |

Table 46.

| Plaintiff Bond Holder or Beneficial Owner: | Carlos Alberto Lagos and Maria Susana Pagano |
|---|---|
| Face Value: | U.S. $ 130,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about June 4, 1999. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from HSBC dated May 10, 2004. |

Table 47.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Carlos Alberto Lagos and Maria Susana Pagano |
| Face Value: | U.S. $ 40,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about November 8, 1999. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from HSBC dated May 10, 2004. |

Table 48.

| Plaintiff Bond Holder or Beneficial Owner: | Carlos Alberto Lagos and Maria Susana Pagano |
|---|---|
| Face Value: | U.S. $ 75,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114ABE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009 |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | On or about December 2, 1998. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from HSBC dated May 10, 2004. |

Table 49.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Carlos Alberto Lagos and Maria Susana Pagano |
| Face Value: | U.S. $ 55,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114BE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009 |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | On or about December 2, 1998. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from HSBC dated May 10, 2004. |

Table 50.

| Plaintiff Bond Holder or Beneficial Owner: | Jose Alberto Landi[2] |
|---|---|
| Face Value: | U.S. $ 5,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | Between October 1997 and July 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Caja de Velores dated March 31, 2004. |

---

[2] The Republic has noted that Mr. Landi was granted summary judgment regarding beneficial interests in the same bond in *Mazzini v. Republic of Argentina*, 03 Civ. 8120. Nonetheless, Mr. Landi has provided separate account statements indicating that the beneficial interests in this matter are distinct from those in the *Mazzini* action.

Table 51.

| Plaintiff Bond Holder or Beneficial Owner: | Jose Alberto Landi |
|---|---|
| Face Value: | U.S. $ 10,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AV2; ISIN No. US040114AV28 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | September 19, 2027 |
| Interest Rate/Payable: | 9.75 % |
| Date Of Purchase: | Between October 1997 and July 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Caja de Velores dated March 31, 2004. |

Table 52.

| Plaintiff Bond Holder or Beneficial Owner: | Jose Alberto Landi |
|---|---|
| Face Value: | U.S. $ 6,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GA2; ISIN No. US040114GA27 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | June 15, 2015 |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | Between October 1997 and July 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Caja de Velores dated March 31, 2004. |

Table 53.

| Plaintiff Bond Holder or Beneficial Owner: | Jose Alberto Landi |
|---|---|
| Face Value: | U.S. $ 3,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | Between October 1997 and July 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Caja de Velores dated March 31, 2004. |

Table 54.

| Plaintiff Bond Holder or Beneficial Owner: | Jose Alberto Landi |
|---|---|
| Face Value: | U.S. $ 16,596.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GF1; ISIN No. US040114GF14 |
| Date Of Issuance: | December 19, 2001. |
| Date Of Maturity: | December 19, 2008 |
| Interest Rate/Payable: | 7 % |
| Date Of Purchase: | Between October 1997 and July 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Caja de Velores dated March 31, 2004. |

Table 55.

| Plaintiff Bond Holder or Beneficial Owner: | Jose Alberto Landi |
|---|---|
| Face Value: | U.S. $ 1,675.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GH7; ISIN No. US040114GH79 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | June 19, 2031 |
| Interest Rate/Payable: | 12 % |
| Date Of Purchase: | Between October 1997 and July 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Caja de Velores dated March 31, 2004. |

Table 56.

| Plaintiff Bond Holder or Beneficial Owner: | Miguel Limoli |
|---|---|
| Face Value: | U.S. $ 30,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114BE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009 |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | On or about February 7, 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Caja de Velores dated March 31, 2004. |

Table 57.

| Plaintiff Bond Holder or Beneficial Owner: | Maura Maletti |
|---|---|
| Face Value: | U.S. $ 75,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about October 17, 2003. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Popolare dell'Emilia Romagna Europe International dated May 17, 2004. |

Table 58.

| Plaintiff Bond Holder or Beneficial Owner: | Tralove Company, S.A. |
|---|---|
| Face Value: | U.S. $ 470,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GG9; ISIN No. US040114GG96 |
| Date Of Issuance: | June 19, 2001. |
| Date Of Maturity: | June 19, 2018. |
| Interest Rate/Payable: | 12.25 % |
| Date Of Purchase: | On or about November 19, 2003. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statements from Merrill Lynch dated May 31, 2004. |

Table 59.

| Plaintiff Bond Holder or Beneficial Owner: | Francisco Jose Mechura & Graciela Donnantuoni |
|---|---|
| Face Value: | U.S. $ 60,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | Between July 2, 1999 and August 13, 2001 |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certificate from Caja de Velores dated May 17, 2004. |

-62-

Table 60.

| Plaintiff Bond Holder or Beneficial Owner: | Francisco Jose Mechura & Graciela Donnantuoni |
|---|---|
| Face Value: | U.S. $ 83,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | Between July 2, 1999 and August 13, 2001 |
| Acceleration: | **No notice provided.[3]** |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certificate from Caja de Velores dated May 17, 2004. |

---

[3] Typically, plaintiffs in this action have sent notices of acceleration that include all beneficial interests on bonds arising out of the same FAA. Mr. Mechura, however, has attached a notice that only accelerates the $60,000 in bonds described in Table 59, not the $83,000 in Table 60.

Table 61.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Jose Oscar Mittelman |
| Face Value: | U.S. $ 150,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about November 15, 2000. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certificate from Caja de Velores dated May 12, 2004. |

-64-

Table 61.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Lucio Ramon Mur |
| Face Value: | U.S. $ 83,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about May 14, 2002. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certificate from Caja de Velores dated May 24, 2004. |

Table 62.

| Plaintiff Bond Holder or Beneficial Owner: | Carlos Alberto Muraca |
|---|---|
| Face Value: | U.S. $ 40,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | Between November 5, 2003 and November 10, 2003. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Caja de Velores dated March 31, 2004. |

-66-

Table 63.

| Plaintiff Bond Holder or Beneficial Owner: | Carlos Alberto Muraca |
|---|---|
| Face Value: | U.S. $ 45,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AV2; ISIN No. US040114AV28 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | September 19, 2027 |
| Interest Rate/Payable: | 9.75 % |
| Date Of Purchase: | Between November 5, 2003 and November 10, 2003. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Caja de Velores dated March 31, 2004. |

-67-

Table 64.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Carlos Alberto Muraca |
| Face Value: | U.S. $ 45,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GG9; ISIN No. US040114GG96 |
| Date Of Issuance: | June 19, 2001. |
| Date Of Maturity: | June 19, 2018. |
| Interest Rate/Payable: | 12.25 % |
| Date Of Purchase: | Between November 5, 2003 and November 10, 2003. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Caja de Velores dated March 31, 2004. |

Table 65.

| Plaintiff Bond Holder or Beneficial Owner: | Jesus Jorge Otañi |
|---|---|
| Face Value: | U.S. $ 75,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about February 24, 1999, January 17, 2000, October 26, 2000, June 26, 2001, September 25, 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Caja de Velores dated March 31, 2004. |

-69-

Table 66.

| Plaintiff Bond Holder or Beneficial Owner: | Jesus Jorge Otañi |
|---|---|
| Face Value: | U.S. $ 17,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No.040114AN0; ISIN No. US040114AN02 |
| Date Of Issuance: | September 10, 1996. |
| Date Of Maturity: | September 10, 2006. |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | On or about February 24, 1999, January 17, 2000, October 26, 2000, June 26, 2001, September 25, 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Caja de Velores dated March 31, 2004. |

Table 67.

| Plaintiff Bond Holder or Beneficial Owner: | Diego Pedro Peluffo & Felicitas Florencia Fox Anasagasti |
|---|---|
| Face Value: | U.S. $ 50,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GA2; ISIN No. US040114GA27 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | June 15, 2015 |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | On or about June 1999 |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from BankBoston (Uruguay) dated April 30, 2004. |

-71-

Table 68.

| Plaintiff Bond Holder or Beneficial Owner: | Diego Pedro Peluffo & Felicitas Florencia Fox Anasagasti |
|---|---|
| Face Value: | U.S. $ 34,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about March 1996. |
| Acceleration: | Notice sent February 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from BankBoston (Uruguay) dated April 30, 2004. |

Table 69.

| Plaintiff Bond Holder or Beneficial Owner: | Diego Pedro Peluffo & Felicitas Florencia Fox Anasagasti |
|---|---|
| Face Value: | U.S. $ 117,000.00 |
| CUSIP No., ISIN No., BB No.: | ISIN No. XS0043120236 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | March 31, 2005. |
| Interest Rate/Payable: | Floating Interest Rate. |
| Date Of Purchase: | Not provided. |
| Acceleration: | N/A. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FRB Agreement dated December 6, 1992. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from BankBoston (Uruguay) dated April 30, 2004. |

Table 70.

| Plaintiff Bond Holder or Beneficial Owner: | Marcelo Eduardo Prima & Andrea Fabiana Fucito |
|---|---|
| Face Value: | U.S. $ 25,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about December 4, 2003. |
| Acceleration: | Notice sent February 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Wachovia Securities dated May 31, 2004. |

Table 71.

| Plaintiff Bond Holder or Beneficial Owner: | Marcelo Eduardo Prima & Andrea Fabiana Fucito |
|---|---|
| Face Value: | U.S. $ 20,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about June 14, 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Wachovia Securities dated May 31, 2004. |

-75-

Table 72.

| Plaintiff Bond Holder or Beneficial Owner: | Makapyan S.R.L. |
|---|---|
| Face Value: | U.S. $ 356,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GG9; ISIN No. US040114GG96 |
| Date Of Issuance: | June 19, 2001. |
| Date Of Maturity: | June 19, 2018. |
| Interest Rate/Payable: | 12.25 % |
| Date Of Purchase: | On or about March 2002 and June 2002 |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Caja de Velores dated May 14, 2004. |

Table 73.

| Plaintiff Bond Holder or Beneficial Owner: | Makapyan S.R.L. |
|---|---|
| Face Value: | U.S. $ 35,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about March 2002 and June 2002 |
| Acceleration: | Notice sent February 4, 2004.[4] |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Caja de Velores dated May 14, 2004. |

---

[4] The acceleration notice contains a typographical error:  two digits were transposed such that the notice purports to accelerate $53,000 of the GD65 bond instead of $35,000, the correct amount.

## Table 74.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Makapyan S.R.L. |
| Face Value: | U.S. $ 80,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114ABE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009 |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | On or about March 2002 and June 2002 |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Caja de Velores dated May 14, 2004. |

Table 75.

| Plaintiff Bond Holder or Beneficial Owner: | Makapyan S.R.L. |
|---|---|
| Face Value: | U.S. $ 70,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AV2; ISIN No. US040114AV28 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | September 19, 2027 |
| Interest Rate/Payable: | 9.75 % |
| Date Of Purchase: | On or about March 2002 and June 2002 |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Caja de Velores dated May 14, 2004. |

Table 76.

| Plaintiff Bond Holder or Beneficial Owner: | Makapyan S.R.L. |
|---|---|
| Face Value: | U.S. $ 127,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GG9; ISIN No. US040114GG96 |
| Date Of Issuance: | June 19, 2001. |
| Date Of Maturity: | June 19, 2018. |
| Interest Rate/Payable: | 12.25 % |
| Date Of Purchase: | On or about March 2002 and June 2002 |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Caja de Velores dated May 14, 2004. |

Table 77.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Makapyan S.R.L. |
| Face Value: | U.S. $ 40,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about March 2002 and June 2002 |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Caja de Velores dated May 14, 2004. |

Table 78.

| Plaintiff Bond Holder or Beneficial Owner: | Makapyan S.R.L. |
|---|---|
| Face Value: | U.S. $ 25,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about March 2002 and June 2002 |
| Acceleration: | Notice sent February 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Caja de Velores dated May 14, 2004. |

Table 79.

| Plaintiff Bond Holder or Beneficial Owner: | Andrea Ronzon & Silva Falomo |
|---|---|
| Face Value: | U.S. $ 100,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114FC9; ISIN No. US040114FC91 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | March 15, 2010. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about November 10, 2003. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Unicredit Banca, S.p.A. as of July 7, 2004. |

-83-

Table 80.

| Plaintiff Bond Holder or Beneficial Owner: | Jorge Horacio Rosini & Alicia Ester Salvador |
|---|---|
| Face Value: | U.S. $ 142,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about August 1, 2003. |
| Acceleration: | Notice sent February 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Citicorp Financial Services Corp. dated June 30, 2004. |

Table 81.

| Plaintiff Bond Holder or Beneficial Owner: | Feysol S.A. |
|---|---|
| Face Value: | U.S. $ 760,000.00 |
| CUSIP No.,  ISIN No., BB No.: | ISIN No. XS0043120236 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | March 31, 2005. |
| Interest Rate/Payable: | Floating Interest Rate. |
| Date Of Purchase: | Not provided. |
| Acceleration: | N/A. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FRB Agreement dated December 6, 1992. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Deutsche Bank Luxembourg S.A. dated July 9, 2004. |

Table 82.

| Plaintiff Bond Holder or Beneficial Owner: | Sergio Daniel Salama |
|---|---|
| Face Value: | U.S. $ 180,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GG9; ISIN No. US040114GG96 |
| Date Of Issuance: | June 19, 2001. |
| Date Of Maturity: | June 19, 2018. |
| Interest Rate/Payable: | 12.25 % |
| Date Of Purchase: | On or about May 30, 2003. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Merrill Lynch dated April 30, 2004. |

-86-

Table 83.

| Plaintiff Bond Holder or Beneficial Owner: | Abel Vicente Santana & Maria Claudia Mangialavori |
|---|---|
| Face Value: | U.S. $ 91,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GF1; ISIN No. US040114GF14 |
| Date Of Issuance: | December 19, 2001. |
| Date Of Maturity: | December 19, 2008 |
| Interest Rate/Payable: | 7 % |
| Date Of Purchase: | On or about November 29, 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Caja de Velores dated May 18, 2004. |

-87-

Table 84.

| Plaintiff Bond Holder or Beneficial Owner: | Abel Vicente Santana & Maria Claudia Mangialavori |
|---|---|
| Face Value: | U.S. $ 90,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GF1; ISIN No. US040114GF14 |
| Date Of Issuance: | December 19, 2001. |
| Date Of Maturity: | December 19, 2008 |
| Interest Rate/Payable: | 7 % |
| Date Of Purchase: | On or about November 29, 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Caja de Velores dated May 18, 2004. |

Table 85.

| Plaintiff Bond Holder or Beneficial Owner: | Abel Vicente Santana & Maria Claudia Mangialavori |
|---|---|
| Face Value: | U.S. $ 109,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GF1; ISIN No. US040114GF14 |
| Date Of Issuance: | December 19, 2001. |
| Date Of Maturity: | December 19, 2008 |
| Interest Rate/Payable: | 7 % |
| Date Of Purchase: | On or about November 29, 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Caja de Velores dated May 21, 2004. |

Table 86.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Roberto Virgilio Sauro & Rita Leso |
| Face Value: | U.S. $ 900,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | Between February 3, 1998 and October 26, 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statements from Banca Poplare di Verona, dated August 31, 2004, and from Banca di Verona, dated December 31, 2004. |

Table 87.

| Plaintiff Bond Holder or Beneficial Owner: | Roberto Virgilio Sauro & Rita Leso |
|---|---|
| Face Value: | U.S. $ 77,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No.040114AN0; ISIN No. US040114AN02 |
| Date Of Issuance: | September 10, 1996. |
| Date Of Maturity: | September 10, 2006. |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | Between February 3, 1998 and October 26, 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Poplare di Verona dated August 31, 2004. |

Table 88.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Roberto Virgilio Sauro & Rita Leso |
| Face Value: | EURO 50,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 008633347; ISIN No. XS0086333472 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | April 21, 2008. |
| Interest Rate/Payable: | 8.125 % |
| Date Of Purchase: | Between February 3, 1998 and October 26, 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Poplare di Verona dated August 31, 2004. |

Table 89.

| Plaintiff Bond Holder or Beneficial Owner: | Roberto Virgilio Sauro & Rita Leso |
|---|---|
| Face Value: | U.S. $ 55,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about February 4, 1998. |
| Acceleration: | Notice sent February 3, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Poplare di Verona dated August 31, 2004. |

Table 90.

| Plaintiff Bond Holder or Beneficial Owner: | Lucio Sperlandio & Maristella Toninello |
|---|---|
| Face Value: | U.S. $ 443,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114ABE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009 |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | On or about September 25, 2001. |
| Acceleration: | Notice sent February 4, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Crediveneto – Credito Cooperativo Scarl dated June 1, 2004; Account statement from Crediveneto dated December 31, 2003. |

DISCUSSION

This Court has already granted summary judgment in other cases to plaintiffs seeking to collect on the Republic's defaulted bonds issued under the 1994 FAA, the 1993 FAA, the FRB Agreement and the 1998 Indenture. This has occurred in Lightwater, supra, Applestein, supra, Mazzini v. Republic of Argentina, No. 03 Civ. 8120, 2005 U.S. Dist. LEXIS 5692 (S.D.N.Y. Mar. 31, 2005), and other cases. Only certain specific issues need to be discussed in connection with the present motion.

Standing and Proof of Ownership

In the two opinions in Fontana v. Republic of Argentina, 415 F.3d 238 (2d Cir. 2005), and Applestein v. Province of Buenos Aires, 415 F.3d 242 (2d Cir. 2005), the Second Circuit has held that an owner of a beneficial interest, such as plaintiffs here, must receive authorization from the registered holder of the bond before it may sue, but that such authorization may be granted subsequent to the filing of a lawsuit. Alternatively, the Republic may waive the authorization requirement.

The Republic has agreed to waive objections based on lack of authorization where the court makes a finding of current ownership. See Transcript, March 28, 2006, Cilli v. Republic of Argentina (04 Civ. 6594).

-95-

Here, plaintiffs have adequately demonstrated through their account statements that owned the beneficial interests as of various dates in 2004. There is no evidence of any change of ownership thereafter.

## CONCLUSION

The motion to strike defendant's discovery requests is granted.

The motions for summary judgment are granted. Judgment will be entered for the principal amount of the bonds as indicated in the Tables in this opinion, plus accrued interest, <u>with exception of the $83,000 of principal that plaintiffs Mechura and Donnantuoni failed to accelerate, as indicated in Table 60.</u> With respect to the bonds issued under the FRB Agreement and the 1998 Indenture, judgment will be entered for any payments on those bonds that are due and unpaid as of the time of judgment.

The parties shall consult with one another concerning the form of the judgment and the amounts of interest that should be awarded in the judgment. If the parties are unable to reach agreement on those subjects, they shall jointly submit an agreed proposed judgment to the court. If the Republic and any plaintiff are unable to reach agreement on those subjects, that plaintiff shall submit a proposed judgment to the court, and the Republic shall submit any objections to that plaintiff's proposed judgment within five business days thereafter. The court will then resolve any remaining disagreements.

-96-

SO ORDERED.

Dated: New York, New York
   May 4, 2006

              _____
              THOMAS P. GRIESA
              U.S.D.J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x
ALESSANDRO MORATA, et al.,                  :
                                            :
                        Plaintiffs,         :
                                            :          04 Civ. 3314 (TPG)
            - against -                     :
                                            :             **OPINION**
THE REPUBLIC OF ARGENTINA,                  :
                                            :
                        Defendant.          :
                                            :
------------------------------------------x

Plaintiffs are the beneficial owners of certain bond indebtedness issued

by defendant The Republic of Argentina. The Republic defaulted on such

indebtedness in December 2001 during a profound fiscal crisis. Plaintiffs are

suing to recover amounts due to them as a result of the default and have

moved for summary judgment. Plaintiffs also move to strike the Republic's

discovery requests.

The motions are granted.

FACTS

The bond indebtedness at issue is governed by one of three agreements:

(1) a Fiscal Agency Agreement dated October 19, 1994 (the "1994 FAA"), (2) a

Fiscal Agency Agreement dated December 10, 1993 (the "1993 FAA"), and (3) a

Floating Rate and Bond Exchange Agreement dated December 6, 1992 (the

"FRB Agreement"). The 1994 FAA is the same agreement that governed the

bond indebtedness on which this court granted summary judgment to the

plaintiffs in <u>Lightwater Corporation Ltd. v. Republic of Argentina</u>, No. 02 Civ. 3804, 2003 WL 1878420 (S.D.N.Y. Apr. 14, 2003). Section 22 of the 1994 FAA, Section 20 of the 1993 FAA and Section 6.07 of the FRB Agreement state that the Republic waives sovereign immunity and consents to jurisdiction in any state or federal court in the borough of Manhattan in the City of New York. The FAAs and the FRB Agreement provide that the Republic's obligations on the bonds are unconditional and that failure to make any payment of principal or interest for 30 days after the applicable payment date constitutes an event of default. Under all three agreements, a declaration by the Republic of a moratorium on the payment of principal or interest on its public external indebtedness is an event of default as well.

Paragraph 12 of the 1994 FAA provides for acceleration of principal if there is a failure to pay interest or a moratorium. If either of these events occurs,

> each holder of Securities and such Series may by such notice in writing declare the principal amount of Securities of such Series held by it to be due and payable immediately . . . .

The 1993 FAA contains similar language.

The FRB Agreement permits acceleration of principal only by holders of at least 25% in aggregate of the outstanding principal amount of the bonds under each agreement.

On December 24, 2001 the Republic declared a moratorium on payments of principal and interest on the external debt of the Republic. The court refers to its previous opinions for a description of the circumstances of these defaults. Lightwater, 2003 WL 1878420, at *2; Applestein v. Republic of Argentina, No. 02 Civ. 1773, 2003 WL 1990206, at *1 (S.D.N.Y. Apr. 29, 2003). On April 5, April 22, and December 8, 2004, plaintiffs sent notices to Bankers Trust Company, the Fiscal Agent of The Republic of Argentina, declaring the principal amounts of the debt securities governed by the 1994 FAA and 1993 FAA held by each plaintiff to be immediately due and payable.

The bonds that are the subject of this action are listed hereafter. Also listed are the amounts of the beneficial interests owned by plaintiff.[1]

The following tables contain the necessary identifying information regarding plaintiff's beneficial interests in bonds.

---

[1] The court notes the distinction between bonds and beneficial interests. In some previous opinions, the court has simply referred to the plaintiffs as owners of "bonds," when in fact plaintiffs are technically owners of "beneficial interests in bonds." The Republic actually issues "a bond" to a depository. The depository, in some form, issues "participations" to brokers, who sell "beneficial interests" to purchasers. These beneficial interests are identified by reference to the underlying bond (CUSIP or ISIN number or both; date of issuance and maturity; rate of interest) and the principal amount of the beneficial interest. This distinction is discussed more fully in Million Air Corp. v. Republic of Argentina, No. 04 Civ. 1048, 2005 U.S. Dist. LEXIS 23904 (S.D.N.Y. Oct. 17, 2005).

Table 1.

| Plaintiff Bond Holder or Beneficial Owner: | Milena Ampalla |
|---|---|
| Face Value: | U.S. $ 10,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AN0; ISIN No. US040114AN02 |
| Date Of Issuance: | September 10, 1996. |
| Date Of Maturity: | September 10, 2006. |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | On or about December 23, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Intesa dated December 30, 2004. |

-4-

Table 2.

| Plaintiff Bond Holder or Beneficial Owner: | Milena Ampalla |
|---|---|
| Face Value: | U.S. $ 20,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114BE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009. |
| Interest Rate/Payable: | 11.75 %. |
| Date Of Purchase: | On or about December 23, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Intesa dated December 30, 2004. |

Table 3.

| Plaintiff Bond Holder or Beneficial Owner: | Milena Ampalla |
|---|---|
| Face Value: | U.S. $ 62,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about December 23, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Intesa dated December 30, 2004. |

Table 4.

| Plaintiff Bond Holder or Beneficial Owner: | Juan Francisco Pedro Aragone, Juan Francisco Aragone, Clara Susana Bellomo de Aragone & Maria Susana Aragone |
|---|---|
| Face Value: | U.S. $ 110,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about May 14, 2001. |
| Acceleration: | Notice sent April 22, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Merrill Lynch dated December 2004. |

Table 5.

| Plaintiff Bond Holder or Beneficial Owner: | Juan Francisco Pedro Aragone, Juan Francisco Aragone, Clara Susana Bellomo de Aragone & Maria Susana Aragone |
|---|---|
| Face Value: | U.S. $ 130,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about July 24, 2001. |
| Acceleration: | Notice sent April 22, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Merrill Lynch dated December 2004. |

Table 6.

| Plaintiff Bond Holder or Beneficial Owner: | Antonella Bacchiochi |
|---|---|
| Face Value: | U.S. $ 20,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114BE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009 |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | On or about September 30, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco Mediolanum dated December 30, 2004. |

Table 7.

| Plaintiff Bond Holder or Beneficial Owner: | Filippo Bagolin |
|---|---|
| Face Value: | U.S. $ 25,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about February 26, 2004. |
| Acceleration: | Notice sent April 22, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco Antonveneta dated November 28, 2004 and certification from same dated November 5, 2004. |

Table 8.

| Plaintiff Bond Holder or Beneficial Owner: | Anneliese Gunda Becker |
|---|---|
| Face Value: | U.S. $ 260,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about March 2, 2004. |
| Acceleration: | Notice sent December 8, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco Popolare Comercio e Industria S.p.A. dated December 30, 2004. |

Table 9.

| Plaintiff Bond Holder or Beneficial Owner: | Anneliese Gunda Becker |
|---|---|
| Face Value: | U.S. $ 223,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AZ3; ISIN No. US040114AZ32 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | 2005 (exact date not provided). |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | On or about March 2, 2004. |
| Acceleration: | Notice sent December 8, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco Popolare Comercio e Industria S.p.A. dated December 30, 2004. |

Table 10.

| Plaintiff Bond Holder or Beneficial Owner: | Anneliese Gunda Becker |
|---|---|
| Face Value: | U.S. $ 50,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about March 2, 2004. |
| Acceleration: | Notice sent December 8, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco Popolare Comercio e Industria S.p.A. dated December 30, 2004. |

Table 11.

| Plaintiff Bond Holder or Beneficial Owner: | Giorgio Bennati |
|---|---|
| Face Value: | U.S. $ 36,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about December 29, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco di San Giorgio dated December 30, 2004. |

Table 12.

| Plaintiff Bond Holder or Beneficial Owner: | Orsolina Berra |
|---|---|
| Face Value: | U.S. $ 113,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about December 5, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Intesa dated January 19, 2004. |

Table 13.

| Plaintiff Bond Holder or Beneficial Owner: | Giorgio Bistagnino & Eugenia Re |
|---|---|
| Face Value: | U.S. $ 12,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about February 19, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Cassa di Risparmio di Alessandria Spa dated January 5, 2005. |

-16-

Table 14.

| Plaintiff Bond Holder or Beneficial Owner: | Giorgio Bistagnino & Eugenia Re |
|---|---|
| Face Value: | U.S. $ 12,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114FC9; ISIN No. US040114FC91 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | March 15, 2010. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about February 19, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Cassa di Risparmio di Alessandria Spa dated January 5, 2005. |

Table 15.

| Plaintiff Bond Holder or Beneficial Owner: | Stefano Bistagnino & Felicina Gaioli |
|---|---|
| Face Value: | U.S. $ 20,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about February 19, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Cassa di Risparmio di Alessandria Spa dated January 5, 2005. |

Table 16.

| Plaintiff Bond Holder or Beneficial Owner: | Stefano Bistagnino & Felicina Gaioli |
|---|---|
| Face Value: | U.S. $ 15,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114FC9; ISIN No. US040114FC91 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | March 15, 2010. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about February 19, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Cassa di Risparmio di Alessandria Spa dated January 5, 2005. |

Table 17.

| Plaintiff Bond Holder or Beneficial Owner: | Andrea Bonazzi, Mirco Masina & Luca Vitali |
|---|---|
| Face Value: | U.S. $ 61,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GH7; ISIN No. US040114GH79 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | June 19, 2031. |
| Interest Rate/Payable: | 12 % |
| Date Of Purchase: | On or about September 10, 2003. |
| Acceleration: | Notice sent April 22, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates; etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Fideuram dated November 30, 2004. |

Table 18.

| Plaintiff Bond Holder or Beneficial Owner: | Andrea Bonazzi & Mirco Masina |
|---|---|
| Face Value: | U.S. $ 170,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | Between March 9, 2004 and March 10, 2004. |
| Acceleration: | Notice sent April 22, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca BSI Italia S.p.A. dated November 30, 2004. |

Table 19.

| Plaintiff Bond Holder or Beneficial Owner: | Andrea Bonazzi & Mirco Masina |
|---|---|
| Face Value: | U.S. $ 20,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GG9; ISIN No. US040114GG96 |
| Date Of Issuance: | June 19, 2001. |
| Date Of Maturity: | June 19, 2018. |
| Interest Rate/Payable: | 12.25 % |
| Date Of Purchase: | Between May 16, 2003 and May 19, 2003. |
| Acceleration: | Notice sent April 22, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Unicredit Private Banking dated November 30, 2004. |

Table 20.

| Plaintiff Bond Holder or Beneficial Owner: | Andrea Bonazzi & Mirco Masina |
|---|---|
| Face Value: | U.S. $ 60,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GH7; ISIN No. US040114GH79 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | June 19, 2031. |
| Interest Rate/Payable: | 12 % |
| Date Of Purchase: | Between May 16, 2003 and May 19, 2003. |
| Acceleration: | Notice sent April 22, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Unicredit Private Banking dated November 30, 2004. |

Table 21.

| Plaintiff Bond Holder or Beneficial Owner: | Stefania Bonpensiere |
|---|---|
| Face Value: | U.S. $ 20,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about January 2, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Cassa di Risparmio di Tortona s.p.a. dated December 22, 2004. |

Table 22.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Alberto Silvio Bursztyn & Dora Raquel Malec |
| Face Value: | U.S. $ 5,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114BC3; ISIN No. US040114BC38 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 25, 2019. |
| Interest Rate/Payable: | 12.125 % |
| Date Of Purchase: | Between September 22, 2000 and September 29, 2000. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certificate from Caja de Valores dated November 22, 2004. |

Table 23.

| Plaintiff Bond Holder or Beneficial Owner: | Alberto Silvio Bursztyn & Dora Raquel Malec |
|---|---|
| Face Value: | U.S. $ 7,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GA2; ISIN No. US040114GA27 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | June 15, 2015 |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | Between September 22, 2000 and September 29, 2000. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certificate from Caja de Valores dated November 22, 2004. |

Table 24.

| Plaintiff Bond Holder or Beneficial Owner: | Alberto Silvio Bursztyn & Dora Raquel Malec |
|---|---|
| Face Value: | U.S. $ 15,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about June 12, 2001. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certificate from Caja de Valores dated November 22, 2004. |

Table 25.

| Plaintiff Bond Holder or Beneficial Owner: | Alberto Silvio Bursztyn & Dora Raquel Malec |
|---|---|
| Face Value: | U.S. $ 37,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GF1; ISIN No. US040114GF14 |
| Date Of Issuance: | December 19, 2001. |
| Date Of Maturity: | December 19, 2008 |
| Interest Rate/Payable: | 7 % |
| Date Of Purchase: | On or about August 23, 2001. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certificate from Caja de Valores dated November 22, 2004. |

-28-

Table 26.

| Plaintiff Bond Holder or Beneficial Owner: | Rudolfo Burul |
|---|---|
| Face Value: | U.S. $ 435,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114FC9; ISIN No. US040114FC91 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | March 15, 2010. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about January 15, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco di Roma dated December 30, 2004. |

Table 27.

| Plaintiff Bond Holder or Beneficial Owner: | Marcello Calanca & Elettra Casalini |
|---|---|
| Face Value: | U.S. $ 50,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114AZ3; ISIN No. US040114AZ32 |
| Date Of Issuance: | December 4, 1998 |
| Date Of Maturity: | December 4, 2005 |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | On or about January 2, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Carige dated December 30, 2004. |

Table 28.

| Plaintiff Bond Holder or Beneficial Owner: | Marcello Calanca & Elettra Casalini |
|---|---|
| Face Value: | U.S. $ 50,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about January 2, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Carige dated December 30, 2004. |

Table 29.

| Plaintiff Bond Holder or Beneficial Owner: | Bruno Calmasini & Tarcosoa Dalbosco |
|---|---|
| Face Value: | U.S. $ 51,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about December 30, 2003 |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Cassa Rurale di Isera dated December 30, 2004. |

Table 30.

| Plaintiff Bond Holder or Beneficial Owner: | Bruno Calmasini & Tarcosoa Dalbosco |
|---|---|
| Face Value: | U.S. $ 25,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114FC9; ISIN No. US040114 FC91 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | March 15, 2010. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about December 30, 2003 |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Cassa Rurale di Isera dated December 30, 2004. |

Table 31.

| Plaintiff Bond Holder or Beneficial Owner: | Italia Camato |
|---|---|
| Face Value: | U.S. $ 30,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about March 5, 2004. |
| Acceleration: | Notice sent December 8, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from San Paolo dated December 31, 2004; letter from San Paolo dated January 5, 2005. |

Table 32.

| Plaintiff Bond Holder or Beneficial Owner: | Vincenzo Carbone |
|---|---|
| Face Value: | U.S. $ 100,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114FC9; ISIN No. US040114FC91 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | March 15, 2010. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about December 26, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Intesa dated November 30, 2004. |

Table 33.

| Plaintiff Bond Holder or Beneficial Owner: | Marco Cavalli & Valeria Toso |
|---|---|
| Face Value: | U.S. $ 102,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about March 4, 2004. |
| Acceleration: | Notice sent December 8, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Popolare di Bergamo dated December 30, 2004. |

-36-

Table 34.

| Plaintiff Bond Holder or Beneficial Owner: | Marco Cavalli & Valeria Toso |
|---|---|
| Face Value: | U.S. $ 70,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about March 4, 2004. |
| Acceleration: | Notice sent December 8, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Popolare di Bergamo dated December 30, 2004. |

Table 35.

| Plaintiff Bond Holder or Beneficial Owner: | Carmelina Censi |
|---|---|
| Face Value: | U.S. $ 250,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about January 19, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco Popolare di Milano dated December 30, 2004; letter from same dated January 5, 2005. |

Table 36.

| Plaintiff Bond Holder or Beneficial Owner: | Gian Francesco Cercato & Barbara Ricchi |
|---|---|
| Face Value: | U.S. $ 20,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about January 12, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca 121 – Promozione Finanziaria – Gruppo MPS dated December 31, 2004. |

Table 37.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Maria Luigia Conti & Francesco Mauro Ghezzi |
| Face Value: | U.S. $ 20,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No.040114AN0; ISIN No. US040114AN02 |
| Date Of Issuance: | September 10, 1996. |
| Date Of Maturity: | September 10, 2006. |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | On or about November 21, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Intest dated November 30, 2004. |

Table 38.

| Plaintiff Bond Holder or Beneficial Owner: | Silvana Corato & Giulia Greggio |
|---|---|
| Face Value: | U.S. $ 25,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about March 23, 2004. |
| Acceleration: | Notice sent April 22, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca del Centroveneto dated November 29, 2004. |

Table 39.

| Plaintiff Bond Holder or Beneficial Owner: | Giancarlo Bartolomei Corsi |
|---|---|
| Face Value: | U.S. $ 447,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about November 21, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Credito BErgamasco dated January 5, 2005. |

-42-

Table 40.

| Plaintiff Bond Holder or Beneficial Owner: | Francesco Corso & Giuseppina Corso |
|---|---|
| Face Value: | U.S. $ 35,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114FC9; ISIN No. US040114FC91 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | March 15, 2010. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about January 2, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca del Garda dated December 13, 2004. |

-43-

Table 41.

| Plaintiff Bond Holder or Beneficial Owner: | Laura Cosci |
|---|---|
| Face Value: | U.S. $ 45,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about December 29, 2003. |
| Acceleration: | Notice sent April 5, 2004 **but not properly accelerated**. Notice lists wrong bond. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Popolare di Cortona dated December 7, 2004; account statement from Banca Popolare di Lodi dated December 17, 2004. |

Table 42.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Aldo David |
| Face Value: | U.S. $ 12,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about December 5, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Intesa dated November 30, 2004. |

Table 43.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Antonio de Francesco |
| Face Value: | U.S. $ 250,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about December 5, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement Banco di Sicilia dated December 30, 2004; letter from same dated January 5, 2005 |

Table 44.

| Plaintiff Bond Holder or Beneficial Owner: | Arnoldo Dolcetti, Tellade Nava & Gabriele Dolcetti |
|---|---|
| Face Value: | U.S. $ 85,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about January 15, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Cassa di Risparmio di Ferrara dated December 30, 2004. |

Table 45.

| Plaintiff Bond Holder or Beneficial Owner: | Giuseppe Dolcetti & Gabriele Dolcetti |
|---|---|
| Face Value: | U.S. $ 9,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about January 15, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Cassa di Risparmio di Ferrara dated December 30, 2004. |

## Table 46.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | First City S.A. (Carlos Sousa, President) |
| Face Value: | U.S. $ 64,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about October 1999. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Deutsche Bank dated November 22, 2004. |

Table 47.

| Plaintiff Bond Holder or Beneficial Owner: | First City S.A. (Carlos Sousa, President) |
|---|---|
| Face Value: | U.S. $ 70,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No.040114AN0; ISIN No. US040114AN02 |
| Date Of Issuance: | September 10, 1996. |
| Date Of Maturity: | September 10, 2006. |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | On or about October 1999. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Deutsche Bank dated November 22, 2004. |

-50-

Table 48.

| Plaintiff Bond Holder or Beneficial Owner: | Francesco Foggiato |
|---|---|
| Face Value: | U.S. $ 113,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about December 5, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Intesa dated January 19, 2005. |

Table 49.

| Plaintiff Bond Holder or Beneficial Owner: | Rinaldo Frisinghelli & Graziella Dacroce |
|---|---|
| Face Value: | U.S. $ 27,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about January 2, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Cassa Rurale Alta Vallagarina dated December 15, 2004; account statement from Cassa Rurale di Rovereto dated November 30, 2004. |

Table 50.

| Plaintiff Bond Holder or Beneficial Owner: | Angiolino Fusato, Anna Storchi & Gabriele Fusato |
|---|---|
| Face Value: | U.S. $ 18,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114FC9; ISIN No. US040114FC91 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | March 15, 2010. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about January 2, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from La Valsabbina dated November 30, 2004. |

<u>Table 51.</u>

| | |
|---|---|
| <u>Plaintiff Bond Holder or Beneficial Owner:</u> | Maddalena Gaioli & Felicina Gaioli |
| <u>Face Value:</u> | U.S. $ 30,000.00 |
| <u>CUSIP No., ISIN No., BB No.:</u> | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| <u>Date Of Issuance:</u> | None given. |
| <u>Date Of Maturity:</u> | February 21, 2012 |
| <u>Interest Rate/Payable:</u> | 12.375 % |
| <u>Date Of Purchase:</u> | On or about February 19, 2004. |
| <u>Acceleration:</u> | Notice sent April 5, 2004. |
| <u>Contract Documents:</u> (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| <u>Evidence of Ownership Proffered:</u> (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Cassa di Risparmio di Alessandria Spa dated December 30, 2004. |

-54-

Table 52.

| Plaintiff Bond Holder or Beneficial Owner: | Maddalena Gaioli & Felicina Gaioli |
|---|---|
| Face Value: | U.S. $ 30,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114FC9; ISIN No. US040114FC91 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | March 15, 2010. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about February 19, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Cassa di Risparmio di Alessandria Spa dated December 30, 2004. |

-55-

Table 53.

| Plaintiff Bond Holder or Beneficial Owner: | Francesco Mauro Ghezzi |
|---|---|
| Face Value: | U.S. $ 30,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114FC9; ISIN No. US040114FC91 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | March 15, 2010. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about November 17, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Intesa dated November 30, 2004. |

-56-

Table 54.

| Plaintiff Bond Holder or Beneficial Owner: | Lydia Haydee Gigaglia |
|---|---|
| Face Value: | U.S. $ 119,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about January 12, 200, August 7, 2000 & February 7, 2001. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Caja de Velores dated December 20, 2004. |

Table 55.

| Plaintiff Bond Holder or Beneficial Owner: | Gianfranco Guarini |
|---|---|
| Face Value: | U.S. $ 125,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about December 29, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Credito Emiliano – Credem dated December 20, 2004; letter from same dated December 20, 2004. |

-58-

Table 56.

| Plaintiff Bond Holder or Beneficial Owner: | Corrado Guerrini |
|---|---|
| Face Value: | U.S. $ 100,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about January 16, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco di Credito Cooperativo della Romagna Occidentale dated December 30, 2004. |

-59-

Table 57.

| Plaintiff Bond Holder or Beneficial Owner: | Marta Guerrini |
|---|---|
| Face Value: | U.S. $ 50,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about January 16, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco di Credito Cooperativo della Romagna Occidentale dated December 30, 2004. |

## Table 58.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Inter Palmisano S.A. (Maria Dora Velazquez, President) |
| Face Value: | U.S. $ 200,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about February 17, 2000. |
| Acceleration: | Notice sent April 22, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statements from ABN-AMBRO Bank dated November 30, 2004. |

Table 59.

| Plaintiff Bond Holder or Beneficial Owner: | Inter Palmisano S.A. (Maria Dora Velazquez, President) |
|---|---|
| Face Value: | U.S. $ 230,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about February 17, 2000. |
| Acceleration: | Notice sent April 22, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statements from ABN-AMBRO Bank dated November 30, 2004. |

Table 60.

| Plaintiff Bond Holder or Beneficial Owner: | Pablo Hugo Kalbermann |
|---|---|
| Face Value: | U.S. $ 90,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about April 23, 2001. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Wachovia Securities dated March 31, 2005. |

-63-

## Table 61.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Eva Sondermann Geller, Pedro Kalbermann, Pablo Kalbermann |
| Face Value: | U.S. $ 130,000.00[2] |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114ABE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009 |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | On or about May 4, 2001 |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Wachovia Securities dated March 31, 2005. |

---

[2] The Republic has noted that the Kalbermanns have sought judgment on beneficial interests in Argentine bonds in *Applestein v. Republic of Argentina*, 02 Civ. 4124, and *Moldes v. Republic of Argentina*, 04 Civ. 6137. The Kalbermanns have provided an account statement indicating that the beneficial interests on which they have sought judgment were purchased on several separate occasions, and are distinct. As such, the court is satisfied that the Kalbermanns have not sought relief on the same beneficial interests in multiple cases.

Table 62.

| Plaintiff Bond Holder or Beneficial Owner: | Maritza Lenti & Claudio Mangano |
|---|---|
| Face Value: | U.S. $ 70,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114FC9; ISIN No. US040114FC91 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | March 15, 2010. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about January 9, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca di Roma dated December 30, 2004. |

Table 63.

| Plaintiff Bond Holder or Beneficial Owner: | Angelo Leoni & Rachele Bontempi |
|---|---|
| Face Value: | U.S. $ 33,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about December 26, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Cassa Rurale di Arco – Garda Trentino dated December 30, 2004. |

Table 64.

| Plaintiff Bond Holder or Beneficial Owner: | Lerinerco S.A. (Beatriz Piriz, President) |
|---|---|
| Face Value: | U.S. $ 10,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about January 2, 2002. |
| Acceleration: | Notice sent April 22, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Merrill Lynch dated December 31, 2004. |

Table 65.

| Plaintiff Bond Holder or Beneficial Owner: | Lerinerco S.A. (Beatriz Piriz, President) |
|---|---|
| Face Value: | U.S. $ 130,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AN0; ISIN No. US040114AN02 |
| Date Of Issuance: | September 10, 1996. |
| Date Of Maturity: | September 10, 2006. |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | Between September 25, 1997 & September 18, 1998. |
| Acceleration: | Notice sent April 22, 2004. |
| Contract Documents:<br><br>(FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered:<br><br>(Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Merrill Lynch dated December 31, 2004. |

Table 66.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Lerinerco S.A. (Beatriz Piriz, President) |
| Face Value: | U.S. $ 168,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | Between September 25, 1997 & September 18, 1998. |
| Acceleration: | Notice sent April 22, 2004. |
| Contract Documents:<br><br>(FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered:<br><br>(Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Merrill Lynch dated December 31, 2004. |

Table 67.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Lerinerco S.A. (Beatriz Piriz, President) |
| Face Value: | U.S. $ 100,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AZ3; ISIN No. US040114AZ32 |
| Date Of Issuance: | December 4, 1998 |
| Date Of Maturity: | December 4, 2005 |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | On or about December 27, 2001. |
| Acceleration: | Notice sent April 22, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Merrill Lynch dated December 31, 2004. |

Table 68.

| Plaintiff Bond Holder or Beneficial Owner: | Lerinerco S.A. (Beatriz Piriz, President) |
|---|---|
| Face Value: | U.S. $ 70,000.00 |
| CUSIP No., ISIN No., BB No.: | ISIN No. XS0043120582 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | March 31, 2005. |
| Interest Rate/Payable: | Floating Interest Rate. |
| Date Of Purchase: | Not provided. |
| Acceleration: | N/A. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FRB Agreement dated December 6, 1992. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Merrill Lynch dated December 31, 2004. |

-71-

Table 69.

| Plaintiff Bond Holder or Beneficial Owner: | Carmelo Maio |
|---|---|
| Face Value: | U.S. $ 178,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | Between December 21, 2003 and January 15, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca di Sicilia dated December 30, 2004 and letter from same dated January 4, 2005; account statement from Sudtiroler Volksbank Banca Popolare dell'Alto Adige dated December 30, 2004 and letter from same dated December 10, 2004. |

Table 70.

| Plaintiff Bond Holder or Beneficial Owner: | Dora Raquel Malec, Alberto Silvio Bursztyn & Andrea Susana Bursztyn |
|---|---|
| Face Value: | U.S. $ 40,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114BC3; ISIN No. US040114BC38 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 25, 2019. |
| Interest Rate/Payable: | 12.125 % |
| Date Of Purchase: | On or about September 25, 2000. |
| Acceleration: | Notice sent April 22, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from ABN AMRO Bank dated November 22, 2004. |

Table 71.

| Plaintiff Bond Holder or Beneficial Owner: | Dora Raquel Malec, Alberto Silvio Bursztyn & Andrea Susana Bursztyn |
|---|---|
| Face Value: | U.S. $ 23,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114FC9; ISIN No. US040114FC91 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | March 15, 2010. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about September 25, 2000. |
| Acceleration: | Notice sent April 22, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from ABN AMRO Bank dated November 22, 2004. |

Table 72.

| Plaintiff Bond Holder or Beneficial Owner: | Romano Marton |
|---|---|
| Face Value: | U.S. $ 100,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about January 30, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Intesa dated December 30, 2004. |

Table 73.

| Plaintiff Bond Holder or Beneficial Owner: | Guglielmina Massara & Martino Verna |
|---|---|
| Face Value: | U.S. $ 20,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114BC3; ISIN No. US040114BC38 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 25, 2019. |
| Interest Rate/Payable: | 12.125 % |
| Date Of Purchase: | On or about February 6, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Unicredit Xelion Banca dated December 30, 2004. |

Table 74.

| Plaintiff Bond Holder or Beneficial Owner: | Mativa S.R.L. (Marco Cavalli, Partner and Manager) |
|---|---|
| Face Value: | U.S. $ 340,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about March 4, 2004. |
| Acceleration: | Notice sent December 8, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Popolare di Bergamo dated December 30, 2004. |

Table 75.

| Plaintiff Bond Holder or Beneficial Owner: | Mativa S.R.L. (Marco Cavalli, Partner and Manager) |
|---|---|
| Face Value: | U.S. $ 300,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114FC9; ISIN No. US040114FC91 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | March 15, 2010. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about March 4, 2004. |
| Acceleration: | Notice sent December 8, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Popolare di Bergamo dated December 30, 2004. |

Table 76.

| Plaintiff Bond Holder or Beneficial Owner: | Claudio Oscar Mazza & Adriana Beatriz Poveda |
|---|---|
| Face Value: | U.S. $ 30,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about July 20, 2001. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Caja de Valores dated November 25, 2004. |

-79-

Table 77.

| Plaintiff Bond Holder or Beneficial Owner: | Massimiliano Mazzanti, Giuseppina Fuschini & Manuela Mazzanti |
|---|---|
| Face Value: | U.S. $ 30,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about December 23, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Poplare di Lodi dated December 30, 2004; certifications from same dated December 30, 2004. |

Table 78.

| Plaintiff Bond Holder or Beneficial Owner: | Massimiliano Mazzanti, Giuseppina Fuschini & Manuela Mazzanti |
|---|---|
| Face Value: | U.S. $ 30,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114FC9; ISIN No. US040114 FC91 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | March 15, 2010. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about December 23, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Poplare di Lodi dated December 30, 2004; certifications from same dated December 30, 2004. |

Table 79.

| Plaintiff Bond Holder or Beneficial Owner: | Alessandro Morata |
|---|---|
| Face Value: | U.S. $ 10,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about December 23, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco di San Giorgio dated December 30, 2004. |

Table 80.

| Plaintiff Bond Holder or Beneficial Owner: | Carla Morata & Giorgio Bennati |
|---|---|
| Face Value: | U.S. $ 53,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about December 29, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco di San Giorgio dated December 30, 2004. |

Table 81.

| Plaintiff Bond Holder or Beneficial Owner: | Maria Rita Moretto & Ugo Lorenzi |
|---|---|
| Face Value: | U.S. $ 10,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about September 10, 2001. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Sella dated December 30, 2004. |

Table 82.

| Plaintiff Bond Holder or Beneficial Owner: | Maria Rita Moretto & Ugo Lorenzi |
|---|---|
| Face Value: | U.S. $ 26,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about September 10, 2001. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Sella dated December 30, 2004. |

Table 83.

| Plaintiff Bond Holder or Beneficial Owner: | Adolfo Miguel Muschietti, Maria Cristina Buenano & Alejandro Federico Muschietti |
|---|---|
| Face Value: | U.S. $ 29,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about June 7, 1999. |
| Acceleration: | Notice sent April 22, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Caja de Valores dated November 20, 2004. |

Table 84.

| Plaintiff Bond Holder or Beneficial Owner: | Adolfo Miguel Muschietti, Maria Cristina Buenano & Jose Antonio Muschietti |
|---|---|
| Face Value: | U.S. $ 29,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about June 7, 1999. |
| Acceleration: | Notice sent April 22, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Caja de Valores dated November 20, 2004. |

Table 85.

| Plaintiff Bond Holder or Beneficial Owner: | Adolfo Miguel Muschietti, Maria Cristina Buenano & Maria Cristina Muschietti |
|---|---|
| Face Value: | U.S. $ 29,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about June 7, 1999. |
| Acceleration: | Notice sent April 22, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Caja de Valores dated November 20, 2004. |

## Table 86.

| Plaintiff Bond Holder or Beneficial Owner: | Adolfo Miguel Muschietti, Maria Cristina Buenano & Rodrigo Felipe Muschietti |
|---|---|
| Face Value: | U.S. $ 29,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about August 29, 2000. |
| Acceleration: | Notice sent April 22, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Caja de Valores dated November 20, 2004. |

Table 87.

| Plaintiff Bond Holder or Beneficial Owner: | Ansgar Neuenhofer & Beate Neuenhofer |
|---|---|
| Face Value: | U.S. $ 50,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114FC9; ISIN No. US040114 FC91 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | March 15, 2010. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | Between January 2002 & March 2002. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Schwab Independent Investing dated December 31, 2004. |

Table 88.

| Plaintiff Bond Holder or Beneficial Owner: | Alfredo Pacheco & Frances Brown |
|---|---|
| Face Value: | U.S. $ 86,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114ABE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009 |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | Between January 2002 & March 2002. |
| Acceleration: | Notice sent April 22, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Gaston Bengochea y Cia dated November 30, 2004. |

Table 89.

| Plaintiff Bond Holder or Beneficial Owner: | Alfredo Pacheco & Frances Brown |
|---|---|
| Face Value: | U.S. $ 30,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | Between January 2002 & March 2002. |
| Acceleration: | Notice sent April 22, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Gaston Bengochea y Cia dated November 30, 2004. |

Table 90.

| Plaintiff Bond Holder or Beneficial Owner: | Bruno Pappacoda & Luisella Guardincerri |
|---|---|
| Face Value: | U.S. $ 16,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about February 9, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Intesa dated December 30, 2004. |

Table 91.

| Plaintiff Bond Holder or Beneficial Owner: | Aurelio Pesenti |
|---|---|
| Face Value: | U.S. $ 60,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about March 3, 2004. |
| Acceleration: | Notice sent April 22, 2004. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Fideuram dated November 30, 2004. |

Table 92.

| Plaintiff Bond Holder or Beneficial Owner: | Adriano Rosato |
|---|---|
| Face Value: | U.S. $ 220,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114BC3; ISIN No. US040114BC38 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 25, 2019. |
| Interest Rate/Payable: | 12.125 % |
| Date Of Purchase: | On or about May 9, 2001. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Sao Paolo dated December 31, 2004; letter from same dated September 27, 2004. |

Table 93.

| Plaintiff Bond Holder or Beneficial Owner: | Stefania Simoncini & Luigi Paciello |
|---|---|
| Face Value: | U.S. $ 40,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about January 20, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco Popolare di Ancon dated December 30, 2004. |

Table 94.

| Plaintiff Bond Holder or Beneficial Owner: | Santa Sorrentino |
|---|---|
| Face Value: | U.S. $ 20,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114FC9; ISIN No. US040114 FC91 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | March 15, 2010. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about December 3, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Deutsche Bank dated December 30, 2004. |

## Table 95.

| Plaintiff Bond Holder or Beneficial Owner: | Sante Stefani & Angelina Salmistraro |
|---|---|
| Face Value: | U.S. $ 80,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about January 6, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca di Credito Cooperativo di Busto Garolfo e Buguggiate dated November 30, 2004. |

Table 96.

| Plaintiff Bond Holder or Beneficial Owner: | Sante Stefani & Angelina Salmistraro |
|---|---|
| Face Value: | U.S. $ 38,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AN0; ISIN No. US040114AN02 |
| Date Of Issuance: | September 10, 1996. |
| Date Of Maturity: | September 10, 2006. |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | On or about January 6, 2004. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca di Credito Cooperativo di Busto Garolfo e Buguggiate dated November 30, 2004. |

Table 97.

| Plaintiff Bond Holder or Beneficial Owner: | Studo Legale Bennati (Giorgio Bennati, attorney) |
|---|---|
| Face Value: | U.S. $ 21,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about December 26, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco di San Giorgio dated December 30, 2004. |

-100-

Table 98.

| Plaintiff Bond Holder or Beneficial Owner: | Renate Tielman |
|---|---|
| Face Value: | U.S. $ 32,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about December 15, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco di Trento – Bolzano dated November 30, 2004. |

Table 99.

| Plaintiff Bond Holder or Beneficial Owner: | Manuelito Toso |
|---|---|
| Face Value: | U.S. $ 3,670,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114ABE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009 |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | On or about February 25, 2004 |
| Acceleration: | Notice sent December 8, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco Popolare do Sondrio dated December 30, 2004; account statement from Deutsche Bank dated December 30, 2004. |

Table 100.

| Plaintiff Bond Holder or Beneficial Owner: | Manuelito Toso |
|---|---|
| Face Value: | U.S. $ 585,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about February 25, 2004 |
| Acceleration: | Notice sent December 8, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Deutsche Bank dated December 30, 2004. |

-103-

Table 101.

| Plaintiff Bond Holder or Beneficial Owner: | Manuelito Toso |
|---|---|
| Face Value: | U.S. $ 2,080,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AN0; ISIN No. US040114AN02 |
| Date Of Issuance: | September 10, 1996. |
| Date Of Maturity: | September 10, 2006. |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | On or about February 25, 2004 |
| Acceleration: | Notice sent December 8, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Deutsche Bank dated December 30, 2004. |

## Table 102.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Manuelito Toso |
| Face Value: | U.S. $ 4,050,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AZ3; ISIN No. US040114AZ32 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | 2005 (exact date not provided). |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | On or about February 25, 2004 |
| Acceleration: | Notice sent December 8, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Deutsche Bank dated December 30, 2004. |

Table 103.

| Plaintiff Bond Holder or Beneficial Owner: | Manuelito Toso |
|---|---|
| Face Value: | U.S. $ 3,170,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114FC9; ISIN No. US040114 FC91 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | March 15, 2010. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about February 26, 2004 |
| Acceleration: | Notice sent December 8, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement Credit Agricole Indosuez dated December 30, 2004; account statement from Deutsche Bank dated December 30, 2004; account statement from Banco Popolare do Sondrio dated December 30, 2004. |

Table 104.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Mauro Toso |
| Face Value: | U.S. $ 58,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about March 4, 2004. |
| Acceleration: | Notice sent December 8, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco Popolare di Bergamo dated December 30, 2004. |

Table 105.

| Plaintiff Bond Holder or Beneficial Owner: | Mauro Toso |
|---|---|
| Face Value: | U.S. $ 57,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114FC9; ISIN No. US040114 FC91 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | March 15, 2010. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about March 4, 2004. |
| Acceleration: | Notice sent December 8, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco Popolare di Bergamo dated December 30, 2004. |

## Table 106.

| Plaintiff Bond Holder or Beneficial Owner: | Mauro Toso |
|---|---|
| Face Value: | U.S. $ 57,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114ABE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009 |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | On or about March 4, 2004. |
| Acceleration: | Notice sent December 8, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco Popolare di Bergamo dated December 30, 2004. |

Table 107.

| Plaintiff Bond Holder or Beneficial Owner: | Mario Vicini & Giuseppina Capezzera |
|---|---|
| Face Value: | U.S. $ 100,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US040114GD65 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | February 21, 2012 |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | On or about December 5, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco Popolare di Sondrio dated December 30, 2004. |

Table 108.

| Plaintiff Bond Holder or Beneficial Owner: | Mario Vicini & Giuseppina Capezzera |
|---|---|
| Face Value: | U.S. $ 38,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GA2; ISIN No. US040114GA27 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | June 15, 2015 |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | On or about December 5, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco Popolare di Sondrio dated December 30, 2004. |

Table 109.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Mario Vicini & Giuseppina Capezzera |
| Face Value: | U.S. $ 90,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114FC9; ISIN No. US040114 FC91 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | March 15, 2010. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about December 5, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco Popolare di Sondrio dated December 30, 2004. |

Table 110.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Mario Vicini & Giuseppina Capezzera |
| Face Value: | U.S. $ 35,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114ABE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009 |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | On or about December 5, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco Popolare di Sondrio dated December 30, 2004. |

-113-

Table 111.

| Plaintiff Bond Holder or Beneficial Owner: | Mario Vicini & Giuseppina Capezzera |
|---|---|
| Face Value: | U.S. $ 60,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AV2; ISIN No. US040114AV28 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | September 19, 2027 |
| Interest Rate/Payable: | 9.75 % |
| Date Of Purchase: | On or about December 5, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco Popolare di Sondrio dated December 30, 2004; account statement from Unicredit Banca dated January 4, 2005. |

Table 112.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Mario Vicini & Giuseppina Capezzera |
| Face Value: | U.S. $ 75,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about December 5, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | -  Account statement from Banco Popolare di Sondrio dated December 30, 2004. |

Table 113.

| Plaintiff Bond Holder or Beneficial Owner: | Mario Vicini |
|---|---|
| Face Value: | U.S. $ 90,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114FC9; ISIN No. US040114 FC91 |
| Date Of Issuance: | None given. |
| Date Of Maturity: | March 15, 2010. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about December 5, 2003. |
| Acceleration: | Notice sent April 5, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Nazionale del Lavoro S.p.A. dated December 31, 2004. |

Table 114.

| Plaintiff Bond Holder or Beneficial Owner: | Luigi Vitiello |
|---|---|
| Face Value: | U.S. $ 120,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about December 19, 2003. |
| Acceleration: | Notice sent April 5, 2004 **but not properly accelerated**. Notice fails to identify the bond being accelerated. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Monte dei Paschi di Siena dated January 10, 2005. |

Table 115.

| Plaintiff Bond Holder or Beneficial Owner: | Tommasino Vitiello |
|---|---|
| Face Value: | U.S. $ 500,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AR1; ISIN No. US040114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017 |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | On or about December 19, 2003. |
| Acceleration: | Notice sent April 5, 2004 **but not properly accelerated**.  Notice fails to identify the bond being accelerated. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Monte dei Paschi di Siena dated January 10, 2005. |

DISCUSSION

This Court has already granted summary judgment in other cases to plaintiffs seeking to collect on the Republic's defaulted bonds issued under the 1994 FAA, the 1993 FAA and the FRB Agreement. This has occurred in Lightwater, supra, Mazzini v. Republic of Argentina, No. 03 Civ. 8120, 2005 U.S. Dist. LEXIS 5692 (S.D.N.Y. Mar. 31, 2005), and other cases. Only certain specific issues need to be discussed in connection with the present motion.

Standing and Proof of Ownership

In the two opinions in Fontana v. Republic of Argentina, 415 F.3d 238 (2d Cir. 2005), and Applestein v. Province of Buenos Aires, 415 F.3d 242 (2d Cir. 2005), the Second Circuit has held that an owner of a beneficial interest, such as plaintiffs here, must receive authorization from the registered holder of the bond before it may sue, but that such authorization may be granted subsequent to the filing of a lawsuit. Alternatively, the Republic may waive the authorization requirement.

The Republic has agreed to waive objections based on lack of authorization where the court makes a finding of current ownership. See Transcript, March 28, 2006, Cilli v. Republic of Argentina (04 Civ. 6594).

Here, all plaintiffs but one have adequately demonstrated through their account statements that they owned the beneficial interests as of various dates in 2004. There is no evidence of any change of ownership thereafter.

-119-

The one exception is Stefano Bistagnino, who along with his wife, Felicina Gaioli, claims ownership of beneficial interests in two bonds. As indicated in Tables 15 and 16, these plaintiffs attempted to prove their ownership of through an account statement from Cassa di Risparmio di Alessandria Spa dated January 5, 2005. The account statement is redacted and contains no information regarding the beneficial interests at issue here. As such, it is impossible to determine whether the account statement demonstrates Bistagnino and Gaioli's ownership of the beneficial interests.

Acceleration of Principal

As already mentioned, on April 5, April 22, and December 8, 2004, plaintiffs sent notices to Bankers Trust Company, the Fiscal Agent of The Republic of Argentina, declaring the principal amounts of the debt securities governed by the 1994 FAA and 1993 FAA held by each plaintiff to be immediately due and payable. Three plaintiffs sent faulty notices and thus cannot be granted judgment on the principal amount of their beneficial interests at this time:

- Laura Cosci – As indicated in Table 41, Ms. Cosci's notice of acceleration references the wrong bond.

- Luigi Vitiello – As indicated in Table 114, Mr. Vitiello's notice of acceleration fails to identify the bond he seeks to accelerate.

- <u>Tommasino Vitiello</u> - As indicated in Table 115, Mr. Vitiello's notice of acceleration fails to identify the bond he seeks to accelerate.

## CONCLUSION

The motion to strike defendant's discovery requests is granted.

Stefano Bistagnino and Felicina Gaioli's motion for summary judgment is denied.

The summary judgment motions of Laura Cosci, Luigi Vitiello and Tommasino Vitiello are granted in part and denied in part. Those motions are granted as to accrued interest but not as to principal.

The remaining motions for summary judgment are granted. Judgment will be entered for the principal amount of the bonds as indicated in the Tables in this opinion, plus accrued interest. With respect to the bonds issued under the FRB Agreement, judgment will be entered for any payments on those bonds that are due and unpaid as of the time of judgment.

The parties shall consult with one another concerning the form of the judgment and the amounts of interest that should be awarded in the judgment. If the parties are unable to reach agreement on those subjects, they shall jointly submit an agreed proposed judgment to the court. If the Republic and any plaintiff are unable to reach agreement on those subjects, that plaintiff shall submit a proposed judgment to the court, and the Republic shall submit

-121-

any objections to that plaintiff's proposed judgment within five business days

thereafter. The court will then resolve any remaining disagreements.

SO ORDERED.

Dated:      New York, New York
            May 9, 2006

_____
THOMAS P. GRIESA
U.S.D.J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x
OSVALDO LORENZO SAUCO, *et al.*,          :
                                          :
                        Plaintiffs,       :
                                          :    05 Civ. 3955 (TPG)
             - against -                  :
                                          :    **OPINION**
THE REPUBLIC OF ARGENTINA,                :
                                          :
                        Defendant.        :
                                          :
------------------------------------------x

Plaintiffs are the beneficial owners of certain bond indebtedness issued by defendant The Republic of Argentina. The Republic defaulted on such indebtedness in December 2001 during a profound fiscal crisis. Plaintiffs are suing to recover amounts due to them as a result of the default and have moved for summary judgment. Plaintiffs also move to strike the Republic's discovery requests.

The motions are granted.

### FACTS

The bond indebtedness at issue is governed by Fiscal Agency Agreements dated December 10, 1993 (the "1993 FAA") and October 19, 1994 (the "1994 FAA"). The 1994 FAA is the same agreement that governed the bond indebtedness on which this court granted summary judgment to the plaintiffs in Lightwater Corporation Ltd. v. Republic of Argentina, No. 02 Civ. 3804, 2003 WL 1878420 (S.D.N.Y. Apr. 14, 2003). Section 22 of the 1994 FAA and Section

20 of the 1993 FAA state that the Republic waives sovereign immunity and

consents to jurisdiction in any state or federal court in the borough of

Manhattan in the City of New York. Both FAAs provide that the Republic's

obligations on the bonds are unconditional and that failure to make any

payment of principal or interest for 30 days after the applicable payment date

constitutes an event of default. A declaration by the Republic of a moratorium

on the payment of principal or interest on its public external indebtedness is

an event of default as well. Paragraph 12 of the 1994 FAA provides for

acceleration of principal if there is a failure to pay interest or a moratorium. If

either of these events occurs,

> each holder of Securities and such Series
> may by such notice in writing declare the
> principal amount of Securities of such
> Series held by it to be due and payable
> immediately . . . .

The 1993 FAA contains similar language.

On December 24, 2001 the Republic declared a moratorium on payments

of principal and interest on the external debt of the Republic. The court refers

to its previous opinions for a description of the circumstances of these defaults.

Lightwater, 2003 WL 1878420, at *2; Applestein v. Republic of Argentina, No.

02 Civ. 1773, 2003 WL 1990206, at *1 (S.D.N.Y. Apr. 29, 2003). On April 11,

2005, plaintiffs sent notices to Deutsche Bank Trust Company Americas (the

successor to Bankers Trust Company, the Fiscal Agent of The Republic of

Argentina), declaring the principal amounts of the debt securities held by

-2-

plaintiffs to be immediately due and payable. The bonds that are the subject of this action are listed hereafter. Also listed are the amounts of the beneficial interests owned by each plaintiff.[1]

The following tables contain the necessary identifying information regarding each plaintiff's beneficial interests in bonds.

---

[1] The court notes the distinction between bonds and beneficial interests. In some previous opinions, the court has simply referred to the plaintiffs as owners of "bonds," when in fact plaintiffs are technically owners of "beneficial interests in bonds." The Republic actually issues "a bond" to a depository. The depository, in some form, issues "participations" to brokers, who sell "beneficial interests" to purchasers. These beneficial interests are identified by reference to the underlying bond (CUSIP or ISIN number or both; date of issuance and maturity; rate of interest) and the principal amount of the beneficial interest. This distinction is discussed more fully in Million Air Corp. v. Republic of Argentina, No. 04 Civ. 1048, 2005 U.S. Dist. LEXIS 23904 (S.D.N.Y. Oct. 17, 2005).

Table 1.

| Plaintiff Bond Holder or Beneficial Owner: | Griselda Teresa Dulevich |
|---|---|
| Face Value: | U.S. $ 430,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AN0; ISIN No. US040114AN02 |
| Date Of Issuance: | September 10, 1996. |
| Date Of Maturity: | September 10, 2006. |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | On or about January 15, 2001 and March 2, 2001. |
| Acceleration: | Notice sent April 11, 2005. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from BBVA Suiza dated November 30, 2005. |

Table 2.

| Plaintiff Bond Holder or Beneficial Owner: | Griselda Teresa Dulevich |
|---|---|
| Face Value: | U.S. $ 150,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114BE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009. |
| Interest Rate/Payable: | 11.75 %. |
| Date Of Purchase: | On or about January 15, 2001 and March 2, 2001. |
| Acceleration: | Notice sent April 11, 2005. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from BBVA Suiza dated November 30, 2005. |

Table 3.

| Plaintiff Bond Holder or Beneficial Owner: | Griselda Teresa Dulevich |
|---|---|
| Face Value: | U.S. $ 130,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AZ3; ISIN No. US04114AZ32 |
| Date Of Issuance: | June 4, 1998. |
| Date Of Maturity: | December 4, 2005. |
| Interest Rate/Payable: | 11% |
| Date Of Purchase: | On or about January 15, 2001 and March 2, 2001. |
| Acceleration: | Notice sent April 11, 2005. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from BBVA Suiza dated November 30, 2005. |

-6-

Table 4.

| Plaintiff Bond Holder or Beneficial Owner: | Griselda Teresa Dulevich |
|---|---|
| Face Value: | U.S. $ 200,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about October 15, 2001. |
| Acceleration: | Notice sent April 11, 2005. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from BBVA Suiza dated November 30, 2005. |

-7-

Table 5.

| Plaintiff Bond Holder or Beneficial Owner: | Griselda Teresa Dulevich |
|---|---|
| Face Value: | U.S. $ 99,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about January 25, 2005. |
| Acceleration: | Notice sent April 11, 2005. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certificate from Caja de Valores dated December 16, 2005. |

Table 6.

| Plaintiff Bond Holder or Beneficial Owner: | Daniel Horacio Rolfo and Alicia Evelia Galiani |
|---|---|
| Face Value: | U.S. $ 255,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about December 6, 2004. |
| Acceleration: | Notice sent April 11, 2005. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from BBVA Suiza dated November 30, 2005. |

Table 7.

| Plaintiff Bond Holder or Beneficial Owner: | Maria Mercedes Sauco, Maria Griselda Sauco, Maria Florencia Sauco, and Maria Agustina Sauco. |
|---|---|
| Face Value: | U.S. $ 295,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AN0; ISIN No. US040114AN02 |
| Date Of Issuance: | September 10, 1996. |
| Date Of Maturity: | September 10, 2006. |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | On or about October 2003. |
| Acceleration: | Notice sent April 11, 2005. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from BBVA Miami Agency dated November 30, 2005. |

Table 8.

| | |
|---|---|
| Plaintiff Bond Holder or Beneficial Owner: | Maria Mercedes Sauco, Maria Griselda Sauco, Maria Florencia Sauco, and Maria Agustina Sauco. |
| Face Value: | U.S. $ 365,000.00 |
| CUSIP No.,  ISIN No., BB No.: | CUSIP No. 040114BE9; ISIN No. US040114BE93 |
| Date Of Issuance: | April 7, 1999. |
| Date Of Maturity: | April 7, 2009 |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | On or about October 2003. |
| Acceleration: | Notice sent April 11, 2005. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from BBVA Miami Agency dated November 30, 2005. |

-11-

Table 9.

| Plaintiff Bond Holder or Beneficial Owner: | Maria Mercedes Sauco, Maria Griselda Sauco, Maria Florencia Sauco, and Maria Agustina Sauco. |
|---|---|
| Face Value: | U.S. $ 200,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about October 2003. |
| Acceleration: | Notice sent April 11, 2005. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from BBVA Miami Agency dated November 30, 2005. |

Table 10.

| Plaintiff Bond Holder or Beneficial Owner: | Osvaldo Lorenzo Sauco |
|---|---|
| Face Value: | U.S. $ 93,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114AH3; ISIN No. US040114AH34 |
| Date Of Issuance: | December 20, 1993. |
| Date Of Maturity: | December 20, 2003. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | On or about January 25, 2005. |
| Acceleration: | Notice sent April 11, 2005. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Certification from Caja de Valores dated December 16, 2005. |

DISCUSSION

This Court has already granted summary judgment in other cases to plaintiffs seeking to collect on the Republic's defaulted bonds issued under the FAAs.  See Mazzini v. Republic of Argentina, No. 03 Civ. 8120, 2005 U.S. Dist. LEXIS 5692 (S.D.N.Y. Mar. 31, 2005).  Only certain specific issues need to be discussed in connection with the present motion.

Standing and Proof of Ownership

In the two opinions in Fontana v. Republic of Argentina, 415 F.3d 238 (2d Cir. 2005), and Applestein v. Province of Buenos Aires, 415 F.3d 242 (2d Cir. 2005), the Second Circuit has held that an owner of a beneficial interest, such as plaintiffs here, must receive authorization from the registered holder of the bond before it may sue, but that such authorization may be granted subsequent to the filing of a lawsuit.  Alternatively, the Republic may waive the authorization requirement.

The Republic has agreed to waive objections based on lack of authorization where the court makes a finding of current ownership.  See Transcript, March 28, 2006, Cilli v. Republic of Argentina (04 Civ. 6594).

Here, plaintiffs have adequately demonstrated through their account statements that owned the beneficial interests as of various dates in 2005. There is no evidence of any change of ownership thereafter.

-14-

CONCLUSION

The motion to strike defendant's discovery requests is granted.

The motions for summary judgment are granted.  Judgment will be entered for the principal amount of the bonds plus accrued interest.

The parties shall consult with one another concerning the form of the judgment and the amounts of interest that should be awarded in the judgment. If the parties are unable to reach agreement on those subjects, they shall jointly submit an agreed proposed judgment to the court.  If the parties are unable to reach agreement on those subjects, plaintiffs shall submit a proposed judgment to the court, and the Republic shall submit any objections to plaintiffs' proposed judgment within five business days thereafter.  The court will then resolve any remaining disagreements.


SO ORDERED.

Dated:     New York, New York
           May 15, 2006

THOMAS P. GRIESA
U.S.D.J.

-15-

**Westlaw.**

Slip Copy                                                                    Page 1
(Cite as: 2003 WL 22743762 (S.D.N.Y.))

**H**
Only the Westlaw citation is currently available.


United States District Court,
S.D. New York.

ALLAN APPLESTEIN TTEE FBO D.C.A. Grantor
Trust and Pedro Kalbermann,
Plaintiffs,
v.
THE REPUBLIC OF ARGENTINA, Defendant.

No. 02 Civ. 4124(TPG).

Nov. 20, 2003.


Investors brought action against Republic of
Argentina to recover amounts due to them by virtue
of default on bonds issued. On investors' motions
for summary judgment, the District Court, Griesa,
J., held that: (1) Republic of Argentina owed
principal and accrued interest on bonds it issued to
one set of investors, but (2) fact issue existed as to
whether other putative investors were beneficial
owners of bonds.

Motions granted in part and denied in part.


**[1] Bonds** ⊂⇒0

58k0 k.

Republic of Argentina owed principal and accrued
interest on bonds it issued to investors, after
Republic defaulted by declaring moratorium and by
failing to make interest payments, and investors
declared principal amount owed to it due and
payable immediately under terms and conditions of
certificates and fiscal agency agreement (FAA)
upon giving notice to Republic's fiscal agent, since
Republic's obligations were unconditional,
sovereign immunity had been waived, and investors
demonstrated that they were beneficial owners of
bonds.

**[2] Bonds** ⊂⇒0

58k0 k.

Genuine issue of material fact existed as to whether
putative investor was beneficial owner of bonds,
precluding summary judgment, in action against
Republic of Argentina to recover amounts due by
virtue of default on bonds issued. Fed.Rules
Civ.Proc.Rule 56, 28 U.S.C.A.

*OPINION*

GRIESA, J.

*Introduction*

*1 Plaintiffs Allan Applestein TTEE FBO D.C.A.
Grantor Trust ("DCA") and Pedro Kalbermann
("Kalbermann") are owners of bonds issued by the
defendant, The Republic of Argentina ("The
Republic"). The Republic has defaulted on the
bonds. Plaintiffs are suing to recover amounts due
to them by virtue of the default and have moved for
summary judgment. In their summary judgment
motion plaintiffs claim that The Republic's
obligation is unconditional and that there are no
defenses.

The Republic opposes the motion asserting various
defenses and moves to stay the proceedings.

Plaintiff's motion for summary judgment on their
bond obligations is granted as to the DCA bonds,
but denied as to the Kalbermann bonds. The motion
of The Republic for a stay of the proceedings is
denied, except that the court stays execution of the
judgment temporarily in accordance with its
decision on October 31, 2003 in *Macrotecnic v. The
Republic of Argentina,* 02 Civ. 5932, *EM Ltd. v.
The Republic of Argentina,* 03 Civ. 2507,
*Lightwater Corp. v. The Republic of Argentina,* 02
Civ. 3804, and *Old Castle Holdings v. The Republic
of Argentina,* 02 Civ. 3808.


*Facts*
*The Bond Issue*

Plaintiff DCA acquired certain bonds on or about

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

January 30, 2001, with a principal amount of $245,000 issued by The Republic of Argentina. The series is numbered ISIN US040114AH3020. DCA has not submitted the notes or a prospectus. But as an exhibit to its Local Rule 56.1 Statement of Material Facts, DCA submits a recent statement of its brokerage account with Lehman Brothers that shows that these bonds were issued on December 20, 1993, have an interest rate of 8.375% and are due December 20, 2003. Plaintiff states that the bonds are governed by an October 19, 1994 Fiscal Agency Agreement ("FAA") between the Republic of Argentina and Bankers Trust Company (to which Deutsche Bank AG is the successor). The Republic does not contest these statements.

Plaintiff Kalbermann states that he acquired certain bonds with a principal aggregate amount totaling $1,030,000 issued by The Republic of Argentina. He declares that the bonds were issued under various series, with CUSIP Nos. 040114GD6, 040114BE9, 040114AN02. According to Kalbermann, the bonds are deposited with Euroclear under the name of Kalbermann's broker, Prudential Securities, Inc., and have been booked electronically by Prudential in Kalbermann's name. As part of his Local Rule 56.1 Statement of Material Facts, Kalbermann submits a copy of a recent brokerage statement, which shows various bonds purchased with various interest rates and maturity dates. Kalbermann's brokerage statement, however, does not list bonds that total the amount he here seeks to recover. The statement also does not list the series under which the bonds were issued. Moreover, the bonds listed on the brokerage statement appear to show seven different interest rates and maturity dates, which does not appear to support the claim that such bonds were issued under only three series. Kalbermann submits no additional information to prove that he owns the bonds, except that he submits a Notice of Acceleration written by his attorney to The Republic, that seeks to accelerate bonds with the above named CUSIP numbers with a total aggregate principal of $1,030,000.

*2 The Republic admits that Kalbermann has produced documents evidencing that he acquired certain bonds issued by the Republic, but denies all of the CUSIP numbers on the produced documents correspond with those listed in the Amended Complaint.

Kalbermann also declares that the bonds on which he seeks to recover were governed by the same October 19, 1994 FAA already mentioned above.

The FAA provides that failure to make any payment of principal or interest for 30 days after the applicable payment date constitutes an event of default. A declaration of a moratorium on the payment of principal or interest on its public external indebtedness is an event of default as well. Upon an event of default, a bondholder is entitled to give notice declaring the principal amount immediately due and payable.

Section 22 of the FAA states that the Republic of Argentina waives sovereign immunity and consents to jurisdiction in any state or federal court in the borough of Manhattan in the City of New York.

The FAA governing the above named series of bonds contains terms regarding event of default, consent to suit, and jurisdictional waiver that is identical to those pertaining to the bonds, about which this court entered summary judgement in favor of the plaintiffs on May 14, 2003. *Lightwater Corporation Ltd. v. The Republic of Argentina*, Nos. 02 Civ. 3804(TPG), 02 Civ. 3808(TPG), 02 Civ. 5832(TPG), 2003 WL 1878420.

### *Default*

As discussed more extensively in the court's *Lightwater* opinion, 2003 WL 1878420 at *2, the Republic of Argentina is experiencing the worst economic crisis in its history. The country's gross domestic product has contracted severely each year since 1999, and tax collections have dropped sharply.

During 2001 many businesses and individuals were making substantial withdrawals of capital from the banking system, with at least $20 billion being withdrawn. As a result, on December 1, 2001 the Republic imposed restrictions on depositors' access to bank accounts, freezing $60 billion in pesos and dollars and limiting withdrawals to $1,000 per month.

On December 24, 2001, the Republic declared a moratorium on payments of principal and interest on the external debt of the Republic. This moratorium is still in effect.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2003 WL 22743762 (S.D.N.Y.))

### Discussion

[1] In the *Lightwater, Old Castle, Macrotecnic and EM Ltd.* cases this court has already granted summary judgment to the plaintiff bondholders seeking to collect on Argentine bonds which went into default as a result of the December 24, 2001 moratorium. This court found that:

> The obligations of the Republic on the bonds involved in these lawsuits are unconditional. Sovereign immunity has been waived. The Republic defaulted on the bonds when it ceased to pay the interest. This would seem to mean that the Republic now owes the three plaintiffs principal and accrued interest.

2003 WL 1878420 at *4.

The court finds nothing in the record to distinguish DCA's case as to its unconditional legal right to collect on the bonds. DCA provides affidavits and statements of account that give the court no reason to doubt that it is the beneficial owner of the bonds. Argentina has defaulted on the bonds by declaring a moratorium and failing to make interest payments. DCA was entitled, by notice, to declare the principal amount owed to it due and payable immediately under the terms and conditions of the certificates and the FAA. DCA has so notified Argentina's fiscal agent. The Republic has not provided evidence sufficient to raise doubt as to the validity of DCA's claim. DCA is therefore entitled to summary judgment.

*3 [2] As to Kalbermann's bonds, there is simply insufficient evidence in the record to find that Kalbermann is the beneficial owner of the bonds for which he seeks summary judgment.

### The Application for a Stay

The Republic asks the court to stay the proceedings. The court, however, has addressed the basic issues regarding a stay in *Lightwater*, 2003 WL 1878420 at *5-6. The court rules that the instant case should be dealt with no differently from the other cases on this issue.

A final stay of execution, however, has been granted in the *Lightwater* case, and the other above named cases, until January 29, 2004, or until The Republic presents its final offer to its private creditors in the current debt restructuring negotiations, whichever comes first.

### Conclusion

Plaintiff's motion for summary judgment is granted as to the DCA bonds, but denied as to the Kalbermann bonds, without prejudice with regard to a future motion upon an appropriate Rule 56 submission detailing the beneficial ownership of the bonds. Judgment will be entered for the principal amount of the bonds plus accrued interest. The motion of the Republic for a stay of proceedings is denied, except that execution on plaintiff's judgments is stayed until January 29, 2004 or until The Republic presents its final offer to private creditors in the current debt restructuring negotiations, or whichever comes first.

SO ORDERED.

2003 WL 22743762 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

63S9CILC.txt

63S9CILC                    Conference                              1
1  UNITED STATES DISTRICT COURT
1  SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
3  MARIA FAUSTA CILLI, ET AL.,
4              Plaintiffs,
5          v.                        04 CV 6594 (TPG)
6  THE REPUBLIC OF ARGENTINA,
7              Defendant.
8  ------------------------------x
9                                    New York, N.Y.
10                                   March 28, 2006
10                                   3:00 p.m.
11  Before:
12              HON. THOMAS P. GRIESA,
13                          District Judge
14                      APPEARANCES
14  DREIER
15      Attorneys for Plaintiffs
15  BY:  JOEL A. CHERNOV
16       REGINA M. ALTER
17  CLEARY GOTTLIEB STEEN & HAMILTON
17      Attorney for Defendant
18  BY:  CARMINE BOCCUZZI
19
20
21
22
23
24
25

                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

63S9CILC                    Conference                              2
1
2          (In open court)
3          THE COURT:  What do we need to cover today?
4          MR. CHERNOV:  Your Honor, Joel Chernov on behalf of
5  the plaintiffs.
6          We're here in connection with your Honor's recent
7  ruling in connection with the Cilli action, and I sent your
8  Honor a letter asking to be heard; twofold, your Honor.
9  There's a statement in -- one, your Honor required that the
10 plaintiffs in this action provide proof of when they acquired
11 their bonds and that was something that your Honor said would
12 not be required when we were at the September 28 hearing and
13 Mr. Blackman said he wouldn't require it on behalf of the
14 Republic.
           THE COURT:  If I got it confused, I'm sorry.
                      Page 1

63S9CILC.txt

15      MR. CHERNOV:  Your Honor, what was said -- I can tell
16  you what was said at the hearing.  Mr. Blackman said as to the
17  pending motions, what I said when we had our meeting two weeks
18  ago -- I have the transcript from the September 28 hearing your
19  Honor and --
20      THE COURT:  What were we hearing?
21      MR. CHERNOV:  We were hearing at that point the
22  question of whether your Honor was going to require that the
23  Republic waive their standing argument, the argument that the
24  beneficial bond holders did not have standing; or whether you
25  were going to require the bond holders to obtain authorization
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

63S9CILC               Conference                               3
1   from the depository trust company before maintaining their
2   suits.
3       THE COURT:  My recent decision.
4       MR. BOCCUZZI:  Your Honor, I have an extra one.  Would
5   you like mine?  It's clean.
6       MR. CHERNOV:  On September 28, your Honor, we were
7   addressing that standing issue if you might recall.
8       And what the court determined at the conclusion of the
9   hearing was that if the Plaintiffs proved their ownership
10  satisfactorily to the Court, the Republic would waive its
11  standing defense.
12      And it was agreed that for motions going forward, the
13  proof that the court would require would be a current account
14  statement and proof of purchase of the securities or proof that
15  the plaintiffs had those securities in their accounts --
16      THE COURT:  Can we start again.  I didn't have in my
17  hand my recent decision.  Just start again, if you don't mind.
18      MR. CHERNOV:  Not at all, your Honor.  What I was
19  saying was at the September 28 hearing we were addressing the
20  question of the proof that Plaintiffs needed to come forward
21  with in order for the Republic to waive its standing argument,
22  the argument that the beneficial bond holders needed to get
23  authorization from the depository trust company.
24      And on September 28 your Honor said that for all
25  motions going forward your Honor would require two things, a
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

63S9CILC               Conference                               4
1   current account statement or other proof of current ownership
2   and proof of when they acquired their bonds, proof of when the
3   plaintiffs either bought them, or if they didn't have that
4   proof, proof that they had the bonds in their account at the
5   time that the Republic defaulted, December, 2001.
6       That's what your Honor said we would require going
7   forward.
8       THE COURT:  For future motions.
9       MR. CHERNOV:  Correct.
10      But what we also said was that for all pending motions
11  we would not be required to go back and supplement --
12  automatically supplement the record.
13      And at that point what we had provided your Honor was
14  account statements, current account statements.  We had not
15  provided your Honor with proof of purchase.  And for that
16  proposition, I have the transcript from the hearing on
17  September 28 and that's annexed to my letter.  And if you look
18  at page 30 and 31 of that you can see, on page 30 of the
19  transcript, Mr. Blackman said in the middle of the page:  "And
                        Page 2

63S9CILC.txt

20  as to the pending motions, what I have said when we had our
21  meeting two weeks ago was that we would look at it on a
22  case-by-case basis, which we'll do and see which ones we have.
23  We want to see the confirms or other issues.  We'll do it."
24  And I believe what he was saying was that for the pending
25  motions if they believed they needed to see a confirmation,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

63S9CILC                    Conference                         5
1  they would let us know.
2           Your Honor then stated in response to Mr. Blackman --
3           THE COURT:  What page are you on?
4           MR. CHERNOV:  Page 30, your Honor.
5           At the bottom your Honor says if everything is in
6  order, and I'm reading from your Honor's statement that begins
7  on line 22, "If everything is in order, according to the
8  standards I've used on pending motions, what I'm going to do is
9  to grant the motion, assuming everything is in order, subject
10  to my possible need to supplement the record in accordance with
11  what has been stipulated today.  So they will not be held up
12  and we will not -- there will be no need to automatically go
13  back and supplement the record."
14           Based on that, your Honor, we did not -- based on this
15  statement by Mr. Blackman and the statement by the court, we
16  did not go back and supplement the record in the Cilli action
17  and provide your Honor with proofs of purchase.  And we
18  represent the plaintiffs in --
19           THE COURT:  I take it this was a pending motion.
20           MR. CHERNOV:  This was a pending, fully submitted at
21  the time of this hearing, yes, your Honor.  And we have six
22  other cases that are pending, still pending, your Honor, and
23  that have been pending for the longest -- more than two years
24  now.  And that's our concern, is we do not want to have to go
25  back to plaintiffs, who have had motions sitting for such

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

63S9CILC                    Conference                         6
1  significant amounts of time, and now tell them we need more
2  documents.
3           These are foreigners, your Honor.  These are
4  Argentinians, Italians.  Already they're losing confidence in
5  the system, in the fact that they don't understand why they
6  don't have a judgment yet.  For me to go back and say we need
7  to now get more documents from you, your Honor, we submit is
8  not in accordance with what was agreed and is not fair.
9           Now your Honor said --
10          THE COURT:  I would think -- what does the Republic
11  say?
12          MR. BOCCUZZI:  Good afternoon, your Honor.
13          THE COURT:  Do you agree?
14          MR. BOCCUZZI:  As I understood the letter that
15  Mr. Chernov submitted for today's conference, he had put
16  forward three requests or statements to the court and we were
17  in agreement with them.
18          One, that plaintiffs said they were prepared to give
19  the proof of purchase for these folks, and we said that's fine.
20          Two, they said they would just attach them to a
21  declaration, a lawyer's declaration as opposed to making people
22  swear new declarations, and I said we were fine with that.
23          And three, they wanted to submit to the court a motion
24  for reconsideration that they shouldn't have to, I guess in

Page 3

63S9CILC.txt
25    other cases, put in proof of purchase.  And they set a date for
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                    7
      63S9CILC              Conference
 1    that, and I said that was fine as well.
 2          I think to the extent your Honor's opinion says that
 3    the need for proof of purchase is driven by the deal that was
 4    struck on September 28, I think that is part correct and part
 5    incorrect in that we all agreed that would be a case-by-case
 6    determination.
 7          I don't think the issue that your Honor identifies,
 8    the need to identify when interest begins to run is precisely
 9    correctly stated.
10          However, I do think there is an issue in having to
11    prove that they own the bond as of the date they accelerated.
12    Because when you accelerate the bond, that is when you say I
13    get principal and interest as of that date and then you --
14    plaintiffs have said and the way the judgments have come out in
15    this case, you get the statutory interest based on that date
16    forward in addition to the principal and interest.
17          In this case, the complaint and acceleration were in
18    August, 2004 --
19          THE COURT:  Let me just interrupt you.  Look, I have
20    handed down a bunch of decisions and I think that I have had
21    reference to this September 28 conference before.  I'll confess
22    I really didn't understand what we agreed to and I didn't
23    really completely understand the significance of whether
24    somebody was an owner as of December 24, 2001 or exact -- or
25    some later point in time or some earlier point.  And so in working on
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                    8
      63S9CILC              Conference
 1    this decision, I said I've got to put down something that will
 2    make sense to me, and I guess it wasn't very successful, but at
 3    least it made some sense to me to think of possible -- a
 4    possible relation to the calculation of interest.  Now,
 5    apparently that is not completely accurate.
 6          What I think we ought to do, frankly, is to do this --
 7    the problem is there was an appeal and the court of appeals
 8    said what it said and the Republic came down from the court of
 9    appeals with a -- with certain rights about standing.
10          Now, what we did after that was recognize that despite
11    getting that wonderful opinion from the court of appeals, it
12    would be preposterous to really take it seriously because if
13    the -- if the actual owners of the bonds were to insist that
14    they only -- they were the only people that had standing, they
15    would have to come in -- they would have a fiduciary obligation
16    to sue, and they weren't going to do that.  So all of this was
17    a total waste of time.
18          Now, what we ought to do is to do something that
19    simplifies all of this.  And as far as I'm concerned, all that
20    should be shown is current ownership.  And frankly, I don't
21    think we should be bothered about whether there was ownership
22    as of December 24 -- whatever it is, 2001, or whether they
23    bought later.  And I don't think we should be worried about
24    Mr. Blackman saying I'll take it on a case-by-case basis.  You
25    see that -- in writing my decision that I just came out with, I
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                    9
      63S9CILC              Conference
                              Page 4

```
                        63S9CILC.txt
 1   didn't feel that it was terribly clear what was agreed to on
 2   September 28.  But it ought to be clear, and what should be --
 3   there should be standing if the person owns the interest as of
 4   the time he sues or if it's a class action there might be
 5   another relevant time, and that should establish standing.
 6        Now, if at a later point, if it ever comes a time when
 7   the judgment -- there is a judgment and it is being enforced,
 8   there may need to be a more refined look at timing to see what
 9   is due in the way of interest and so forth.  But all I want to
10   do now is to eliminate the confusion and I don't think the
11   September 28 record is terribly clear or as clear as it should
12   be.  It may be clear to you.  It wasn't so clear to me.  I
13   don't see -- there should not be anything but complete clarity
14   as to what constitutes standing and it should be something that
15   I can use in my decisions.  There will be successions of law
16   clerks and decision after decision over I'm sure a fairly
17   substantial period of time.  It's possible I simply forget what
18   went on in all of this.  And that's the reason it should be
19   absolutely clear-cut and simple.
20        So I would say that standing is established if
21   somebody owns the bonds or the interest at the time of suit or
22   if it's a class action then when -- obviously, the class
23   representative has to own interest at the time of suit.  And as
24   far as class members, they will have to show ownership as of
25   some relevant time, but that's for future consideration.
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

```
     63S9CILC          Conference                              10
 1        MR. CHERNOV:  Your Honor, in light of your statement,
 2   in this decision --
 3        THE COURT:  And I certainly will -- I really --
 4   despite what I wrote here, I think it's absurd to ask you to go
 5   back and get a lot of additional documents from your clients.
 6        MR. CHERNOV:  I appreciate that, your Honor.  My
 7   question to your Honor is in light of the decision, how would
 8   you like us to proceed?
 9        THE COURT:  Well I want to hear, Mr. Boccuzzi, is it
10   satisfactory to simply say there is standing if there is proof
11   of ownership as of the time of suit?
12        MR. BOCCUZZI:  Your Honor, as to that, the
13   agreement -- and we'll live by the agreement, it was clear from
14   Mr. Chernov -- I think we're just talking about these cases --
15   in the Cilli case, if that's how your Honor wants to proceed,
16   I'm fine with that.
17        THE COURT:  I don't want some special rule for the
18   Cilli case.
19        MR. BOCCUZZI:  Well in terms of pending cases.
20        THE COURT:  I don't want some special rule for pending
21   cases.  I wanted to rule, period.  And if we have to have
22   Mr. Blackman come up, I'll have as many hearings as necessary
23   and you will waste as much of your time and your client's money
24   as you need to to get a simple rule, but that's what we're
25   going to get.
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

```
     63S9CILC          Conference                              11
 1        MR. BOCCUZZI:  Your Honor I'm on board with the simple
 2   rule.  I thought the rule we had was simple.
 3        THE COURT:  It is not.
 4        MR. BOCCUZZI:  If I may, your Honor, if I can write to
 5   the court either today or tomorrow to confirm.
                             Page 5
```

63S9CILC.txt

```
 6              THE COURT:  I want some commitment right now and if
 7  you have to go to the phone, go to the phone.  If Mr. Blackman
 8  has to come up, he'll come up.  I don't want anymore of this.
 9              MR. BOCCUZZI:  So what the court is proposing is that
10  present proof of current ownership --
11              THE COURT:  As of the time of suit.
12              MR. BOCCUZZI:  -- as of the time of suit brings the
13  deal -- brings standing.
14              The only thing I would ask your Honor, if they're
15  acceleration as of the time, if there is a wide gap, can we
16  have proof as of the time they're accelerating the bond?
17              THE COURT:  I don't understand what you're saying.
18              MR. BOCCUZZI:  Under the bond documents, a bond holder
19  decides whether they're accelerating their bond at a certain
20  time and what happens usually in these cases that you
21  accelerate your bond saying I want the principal and all
22  interest going back that's due and then they bring a lawsuit.
23  If there's a gap between the acceleration and the lawsuit,
24  here -- and I don't know if this is what your Honor was seizing
25  on -- there is no proof that they have the bond when they
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

63S9CILC                    Conference                        12
```
 1  accelerated; and obviously, they need to own the bond to
 2  accelerate it.  So if there was some gap here as a period of
 3  time, the time of suit is not the same as the time of
 4  acceleration.
 5              THE COURT:  I don't understand what you're saying.
 6              MR. BOCCUZZI:  When they send the letter accelerating
 7  the bond, they have -- there is no proof in the record and the
 8  in the Cilli case -- in other cases there is -- that they own
 9  the bond as of that time.  And so --
10              THE COURT:  As of what time?
11              MR. BOCCUZZI:  When they accelerated the bond.
12              THE COURT:  Who accelerated?
13              MR. BOCCUZZI:  The holder of the beneficial interest.
14  That's usually what prompts the lawsuit.
15              They send the notice of acceleration saying I am
16  demanding -- it's the standard acceleration clause, principal
17  and past interest and then they'll bring a lawsuit when they're
18  not paid the principal and past interest.  Sometimes there's a
19  gap, as there was here, and I thought this is one of the things
20  your Honor was getting at.  But I see you were more -- take a
21  step back on September 28, your Honor said there were two
22  things, the deal as to the standing and your Honor's own
23  standards as to what you will apply to get comfortable they own
24  it.
25              If your Honor just wants to look at proof of current
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

63S9CILC                    Conference                        13
```
 1  ownership, that's your Honor's decision and that's how you've
 2  been ruling on these cases.  The deal was a separate issue.
 3              Here they never proved that they owned the bond as of
 4  the time they accelerated and that has ramifications for CPLR
 5  interest of 9 percent that accrues as of the date of
 6  acceleration.
 7              So as I said, in this case, if your Honor wants --
 8              THE COURT:  Let's suppose an owner of an interest --
 9  and I guess we ought to be precise.  We're talking about
10  interest, right?
```
Page 6

63S9CILC.txt

11        MR. BOCCUZZI:  Yes.
12        THE COURT:  An owner of interest accelerates, whatever
13   he has to do, and he's accepted, that he does the proper thing,
14   he still owns the bond, he owns the interest, the interest is
15   still marketable, isn't it?
16        MR. BOCCUZZI:  Yes.
17        THE COURT:  So he sells it.  And so somebody buys it.
18   Doesn't the person who buys take -- subject to the -- every
19   right that the purchaser -- that the seller has?
20        MR. BOCCUZZI:  I believe so, yes, your Honor.
21        THE COURT:  Well then what --
22        MR. BOCCUZZI:  But there the right would be whether
23   you're the person who sold it or the person who bought the
24   interest, you would say I am entitled to principal and
25   accelerated interest as of the date of acceleration and then
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

63S9CILC                   Conference                      14
1    going forward from that statutory interest as well.  But you'd
2    have to show that someone owned the bond and accelerated as of
3    that date.
4         THE COURT:  Well, it seems to me that -- I don't think
5    that problem occurs with your clients, does it?
6         MR. CHERNOV:  No, your Honor, it doesn't.  For one --
7    and just to back up a little, if you remember, this whole proof
8    issue to some extent was in lieu of a DTC authorization.  A DTC
9    authorization isn't at all necessarily tied into when one
10   accelerates.
11        Our clients come to us.  We, as lawyers, based on our
12   understanding and their proof to us, showing us that they are
13   owner, we accelerate it on their behalf.  Never in the four,
14   five years your Honor has had these cases has there ever been a
15   requirement that one of the plaintiffs show ownership as of the
16   date of acceleration.
17        What your Honor has always required is current proof
18   of ownership, and we've always followed that lead.  To go
19   back --
20        THE COURT:  That's what gave -- that's what I was
21   doing and then that -- there was the issue about standing and
22   this appeal.
23        MR. CHERNOV:  But the standing issue and the appeal
24   would not be at all affected -- a DTC authorization just -- and
25   we've obtained those authorizations on behalf of our -- of some
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

63S9CILC                   Conference                      15
1    of our clients.  We obtained it on behalf of Mr. Applestein
2    when we were before your Honor.  That authorization doesn't say
3    that he's an owner as of any particular date.  It doesn't say
4    he's the owner as of the acceleration date.  There is no
5    connection whatsoever between that authorization and the date
6    of the acceleration.
7         MR. BOCCUZZI:  Just to be clear, your Honor, I wasn't
8    proposing that this is required by the standing deal.  I was
9    saying just as a matter of proving up ownership -- the standing
10   is a separate thing.  In terms -- and if your Honor is
11   rejecting this, then your Honor has rejected it.
12        But just in terms of proof to the court of the
13   elements of their claim, that proof that you own the bond when
14   you accelerated, it seems to be that -- I thought your opinion
15   might have been getting at that, but if it was just a confusion
                            Page 7

63S9CILC.txt

```
16   over the deal --
17          THE COURT: It really wasn't.
18          MR. BOCCUZZI: Then I appreciate, your Honor --
19          THE COURT: Here's what I would think. All the bonds,
20   other than those which were turned in the exchange offer, are
21   marketable, right?
22          MR. CHERNOV: Yes, your Honor.
23          THE COURT: And if a plaintiff in a case wants to sell
24   his bonds, he can sell them. Now what it means is that he has
25   no further cause of action and the new owner would have a cause
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

63S9CILC                 Conference                                    16

```
 1   of action.
 2          So what I'm trying to get at is there may be events in
 3   the way of purchases and sales that affect whether somebody has
 4   a cause of action or doesn't have a cause of action. And if
 5   somebody has bought an interest and -- from somebody who did
 6   the -- took the steps to accelerate, it seems to me the
 7   complaint should allege that.
 8          MR. CHERNOV: Your Honor, none of the plaintiffs --
 9          THE COURT: Let me just finish.
10          MR. CHERNOV: Sure.
11          THE COURT: You've got possible ways a cause of action
12   could shape up and there -- it seems to me that whatever we
13   establish as far as standing should not try to anticipate every
14   variation that could arise.
15          The one thing, it seems to me, that has to be is that
16   the person has to own the interest at the time they sue. And
17   presumably if a motion for summary judgment is made and the
18   court isn't told differently, that same person owns the bond at
19   the time the motion is made and the time the motion is granted.
20   And if a judgment is actually entered, if the court doesn't
21   have any notice to the contrary, it's assumed that the person
22   still owns the interest; otherwise, he doesn't deserve the
23   judgment. But all of that is very routine, very standard.
24          And I go back -- I don't want to be insisting on
25   something that will lead the Republic to go to the court of
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

63S9CILC                 Conference                                    17

```
 1   appeals again and worry the court of appeals about standing,
 2   but I do not see that there is any need for anything other than
 3   ownership at the time of suit to establish standing. And I
 4   think anything else we introduce could cause confusion to
 5   litigants. It could cause confusion to me and, you know, the
 6   law clerks coming on and so forth. And in a way that's what's
 7   happened here.
 8          There was this complication that, at least in my view,
 9   on the September 28, 2005 hearing, and what I wanted to do
10   today is to eliminate that.
11          So what I'm going to do is to say that unless I hear
12   promptly to the contrary -- and I mean within 24 hours -- it
13   will be the rule of this court that standing is established,
14   and proof of standing is established by showing ownership at
15   time of suit. And the opinion of March 20, 2006 will be -- I
16   will consider that you're making a motion for reconsideration
17   and the motion is granted, and I'll issue an amended ruling
18   accordingly.
19          MR. CHERNOV: Thank you, your Honor.
20          MR. BOCCUZZI: Your Honor --
```
                            Page 8

63S9CILC.txt

```
21        THE COURT: And -- I'm just repeating myself, but the
22   different variations that might come up as to whether a
23   particular plaintiff has bought a bond or somebody else has
24   accelerated, that has to be pleaded.  But we don't have to
25   establish -- have standing rules which take into account all
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

63S9CILC              Conference                            18
```
 1   the possible circumstances that might arise in this litigation.
 2   Okay.
 3        MR. CHERNOV:  Thank you.
 4        MR. BOCCUZZI:  Thank you, your Honor.
 5        May I ask, going forward in these cases, we have been
 6   now getting proof of purchase provided to us by the plaintiffs,
 7   and again separate and apart from standing.
 8        In terms of the Republic's understanding and the
 9   Court's understanding, so we can bring it to your attention if
10   there are permutations, can we continue with the practice where
11   plaintiffs are producing -- not for this case but for future
12   cases where we have been doing it, where they do provide us
13   with that proof of purchase?
14        Because right now the pleadings, the way they're cast,
15   it just says Mr. X owns a bond.  There's nothing there, when
16   they purchased it.  There's nothing about in terms of how that
17   relates to acceleration.
18        So if they just provided it, a simple document that
19   shows when they purchased and then if there's something weird,
20   that's what litigation is about, we could bring it to the
21   court's attention.
22        THE COURT:  What form do they provide this?  As part
23   of their pleading?
24        MR. BOCCUZZI:  You mean the document or the -- right
25   now they file their complaint.  The complaint generally just
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

63S9CILC              Conference                            19
```
 1   says Mr. X owns a bond.  It doesn't talk about when a person
 2   acquired it.  Then we serve document demand.  They don't
 3   respond.  They object to those, and then they make a motion for
 4   summary judgment.  And what we see are summary judgment papers
 5   that attach a piece of current ownership, proof of that, if it
 6   is, and then also a proof of purchase.
 7        And all I'm saying is since they've gotten into this
 8   mode because of the agreement wherein these cases going
 9   forward, they give us the proof of purchase -- I'm not saying
10   it's standing, your Honor.  I'm just saying why not just keep
11   having them produce it.  There is no reason why they can't.
12        This way if there is some strange way a claim is
13   shaped up, we have some basis to look at it and present it to
14   the court if there is an issue.
15        THE COURT:  In other words, you think that the -- as
16   people are making motions now, they read the September 28
17   minutes, they are aware of what's required.
18        MR. BOCCUZZI:  I know that's what Mr. Chernov is
19   doing.  He's here.
20        MR. CHERNOV:  That's accurate, your Honor.  Since
21   September 28 when we've moved for summary judgment we have
22   provided the Republic --
23        THE COURT:  On new motions?
24        MR. CHERNOV:  New motions.  We've provided the
25   Republic with a current account statement and proof of
```
                              Page 9

63S9CILC.txt
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

63S9CILC                Conference                    20
1  acquisition of the bonds.
2          THE COURT:  Forget what has been said.  What do you
3  recommend as the format to go forward?
4          MR. CHERNOV:  Your Honor, I recommend just what your
5  Honor found.  Current ownership.  That's what matters, how
6  these people acquired it and when they acquired it.  If they
7  acquired it in 1996 or they acquired it in 2001 should not be
8  required.
9          My feeling is that it often causes the plaintiffs whom
10 we represent a burden.  Not all these people have records --
11 they don't all do like I do and keep their securities nicely
12 ordered.  They have to go to the brokerage houses.  They have
13 to get them.  They have to request them.  Some of the brokerage
14 houses are out of business, and it hasn't been easy for them to
15 get them.
16         I don't think they serve a useful purpose.  I don't
17 think they should be necessary, but obviously, that was how I
18 understood your ruling and we acted accordingly.
19         But if you're asking for my statement as to what I
20 believe should be required, I do not believe they should be
21 required.  I believe that all that is necessary is a current
22 account statement as your Honor stated and for the reasons your
23 Honor stated.
24         THE COURT:  Let's suppose -- let's just go through
25 this.  Let's suppose somebody bought the interest before
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

63S9CILC                Conference                    21
1  December 24, 2001, before the default, and still owns that
2  interest.  Now, I take it normally that person would affect an
3  acceleration.
4          MR. CHERNOV:  Correct, your Honor.  What happens is
5  they retain us and on behalf of the plaintiffs we have then
6  accelerated, as counsel on their behalf.
7          THE COURT:  Okay.  And if that happens it's pleaded in
8  the complaint?
9          MR. CHERNOV:  Correct, your Honor.
10         THE COURT:  If it hasn't happened, it can't be
11 pleaded?
12         MR. CHERNOV:  Correct again.
13         THE COURT:  And if they have bought before
14 December 24, 2001, and if there's been an acceleration, then
15 principal is due and all the unpaid interest is due?
16         MR. CHERNOV:  Correct.
17         THE COURT:  And that unpaid interest would be whatever
18 was involved in the original default and going forward, right?
19         MR. CHERNOV:  Correct.
20         THE COURT:  Now, if somebody buys let's say on
21 January 1, 2003 and let's suppose the prior owner didn't
22 accelerate -- the prior owner just held the bond and knew that
23 the interest wasn't being paid and sold at a discounted value,
24 that person has a cause of action, right?
25         MR. CHERNOV:  Correct.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

63S9CILC                Conference                    22
1          THE COURT:  An owner of the bond still has a contract
                        Page 10

63S9CILC.txt

```
 2   with the Republic and the contract is not being fulfilled.
 3         Now the person can come to you and come to any
 4   attorney; and if there's a right to accelerate, there's still a
 5   right to accelerate?
 6         MR. CHERNOV:  Correct.
 7         THE COURT:  And thus, if that right to accelerate is
 8   properly exercised, the principal is due and all unpaid
 9   interest?
10         MR. CHERNOV:  Correct.
11         THE COURT:  Going back to December 24, 2001?
12         MR. CHERNOV:  Exactly.
13         THE COURT:  Now, if somebody sues -- let's say files
14   suit July, 2003, all they have to plead is that -- they have to
15   plead ownership, right?
16         MR. CHERNOV:  Correct.
17         THE COURT:  If they want to recover principal, they've
18   got to plead acceleration, right?
19         MR. CHERNOV:  Correct.
20         THE COURT:  And as far as interest, they simply plead
21   the interest as unpaid since December 24, 2001?
22         MR. CHERNOV:  Correct.
23         THE COURT:  That's their cause of action?
24         MR. CHERNOV:  Correct.
25         THE COURT:  And if they move for summary judgment, it
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```

63S9CILC                    Conference                          23

```
 1   seems to me that -- forgetting standing for a minute -- that's
 2   all they have to show for summary judgment?
 3         MR. CHERNOV:  That's our position, your Honor.
 4         THE COURT:  They've got a cause of action.
 5         If those things are done, they've got a cause -- if
 6   they bought, there's acceleration and if -- if they bought,
 7   there's acceleration and of course there was the default, then
 8   they have a cause of action and they can get summary judgment
 9   on principal and unpaid interest?
10         MR. CHERNOV:  Correct, your Honor.
11         THE COURT:  Just a minute.  (Pause)
12         Literally -- this was the subject of the appeal -- the
13   bond owners have to sue.  They have standing.  And without
14   anything more, although the interest might have a cause of
15   action in the sense we've just talked about, it's the bond
16   holders who have the authority to sue, correct?
17         MR. CHERNOV:  Correct.
18         THE COURT:  Unless they authorize the interest holders
19   to sue?
20         MR. CHERNOV:  Correct.
21         THE COURT:  That's the technical way it stands?
22         MR. CHERNOV:  Right.
23         THE COURT:  Now --
24         MR. CHERNOV:  That's the question that the court left
25   open.  The court didn't rule on it and your Honor never ruled
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```

63S9CILC                    Conference                          24

```
 1   on it.
 2         THE COURT:  On what?
 3         MR. CHERNOV:  Whether beneficial bond holders have
 4   standing to sue under the terms of the physical agency
 5   agreement.
 6         I believe the court of appeals -- and I haven't gone
                           Page 11
```

63S9CILC.txt

```
 7   back and looked at it and I'm sure Mr. Boccuzzi can correct
 8   me -- I don't know that the court of appeals actually ruled
 9   that only the depository trust company and it's nominee, Cede &
10   Co., have standing.
11             I believe what the court ruled was that it wasn't
12   sufficiently developed in the record and sent it back to your
13   Honor for further consideration.
14             THE COURT:  I think that's correct.
15             MR. CHERNOV:  I don't know if there was an explicit
16   statement by the court.
17             THE COURT:  The questions that were left open -- I
18   can't remember but they were a little bit not so basic.  They
19   were a little bit kind of -- but you're technically right, but
20   basically the message was that if there wasn't some kind of a
21   blanket waiver or something, the structure -- the written
22   structure has to obtain.
23             Now it seems to me what should have been done, on the
24   remand, when we realized that the bond owners were never in
25   this world going to bring suit, what we should have done is to
```
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

63S9CILC        Conference                              25
```
 1   say all that's necessary to prove standing and get by that
 2   point is to show you've got a cause of action.  And instead we
 3   got into this somewhat complicated rigmarole on September 28.
 4             Now, I don't want to cause further confusion and
 5   introduce a change which would cause confusion, but I do not
 6   think -- these cases keep being brought and so forth, so we've
 7   got a long road -- a lot ahead of us and it seems to me even
 8   though there is a change from what was said on September 28,
 9   2005, it really -- we ought to go back and have it as simple as
10   possible.  If somebody wants to show the time of purchase when
11   they file a motion for summary judgment, they can do that.  And
12   if there's some agreement between Cleary Gottlieb and
13   plaintiff's counsel to do something simply by agreement, they
14   can do that.
15             But as far as this court is concerned, it seems to me
16   we ought to have a rule that what is necessary to show standing
17   is simply to show a cause of action.  And that means ownership,
18   somebody accelerated, if there's a request for principal, and
19   of course the interest follows as simply from the ownership.
20   And that's what I'm going to say.
21             And again, I'll assume unless there's an objection
22   that I hear about within 24 hours, that's the rule from here on
23   out.
24             If, as a matter of some convenience, if counsel for
25   plaintiffs and counsel for the Republic want to agree to have
```
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

63S9CILC        Conference                              26
```
 1   other documentation in connection with a motion for summary
 2   judgment, you can do whatever you want.  But I want it as
 3   simple as possible.
 4             So, the motion for reconsideration is granted.  And
 5   the -- a new opinion will be issued amending so much as
 6   necessary to show that there is the -- the motion is granted.
 7             MR. CHERNOV:  Thank you, your Honor.
 8             THE COURT:  Thank you.
 9             (Adjourned)
10
11
```
                          Page 12

63S9CILC.txt

12
13
14
15
16
17
18
19
20
21
22
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

I

1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   In re
                        02 Civ. 4124 (TPG)
4   THE REPUBLIC OF ARGENTINA

5   ------------------------------x
                        New York, N.Y.
6                       March 5, 2004
                        10:50 a.m.
7   Before:
            HON. THOMAS P. GRIESA
8                       District Judge

9

10          APPEARANCES

11  DREIER LLP
        Attorneys for Plaintiffs
12      499 Park Avenue
        New York, New York 10022
13      (212) 328-6100
      BY: MARK S. DREIER, ESQ.
14      JOEL A. CHERNOV, ESQ.

15  GUILLERMO A. GLEIZER, ESQ.
        Attorney for Plaintiffs
16      130 Water Street, Suite 4K
        New York, New York 10005
17      (212) 683-0233

18  CLEARY, GOTTLIEB, STEEN & HAMILTON
        Attorneys for Defendant
19      One Liberty Plaza
        New York, New York 10006
20      (212) 225-3999
      BY: CARMINE D. BOCCUZZI, JR., ESQ.
21      JONATHAN I. BLACKMAN, ESQ.
        MARIA McFARLAND, ESQ.
22      WESLEY H. KELMAN, ESQ.

23  BOLATTI & GRIFFITH
        Attorneys for Correo Argentino, S.A., and Trustee
24      32 Old Slip

25          New York, New York  10005
            (212) 363-3780
        BY: SYLVIA L. BOLATTI, ESQ.

                                        2

1       (Case called)

2       THE COURT:  I would like to talk about some broad

3   scheduling matters.  The one principal privilege I exercise as

4   a senior judge is I take an extra month of vacation in the

5   summer, so I am gone June and July.  This invariably works out.

6   Lawyers in cases know that and reschedule around that.

7       I think in this case we have to think about what is

8   coming up and work around that.  If there are things that

9   cannot avoid coming up in that time period, we have ways to

10  handle that.  We have Part I judges to take care of emergency

11  matters.  We have undoubtedly a magistrate judge who is

12  available who will be called in on this case or in these cases.

13      I don't need to have any further discussion of that

14  now.  Although June seems a long way away in one sense, it is

15  like tomorrow in another sense.  That is the way time goes.  So

16  let's just leave that subject for now.  Maybe we can discuss it

17  as time goes on.

18      We have several cases that need attention today, and

19  there are certain cases where motions for summary judgment are

20  pending.  There are issues about standing and issues about

21  ownership.  I would like to discuss the standing issue and hear

22  what anybody would like to offer as far as argument in addition

23  to what is in the papers. The floor is open.

24      MR. BOCCUZZI: Your Honor, Carmine Boccuzzi for the

25  Republic of Argentina. I think the problems are pretty much

3

1  laid out in the papers. I would just draw your Honor's

2  attention to the language that we are relying on in the FAA,

3  which is on page 7.

4      What we are talking about here is a global security.

5  These lawsuits are based on the fiscal agency agreement, and

6  that is the document that is claimed to have been breached. If

7  your Honor applies the recently decided New York state cases,

8  the MacKay Shields case and the Oak Tree cases, those make very

9  clear that in this type of situation, where you have a

10  registered holder designated in the relevant agreement or

11  contract as the sole owner, then that registered holder is the

12  party with standing to pursue any claim, including claims based

13  on failure to make payments due under the contract.

14      That is really the issue. It is a simple straight-

15  forward application of the contractual language and there is

16  New York precedent, including by the First Department in New

17  York. That is what the basis of the motion is.

18      Plaintiffs seem to rely primarily on some prefatory

19  language that is found in the FAA on page 7 under the language

20  that says the registered holder is the sole owner for all

21  purposes under the agreement. They argue that because there is

22  a statement about the republic understanding that a depository

23  might authorize someone to do something, that the depository is

24  otherwise the sole party who can take the action, that means

25  they have standing to sue.

4

1       This language, of course, does not purport to undercut

2  the rest of the documentary language that we rely on.

3  Moreover, none of these plaintiffs, your Honor, even purport to

4  have an authorization for the depository. So the situation is

5  that language doesn't help the plaintiffs.

6       The other expects of these two cases, we raise the

7  Etevob and the Franceschi case, which are cases that involve

8  each having about 28 to 30 plaintiffs. As you have seen in our

9  papers that oppose plaintiffs' motion for summary judgment,

10  many of them failed to make a prima facie showing that

11  sufficient to get summary judgment that they are even

12  beneficial owners of the interests in the bonds that they claim

13  to own.

14       So the standing provision which focuses enforcement in

15  the registered holder, which, as the registered holder, has the

16  global security and sits on top of the system of book entries

17  that goes through the participant, through the participants'

18  participants, and then downward ultimately to the beneficial

19  owner, that is the best entity to be involved in this process.

20       As I said, your Honor, none of these folks, who

21  otherwise, as you see from the papers, have really failed to

22  establish the beneficial ownership, none of them has even

23  purported to get the authorization of this registered holder.

24  That is the basis of the motion.

25        There is a similar motion made in the case involving

                                5

1  Mr. Applestein in the Province case. Again it is also relying

2  on the MacKay Shields and Oak Tree cases.

3        THE COURT: Who are the depositories? What do they

4  do?

5        MR. BOCCUZZI: The depository is an entity like

6  Depository Trust Corporation, DTCC, and they are an entity that

7  holds the global security. They are identified in the

8  documents as holding the global security. They are the entity

9  that in turn has participants --

10       THE COURT: Wait a minute. Let's take the United

11  States. What company is it?

12       MR. BOCCUZZI: The Depository Trust Company, your

13  Honor, DTC.

14       THE COURT: What do they do?

15       MR. BOCCUZZI: They are a corporation that is involved

16  in -- they were established in the seventies, and they are

17  there to operate and be involved in overseeing the system that

18  has registered securities of this type.

19       THE COURT: That is a little vague.

20    MR. BOCCUZZI: They have participants, your Honor.

21    Participants are financial institutions.

22    THE COURT: So you have the Depository Trust Company.

23    MR. BOCCUZZI: Right.

24    THE COURT: Let's say the republic issues a bond, it

25    issues it to the Depository Trust Company.

6

1    MR. BOCCUZZI: They issue a global security, yes, and

2    the Depository Trust Company is the registered holder of that

3    global security.

4    THE COURT: What is meant by a global security?

5    MR. BOCCUZZI: It is opposed to something like a

6    bearer bond. The global security is a security --

7    THE COURT: Is it a bond?

8    MR. BOCCUZZI: Yes. It is an obligation of the

9    republic.

10    THE COURT: Is it a bond?

11    MR. BOCCUZZI: Yes, it is a bond.

12    THE COURT: It is a bond?

13    MR. BOCCUZZI: Right.

14    THE COURT: So the Republic of Argentina issues a

15    bond. You are saying it issues the bond to the --

16    MR. BOCCUZZI: The registered holder.

17    THE COURT: The Depository --

18    MR. BOCCUZZI: Trust Company.

19    THE COURT:  -- Trust Company.  Why does it issue it to

20    the Depository Trust Company?  The Depository Trust Company is

21    not paying for the bond, right?

22    MR. BOCCUZZI:  Right.

23    THE COURT:  So how does the Depository Trust Company

24    know to get a bond issued to it?

25    MR. BOCCUZZI:  Pursuant to the fiscal agency agreement

7

1    between the republic and the fiscal agent, that talks about

2    what the bonds or series of bonds are going to be.  The

3    Depository Trust Company, its job is to hold the global

4    security.

5    THE COURT:  I asked you a specific question.  Some

6    individual or company decides to buy some Argentine bonds.  How

7    do they buy the bonds?

8    MR. BOCCUZZI:  They could call their broker.

9    THE COURT:  They call their broker.

10    MR. BOCCUZZI:  Right.

11    THE COURT:  Their broker calls who?

12    MR. BOCCUZZI:  Their broker would go into the market

13    and find a seller of the bonds and purchase the bond.

14    THE COURT:  Who is the seller going to be?

15    MR. BOCCUZZI:  It could be anyone, your Honor.  These

16    bonds trade in the secondary market.

17    THE COURT:  So somebody else who is owner of bond,

18  right?

19      MR. BOCCUZZI:  Right.

20      THE COURT:  Then the person wants to buy or become the

21  owner of these bonds, right?

22      MR. BOCCUZZI:  Correct.

23      THE COURT:  The Depository Trust Company is not in the

24  market, is it?

25      MR. BOCCUZZI:  Not that I know of, your Honor.

                                8

1       THE COURT:  Of course not.

2       MR. BOCCUZZI:  But it is sitting on top of the market

3   in terms of when that sale happened.

4       THE COURT:  Sitting on top doesn't mean anything.  The

5   Depository Trust Company is not in the market selling or

6   buying, right?

7       MR. BOCCUZZI:  Correct.

8       THE COURT:  So somebody sells some bonds.  These are

9   registered bonds and not bearer bonds?

10      MR. BOCCUZZI:  Correct.

11      THE COURT:  Now, these bonds are registered in whose

12  name?  The Depository Trust Company's name?

13      MR. BOCCUZZI:  Yes.

14      THE COURT:  Obviously, the seller and the buyer, they

15  employ their brokers and the brokers are handling it.  What do

16  the brokers do?  What does the broker for the seller do after

17  the sale?  Does the broker notify the Depository Trust Company

18  or what?

19      MR. BOCCUZZI:  It depends.  If the broker itself is a

20  participant -- and "participant" is the term of art for people

21  who are participants in Depository Trust Company -- then that

22  participant, the next link in the chain would be the Depository

23  Trust Company.  So that book entry would be notified to the

24  Depository Trust Company.

25      THE COURT:  What do you mean a book entry would be

                                   9

1   notified?

2       MR. BOCCUZZI:  The fact that there has been a transfer

3   of beneficial interest would have to be informed to the

4   Depository Trust Company.  It is just a series of book entries,

5   your Honor.

6       THE COURT:  I understand.  In other words, certain

7   brokers are participants.

8       MR. BOCCUZZI:  Yes.

9       THE COURT:  They are listed with the Depository Trust

10  Company.

11      MR. BOCCUZZI:  Correct.

12      THE COURT:  What is the role of a participant?

13      MR. BOCCUZZI:  They are just people, financial

14  institutions, who are in the market trading in these bonds or

15  themselves have customers, broker-dealers, who themselves are

16   trading in the bonds.  The system is just meant to

17   facilitate —

18        THE COURT:  Wait a minute.  They are registered or

19   listed with the Depository Trust Company as brokers who are

20   trading in the bonds, right?

21        MR. BOCCUZZI:  Correct.

22        THE COURT:  Do they trade in their own name or do they

23   represent other people?

24        MR. BOCCUZZI:  They would be trading in their own

25   name.

                                 10

1        THE COURT:  So they trade in their own name.

2        MR. BOCCUZZI:  And they have their own books that

3   would trace to their customers for whom they are trading.

4        THE COURT:  You said they trade in their own name.

5   Now, you mention customers.  I suppose they do both.

6        MR. BOCCUZZI:  Right.  For example, there is a broker-

7   dealer and he may have customers.  So he may be trading in his

8   own name.  But the position that is reflected, for example,

9   with the DTC would be in the name of the participant.  Some of

10   it may be for its own account and some of it may be

11   beneficially owned by the next —

12        THE COURT:  So the Depository Trust Company doesn't

13   even list the beneficial owners at all, does it?

14        MR. BOCCUZZI:  That is by and large correct.

15    THE COURT:  They just list participants?

16    MR. BOCCUZZI:  Correct.

17    THE COURT:  And it is the participants who actually

18  list the beneficial owners?

19    MR. BOCCUZZI:  They may or they themselves may have

20  another layer between themselves and the beneficial owners.

21    THE COURT:  What layer would that be?

22    MR. BOCCUZZI:  For example, it could be a participant,

23  which is Lehman Brothers, and then he could have someone, a

24  broker-dealer, under them.  And that broker-dealer may be

25  trading for the ultimate beneficial owner.  So there just could

11

1  be different layers, your Honor, in terms of what is between

2  the beneficial interest owner and the registered holder, the

3  Depository Trust Company.

4    THE COURT:  So you have conceivably these layers:  The

5  Depository Trust Company, the participants, other brokers who

6  are dealing with the participants, and the beneficial owners.

7  Conceivably those layers; it could be a little less.  Anyway,

8  that is what could happen.

9    Now, if an interest payment is made, who does the

10  republic make it to?

11    MR. BOCCUZZI:  The fiscal agent, Bankers Trust under

12  the fiscal agency agreement.  That agent pays the depository.

13    THE COURT:  So there is a fiscal agent of the bank,

14  and the bank pays the Depository Trust Company, and then it

15  goes on through the chain?

16      MR. BOCCUZZI:  Exactly.

17      THE COURT:  And gets to the beneficial owner.

18      MR. BOCCUZZI:  Yes.

19      THE COURT:  What is the language that prevents the

20  beneficial owner from suing?

21      MR. BOCCUZZI:  If you look, your Honor, on page 7 of

22  the fiscal agency agreement, that first full paragraph that

23  begins with the language "So long as the depository for global

24  security or its nominee is the registered owner of such global

25  security, such depository or such nominee, as the case may be,

                           12

1   will be considered the sole owner or holder of the securities

2   represented by such global security for all purposes under this

3   agreement."

4       It goes on to state that beneficial owners are not

5   entitled to having a definitive note in their name and will not

6   be considered the owners or holders thereof under such

7   securities or this agreement.

8       Then, the next sentence says, "Accordingly, each

9   person owning a beneficial interest in a global security must

10  rely on the procedures of the depository for such global

11  security and, if such person is not a participant, on the

12  procedures of the participant through which such person owns

13  its interest to exercise any rights of a holder under the

14  securities or this agreement."

15      The next sentence is the language that plaintiffs have

16  relied on to rebut what precedes it.

17      THE COURT: Certainly the governing instruments

18  contemplate the possibility of legal action. That is why there

19  is a waiver of sovereign immunity. I think there is a choice

20  of law, there is an agreement to jurisdiction, all the things

21  that we covered in the earlier summary judgment motions.

22      It would be impossible to create the instruments here

23  without providing for the possibility of legal action. Who can

24  take the legal action?

25      MR. BOCCUZZI: All the rights in terms of the fiscal

13

1  agency, your Honor, are couched in terms of the holder, and the

2  holder is the registered holder, who is considered the sole

3  registered holder under the contract.

4      THE COURT: Is the Depository Trust Company filing any

5  lawsuits?

6      MR. BOCCUZZI: We have not heard from the

7  depository --

8      THE COURT: Is the Depository Trust Company

9  participating in any conferences about a debt workout?

10      MR. BOCCUZZI: I am not aware of, that your Honor.

11      THE COURT: No, of course, not. The Depository Trust

12  Company makes a little dab of money by performing ministerial

13  functions. They have no interest that would possibly cause

14  them to go to a meeting about a debt workout or even consider

15  the subject. They would have no interest in filing a lawsuit.

16      what you are talking about is giving them the sole

17  right of action, and that will never happen. They will never

18  sue. They will never sue. Never heard of it.

19      What is really important is the last clause, the last

20  sentence, beginning "The republic understands." That is the

21  important part of that whole paragraph for our purposes. What

22  it does say is that the republic understands that the

23  depositories and the participants will allow the beneficial

24  owners to sue. That is the important part of this paragraph.

25      MR. BOCCUZZI: Your Honor, that has not happened here.

                            14

1  There has been no showing that there has been any

2  authorization. This is relevant. I understand the Depository

3  Trust Company is not the one --

4      THE COURT: I am sure that that can be accomplished.

5  If the Court called the Depository Trust Company into court, I

6  am sure they would be quite upset that they had to pay a lawyer

7  to come to court, but they would have to. And I think on the

8  spot we would get as many authorizations as necessary. It

9  would just be done. They have no interest in doing it or

10  blocking it.

11    MR. BOCCUZZI: Your Honor, the language that you cite

12    to refers to the participants holding the relevant interest to

13    take such action. In other words, the Depository Trust Company

14    does have an interest in making sure that there is an accurate

15    bookkeeping up and down the chain of who actually is the

16    beneficial owner.

17    THE COURT: They have no interest in engaging in

18    expensive litigation, and they won't ever do it. You know that

19    perfectly well. Have you ever talked to them about the

20    subject?

21    MR. BOCCUZZI: Your Honor, I have not.

22    THE COURT: No, of course not. You know what they

23    would say if Cleary Gottlieb called up and said, look, we

24    represent the Republic of Argentina and we are going go into

25    court and say that you are the only people that can file suit,

15

1    what can we really represent to the court about what you will

2    or will not do, we would like to file an affidavit providing

3    the court with information of a practical nature, and would you

4    like to give us an affidavit saying what your intention is

5    about suing on all these defaults?

6    Did you contact them and try to obtain such an

7    affidavit so you could inform the court of what in practical

8    fact would happen with the depository? Did you do that?

9    MR. BOCCUZZI: No, your Honor.

10      THE COURT:  Of course you didn't, because you knew

11   what you would find out.

12      MR. BOCCUZZI:  If I may, your Honor.  In terms of the

13   Province case, Mr. Applestein contacted through his participant

14   the DTCC.  So what happens here is there is a verification

15   function that DTC plays, and this is relevant.  If looked at --

16      THE COURT:  That is another issue.

17      MR. BOCCUZZI:  The issue is there is a letter from

18   DTCC to the participant and from the participant to Mr.

19   Applestein, so there is a role.  That is authorizing the suit,

20   which at the very least is what this language references.

21      THE COURT:  Maybe what we need to do is to have a

22   procedure whereby Cleary Gottlieb -- you are the one raising

23   the point.  It seems to me the burden should be on you to

24   arrange the details.

25      MR. BOCCUZZI:  Your Honor, the point is proof of

16

1   beneficial ownership.  That is the plaintiff's burden.  The

2   plaintiffs have to show.  They are stating here, your Honor, we

3   want a judgment for X million dollars.

4      THE COURT:  Maybe it shouldn't be placed on Cleary

5   Gottlieb.  Maybe I will just issue a court order having them

6   come in.  Do you suppose they could come in in a half an hour?

7   Somebody could come in.

8      MR. BOCCUZZI:  In terms of coming in in a half hour, I

9   am just not sure what you would want them to --

10      THE COURT:  Where are they located?  Are they down on

11  Wall Street?

12      MR. BOCCUZZI:  They are in New York, yes, your Honor.

13      THE COURT:  Where?

14      MR. BLACKMAN:  They are down on Water Street.

15      THE COURT:  That isn't very far.  We could adjourn

16  until they are here.  I am sure they would sign any one you

17  want them to sign.  Do you want to go through that?

18      MR. BOCCUZZI:  No, your Honor.

19      THE COURT:  Of course not.  We are not going to do a

20  lot of foolishness.  We are going to get down to practical

21  fact.  The fact is that these beneficial owners are entitled to

22  sue.  If there are some formalities that have to be carried

23  out, they can be easily carried out, and that's that.  That

24  solves the issue of standing, and that is all there is to it.

25  That is the end of it.

17

1       MR. BOCCUZZI:  Yes, your Honor.

2       THE COURT:  If you want to insist on formalities, we

3   will have all the formalities, and the question will be who

4   will pay the cost of getting those formalities accomplished.

5   Anyway, we won't worry about that now.  We take care of the

6   formalities and that can be agreed upon and that is that.

7       Next question:  Ownership.

8        MR. BOCCUZZI:  Your Honor, we have raised an issue as

9   to the showing on summary judgment that these folks have done.

10   They started with a lawyer's affidavit, which is proof of

11   nothing.  Since then, there have been a variety of affidavits.

12        There are discrepancies in terms, for example, of the

13   amount pleaded and the amount that is shown on the brokerage

14   statement that was submitted.  It just doesn't tie together in

15   many places.

16        The burden has been on us, and I think we have met the

17   burden in terms of summary judgment to point out the

18   discrepancies in the failures of proof.  That is really the

19   issue.

20        THE COURT:  The issue of ownership is a real issue,

21   not something that can be passed over lightly.  Let's take it

22   case by case.  I know on Kalbermann I denied the motion for

23   summary judgment because there was an issue of ownership.  So

24   that is where we need to spend some time.

25        MR. CHERNOV:  Can I be heard, your Honor, on Mr.

                                   18

1   Kalbermann?

2        THE COURT:  Yes.  You represent?

3        MR. CHERNOV:  Your Honor, my name is Joel Chernov.  I

4   am with the law firm of Dreier LLP, and we represent Mr.

5   Kalbermann.

6        THE COURT:  All right.

7    MR. CHERNOV:  Your Honor surely did deny Mr.

8    Kalbermann's first motion, finding that the evidence was

9    insufficient.  Your Honor, with all due respect, we believe

10   there was sufficient evidence before the Court, and we made a

11   motion for reconsideration or reargument and submitted a new

12   declaration that hopefully clarified the original evidence and

13   supplemented that evidence.

14        If I can direct the Court's attention to that

15   evidence, I believe you will see that it is plenty clear that

16   Mr. Kalbermann does own the bonds he claims to own.  First, I

17   don't know if your Honor has before you Mr. Kalbermann's

18   accounts.

19        THE COURT:  Mr. Boccuzzi, he has a good point in that

20   on the issue of ownership one satisfactory way to deal with

21   that would be to go through the process which is outlined on

22   page 7 of the fiscal agency agreement.  I was trying to dispose

23   of the standing issue quickly, which I think ought to be done.

24   But there are requirements of these instruments, and I am

25   certainly not ready to say the instruments don't have to be

19

1    complied with.  I think compliance could be easy and it should

2    be easy.  And it should be done with a minimum of expense.

3        Is there not a requirement to go through the

4    procedures talked about in the fiscal agency agreement?  Your

5    client is suing --

6    MR. CHERNOV: Mr. Kalbermann is suing the republic.

7    THE COURT: What about those procedures? The thing

8    that does strike me is Mr. Boccuzzi's idea that -- if those

9    procedures are complied with, then that is a very sure way of

10   resolving the issue of ownership. If they have to be complied

11   with, why not do it and then not fight about whether one

12   particular piece of evidence is OK or not?

13   MR. CHERNOV: Your Honor, I don't believe complying

14   with this proceeding would actually solve the problem.

15   THE COURT: Let's go back. Don't you have to comply

16   with the procedures?

17   MR. CHERNOV: Your Honor, we submit that you are

18   exactly correct, that the paragraph you pointed to means that

19   people do not need to go get authorization. It means that

20   everyone understood the way the industry works is that you

21   don't need to go get authorizations.

22   THE COURT: I read it another way. Am I wrong?

23   MR. CHERNOV: I read it, your Honor, that the republic

24   understands that under existing industry practice, if we went

25   out and asked for the authorization, we would be given it or

                                    20

1    DTC would give it to Lehman Brothers, for example, and then

2    Lehman Brothers would give it to the beneficial holder. But it

3    is understood. It is not something that has to be done. DTC,

4    as you said, has no interest in having everyone call them up

5  and go through this process.

6       THE COURT: Let's read the sentence, could we?

7       MR. CHERNOV: Surely.

8       THE COURT: "The republic understands that under

9  existing industry practice, if the republic requests any action

10  of holders "-- that language is irrelevant.

11       MR. CHERNOV: Correct.

12       THE COURT: Let's start again. "The republic

13  understands that under existing industry practices, if an owner

14  of a beneficial interest in such global security desires to

15  take any action which a holder is entitled to take under the

16  fiscal agency agreement, the depository for such global

17  security would authorize the participants holding the relevant

18  interests to take such actions, and the participants would

19  authorize beneficial owners, owning through such participants,

20  to take such action or would otherwise act upon the

21  instructions of beneficial owners holding through them."

22       Mr. Boccuzzi is certainly correct that the earlier

23  part of the paragraph talks about the depository being the sole

24  owner and being the sole party who can take action, and so

25  forth, does it not?

                          21

1       MR. CHERNOV: It does, your Honor. But if you read

2  the entire agreement, you will see that they repeatedly

3  throughout the agreement reference the registered holder. When

4    they wanted to talk about the registered holder, they talked

5    about the register holder. They talked about that repeatedly.

6    In the jurisdiction paragraph, though, notably they don't use

7    the word "registered holder," they only use the word "holder."

8        They also talk in the agreement about aggregating the

9    interests of the holdings, that 25 percent of the holders can

10    accelerating rate and that acceleration can overridden by other

11    percentages of holders.

12        THE COURT: You are saying holders as used in two

13    senses.

14        MR. CHERNOV: Exactly, your Honor. This

15    interpretation that the republic is now putting before the

16    Court doesn't square with what the document intended, and it is

17    the paragraph that you pointed to that shows the true intent.

18        What also shows the true intent, your Honor, is that

19    we have now been before you for the better part of two years

20    and this argument was never raised. The only reason they are

21    raising it now is as a last straw to once again try to stop

22    these lawsuits.

23        This paragraph clearly provides that holders,

24    beneficial owners, have a right to bring suits and they have

25    that right without going back each time to DTC and trying to

                            22

1    get DTC to give authorizations. DTC says it is understood that

2    if someone went and asked, they would get it.

3      With respect to the proof problems, this really

4  doesn't address the proof problems. The proof problems is DTC

5  doesn't even know, your Honor, as you recognize, who holds

6  what. DTC has no knowledge. The person who has knowledge is

7  either the participant who sells to the beneficial owner --

8      THE COURT: The broker.

9      MR. CHERNOV: That's right, the broker. The broker

10  knows who has it. So if we get an authorization from DTC, that

11  is not going to help our proof problem. Our proof problem has

12  to be addressed by the broker.

13      That is what we have done, your Honor. We have given

14  you the account statements from the broker, we have given you

15  letters from the brokers. The issues they are raising with

16  respect to the proof are things such as the names cut off at

17  the top.

18      Now, they say the names cut off at the top. But did

19  they call me, your Honor, and say, can I have a new copy of

20  that piece of paper so I can see the top? Did they go to

21  court, where we had the originals submitted, so that they could

22  see the name at the top? No.

23      Again, your Honor, they are making mountains out of

24  molehills. They are raising red herrings.

25      The account statement shows the ownership. The

23

1  letters from the brokers show the ownership. Going back and

2  getting authorization from DTC, who has no idea what beneficial

3  people have or don't have, is not going to help us address the

4  ownership question.

5        THE COURT:  I suppose Merrill Lynch is a participant.

6        MR. CHERNOV:  Excuse me?  Merrill Lynch?

7        THE COURT:  You have submitted account statements from

8  Merrill Lynch.

9        MR. CHERNOV:  Yes.  I don't know each of their

10  participants, but I believe Merrill is a participant.

11        THE COURT:  I guess your argument is that Depository

12  Trust Company isn't going to know.

13        MR. CHERNOV:  Correct.

14        THE COURT:  Merrill Lynch knows, but what you are

15  basically saying is you have enough information from Merrill

16  Lynch in the account statements.

17        MR. CHERNOV:  That is correct, your Honor, and those

18  are the statements we have put before you.  To the extent some

19  of those statements have issues, we can address those issues.

20  But I don't see why we should be going back to DTC to try to

21  help us resolve the issue.

22        THE COURT:  How many bonds did Kalbermann own?

23        MR. CHERNOV:  That is the subject of this lawsuit,

24  your Honor.  He had five separate purchases, but they are three

25  series of bonds.  He has $840,000 worth of bonds that have an

24

1    interest rate of 12.375 percent, I believe. He has a $90,000

2    bond which is at 11 or 11.5 percent, and then a 100,000 bond.

3         That totals 1,030,000, which is exactly what he sued

4    for when he brought the action. He submitted his account

5    statement which shows that. He submitted a letter from his

6    broker which shows that. He submitted the confirmation slips

7    in the original bank statement that shows that.

8         When we first moved for summary judgment, the republic

9    didn't even contest that ownership. Now they do, saying that

10   one of the CUSIP numbers, your Honor, is wrong. Clearly, it

11   was a clerical error. It has the right maturity date, it has

12   the right interest rate.

13        THE COURT: Help me out. There are a lot of papers.

14   It is all in the papers. He owns three sets of bonds?

15        MR. CHERNOV: Yes. If you look at Mr. Kalbermann's,

16   for example, his July declaration, Exhibit A to that

17   declaration.

18        THE COURT: I have it. 90,000 in bonds. There is a

19   confirmation slip.

20        MR. CHERNOV: There is a confirmation slip that he

21   actually in his declaration submitted his confirmation slips

22   that tie in.

23        THE COURT: So he got a confirmation slip dated trade

24   date 2/14/2000, 90,000 bonds bought, right?

25        MR. CHERNOV: Yes.

1        THE COURT: Then you have 200,000 bonds bought, trade

2    date 4/23/2001, confirmation slip. Then 540,000 4/25/2001,

3    that is a confirmation slip. That is all Merrill Lynch.

4        Was the other one the Prudential?

5        MR. CHERNOV: The Prudential, your Honor, which was a

6    purchase for 100,000 on 5/15.

7        Then, your Honor, if you go to the next exhibit, it is

8    not a confirmation slip but I believe it is Mr. Kalbermann's

9    original statement from Bank Leu, and that shows a purchase on

10   the second item, a purchase of a $100,000 note with an 11

11   percent interest rate and a maturity date of I believe it is

12   October 9, 2006.

13       That is evidenced also, your Honor, if you go to

14   Exhibit C to this declaration. Exhibit C to the declaration,

15   your Honor, has the letter from Mr. Kalbermann's broker, and

16   that is a November 26, 2003 letter. Here he totals those up.

17       And you have the three series of bonds owned by Mr.

18   Kalbermann that again total 1,030,000: The 100,000 bond with

19   the rate of 11 percent, the 90,000 bond with the rate of 11.75

20   percent, and then the 840,000 in bonds with the rate of 12.375

21   percent.

22       He has given the Court the confirmation slips, a

23   letter from his broker, his account statement. We submit, your

24   Honor, that that is sufficient evidence to prove his ownership.

25    MR. BOCCUZZI:  Your Honor, if I might?

26

1    THE COURT:  Yes.

2    MR. BOCCUZZI:  Mr. Kalbermann did come back and re-go

3    over evidence that was before your Honor when your Honor denied

4    his motion for summary judgment because of discrepancies.  We

5    acknowledge that he did clear up some of that.  But there is,

6    for example, still an outstanding discrepancy where he is

7    claiming in his declaration at paragraph 4 to be holding a face

8    amount of $100,000 in principal with a CUSIP number that does

9    not match the CUSIP number on the slip he submitted at Exhibit

10    A to his declaration.  So at least as to that amount, there is

11    a remaining discrepancy.

12    THE COURT:  What is that number?

13    MR. BOCCUZZI:  If you look at his declaration, you

14    will see there is a CUSIP number there for 100,000 face amount,

15    040114GD6.  And then if you go to Exhibit A, the third page,

16    which D527 is the Bates number, the CUSIP number there is a

17    different CUSIP number there on the bottom.  It is 9949L9C.

18    And this is for $100,000.

19    So we don't have a complete match or corroboration

20    between the documentary evidence and what Mr. Kalbermann is

21    claiming.  Of course, the reason why the republic opposed the

22    motion for reconsideration is because of the initial problems

23    your Honor identified in the November 19th denial of summary

24  judgment. They went back, they tried to prove it up, and there

25  is still at least one outstanding discrepancy.

27

1           MR. CHERNOV: Your Honor, clearly that is a clerical

2  error. If you look at Mr. Kalbermann's account statement, it

3  lists --

4           THE COURT: Where is the account statement?

5           MR. CHERNOV: The account statement, your Honor, is

6  annexed to Mr. Kalbermann's original declaration, his

7  declaration of July 8, 2003. Your Honor, I have a copy. If

8  you would like, I could hand it up.

9           THE COURT: What is shown there?

10          MR. CHERNOV: If you look at the last page of the

11  account statement, it shows Argentina, Republic of, global

12  bond. It shows the same bond with the same interest rate, the

13  same maturity date, and it shows that Mr. Kalbermann owns

14  $840,000 worth of that bond or face value amount of that bond.

15  The last page of it, page 3 of 5, it is listed on top.

16          That is also exactly what Mr. Kalbermann's broker told

17  the Court that Mr. Kalbermann owed, and that is annexed as

18  Exhibit C to Mr. Kalbermann's most recent declaration, his

19  December declaration. If you add together the amounts from the

20  confirmation slips, you again get to 840,000. Each of the

21  confirmation slips gives us the same interest rate of 12.375

22  percent, each gives the same maturity date.

23      Your Honor, the republic is not contending they have

24  issued any other bonds with this maturity date and with this

25  interest rate.  Clearly that CUSIP number was a clerical error.

28

1   The proof is the account statement and the letter from the

2   broker.  The fact that the confirmation slip has an incorrect

3   CUSIP number should not be allowed to defeat Mr. Kalbermann's

4   motion.

5      MR. BOCCUZZI:  What normally governs, your Honor, is a

6   confirmation slip.  The letter that is annexed as Exhibit C to

7   the Kalbermann declaration itself disclaims that it is going to

8   govern in the event of a dispute.  So, again, the document that

9   Mr. Chernov is referring to as Exhibit 1, this is the original

10  document that represents a whole bunch of other bonds, and that

11  is the original source of the discrepancy identified in the

12  November 19th denial of summary judgment.  So we are just

13  building on evidence that didn't establish what plaintiff says

14  it is establishing.

15      To get back to the point, at the end of the day for

16  that $100,000 nobody knows on this record what CUSIP number it

17  is, and that is the way you track a security.  This could be

18  cleared up if you got the chain of letters, potentially cleared

19  up, because then someone would have to drill down on what exact

20  CUSIP number we are talking about.

21      Again, CUSIP number is not a mere formality or detail

22  or something minor.  It goes to the bond that this plaintiff

23  says they have a beneficial ownership interest in.  That is

24  relevant, because at the end of the day that bond will have to

25  be written down at the global level if there is a judgment

29

1   entered.

2        THE COURT:  It is really preposterous to have a

3   courtroom full of people and two sets of lawyers and a judge

4   haggling about these details.  Anybody who has been in the law

5   practice of the kind that is characteristic of the lawyers

6   here, my former law practice, my experience as a judge, we have

7   seen actions brought on behalf of holders of securities.  We

8   have all relied on confirmation slips.  There is almost never

9   any issue.  There are a lot of other issues that you have to

10  worry about, fraud or something like that, but the ownership

11  generally is not a problem.

12       I did deny summary judgment in the first instance.

13  Really, the idea there was to get the situation clarified.  I

14  never really doubted that Mr. Kalbermann owned bonds.  I didn't

15  think that the lawyer was coming in with a balloon full of hot

16  air.  It was a matter of straightening out the accounting and

17  getting things accurate.

18       I am not going to spend a lot of time, as we are doing

19  now, on the ownership issue.  If there is a reasonable set of

20  confirmation slips or declarations or whatever, that settles it

21  as far as I'm concerned. It settles it because that is the way

22  it is settled in lawsuits that deal with these subjects.

23  Nobody engages in this kind of exercise, and we are not going

24  to have it.

25          I don't know why there is a difference in CUSIP

                                30

1  numbers. If, as time goes on, it turns out that there is some

2  problem, well, there is a problem. But I do have a set of

3  confirmation slips, I have an account statement, I have some

4  correspondence. I'm sorry to have to worry about a problem of

5  addition. What do you say is the number of bonds he owns?

6          MR. CHERNOV: A million 30,000 in total. 840 plus the

7  90 plus the 100.

8          THE COURT: What is it, 840 plus?

9          MR. CHERNOV: 840,000 was one series, plus 100, plus

10  90.

11          THE COURT: So it is 840 plus 100.

12          MR. CHERNOV: Plus 90, your Honor. Which is

13  1,030,000, and that is what he sued for in the complaint.

14          THE COURT: Again, we have confirmation slips. I am

15  looking at Exhibit A, Merrill Lynch, 90,000, 200,000, 540,000.

16  Then you have the Prudential for 100,000. That is 930,000.

17  Where is the other?

18          MR. CHERNOV: It is the next exhibit, your Honor,

19  which was the Bank Leu statement.

20      THE COURT: I see. That is an additional?

21      MR. CHERNOV: That is the additional hundred.

22      THE COURT: All right. Motion granted.

23      MR. CHERNOV: Thank you, your Honor.

24      THE COURT: Is there any other ownership issue worth

25  talking about, or are we just dealing with matters of detail

                                31

1   which should be straightened out between the lawyers?

2       MR. CHERNOV: I will be happy to deal with the details

3   with Cleary Gottlieb if your Honor would prefer us to proceed

4   in that manner.

5       MR. BOCCUZZI: Your Honor, I am happy to speak with

6   plaintiffs.

7       THE COURT: We are not going to take up time in this

8   courtroom. what I intend to do is to grant the motions for

9   summary judgment that are pending. Any details about ownership

10  can be resolved in the course of pretrial. But I don't think

11  they will need to be resolved. I think there is sufficient

12  evidence.

13      The standing issue, I engaged in a little rhetoric

14  about having all those procedures followed. Nobody in their

15  right mind is going to tax the parties and the Depository Trust

16  Company and Merrill Lynch, and so forth, with a lot of useless

17  procedures. So I am holding that the beneficial owners have

18  standing.

19    If the republic is going to insist that we get some

20    kind of permission from the Depository Trust Company and from

21    the so-called participants, then that could be done at some

22    stage. I don't think that the republic and Cleary Gottlieb

23    will really end up wanting to do that. If they insist on that,

24    I will have to consider who will pay the cost of having that

25    done.

32

1    The other problem I think is the problem of Mr.

2    Gleizer's, the Macrotecnic. We had better get to that.

3        MR. BOCCUZZI: Your Honor, just as a housekeeping

4    matter, there was one other motion, I think it just needs to be

5    put on the record, that we had made. That involved Franceschi.

6        After we had made our initial opposition to summary

7    judgment because of the proof issues, there was more

8    information provided in the next wave by plaintiffs of who

9    bought when and the like. That led us, the republic, to want

10    to amend the answer to assert -- and I know your Honor has

11    dismissed the affirmative defense in the past, but it is very

12    fact-intensive -- to assert the affirmative defense of

13    champerty, because some of these plaintiffs we learned in

14    subsequent evidence had bought in 2003 and then sued weeks

15    later.

16        THE COURT: I certainly want you to have your record.

17    The amendment will be permitted. You need to have your record.

18      MR. BOCCUZZI:  Thank you, your Honor.

19      THE COURT:  All right.  Mr. Gleizer.

20      Before we get to Mr. Gleizer, there is an issue about

21      so-called Brady bonds.  What is that?

22      MR. CHERNOV:  Your Honor, certain of the plaintiffs

23      whom we represent bought bonds not just under the fiscal agency

24      agreement but under other agreements that also provide for

25      jurisdiction before this court.  Those are euphemistically

33

1      known as "Brady bonds."  There is another set known as "Yankee

2      bonds" that certain of the plaintiffs hold.

3      THE COURT:  Are the instruments the same?

4      MR. CHERNOV:  They have certain differences in them,

5      but for purposes of payment --

6      THE COURT:  For our purposes.

7      MR. CHERNOV:  For our purposes, it is exactly the

8      same.  There is a complete waiver of immunity, a complete

9      waiver of jurisdiction.

10      THE COURT:  Unconditional obligation?

11      MR. CHERNOV:  Unconditional obligation.  All those are

12      exactly the same, your Honor.

13      MR. BOCCUZZI:  They lack the language that your Honor

14      referenced in terms of the depository would authorize

15      beneficial interest holders to sustain a suit.

16      THE COURT:  I will grant the motions on all those

17   cases.

18       Now Mr. Gleizer.  Well, I think we had better hear

19   from Cleary Gottlieb first, because Cleary Gottlieb asserts

20   that there are no grounds for this.

21       MR. BLACKMAN:  Actually, your Honor, I think you ought

22   to really hear from counsel for the trustee and Correo, Ms.

23   Bolatti.  We put in papers, but she in fact does represent the

24   person who does own this account, not the republic.  I am happy

25   to speak to some of the other legal issues.

                                        34

1        THE COURT:  I will certainly do that.

2        MR. GLEIZER:  I apologize, your Honor.  Does Mr.

3    Dreier have an interest in this?

4        THE COURT:  I am not trying to exclude anybody.

5    Please.  I just used you as a shorthand.

6        MR. GLEIZER:  But they are not in my motion.

7        THE COURT:  What is your problem?

8        MR. GLEIZER:  I don't know.  They are sitting here.

9        THE COURT:  There is plenty of room.  There are four

10   empty seats at the front table.

11       MR. GLEIZER:  Also, your Honor, they are trying to use

12   the work paid by my clients to obtain this, and they have done

13   no work, and they are trying to take credit and get the money

14   from my clients.  They are not in this motion.

15       THE COURT:  Maybe this will all be academic when we

16  get into the depth of the problem.

17      Your name, ma'am?

18      MS. BOLATTI:  My name is Silvia Bolatti.

19      THE COURT:  All right.  You gave me a letter March

20  3rd.

21      MS. BOLATTI:  I did, your Honor.  Let me start by

22  saying that I represent Correo Argentino, who is the owner of

23  the accounts that have been restrained in New York.  I also

24  represent --

25      THE COURT:  Has an account or have accounts been

                          35

1  restrained?

2      MS. BOLATTI:  Yes, your Honor.

3      THE COURT:  Where are then restrained?

4      MS. BOLATTI:  We are taking about the B&P bearer bond

5  account in New York and the Lehman account in Argentina.  This

6  court has granted the plaintiffs in this case, Mr. Gleizer, an

7  ex parte permission to serve restraining orders on those

8  accounts.  That occurred on February 13, 2004, your Honor.

9  That was granted based on the representations made by Mr.

10  Gleizer regarding the meaning of decrees issued by the

11  Argentine government and order issued by the Argentine court.

12      It is our position, your Honor, that the translations

13  that were submitted are inaccurate, they are incomplete, and

14  they fail to represent accurately the meaning of these

15    documents. The plain language of these documents establishes

16    that these accounts are and continue to be the sole ownership

17    of Correo Argentino.

18          THE COURT:  What is Correo?

19          MS. BOLATTI:  Correo, your Honor, is a concession that

20    was created in 1997 by public bid that was won by a private

21    company, and it basically runs the post office service in

22    Argentina.  On November 19 —

23          THE COURT:  You say it is a private company?

24          MS. BOLATTI:  It is, your Honor.

25          THE COURT:  Who owns the company?

                              36

1          MS. BOLATTI:  The company is owned by three major

2    stockholders.  One is Sedeco Argentina.  The other is the

3    International Finance Corporation, and I believe Banco Belizia.

4          THE COURT:  They are not branches of the Argentine

5    government?

6          MS. BOLATTI:  Absolutely not, your Honor.

7          THE COURT:  Go ahead.

8          MS. BOLATTI:  We believe, your Honor, and we have

9    explained in detail in the declaration of legal counsel to the

10   trustee of Correo Argentino, Mr. Julio Rivera, that the

11   statements submitted by counsel are incorrect and inaccurately

12   state that somehow the rescission that the Argentine republic

13   has made of this concession to Correo which occurred by a

14 presidential decree on November 19, 2003, somehow this decree

15 reverted ownership of bank accounts, the bank accounts in New

16 York, to the government.

17     Also, Mr. Gleizer makes a representation that in fact

18 all of the assets of Correo have reverted to the government.

19 We submit, your Honor, this is absolutely false, untrue.

20     We have filed this motion this morning with your

21 Honor, a motion for excessive cost because of the vexatious

22 conduct of counsel. We are ready, your Honor, today to point

23 out, if I may just give you a couple of examples of the

24 seriousness of the inaccuracies that have been submitted to

25 this court which have caused my client to expend fees to appear

                                        37

1 here today.

2     THE COURT: I think when Mr. Gleizer first came in and

3 presented material ex parte to me, he relied on a press report.

4 Did you not, Mr. Gleizer?

5     MR. GLEIZER: The first time, yes, your Honor. It was

6 supplemented by the concession agreement Article 26.

7     THE COURT: All right. Go ahead.

8     MS. BOLATTI: Your Honor, since Mr. Gleizer raises

9 Article 26, the first thing I would like to point out to the

10 Court is that plaintiff's counsel, on his February 19th

11 affidavit to the Court in support of his motion to confirm at

12 paragraph 3, states the following: "Concession agreement."

13    THE COURT:  This is an affidavit?

14    MS. BOLATTI:  Yes, your Honor.  It is his translation

15    of Article 26.4 of the concession agreement.  It is at Exhibit

16    K, I believe, to Dr. Julio Rivera's declaration.

17    THE COURT:  What does he say?

18    MS. BOLATTI:  Mr. Gleizer cites paragraph 26.4 and

19    says, "The concessionaire must take responsibility for payment

20    of all its assets and liabilities and under no circumstances

21    may transfer them to the concession grantor."

22    Then he concludes, "By Article 26 of the concession

23    agreement, the Republic of Argentina gets all of the assets and

24    none of the liabilities," implying to your Honor that Correo no

25    longer has any assets and the bank accounts in New York are now

38

1    the property of the republic.

2    But, your Honor, he omits to provide the Court with

3    the last portion of the same paragraph 26.4, which says,

4    "Concomitantly, the concessionaire will have the right to

5    collect all the credits in its favor accrued as of that date,"

6    speaking about the date of terms of the concession.  This

7    means, your Honor, that it is not true that all of the assets

8    of Correo have been transferred to the republic.  It is not

9    true that the bank accounts in New York are the —

10    THE COURT:  What did happen between the republic and

11    Correo?  What did happen?  What is your version?

12    MS. BOLATTI:  Your Honor, these are two parties that

13    entered into a contract.  The republic and Correo entered into

14    a contract that was a concession.  The government alleges that

15    Correo breached the contract, and Correo alleges also that it

16    is the government that has breached that contract.

17        What happened was that on November 19, 2003, the

18    government rescinded the concession, alleging in decree 1075

19    that counsel has cited that they are rescinding the concession

20    because Correo has failed to comply basically with its end of

21    the bargain.

22        What happened subsequently, your Honor, was that

23    certain assets reverted to the government, certain very

24    specific assets, their tangible assets, physical assets, that

25    were necessary in order to run the concession, because the

39

1    government has an interest in the continuity of the service

2    pending the reprivatization of the concession, your Honor.  But

3    it is not true that all of the assets were transferred, and it

4    is not true that these bank accounts in any way have been

5    transferred to the government.

6        In fact, the government has made no allegation in any

7    of the decrees, in any of the resolutions, it has not taken a

8    position in Correo's insolvency proceeding in Argentina that it

9    is entitled or claims any ownership interest in these accounts.

10        THE COURT:  Let me see if I understand.  At some point

11   in the past the republic gave the concession to Correo to

12   handle the mail, right?

13        MS. BOLATTI:  Yes, your Honor.

14        THE COURT:  Last fall the government took the position

15   that it was going to rescind that concession or withdraw that

16   concession for various reasons.

17        MS. BOLATTI:  Correct.

18        THE COURT:  What you are saying is that certain assets

19   of Correo were taken simply to allow the republic to carry on

20   the postal service?

21        MS. BOLATTI:  Yes, your Honor.

22        THE COURT:  Such as maybe post offices and equipment

23   and that kind of thing, is that what you are telling me?

24        MS. BOLATTI:  That is correct, your Honor.  If I may

25   just add to that, that when the concession commenced, the

                              40

1    government gave certain assets to the company that existed with

2    the service at that time.  The contract says those assets, if

3    the concession is rescinded, come back to the government.

4         THE COURT:  What you are saying is that the government

5    has not seized all of the assets of Correo?

6         MS. BOLATTI:  Yes, your Honor.

7         THE COURT:  Particularly, the government has not

8    seized or appropriated the bank accounts we are talking about.

9         MS. BOLATTI:  That's correct, your Honor.  In

10  addition, they have not asserted in any of the decrees that

11  have been cited by counsel or in any decree that they are

12  entitled to those accounts. There is a very clear provision in

13  the concession agreement that says that Correo, upon

14  termination of the concession, yes, it is responsible for the

15  liabilities that accrued prior to the termination of the

16  concession, but it also has the right to continue to receive or

17  collect receivables that accrued prior to the date of

18  termination of the concession. So it would be illogical and it

19  doesn't make any sense to say that it has no assets left. That

20  is not the case.

21      THE COURT: How long did the concession last?

22      MS. BOLATTI: I believe six years, your Honor,

23  approximately.

24      THE COURT: So Correo did this business for six years?

25      MS. BOLATTI: That's right, your Honor.

41

1      THE COURT: Let's assume they earned some money, at

2  least they had some cash from their conduct of the business. I

3  guess what Mr. Gleizer asserted was that basically somebody had

4  appropriated the whole company, correct?

5      MS. BOLATTI: That's correct. It is incorrect, but

6  that is what he said.

7      THE COURT: That is what you say he said.

8      MS. BOLATTI: Correct.

9      THE COURT:  I guess in the history of the world there

10  are times that a government has seized a company, right?

11      MS. BOLATTI:  Yes.

12      THE COURT:  You are saying that that did not occur

13  here.

14      MS. BOLATTI:  That is correct, your Honor.

15      THE COURT:  And the company is actually, what, in a

16  bankruptcy proceeding?

17      MS. BOLATTI:  It is in an insolvency proceeding, which

18  is called "concorso" in Argentina.

19      THE COURT:  In Argentina it is an insolvency

20  proceeding.  It has some assets, right?

21      MS. BOLATTI:  It has some assets, absolutely, your

22  Honor.

23      THE COURT:  And it has some liabilities?

24      MS. BOLATTI:  That is correct, your Honor.

25      THE COURT:  The government of Argentina has not taken

42

1  over that whole situation; that situation is being handled in

2  the insolvency proceeding in Argentina?

3      MS. BOLATTI:  Yes, your Honor.  There is a bankruptcy

4  judge that is handling the issues of the assets and liabilities

5  and the claims from creditors.  One very important thing to

6  point out to the Court, your Honor, is that Correo has appealed

7  the decree, the November 19th decree, 1075, that rescinds the

8    concession. So there is a possibility that Correo will

9    continue to run this operation in the future.

10         THE COURT: Didn't the insolvency judge prepare

11    something addressed to this Court?

12         MS. BOLATTI: Yes, your Honor, an exhorto, which is a

13    communication from his court clarifying (a) that the accounts

14    are of Correo's ownership and (b) that Correo continues to have

15    assets and liabilities that are subject to the oversight and

16    the supervision of the estate and of the Argentine bankruptcy

17    court.

18         THE COURT: I don't see, Mr. Gleizer, how you overcome

19    all that.

20         MR. GLEIZER: May I, your Honor?

21         THE COURT: Yes.

22         MR. GLEIZER: Your Honor, there is a concession

23    agreement. Unfortunately, to confuse the issues, counsel

24    starts by pointing to 26.4. Why not start by point 26.1, which

25    is where the Article 26 starts?

                                    43

1         There is a concession agreement that gave to Correo

2    Argentino the possibility of exploiting Correo. It says when

3    this concession terminates, for any reason, and I quote from

4    Exhibit F of Correo Argentino's attorney --

5         THE COURT: Rivera's declaration?

6         MR. GLEIZER: Yes, your Honor. Excuse me, your Honor.

7    He is the attorney for the trustee, not for Correo Argentino.

8           THE COURT:  Mr. Rivera's declaration?

9           MR. GLEIZER:  Yes, sir.

10          THE COURT:  You point to Exhibit F, as in Frank?

11          MR. GLEIZER:  Exhibit F, yes, your Honor.

12          THE COURT:  That is the concession agreement?

13          MR. GLEIZER:  Yes, your Honor.

14          THE COURT:  What part are you now referring to?

15          MR. GLEIZER:  Article 26.

16          THE COURT:  I have it.

17          MR. GLEIZER:  It says that if the concession -- I have

18   my own translation which I believe is better, but I am using

19   the opposition's translation here.  It says if the concession

20   is terminated, then the following consequences shall arise.  It

21   says what will happen.

22          "26.1.  On the expiry date of the concession period,

23   the concessionaire" -- that is Correo Argentino S.A., the

24   private company -- "must turn over the service to the grantor

25   with all assets pertaining thereto."

                                44

1           THE COURT:  The question is, what are the assets

2    pertaining thereto?

3           MR. GLEIZER:  Correct.  That's right.  Now it is all

4    assets.

5           THE COURT:  It doesn't say all assets.  It says all

6  assets pertaining thereto.

7      MR. GLEIZER:  That's correct, your Honor.  Pertaining

8  thereto to what?  That is to the service to the grantor, the

9  service that they are providing, which is the provision of

10  mailing services.

11      So we go to the bylaws of this company to see what

12  does it do.

13      THE COURT:  Where are the bylaws?

14      MR. GLEIZER:  The bylaws, your Honor, are attached as

15  an exhibit to the declaration in Article 4 to the bylaws.

16      THE COURT:  Where are the bylaws, what exhibit?

17      MR. GLEIZER:  Exhibit E to the declaration, I believe,

18  your Honor.  In the middle of the page, it says what is this

19  company.  We notice two things, and I will get back to it,

20  number 3, the term of the company.  The term of the company

21  will be 40 years, four-zero.

22      THE COURT:  I don't see where you are reading.

23      MR. GLEIZER:  Page 2 of Exhibit E.

24      THE COURT:  I have page 2.

25      MR. GLEIZER:  In the middle of the page, your Honor,

                                    45

1  it says number 3 under line "Article 3:  Term."

2      THE COURT:  OK.

3      MR. GLEIZER:  The term of the company will be 40 years

4  from its registration.

5      THE COURT:  Right.

6      MR. GLEIZER:  There is another paper that shows that

7   registration was the same day that the decree granted the

8   concession.  Will be for 40 years.

9      THE COURT:  What company is this?

10     MR. GLEIZER:  Correo, Correo Argintino, S.A., which I

11   called CASA, C-A-S-A.

12     THE COURT:  When was this charter promulgated?

13     MR. GLEIZER:  The same day of the decree granting the

14   concession:  August 25, I think, 1997.

15     THE COURT:  What does this have to do with the

16   interpretation of Article 26.1 of the concession?

17     MR. GLEIZER:  It has to do with the fact that it says

18   this is not a regular corporation that lasts forever.  This is

19   a corporation that will last 40 years.  Why is it 40 years?  We

20   look at another exhibit I will find, the exhibit that shows

21   what are the terms and conditions of the bid under which they

22   won and they obtained the concession.

23     THE COURT:  I don't see that you are leading anywhere

24   that has to do with what information Ms. Bolatti has provided.

25   I don't see that this is leading anywhere.

                              46

1      MR. GLEIZER:  The company is for 40 years because the

2   concession was for 40 years.  This is a company that at Article

3   4, the following article, says that it has one sole purpose,

4    one sole purpose by law. The purpose of the corporation is to

5    provide a basic universal postal service and the ancillary

6    services. It has no other purpose. And it lasts exactly for

7    the period of the concession. The only purpose it has is to

8    provide the basic universal postal service and the ancillary

9    services.

10          THE COURT: May I interrupt you. I do see where you

11    are going. You are arguing that the only purpose of this

12    corporation Correo is to provide the postal service. So you

13    are saying that assets pertaining thereto would be all the

14    assets, right?

15          MR. GLEIZER: That is one of the arguments, yes.

16          THE COURT: When you are talking about handing over

17    assets, it is a question of fact. It is not inevitable under

18    the language of paragraph 26.1 that the assets pertaining

19    thereto have to include all the cash of the company. It is not

20    inevitable.

21          It is a question of fact, it seems to me. Under

22    Article 26.1 the republic might have required these bank

23    accounts to be handed over or they might not. The question is

24    what did they do. It seems to me that that is not something to

25    be resolved by an interpretation of the corporate charter or

                                     47

1    the articles of incorporation which say what you said they say;

2    it is to be determined as a matter of fact.

3      We have, it seems to me, a detailed body of

4  information that in fact these bank accounts were not turned

5  over. So I don't think that we can deal by implication. We

6  have to take the facts.

7      MR. GLEIZER: Your Honor, if I may?

8      THE COURT: And you have the judge in the insolvency

9  court, who certainly is familiar with what is going on in his

10  proceeding.

11      MR. GLEIZER: The insolvency judge, your Honor, tells

12  you -- and if you read the translation that the trustee has

13  presented, the insolvency judge does two things. He tells

14  you --

15      THE COURT: What exhibit is that now?

16      MR. GLEIZER: In Exhibit A, your Honor, if you can

17  find the translation. They have not put it on top, so it is

18  difficult to find. If I may, your Honor, in Exhibit A on page

19  1 of the translation, underlined in the original I guess, it

20  says -- this is what the judge is telling you with respect to

21  the situation: "It should be noted that such accounts do not

22  constitute attachable property of the Argentine republic

23  located in the United States."

24      He is very clear. According to him, his opinion is

25  that they are not attachable property, they are property of the

48

1  Republic of Argentina.

2          THE COURT:  No, no, no.

3          MR. GLEIZER:  If I may finish, your Honor.

4          THE COURT:  Please.  If all that he said was telling

5    me about how to apply New York law, that would be one thing.

6    But look at page 2.  He says CASA -- CASA is a shorthand for

7    Correo -- CASA's bank accounts were not transferred to the

8    Argentine government.  Certainly he must know that.  That is

9    not an interpretation of New York law.

10          MR. GLEIZER:  Your Honor, that's correct.  The

11    accounts were not transferred.  That is why we are trying to

12    move them.  But they have to be transferred.  If you notice,

13    the judge has already ordered two payments from these accounts,

14    one for $2.5 million and for $2.2 million.  They have already

15    been transferred actually, if you want to talk fact, have

16    actually been transferred from the Lehman bank accounts, and

17    Lehman bank has provided the bank statements to the court and

18    to counsel, and they were provided.

19          If your Honor would like, I can give my copy.  It

20    says, "On December 24th and on December 23rd the funds wired to

21    Banco Nacional Antilogorio Official Unidad Administrativa, that

22    is the administrative unit created by the president of

23    Argentina to administer the Argentinian assets.  It was already

24    transferred.

25          This is not the only factual basis I have.  The judge

49

1  in Argentina says the account names have not been transferred,

2  but the funds yes.

3      THE COURT:  Just a minute.  Those transfers --

4      MS. BOLATTI:  Your Honor, may I?

5      THE COURT:  This was not really sort of like an

6  appropriation by the government, I don't think.

7      MR. BLACKMAN:  No, it was not.

8      MR. GLEIZER:  May I, your Honor?

9      MR. BLACKMAN:  It was a transfer to pay the wages of

10  Correo's employees.  The reason the bankruptcy judge ordered it

11  in Argentina is that under Section 26.3 of the concession

12  agreement Correo is required to pay those wages and benefits up

13  to the time, that accrued up to the time of the handover of

14  service.  That is why the bankruptcy judge ordered those

15  moneys.

16      THE COURT:  Those payments were passed?

17      MR. BLACKMAN:  Yes.  These are wages before decree

18  1075 and the bankruptcy judge ordered them to be sent to

19  Argentina and the administrative unit which now is the employer

20  of those people since the handover, in turn used those moneys

21  to pay.

22      THE COURT:  But before, past employee obligations.

23      MR. BLACKMAN:  Exactly, your Honor.  The money did not

24  go one penny to the Republic of Argentina.

25      THE COURT:  For current operations?

50

1    MR. BLACKMAN:  Absolutely not.  Absolutely not.  That

2  is what the bankruptcy judge said, that is what the trustee

3  said.  It really is quite unseemly for Mr. Gleizer to --

4    THE COURT:  Don't get into that.

5    MR. GLEIZER:  If I may, your Honor.  At this time I am

6  filing and serving the proof showing that it is untrue,

7  absolutely untrue, that those moneys went to pay past salaries.

8  In the documents, it is difficult to see because you have to go

9  step by step.  I am filing something for the Court to look at

10  and for counsel to see.

11    Maybe, there is a possibility that 70, 75 percent of

12  the 4.7 million were used for salaries.  But there is the

13  certainty that between 20 and 25 percent of the 4.7 million

14  went for future salaries.

15    THE COURT:  The 4.7 million is the total amount in the

16  account or what?

17    MR. GLEIZER:  No.  The part they already took out, 2.5

18  plus 2.2.

19    Your Honor, if you allow me for a second to try to

20  paint the big picture here.  What happened was this.  Correo

21  Argentino, S.A. went into bankruptcy in 2001, over one year

22  before the rescission of this money, went into the bankruptcy

23  proceeding.  They were in the bankruptcy proceeding.  The whole

24  bankruptcy proceeding thing, there is the trustee, there is

25  Correo Argentino, S.A., and there is the administrative unit in

51

1   front of the Argentinian judge.

2        They are doing like anybody anywhere else does, deals,

3   they are making deals.  Yes, it says here we will give you

4   everything.  But wait with those accounts in New York.  Wait

5   with those accounts in New York.  These are big amounts of

6   money, like $11 million.

7        THE COURT:  How much did you tie up?

8        MR. GLEIZER:  $11 million, approximately.  9.5 in

9   Lehman Brothers and 1.5 in Paribas.

10       They make deals.  They make deals.  Give me the money

11  now, wait a little bit, we are going up on appeal.  Factually,

12  as your Honor says, my opinion is that this whole bankruptcy

13  proceeding has nothing to tell you.

14       However, the judge in the bankruptcy proceeding is

15  constantly saying -- and there is an argument, and I will show

16  you what Black's Law Dictionary says, that shows that the judge

17  in the bankruptcy proceeding has consistently held,

18  consistently held, Correo Argentino, S.A. has no assets.

19       Notably, on February 11, when, as counsel was saying,

20  the appellate court reversed and put it back in the liquidation

21  system, CASA appeared before the judge and told the judge,

22  well, Judge, now we are back in business, we don't have

23  anything except those $11 million in New York, give them back

24  to me.

25      What did this judge say in the February 11 decision

52

1  which is attached to the papers?  What did the judge say?  Yes,

2  you are sent back, but you have no assets.  And it says in

3  black and white --

4      THE COURT:  Who said you have no assets?

5      MR. GLEIZER:  The judge, the judge that sent you this

6  letter.  You have no assets.

7      The judge is very careful, Judge Favier Dubois is very

8  careful to tell you that the accounts are in Correo Argentino,

9  S.A.'s name.  That is true.  We are not disputing that.  But he

10  tells you this is not nonattachable property of Argentina.

11      Why is it nonattachable?  He agrees this is property

12  of Argentina.  But why is it nonattachable?

13      THE COURT:  Where does he agree that it is property of

14  Argentina?

15      MR. GLEIZER:  In the underlying part, your Honor, of

16  his letter, in the translation Exhibit A, he says --

17      MS. BOLATTI:  Your Honor, all that says is they do not

18  constitute property of Argentina.

19      MR. GLEIZER:  Read it, your Honor.  "These said

20  accounts do not constitute attachable" --

21      THE COURT:  Where are you reading?

22      MR. GLEIZER:  Page 1 of attached Exhibit A in the

23   translation, your Honor.

24        THE COURT:  We have seen that before.

25        MR. GLEIZER:  Yes.

                         53

1         THE COURT:  It says it is not attachable property.

2    That is not a meaningful statement, because that is up to me to

3    decide under New York law.  I thought you were saying that the

4    insolvency judge said several times that Correo has no assets.

5         MR. GLEIZER:  Yes, your Honor.

6         THE COURT:  Did he ever say that the bank accounts up

7    here are the property of the republic?

8         MR. GLEIZER:  I believe that by implication he said

9    it, because in two opportunities he took the money, and at

10   least 25 percent of that money was used to pay salaries for the

11   future.

12        MS. BOLATTI:  Your Honor, may I respond?

13        THE COURT:  One at a time.  How do we know it is for

14   the future?

15        MR. GLEIZER:  I just served it and I am filing with

16   the Court.  You have to look at these things, at several

17   exhibits at the same time.  It is a long process.  Basically,

18   what it is is --

19        MR. BLACKMAN:  This is no evidence.  This is another

20   declaration of Mr. Gleizer.  There is not a single new

21   document.

22      MR. GLEIZER: But I tell you how to look. The

23  bankruptcy was in place from two years before the rescission.

24  On those two years or one year, they were trying to make deals.

25  What happened was in November 16, 2003, I believe, the judge

54

1  said, OK, full bankruptcy, you have no assets. Excuse me.

2  December 16, 2003, no assets. They used an old Spanish word

3  which Black's Law Dictionary defines as the full estate, that

4  is the assets. The full estate it says, Black's Law

5  Dictionary.

6      THE COURT: The full estate what?

7      MR. GLEIZER: Of Correo's, there is no more. It has

8  no estate. Correo has nothing, no tangible assets and no

9  intangible assets. That is on December 16, I believe.

10      THE COURT: Where does he say that?

11      MR. GLEIZER: In his declaration, in one of his orders

12  of December 16.

13      THE COURT: Is that before me? Is that part of the

14  record here?

15      MR. GLEIZER: It is, your Honor. One of the places,

16  for example, is Exhibit J.

17      THE COURT: Exhibit J. Where does it say --

18      MR. GLEIZER: In paragraph 2, the translation for the

19  attorney for the trustee says, currently, the entity in

20  concorso, that is the word he uses for this stage of the

21  bankruptcy proceeding, lacks "hacienda."  And the judge tells

22  us what "hacienda" means.

23      MR. BLACKMAN:  Your Honor, could he please read the

24  rest that have sentence?

25      MR. GLEIZER:  Let me finish, please.  Lacks hacienda.

55

1  That is the tangible and intangible assets organized for the

2  exploitation of the enterprise.  Lacks them.  It has no

3  tangible and no intangible.  What other assets can there be?

4  Tangible and intangible.  There is no more assets.  Lacks them.

5  There is no assets in CASA since December 16, 2003.

6      It is on that basis, your Honor, that the judge tells

7  you that the only reason that these are not attachable assets

8  of Argentina -- because he says the only reason is CASA is the

9  account holder in the name.  That is for sure.  Otherwise,

10  there is no need to be here.

11      He says the only reason that Mr. Gleizer cannot attach

12  for his clients is that I ordered it before Judge Griesa,

13  ordered it, and Gleizer notified, that is, physically

14  restrained the goods.  The only reason that Judge Favier gives,

15  your Honor, is that:  That he issued the order for the freeze

16  of the assets.  And this may be so.

17      My argument is that, yes, you ordered it before Judge

18  Griesa but you didn't garnish, you didn't notify the parties,

19  you didn't notify the holders of that property.  The Court can

20  see that he did not notify, because CASA doesn't present any

21  evidence that there was notification actually.  Because the

22  order says that the trustee, her client, the trustee had to do

23  the notification, so that the attachment --

24      THE COURT:  Can I interrupt.  I can see the

25  possibility, we can all see the possibility, of the republic

56

1  wanting the $11 million if this is money that the republic

2  could seize or require to be transferred, if the republic would

3  like to have it to help run the postal service.  It doesn't

4  take too much imagination to realize that the republic might

5  take that money or might require the transfer of that money.  I

6  imagine under the concession agreement paragraph 26.1 the

7  republic could require that.  But the representation to this

8  Court by Mr. Rivera and what has been stated by the judge in

9  that insolvency, it seems to me that is really what Ms. Bolatti

10  is saying.

11      There may be a hidden agenda here.  Maybe there is a

12  credibility problem.  I don't know.  I don't know.  And I hope

13  the Argentine press does not quote me as saying there is a

14  credibility problem, but that is really what you are trying to

15  say.

16      So it is possible.  But it is also possible that the

17  Republic of Argentina would leave some assets in Correo.  There

18  are undoubtedly creditors of Correo.  If Correo is insolvent,

19  what the republic might very well do is to take things like

20  post offices, equipment at post offices, trucks, mailbags,

21  stamps, all of those things which are necessary to continue the

22  running of the postal service.

23      But the republic might very well decide, we are not

24  going to simply strip it to the bone of all its assets, because

25  this company has been in business, it has creditors, it has

                                    57

1  stockholders, and we want to interpret paragraph 26.1 of the

2  concession agreement maybe a little more narrowly rather than a

3  little more broadly, and we are going to take what we feel is

4  necessary to run the postal service, and we don't need to take

5  every dollar of cash, we are going to leave some assets there

6  to be handled in the insolvency to help pay creditors, and so

7  forth.

8      That is a completely logical way to approach things,

9  and that is what the judge basically has said.  Not in those

10  words, but that is the essence of what emerges from the judge's

11  statement.  That is what Mr. Rivera has said.  That is what Ms.

12  Bolatti has said.

13      Am I characterizing your presentation correctly?

14      MS. BOLATTI:  That is correct, your Honor, yes.

15      THE COURT:  Am I going to continue to tie up the $11

16  million which is tied up on the basis of what I think is not

17  much more than a possibility that you have shown?  Tying up

18    money is a very serious thing for a court to do.

19        MS. BOLATTI:  Your Honor, may I add something?

20        MR. GLEIZER:  May I say something?

21        THE COURT:  Everybody, yes.

22        MS. BOLATTI:  Your Honor, just to go back to Exhibit

23    A, which is the exhorto or the communication of the Argentine

24    court, I just want to clarify for the Court that Judge Favier

25    Dubois says to this court such accounts are private property of

58

1    CASA, not transferred to the government, on the date of

2    November 19, 2003, the date on which he took over and regained

3    control of the official postal service.

4        On the next page, your Honor, where it speaks about

5    resolution 32, which has been quoted by Mr. Gleizer as

6    transferring all of the assets --

7        THE COURT:  Let me look at the translation.  Where are

8    you reading now?

9        MS. BOLATTI:  I am at Exhibit A to the Rivera

10    declaration, on the second page of the English.  You have to go

11    a little bit back to find the English text.

12        THE COURT:  Yes, I'm there.

13        MS. BOLATTI:  It has a little (a) on the left

14    paragraph margin.  It is all the way up by the Velobind, your

15    Honor.

16        MR. GLEIZER:  What exhibit is this now?

17      MS. BOLATTI:  We are talking about Exhibit A.

18      THE COURT:  Exhibit A, I have it.  Where in the

19  Exhibit A?

20      MS. BOLATTI:  It is in the second page of the English

21  translation.  There is a little (a) on the margin.  Judge

22  Favier Dubois says to this court, your Honor, that such

23  accounts are the private property of CASA, not transferred to

24  the government on November 10, 2003 -- I think he means

25  November 19th -- the date on which it took over and regained

59

1   control of the official postal service.  It is accurate, your

2   Honor, that the only thing the government took back were the

3   physical assets to run the service.

4       THE COURT:  You referred to some decree, 32 or

5   something?

6       MS. BOLATTI:  That is on the next page, your Honor.  I

7   am saying that if you turn to --

8       THE COURT:  Resolution number 32.

9       MS. BOLATTI:  That's right.  I think Mr. Gleizer had

10  cited that at the February 17th hearing as evidence that all of

11  the assets were transferred to the government.  That is

12  absolutely not so.  In fact, the judge says, resolution number

13  2 of the Argentine communications department was issued

14  recently, on February 12, 2004.  This resolution acknowledges

15  the investments made by former concessionaire, the former

16  concessionaire of the post office service Correo Argentino.

17      "Under the terms of paragraph 6.4 of the concession

18  contract, in respect to the period from December 1, 1998, to

19  November 19, 2003, the concession contract was terminated and

20  the property incorporated into government domain was

21  identified: Software, hardware, office supplies, land,

22  building, and machinery. Such property does not include the

23  debtor's bank accounts."

24      One last thing, your Honor, that I would like to add,

25  which is that there is nothing in the concession agreement that

                        60

1  would allow the government to assert a right over these bank

2  accounts. That is the reason that the government has not

3  asserted a right over the bank accounts in its own decrees, in

4  the resolutions, or in any other document.

5      One last thing, your Honor. The court in Argentina,

6  the payments that were made from these New York accounts were

7  made strictly with the authority of the Argentine Judge Favier

8  Dubois in the insolvency proceeding. That means that Judge

9  Favier Dubois believes these accounts to be assets of the

10  estate and not of the republic.

11      MR. GLEIZER: If I may?

12      THE COURT: The $11 million that you mentioned, does

13  that remain after payment of the 4.5 or 4.7? What was it?

14      MR. GLEIZER: Yes, your Honor.

15     THE COURT:  4 point what?

16     MR. GLEIZER: 4.7.

17     THE COURT:  Ms. Bolatti, has the insolvency judge ever

18  dealt with his proceeding on the basis of there being no assets

19  of Correo?  That is one of the things that Mr. Gleizer speaks

20  of.

21     MS. BOLATTI:  It is absolutely wrong, your Honor.

22  That is not the case.  I believe that the confusion that Mr.

23  Gleizer has is his interpretation of the word "hacienda." The

24  word "hacienda," I have a translation here if you would like,

25  your Honor, of the context in which that word is used.  It is a
                                            61

1  word used by doctrine in Argentina.  It does not mean assets.

2       Basically, what it means is that because the

3  government rescinded the concession agreement and basically

4  took away the license to operate the post office.  It has no

5  ability, it is not an ongoing concern, and it no longer

6  provides the postal service.

7       The exact translation, your Honor, of the December 16

8  resolution of the Argentine court that uses that term says, and

9  this is an English translation attached to Dr. Rivera's

10  declaration, "As a consequence of the administrative

11  disempowerment following the rescission of the concession,

12  currently the entity in concorso lacks hacienda, that is, the

13  tangible and intangible assets organized toward the

14  exploitation of the enterprise." That doesn't mean it has no

15  assets. It means the lacks the ability to continue to provide

16  the service, your Honor.

17      MR. GLEIZER: In fact, your Honor, the judge on

18  February 11, and I have it here, translation by Dr. Rivera,

19  Exhibit O, on February 11, 2004, by Judge Favier Dubois on page

20  2 of the translation, your Honor, page 2 in I believe it is the

21  third paragraph, "Consequently" -- this is returning from the

22  Appellate Division, so the judge says -- "the letter has been

23  temporarily returned to the situation of interim bankruptcy

24  proceeding, but with the following particular conditions."

25      I go now to (c), the condition number (c) or letter

62

1  (c). In English translated by Mr. Rivera it says, "It is

2  lacking a business, since all assets and personnel were

3  transferred to the national state." And of course the only

4  residual activity is accounts payable and receivable.

5      MR. BLACKMAN: Which is what we are talking about

6  here.

7      THE COURT: But he goes on -- what is this document,

8  Mr. Gleizer?

9      MR. GLEIZER: This is Judge Favier Dubois setting the

10  terms once the case came back a few weeks, three weeks ago.

11      THE COURT: It is the same judge?

12      MR. GLEIZER: Yes. Your Honor, if I may --

13        THE COURT:  Wait a minute.  He was doing what?

14        MR. GLEIZER:  The case went up on appeal.

15        THE COURT:  Correo objected to being put in

16   bankruptcy, right?

17        MR. GLEIZER:  No.  CASA went into bankruptcy two years

18   ago.

19        THE COURT:  Voluntarily?

20        MR. GLEIZER:  I don't know.

21        MR. BLACKMAN:  Your Honor, if I could help.  The

22   concorso proceeding is a Chapter 11, in effect.  That began

23   several years ago.  After the government withdrew the

24   concession, the judge said this entity can't reorganize, it is

25   not a going concern anymore, and he threw it into what we would

                              63

1   call Chapter 7.

2        Correo appealed and said, no, we still think we should

3   be allowed to reorganize.  The appellate court agreed and

4   reversed and it sent it back.  This is a decision actually on

5   an application by Correo to say, well, now we want to use these

6   moneys in New York.

7        What the judge says here is you still lack a business,

8   a hacienda, because you are not a going concern, and your only

9   residual activity is pending accounts, i.e., these accounts.

10   Two paragraphs down, "Indeed, the debtor possesses sufficient

11   funds in the accounts open in different banking institutions to

12  attend to its residual activity."

13      The point is this is an entity that is not doing a lot

14  but it still has assets.  That is what all of these documents

15  say in different ways.  That is what the bankruptcy judge says.

16  This is what Mr. Rivera says.  And Mr. Gleizer just doesn't

17  want to accept reality.

18      THE COURT:  My eye drifted to the lower part of the

19  page, and I saw that paragraph.  You are right, there is this

20  statement "is lacking a business since all assets were

21  transferred."  But it goes about two paragraphs on and says

22  exactly what Mr. Blackman reads.  We can all read it.  "Indeed,

23  the debtor possesses sufficient funds in the accounts open in

24  different banking institutions in this country to attend to its

25  residual activity," and so forth and so on.

                         64

1       MR. BLACKMAN:  Maybe you could look at the next-to-

2  last paragraph.

3       THE COURT:  I know you said it, but I sometimes have

4  to ask, the appeal was from what?

5       MR. BLACKMAN:  The appeal was from the decision to put

6  them into bankruptcy.

7       THE COURT:  And not allow them to reorganize?

8       MR. BLACKMAN:  Right.

9       THE COURT:  The appellate court said they have a right

10  to reorganize?

11    MR. BLACKMAN:  The appellate court sent it back on

12    what we would say is a remand.

13    MS. BOLATTI:  In the interim, your Honor, Correo

14    continues to be in possession of the assets.  That is the

15    difference between insolvency proceedings.  It continues to be

16    in possession of the assets.

17        Also on the same page, if you read lower down, it

18    says, "in addition to this," and cites that it is important to

19    preserve such an important bankruptcy asset, speaking about the

20    New York account it can possibly use but it is not in the

21    creditor's interest.  I am reading right below the "indeed"

22    that you just read before, your Honor.

23        So we are in the same exhibit, reading just the next

24    paragraph down.  It refers to these accounts and the fact that

25    it is appropriate to preserve them, to preserve such important

65

1    bankruptcy assets from a possible use that is not in the

2    creditors' interest.

3        This is in response to Correo's application to have

4    use of the accounts in New York, and the court is saying you

5    have bank accounts also in Argentina, you should be able to use

6    the money in Argentina, and for the time being I am going to

7    preserve these funds in the New York account.

8        THE COURT:  The way I interpret this document, the

9    insolvency judge has blocked the use of the New York accounts.

10      MS. BOLATTI:  That is absolutely correct, your Honor.

11   He blocked the accounts by virtue of two court orders, on

12   December 19th, and again he confirmed that on December 22nd,

13   for the benefit of the asset.  It is an asset for the benefit

14   of the asset, an asset of Correo.

15      THE COURT:  I just don't see how, Mr. Gleizer, I can

16   rely on that one phrase "it is lacking a business since all

17   assets were transferred."  That one phrase has to be taken in

18   the context of the rest of the document.

19      MR. GLEIZER:  Your Honor, that is not what I want to

20   rely on at all.  Let's do one experiment.  The court in the

21   order to show cause directed Argentina to stand up and say do

22   you claim that you own these $11 million or there is no claim,

23   you give up claims to this $11 million?  Is it like Judge

24   Favier says these are your assets but I don't think they are

25   attachable because I ordered?  There was an order, but the

66

1   judge ordered to stop the funds in Argentina, not to stop the

2   funds in New York and the funds happened to be in New York.

3   That is a different story.

4      But what Argentina is not telling this court, your

5   Honor, is that, yes, in effect they want to use this $11

6   million that belong to people, to these creditors that are

7   suing before you, and that they will claim them from Judge

8   Favier in Buenos Aires as they have already, and they have been

9    used, the 4.7 million have already been taken.

10        THE COURT:  Are you saying that you believe that the

11   Republic of Argentina has already claimed ownership of these

12   funds?

13        MR. GLEIZER:  Your Honor, if you notice on this letter

14   which was written of February 23rd that we are reading, Exhibit

15   A, if you notice who went there?  Did the administrative unit

16   go?  Did the unit created by the government go and tell the

17   judge this?  No.  He went the Attorney General of Argentina,

18   not the party in this bankruptcy, but the Attorney General.

19        THE COURT:  Where does it say the Attorney General

20   went?

21        MR. GLEIZER:  On page 1 of the translation, Roman

22   numeral II in the first page of the translation in Exhibit A.

23   Exhibit A, Roman numeral II.

24        THE COURT:  You are saying that I should draw an

25   inference from the presence of what is called the treasury

                                67

1    general attorney's office?

2         MR. GLEIZER:  It says, "in light of the request made

3    by the treasury general attorney."  That is the Attorney

4    General.

5         THE COURT:  It says in "the preceding brief."  I don't

6    think the preceding brief is before me, is it?

7         MR. GLEIZER:  No.  That is one of the little stories

8    that they are not telling you what is going on behind the

9    scenes, your Honor. Let Argentina stand up now and say we have

10   no interest in the funds.

11        MR. BLACKMAN: We have no interest in the funds. We

12   have never had any interest in the funds. Our brief makes that

13   quite clear that we have no interest in this account or in

14   these funds, period, full stop.

15        MS. BOLATTI: Your Honor, we contest any interest of

16   the republic in these funds. These funds are the ownership of

17   my client until a court in Argentina determines otherwise. And

18   we have contested claims of the republic. We are appealing

19   their decree.

20        THE COURT: You are appealing what decree?

21        MS. BOLATTI: The decree that rescinds the concession,

22   your Honor, is being appealed by my client. So we contest any

23   claim that the republic may have to these funds. We are

24   contesting them presently in Argentina, your Honor.

25        MR. GLEIZER: Should there be a factual issue, your

                                    68

1    Honor, the account in Paribas has at least something that we

2    can trace. I mean we would need the discovery, $750,000 paid

3    by UPU. UPU is the Universal Postal Union, Universal Postal

4    Union.

5        In Annex 1 of resolution number 32 it says the

6    financial contributions of UPU are transferred from Correo

7  Argentino S.A. to the administrative unit.  Of the $1.5 million

8  approximately in Paribas, and this $750,000 explicitly, this is

9  not all assets, these are the assets that are being transferred

10  now.  I request that Ms. Bolatti check if it is not true that

11  it says addendum 1, the financial payments of UPU are

12  transferred to the administrative unit.

13      THE COURT:  What is the administrative unit?  The

14  government?

15      MR. GLEIZER:  The government created, by the

16  rescission decree, the administrative unit to administer, and

17  it says, to administer all assets.

18      MS. BOLATTI:  Your Honor, I believe Mr. Gleizer's

19  statements are just inconsistent with the plain language of

20  this document.  If you look at resolution 32, the only thing it

21  says is we need to identify which assets were purchased by the

22  concessionaire with a minimum annual investment requirement

23  made under paragraph, I believe, 6.4 of the concession

24  agreement.  It lists them.  It has an Annex 1 and it has an

25  Annex 2.  All of the assets are physical assets.

                          69

1      Any UPU investments that were made are specifically

2  excluded by the government, and the government says we do not

3  recognize any assets purchased with the UPU contribution to be

4  included.  If you look at Annex 1 and 2, it deducts those

5  amounts from the recognized minimum investments that revert

6  back to the estate.  We are talking about physical assets, your

7  Honor.

8       I think if Mr. Gleizer reads that document completely,

9  he will agree with us.

10      MR. GLEIZER:  Let's read it, your Honor.  Page 2

11 says --

12      THE COURT:  Of what?

13      MR. GLEIZER:  Of what counsel is looking at, Exhibit

14 I.

15      THE COURT:  Exhibit I?

16      MS. BOLATTI:  Yes.

17      MR. GLEIZER:  Page the 2.

18      THE COURT:  OK.

19      MR. GLEIZER:  According to the terms of point 70, 26,

20 and --

21      THE COURT:  Where are you reading, please?

22      MR. GLEIZER:  Two paragraphs from the bottom.

23 "According to the terms of point 70, 26, and similar of the

24 concession agreement signed between the ex-concessionaire

25 Correo Argentino S.A. and the national state, all the goods

                          70

1  acquired by the concessionaire and recognized as an investment

2  are to revert to the national state."

3      MS. BOLATTI:  At the same page, your Honor --

4      MR. GLEIZER:  Let me finish, please.

5          MS. BOLATTI:  I'm sorry.

6          MR. GLEIZER:  And one of the assets are there are

7    physical assets in Addendum 1 that were recognized as

8    investment that revert to Argentina, there are these physical

9    assets.

10          THE COURT:  Was there an Addendum 1?

11          MR. GLEIZER:  Yes, at page 4, your Honor.

12          MR. BLACKMAN:  Addendum 1 shows the UPU amount as a

13    deduction.

14          THE COURT:  I'm not following you.

15          MR. BLACKMAN:  What this decree is supposed to do is

16    to identify what assets are being taken over.

17          MR. GLEIZER:  Right.

18          THE COURT:  Taken over from Correo?

19          MR. BLACKMAN:  From Correo by the government.

20    Addendum 1 has a minus sign in front of the UPU amount.  In

21    other words, deducted from the assets that are being taken over

22    is the UPU amount.  The UPU amount is not taken over.  And the

23    details of that minus $1,039,000 are set forth in Addendum 2,

24    which says detailed own investment sums and those provided by

25    the quality service fund, a dependent entity of the Universal

                                71

1    Postal Union, and it adds up the CASA investment, and then it

2    adds up the UPU investment.

3          The UPU investment, if you go back to Addendum 1, is

4    in what is deducted.  You get the total of 46 million, which is

5    the investment of CASA that is being taken over.

6         This document shows exactly the opposite of what Mr.

7    Gleizer is contending.  What he does here, your Honor, with all

8    respect to him, is just to pull things out of context and cause

9    all of us to be spending a lot of time on something that really

10   is quite straightforward on the declaration of Rivera and the

11   bankruptcy judge's decree.

12        MR. GLEIZER:  In Addendum 1 they separate what is

13   recognized and not recognized.  But it says all these sums pass

14   to the national state.  Your Honor, I get very nervous when I

15   am personally attacked.  The concession at 26.1 says all

16   assets.

17        THE COURT:  I don't think there is a personal attack.

18   There are issues here.  You are raising issues, they are

19   raising issues.  What is UPU again?

20        MR. BLACKMAN:  Universal Postal Union.

21        MR. GLEIZER:  Your Honor, I am asking if your Honor

22   allows me to -- I spoke with both banks.  Of course they are

23   banks.  They don't like to give out information.  But if there

24   is a specific order saying who put the money here, you will see

25   that these are all payments pertaining to the service of postal

                              72

1    service.  It is all payments from Germany to Argentina, the

2    German private company to the Argentino Correo, payments from

3  UPU. That is what they are. They are all pertaining to

4  services.

5        THE COURT: Are you talking payments to Correo or

6  payments by Correo?

7        MR. GLEIZER: To Correo, because it is money that came

8  in. It is money that came in for service provided, and that is

9  exactly what --

10        THE COURT: Obviously, some money came in to make up

11  the $11.1 million. The question is who owns it now that it is

12  in and there. I thought the issue we started out with and the

13  issue we have to end with is -- I didn't think there was any

14  question about the fact that Correo owned the money.

15        MR. GLEIZER: No. Correo is the title holder.

16  Argentina owns the money. The judge says so.

17        THE COURT: Wait a minute. Did the UPU at some point

18  pay Correo something?

19        MR. GLEIZER: Sure, all the time.

20        THE COURT: What did they pay them for?

21        MR. GLEIZER: I don't know. Correo provides postal

22  services. UPU, I understand, is like an international

23  clearinghouse, and also it promotes undeveloped countries'

24  postal service.

25        THE COURT: We have to draw this to a close. The

                                    73

1  reason I have sat here is that Argentina is a foreign country.

2  Information about what goes on in Argentina is not as easy to

3  obtain or even understand as things that would happen in the

4  United States.

5      There is a substantial amount of money which has been

6  frozen. It is quite obvious that we have bondholders who are

7  suing to recover on defaulted bonds. Some of them have won

8  summary judgment motions, they have judgments. They were

9  entitled to those judgments. They undoubtedly will have a

10  great deal of difficulty enforcing those judgments. There is

11  as of this time no overall debt workout to take care of any

12  bondholders, whether they are suing or not.

13      We have a company Correo which has some relationship

14  with the Argentine government, and Correo has bank accounts at

15  Paribas and Lehman holding 11.1 million. If that money is

16  legitimately available to satisfy what will undoubtedly be a

17  tiny, tiny fraction of the bond liability of the Argentine

18  government on judgments, then this Court does not want to see

19  that vanish. At the same time, if it is not available

20  lawfully, then this Court must not hold up that money.

21      The facts that have been presented here today, both in

22  documents and in argument, are strongly in favor of what Ms.

23  Bolatti has presented. I have to say, however, that I am not

24  completely satisfied that there isn't something else in the

25  picture that does not meet the eye.

74

1        If those funds are released and if as time goes on it

2    appears that somehow the republic gets those funds, then that

3    will be a deprivation of justice to these judgment creditors

4    and it is perfectly conceivable that that will happen. I will

5    not release those funds unless I have some security or some

6    assurance that if that happens, those funds will be returned.

7    I want the parties to consider that, and I am adjourning the

8    hearing for that to be considered. I am not granting any

9    motion today, and I will not grant any motion to have Correo

10   obtain costs. The hearing is adjourned. Thank you.

11       (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

February 24, 2004

**BY FACSIMILE**

Bruce Paulsen, Esq.
Seward & Kissel
One Battery Park Plaza
New York, New York 10004

Todd B. Marcus, Esq.
Piper Rudnick LLP
1251 Avenue of the Americas
New York, New York 10020

Jerome C. Katz, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York 10112

Yale Glazer, Esq.
Lazare Potter Giacovas & Kranjac LLP
950 Third Avenue
New York, New York 10022

Re:    **TAG 380, LLC v. Ronson**, *et al.*
       **Index No. 101396/04**

Gentlemen:

We represent TAG 380, LLC ("TAG 380").

We enclose a Stipulation regarding the proposed briefing schedule and rescheduled hearing date with respect to Plaintiff's motion for leave to reargue a Decision and Order of Justice Marcy Friedman with respect to a *Yellowstone* injunction obtained by TAG 380 as against defendant ComMet 380, Inc. ("ComMet"). ComMet's attorney, Mr. Bruce Paulsen has consented to the terms of the Stipulation. However, the Court has advised that all parties must agree to the terms of the Stipulation, because as a result thereof, the preliminary conference scheduled for 11 a.m. on April 1, 2004 would be rescheduled for 9:30 A.M. on that same date.

Accordingly, we request that you sign the Stipulation if you have no objections to the rescheduling of the time of the April 1 preliminary conference and fax it back to me.

{MR1691.DOC;}

Thank you for your anticipated cooperation in this matter.

Very truly yours,

Joshua H. Epstein

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x

MARIA FAUSTA CILLI, COLOMBO MASI,
LUIS PEDRO BIVORT and MARIA ELENA
PELAYO, VALENTINA ETCHART,
SIMONA STACCIOLI, GIAMPAOLO
MONTOFINO and RENATA BOSCARIOL,
MAURICIO SERGI, FIORENZO FACCIONI
and PATRIZIA STORARI, LEONARDO
HILARIO SIMONE, CARLOS ARTURO
JOSE ULLA, and DECIO CARLOS
FRANCISCO ULLA,

                     Plaintiffs,

         - against -

THE REPUBLIC OF ARGENTINA,

                   Defendant.

----------------------------------------x

04 Civ. 6594 (TPG)

**OPINION**

    Plaintiffs are the beneficial owners of certain bond indebtedness issued by defendant The Republic of Argentina. The Republic defaulted on such indebtedness in December 2001 during a profound fiscal crisis. Plaintiffs are suing to recover amounts due to them as a result of the default and have moved for summary judgment. Plaintiffs also move to strike certain discovery requests made by the Republic.

    The motion for summary judgment is denied. The motion to strike is granted.

## FACTS

The bond indebtedness at issue is governed by a Fiscal Agency Agreement dated October 19, 1994 (the "1994 FAA").[1] The 1994 FAA is the same agreement that governed the bond indebtedness on which this court granted summary judgment to the plaintiffs in Lightwater Corporation Ltd. v. Republic of Argentina, No. 02 Civ. 3804, 2003 WL 1878420 (S.D.N.Y. Apr. 14, 2003). Section 22 of the 1994 FAA states that the Republic waives sovereign immunity and consents to jurisdiction in any state or federal court in the borough of Manhattan in the City of New York. The 1994 FAA provides that the Republic's obligations on the bonds are unconditional and that failure to make any payment of principal or interest for 30 days after the applicable payment date constitutes an event of default. A declaration by the Republic of a moratorium on the payment of principal or interest on its public external indebtedness is an event of default as well. Paragraph 12 of the FAA provides for acceleration of principal if there is a failure to pay interest or a moratorium. If either of these events occurs,

> each holder of Securities and such Series may by such notice in writing declare the principal amount of Securities of such Series held by it to be due and payable immediately . . . .

---

[1] Some plaintiffs hold beneficial interests in bonds governed by a Fiscal Agency Agreement dated December 10, 1993 ("1993 FAA"). As explained in earlier decisions, the relevant provisions of the 1993 FAA for this opinion are functionally equivalent to those in the 1994 FAA. See, e.g., Greylock Global Distressed Debt Master Fund v. Republic of Argentina, No. 05 Civ. 4246, 2006 U.S. Dist. LEXIS 6476 (S.D.N.Y. Feb. 17, 2006).

On December 24, 2001 the Republic declared a moratorium on payments of principal and interest on the external debt of the Republic. The court refers to its previous opinions for a description of the circumstances of these defaults. Lightwater, 2003 WL 1878420, at *2; Applestein v. Republic of Argentina, No. 02 Civ. 1773, 2003 WL 1990206, at *1 (S.D.N.Y. Apr. 29, 2003). On August 10, 2004, plaintiffs individually sent notices to Bankers Trust Company, the Fiscal Agent of The Republic of Argentina, declaring the principal amounts of the debt securities held by plaintiff to be immediately due and payable.

The bonds that are the subject of this action are listed hereafter. Also listed are the amounts of the beneficial interests owned by plaintiffs.[2]

The following tables contain the necessary identifying information regarding each plaintiff's beneficial interests in bonds.

---

[2] The court notes the distinction between bonds and beneficial interests. In some previous opinions, the court has simply referred to the plaintiffs as owners of "bonds," when in fact plaintiffs are technically owners of "beneficial interests in bonds." The Republic actually issues "a bond" to a depository. The depository, in some form, issues "participations" to brokers, who sell "beneficial interests" to purchasers. These beneficial interests are identified by reference to the underlying bond (CUSIP or ISIN number or both; date of issuance and maturity; rate of interest) and the principal amount of the beneficial interest. This distinction is discussed more fully in Million Air Corp. v. Republic of Argentina, No. 04 Civ. 1048, 2005 U.S. Dist. LEXIS 23904 (S.D.N.Y. Oct. 17, 2005).

## Table 1.

| | |
|---|---|
| Plaintiff Beneficial Owner: | Luis Pedro Bivort & Maria Elena Pelayo |
| Face Value: | U.S. $ 92,000.00 |
| CUSIP No., ISIN No., BB No.: | ISIN No. US04114AR16 |
| Date Of Issuance: | January 30, 1997. |
| Date Of Maturity: | January 30, 2017. |
| Interest Rate/Payable: | 11.375 % |
| Date Of Purchase: | Various unverified dates between September 27, 2000 and August 2003. |
| Acceleration: | August 10, 2004. |
| Contract Documents: (FAA; FRB; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account verification from Caja de Valores dated April 25, 2005. |

Table 2.

| Plaintiff Beneficial Owner: | Maria Fausta Cilli |
|---|---|
| Face Value: | U.S. $ 13,000.00 |
| CUSIP No., ISIN No., BB No.: | ISIN No. US04114GD65 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | February 21, 2012. |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | May 10, 2004. |
| Acceleration: | August 10, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banco del Fucino as of March 31, 2005. |

Table 3.

| Plaintiff Beneficial Owner: | Valentina Etchart |
|---|---|
| Face Value: | U.S. $ 15,000.00 |
| CUSIP No., ISIN No., BB No.: | ISIN No. US04114AH34 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | Not provided. |
| Interest Rate/Payable: | 8.375 % |
| Date Of Purchase: | December 22, 1993 (unverified). |
| Acceleration: | August 10, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated December 10, 1993. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account verification from Caja de Valores dated May 12, 2005. |

Table 4.

| Plaintiff Beneficial Owner: | Fiorenzo Faccioni & Patrizia Storari |
|---|---|
| Face Value: | U.S. $ 288,000.00 |
| CUSIP No., ISIN No., BB No.: | ISIN No. US04114BE93 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | April 7, 2009. |
| Interest Rate/Payable: | 11.75 % |
| Date Of Purchase: | Various unverified dates between September 18, 2001 to November 20, 2001. |
| Acceleration: | August 10, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Credivento Credito Cooperativo as of March 31, 2005. |

Table 5.

| Plaintiff Beneficial Owner: | Colombo Masi |
|---|---|
| Face Value: | U.S. $ 600,000.00 |
| CUSIP No., ISIN No., BB No.: | ISIN No. US04114GD65 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | February 21, 2012. |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | May 4, 2004 (unverified). |
| Acceleration: | August 10, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from San Paolo IMI as of April 30, 2005. |

-8-

Table 6.

| Plaintiff Beneficial Owner: | Giampaolo Montino & Renata Boscariol |
|---|---|
| Face Value: | U.S. $ 72,000.00 |
| CUSIP No., ISIN No., BB No.: | ISIN No. US04114GD65 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | February 21, 2012. |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | May 12, 2004 (unverified). |
| Acceleration: | August 10, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Cassa di Risparmio di Padova e Rovigo as of March 24, 2005. |

Table 7.

| Plaintiff Beneficial Owner: | Maurizio Sergi |
|---|---|
| Face Value: | U.S. $ 50,000.00 |
| CUSIP No., ISIN No., BB No.: | ISIN No. US04114GD65 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | February 21, 2012. |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | May 13, 2004 (unverified). |
| Acceleration: | August 10, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from MPS Banca Personale as of March 31, 2005. |

Table 8.

| | |
|---|---|
| **Plaintiff Beneficial Owner:** | Leonardo Hilario Simone |
| **Face Value:** | U.S. $ 116,000.00 |
| **CUSIP No., ISIN No., BB No.:** | CUSIP No. 040114GF1; ISIN No. US04114GF14 |
| **Date Of Issuance:** | Not provided. |
| **Date Of Maturity:** | December 19, 2008. |
| **Interest Rate/Payable:** | Variable. |
| **Date Of Purchase:** | December 12, 2001 (unverified). |
| **Acceleration:** | August 10, 2004. |
| **Contract Documents:** (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| **Evidence of Ownership Proffered:** (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Citicorp Financial Services Co. as of March 31, 2005. |

Table 9.

| Plaintiff Beneficial Owner: | Simona Staccoli |
|---|---|
| Face Value: | U.S. $ 21,000.00 |
| CUSIP No., ISIN No., BB No.: | CUSIP No. 040114GD6; ISIN No. US04114GD65 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | February 21, 2012. |
| Interest Rate/Payable: | 12.375 % |
| Date Of Purchase: | April 13, 2004 (unverified). |
| Acceleration: | August 10, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Banca Monteriggioni as of March 31, 2005. |

-12-

Table 10a.

| Plaintiff Beneficial Owner: | Carlos Arturo Jose Ulla |
|---|---|
| Face Value: | U.S. $ 117,000.00 |
| CUSIP No., ISIN No., BB No.: | ISIN No. US04114AN02 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | October 9, 2006. |
| Interest Rate/Payable: | 11 % |
| Date Of Purchase: | August 2000 and December 2000 (unverified). |
| Acceleration: | August 10, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Caja de Valores as of March 31, 2005. |

Table 10b.

| Plaintiff Beneficial Owner: | Carlos Arturo Jose Ulla |
|---|---|
| Face Value: | U.S. $ 99,930.00 |
| CUSIP No., ISIN No., BB No.: | ISIN No. US04114GF14 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | December 19, 2008. |
| Interest Rate/Payable: | Variable. |
| Date Of Purchase: | Various unverified dates between July 2001 and September 2001. |
| Acceleration: | August 10, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Caja de Valores as of March 31, 2005. |

Table 11.

| Plaintiff Beneficial Owner: | Decio Carlos Francisco Ulla |
|---|---|
| Face Value: | U.S. $ 405,620.00 |
| CUSIP No., ISIN No., BB No.: | ISIN No. US04114GF14 |
| Date Of Issuance: | Not provided. |
| Date Of Maturity: | December 19, 2008. |
| Interest Rate/Payable: | Variable. |
| Date Of Purchase: | Various unverified dates between July 2001 and September 2001. |
| Acceleration: | August 10, 2004. |
| Contract Documents: (FAA; Indenture; Offering Prospectus; Certificates, etc.) | FAA dated October 19, 1994. |
| Evidence of Ownership Proffered: (Account Statements; Letters; Notarized Statements, etc.) | - Account statement from Caja de Valores as of March 31, 2005. |

# DISCUSSION

This Court has already granted summary judgment in other cases to plaintiffs seeking to collect on the Republic's defaulted bonds issued under the 1993 FAA and those issued under the 1994 FAA. This has occurred in <u>Lightwater</u>, <u>supra</u>, and other cases. Only certain specific issues need to be discussed in connection with the present motion.

## Acceleration of Principal

As noted in the tables above, plaintiffs have properly accelerated the principal on their beneficial interests.

## Standing and Proof of Ownership

In the two opinions in <u>Fontana v. Republic of Argentina</u>, 415 F.3d 238 (2d Cir. 2005), and <u>Applestein v. Province of Buenos Aires</u>, 415 F.3d 242 (2d Cir. 2005), the Second Circuit has held that an owner of a beneficial interest, such as the plaintiffs here, must receive authorization from the registered holder of the bond before it may sue, but that such authorization may be granted subsequent to the filing of a lawsuit. Alternatively, the Republic may waive the authorization requirement.

At a hearing on September 28, 2005, the court engaged the Republic in a discussion of what it would proof it would require before agreeing to waive the authorization requirement. <u>See</u> Transcript, Sept. 28, 2005, <u>H.W. Urban GmbH</u>

v. Republic of Argentina (02 Civ. 5699). The result of that hearing was an agreement that the Republic will waive such objections on two conditions. The first condition is that the plaintiff must provide proof of current ownership. Id. The second condition has to do more precisely with the time of ownership. The plaintiff must furnish proof of when the purchase occurred, or if such purchase occurred before the default date of December 24, 2001, proof of ownership as of the default date is sufficient. Id. Since the Republic would not owe unpaid interest to a plaintiff for periods of time after the default when that plaintiff did not own the beneficial interests, this second condition allows the Republic to determine the precise date when a plaintiff holder's right to receive interest began.

Here, plaintiffs have supplied proof of current ownership. The account statements of March, April and May 2005 are sufficient for this. But none of the plaintiffs has adequately demonstrated when they acquired their beneficial interests or that they owned the interests as of December 24, 2001. Thus they have not fully met the Republic's conditions for waiving its objection to standing.

Discovery Requests

Plaintiffs also move to strike discovery requests made by the Republic associated with a potential champerty defense. For the reasons stated in Mazzini v. Republic of Argentina, No. 03 Civ. 8120, 2005 U.S. Dist. LEXIS 5692

-17-

at *27-*28 (S.D.N.Y. Mar. 31, 2005), the motion to strike these discovery requests is granted.

## CONCLUSION

For the reasons stated, plaintiffs' motion for summary judgment is denied.  Plaintiffs' motion to strike is granted.

SO ORDERED.

Dated:    New York, New York
          March 20, 2006

THOMAS P. GRIESA
U.S.D.J.